Date: Thu Oct 23 09:40:12 CDT 2025
From: Lisa Kurtz <Lisa.Kurtz@lfg.com>
To: MVADEN@MARCUSVADEN.COM
Message-ID: <1588330347.3.1761230412691@ne1pldb201c.lnc.com>
Subject:Lincoln Financial Group Information for Claim 1220024325 (SECURE)

E-communication from Lincoln Financial Group

## Important Information for Claim #1220024325

Please review the attached letter and/or document(s) regarding the Claim #1220024325 for Adam Bobb. You may submit claim forms and additional documentation via email to DisabilityClaims@LFG.com. If you have any questions regarding this information, please contact us at claims@lfg.com or 1-800-423-2765.

**Lisa Kurtz**
**Specialist, Appeals Claims**
The Lincoln National Life Insurance Company
8801 INDIAN HILLS DRIVE
Omaha, NE 68114-4066
Toll Free Phone: 1-800-423-2765
Phone: 800-423-2765 x 66442
Email: Lisa.Kurtz@lfg.com

Insurance products are issued by the insurance company affiliates of Lincoln Financial Group: The Lincoln National Life Insurance Company and Lincoln Life & Annuity Company of New York. The Lincoln National Life Insurance Company is not authorized in the state of New York. Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

©2013 Lincoln National Corporation

LincolnFinancial.com

EXHIBIT
B

Lincoln Financial Group

Lincoln Financial is the marketing name for Lincoln National Corporation and its affiliates.

**The Lincoln National Life Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
Toll free (800) 423-2765
Toll free Fax (877) 843-3950
www.LincolnFinancial.com

October 23, 2025

MARCUS VADEN LAW
ATTN MARCUS VADEN
600 SOUTH GERMAN LANE
SUITE 102
CONWAY, AR 72034

Re: Policyholder: Trinity Village, Inc.
Policy Number: 00001020137500000
Claim Number: 1220024325
Claimant: Adam Bobb

Dear MARCUS VADEN:

We have completed our review of your client's Long Term Disability appeal. Based on the information provided, we have determined that we are unable to approve benefits beyond 12/26/2024. In our appeal review process, all information previously submitted as well as any new documentation was used to make a determination.

To be eligible for benefits under the policy issued to your client's employer, an individual must satisfy all of the provisions of the policy. This includes, but is not limited to, the following:

**TOTAL DISABILITY** or **TOTALLY DISABLED** will be defined as follows:

1. During the Elimination Period and Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee is unable to perform each of the Main Duties of his or her Own Occupation.
2. After the Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee is unable to perform each of the Main Duties of any occupation which his or her training, education or experience will reasonably allow.

The loss of a professional license, an occupational license or certification, or a driver's license for any reason does **not**, by itself, constitute Total Disability.

The policy has a 24 month Own Occupation Period which ended on 12/15/2023. In order to be considered Totally Disabled beyond this date, the medical documentation must support that your client would be Totally Disabled as defined above. As such, in considering your client's eligibility for Long Term Disability benefits beyond 12/26/2024, we evaluated whether your client is Totally Disabled as defined above.

©2025 Lincoln National Corporation www.LincolnFinancial.com
Lincoln Financial is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

Your client's entire file was reviewed upon appeal. Disability must be supported from 12/26/2024 forward, which was the focus of our determination.

**Summary of Initial Claim Filing**

As you know your client's claim was originally approved from 12/15/2021 to 12/26/2024 as we found your client met the definition of Total Disability that applied during this period. Benefits were terminated as of 12/26/2024, because we determined your client was not Totally Disabled from performing the main duties of any occupation. Our evaluation included review of the medical documentation, including consultation with and/or review of a written report from Dr. Andre Akhondi, an independent physician who is Board Certified in Cardiovascular Disease. For complete details please refer to our letter dated 12/24/2024.

The letter noted in part the following:

> Based upon the medical records received, Mr. Bobb's file was sent for an External Peer Evaluation completed by Dr. Solomon Rojhani on 11/22/2024. Dr. Rojhani opined that Mr. Bobb has been experiencing chronic neck and low back pain secondary to cervical and lumbar disc degeneration. He was also experiencing chronic right hip pain secondary to right hip labral tear and right hip osteoarthritis. Due to this he would have the following restrictions and limitations; he could constantly sit with the ability to reposition as needed to relieve pressure and pain. He could frequently stand, walk, and use his left upper extremity for fine manipulation as well as simple/firm grasping. He could occasionally lift, carry, push, and pull up to 20 pounds; he could occasionally climb stairs, bend, balance, stoop, kneel, crouch, reach overhead and below waist levels. He had no restrictions in his ability to reach to desk level, use his lower extremities for foot controls, use his right upper extremity to fine manipulate, simple/firm grasp. He could not climb ladders, work at unprotected heights, or operate heavy machinery.
>
> Mr. Bobb's file was also sent for an External Peer Evaluation completed by Dr. Andre Akhondi on 12/13/2024. Dr. Akhondi opined Mr. Bobb's diagnostic and clinical findings were all normal with normal blood pressure and no symptoms of angina. There was no objective medical documentation provided to support a cardiac impairment warranting functional impairment with restrictions and limitations.

**Summary of Appeal**

On 11/09/2023, your client filed an appeal in response to our determination to terminate benefits. Additional information was submitted with your client's appeal, including but not limited to records from the University of Arkansas for Medical Sciences, Arkansas Spine and Pain, Mainline Health Systems, Real Radiology records for the period of 10/13/2021 – 10/14/2024, a letter from Kerry Pennington MD dated 09/06/2022, and Social Security letters dated 10/16/2023 from the Office of Hearings Operations and a letter dated 07/14/2023 titled “Important Information”.

As part of your client's appeal review, all current and new medical information was reviewed by Kanishka Wijegunarante, MD, an independent physician reviewer Board Certified in Internal Medicine as well as a Vocational Memorandum. For details of these medical records please refer to the medical review that was sent to you on 09/25/2025. The report was sent to you to afford you the opportunity for you or your client's treating physician(s) to respond or offer a rebuttal.

The findings of Dr. Wijegunarante's medical report noted in part, the following:

> Overall, the claimant has a history of essential hypertension, chest pain, mixed hyperlipidemia, knee pain, cervical pain, low back pain, atherosclerotic heart disease, sleep apnea, and type 2 diabetes Mellitus. Regarding hypertension, there was no record of end-organ damage, renal impairment, or hypertensive crisis. Thus, this condition is non impairing. For chest pain, he complained of left-sided/center chest pains. He described the pain as tightness/squeeze, which was associated with activity, shortness of breath, and diaphoresis. However, no record of abnormal ECG findings or ischemic changes. Thus, this condition is non-impairing. For mixed hyperlipidemia, there was no record of peripheral vascular disease or xanthomas. Thus, this condition is non-impairing. For atherosclerotic heart disease, there was no record of myocardial infarction, heart failure or arrhythmias. Thus, this condition is non-impairing. For sleep apnea, there was no record of excessive daytime sleepiness, no use of CPAP. Thus, this condition is non impairing. For type 2 diabetes mellitus, although his HbA1c was 11.1, there was no record of neuropathy, diabetic foot ulcers or significant complications due to this condition. Thus, this condition is non-impairing. For knee pain, he complained of chronic left knee pain without acute injuries. He reported that the pain comes and goes, and the pain was aching. He experienced crepitus with certain movements. Physical examination revealed crepitus to the left knee with passive range of motion, and no deformity was noted; no effusion was present. Going forward, examination revealed no tenderness on the medial line and there was no further complaint. Thus, this condition is non-impairing. For cervical pain, he complained of painful left lateral rotation of the cervical spine. Examination revealed that the right lateral flexion was associated with pain. For back pain, he had a history of pain. Examination revealed palpation of the lumbar facet revealed tenderness on both sides at the L3-S1 region. Palpation of the bilateral sacroiliac joint areas revealed right-sided pain and no left-sided pain. There was pain noted with lumbar extension. The left lateral flexion caused pain. The right lateral flexion revealed pain. There were palpable trigger points noted in the muscles: right gluteal and piriformis. Therefore, based on the claimant's complaint of chronic pain; cervical pain, and low back pain, restrictions and limitations are warranted on his activities from 12/26/2024 to present & beyond.
>
> Thus;
> Sitting: Constantly
> Standing: Frequently
> Walking: Frequently
> Lifting: Occasionally, BUE, up to 20 lbs.
> Carrying: Occasionally, BUE, up to 20 lbs.
> Pushing: Occasionally, BUE, up to 20 lbs.

Pulling: Occasionally, BUE, up to 20 lbs.
Climbing stairs: Frequently
Balancing: Frequently
Stooping: Occasionally
Kneeling: Occasionally
Crouching: Occasionally
Crawling: Occasionally
Reaching: Frequently below the waist level BUE: unrestricted to desk level and overhead
levels BUE
Use lower extremities for foot controls: Unrestricted BLE
Fine manipulation: Unrestricted BUE
Simple and firm grasping: Unrestricted BUE

No climbing ladders
No operating heavy machinery
No working at unprotected heights

The above restrictions and limitations are supported from 12/26/2024 to present and
beyond., with reassessment on or around 03/09/2026.

The claimant's abilities are sustainable on a full-time basis.

No, medical records do not support any restrictions and limitations that were recommended by treating providers for the timeframes in question.

It should also be noted that Mr. Bobb's treating provider, Dr. Pennington, Family Medicine assessed Mr. Bobb's primary diagnosis of chronic pain and the secondary diagnosis of primary osteoarthritis of the right hip. Dr. Pennington noted that he was restricted to sitting and grasping constantly. He could stand, stoop, crouch, crawl, bend, reach overhead, and lift/carry up to 1-5 lbs., 6-10 lbs. occasionally. He could reach to the desk and below the waist level. Total restrictions were placed on walking, balancing, kneeling, lifting/carrying up to 11 lbs. to 100+ lbs. He could perform light duty only and his prognosis was fair.

You opined in your appeal letter that the Transferrable Skills Analysis (TSA) did not consider all the information available to the Vocational Rehabilitation Consultant (VRC).

It is the job of the VRC to review the medical report and base the TSA on the findings of that report. It is outside the boundaries of the VRCs area of expertise to opine on your client's medical capacities. The medical report did not endorse the use of a cane, cognitive impairments of anxiety and depression and noted that there was no evidence that Mr. Bobb suffers from any side effects from the medication that he was taking that would impact occupational functioning.

The VRC also noted that all vocational resources available were reviewed. It is acknowledged that the VRC does not and did not meet with Mr. Bobb and that it is their professional responsibility to provide an objective opinion that reflects a full, fair, and unbiased evaluation of the individual's vocational potential and limitations.

The analysis was based on established vocational principles, labor market information and the individual's education, work history, transferable skills, and functional capabilities noting that alternative occupations were identified within Mr. Bobbs' transferrable skills and capabilities.

It also opined in your letter of appeal that Mr. Bobb does not have the ability to work in a sedentary occupation due to his prior work history being in a medium and heavy capacity.

A person's work history is used to identify a set of occupations that a worker should be able to perform. One does also not need to work in a sedentary line of work in the past in order to work in a sedentary occupation in the future. A prior physical demand level does not necessitate the skill level that is carried on throughout one's lifetime of various jobs and skillsets learned.

The VRC noted that Mr. Bobb's prior work history in which the jobs held required an SVP level of 4 – (3 months up to and including 6 months) 7 (2-4 years of experience). The alternative occupations SVP levels were far below this at a level 2 and 3.

Your letter of 10/13/2025 noted that you have received no information regarding your client's appeal since submitting the appeal.

An email was sent to your office on 10/15/2025 advising that a letter was emailed to your office on 09/25/2025 with a copy of the medical report and Appeal Vocational Memorandum. The 09/25/2025 letter noted a response would be due on or before 10/16/2025. Your office then sent a letter providing your opinions regarding the medical report and TSA that was sent to you; however, you did not submit any additional medical documentation in rebuttal to the report for our review.

**Appeal Decision**

We understand that your client has been diagnosed with Essential (primary) hypertension. However, our review of the medical documentation, which included consultation with and/or review of a written report from an independent physician who is Board Certified in Internal Medicine, does not support restrictions and limitations that would render your client unable to perform each of the main duties of any gainful occupation that your client has the training, education, and experience to perform beyond 12/26/2024.

Mr. Bobb's treating provider noted he could perform light duty only. Our findings indicate that Mr. Bobb could perform sedentary as well light duty work; thus, essentially agreeing with Mr. Bobb's treating physician.

**Vocational**

We reviewed your client's past training, education and work experience to evaluate your client's capacity to perform work-related activity. The documentation provided suggests your client is not limited from working in a light work capacity. The definition of light work capacity, as defined by the Department of Labor, is:

Light work requires walking/standing to a significant degree. In certain occupations it requires sitting most of the time but entails pushing/pulling of arm or leg controls; and/or when the job requires working at a production rate pace entailing the constant pushing/pulling of materials

even though the weight of those materials is negligible. Light work may require exertion up to 20 lbs. occasionally (1-33%), exertion up to 10 lbs. frequently (34-66%) and a negligible degree of exertion constantly (67-100%).

Using *The Dictionary of Occupational Titles* as a reference, we found that your client would be capable of performing the following occupations:

| DOT# | Occupation | Wage (mean) | Physical Demand |
|---|---|---|---|
| 372.667-030 | Gate Guard | $3,088.80/Month | Light |
| 379.367-010 | Surveillance-System Monitor | $3,267.33/Month | Sedentary |
| 706.687-010 | Assembler, Production | $3,120.00/Month | Light |

The preceding list is just a sample of various jobs that your client shows transferable skills to perform. The list is not all-inclusive and is only a sample of possibilities. The occupations listed are found to exist within the national economy and are appropriate from the standpoint of adequate salary levels relative to your client's prior earnings. NOTE: Current hiring or job availability is not a consideration when identifying occupational alternatives, only that the occupations identified exist within the national labor market.

The most recent information received regarding Mr. Bobb's application for Social Security benefits was the Social Security information was a letter dated 10/14/2025 advising of the unfavorable hearing decision and that your office is appealing the denial.

We evaluated this claim by applying the provisions of the policy to the facts and opinions contained in the claim file. Other than what is set out in the policy, we did not rely upon any guidelines, internal rules, protocols, standards or other similar criteria in reaching this claim determination.

**Appeal Rights**

As a reminder, your client has exhausted their first level of appeal. If your client disagrees with this decision, you, your client, or a person legally authorized as your client's representative, may pursue a final administrative appeal.

To initiate this process please have your client or an authorized representative submit a written request for review to the following address within 180 days after you receive this denial notice.

Claims Shared Services
The Lincoln National Life Insurance Company
PO Box 2337
Omaha, NE 68103
Fax: 402-361-1460

The following should be included with the appeal letter:

1. The policy number and claim number;
2. The reason(s) for appealing; and
3. If applicable, any additional documentation to support the appeal, such as medical treatment records, laboratory results, x-rays or other testing results.

Following receipt of your client's appeal, we will review the claim and provide you or your client with a full written explanation of the decision within 45 days. You or your client may also request copies of records and other information relevant to the claim free of charge.

If your client's plan is subject to ERISA, he or she may have other voluntary alternative dispute resolution options, such as mediation. One way to find out what may be available is to contact your client's local U.S. Department of Labor Office or your client's state insurance regulatory agency. In addition, once all required reviews of your client's claim have been completed, your client has the right to bring a civil action under applicable law.

The employer's plan has a contractual limitations period of three years, which means that a lawsuit must be brought within three years after the date written proof of claim or proof of continued disability was required. The date on which the contractual limitations period expires for this claim is 12/26/2027.

Please contact me directly at the number below with any questions you may have or email us at LFGAppeals@lfg.com.

Sincerely,

Lisa K
800-423-2765 x 66442
Claim Resolution Specialiast
Claim Resolution Services
The Lincoln National Life Insurance Company

Chinese (Simplified)

注意：如果您说普通话，可以选择免费语言支持服务。 请拨打 1-800-423-2765.

Chinese (Traditional)

注意：若您講國語，可使用我們的免費語言支援服務。 請致電 1-800-423-2765.

Tagalog

Pansinin: Kung nagsasalita ka ng Tagalog, mayroon kang magagamit na mga libreng serbisyo ng tulong sa wika. Tumawag sa 1-800-423-2765.

Spanish

Atención: si habla español, tenemos disponibles servicios de apoyo con el idioma sin costo para usted. Llame al 1-800-423-2765.

Navajo

DÍÍ BAA AKÓ NÍNÍZIN: Díí bee yáníłti'go Diné bizaad, saad bee áká'ánida'áwo'dę́ę́' t'áá jiik'eh, ná hólǫ́. Kojį' hódíílnih áǫįóóǫéąą́ǫąíę́ę.