## ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE

**DEATH OR DISMEMBERMENT BENEFIT FOR A DEPENDENT SPOUSE.** The Company will pay the benefit listed below, if:

(1) your Dependent Spouse sustains an accidental bodily injury while insured under this provision; and

(2) that injury directly causes one of the following losses within 365 days after the date of the accident.

The loss must result directly from the injury and from no other causes.

Your Dependent Spouse is eligible for the Accidental Death and Dismemberment Insurance if your Spouse:

(1) is insured by this provision on the date of the accident;

(2) is not legally separated from you; and

(3) is not serving on active duty in the armed forces of any state or country except for duty of 30 days or less for training in the Reserves or National Guard.

| LOSS | BENEFIT FOR COMMON CARRIER ACCIDENT | BENEFIT FOR OTHER COVERED ACCIDENT |
|---|---|---|
| Loss of Life | 2 Times Principal Sum | Principal Sum |
| Loss of One Member (Hand, Foot or Eye) | Principal Sum | 1/2 Principal Sum |
| Loss of Two or More Members | 2 Times Principal Sum | Principal Sum |

The Principal Sum which applies to your Dependent Spouse is shown in the Schedule of Insurance.

**MAXIMUM PER PERSON.** If your Dependent Spouse sustains more than one loss resulting from the same accident, the benefit:

(1) will be the one largest amount listed;

(2) will not exceed two times the Principal Sum for all of that person's combined losses resulting from a Common Carrier Accident; and

(3) will not exceed the Principal Sum for all that person's combined losses resulting from any other covered accident.

**TO WHOM PAYABLE.** Benefits for a Dependent Spouse's loss will be payable:

(1) to you; or

(2) if you fail to survive your Dependent Spouse, to your Beneficiary or in accord with the Facility of Payment section of the Policy.

**LIMITATIONS.** Benefits are not payable for any loss to which a contributing cause is:

(1) intentional self-inflicted injury or self-destruction, while sane;

(2) disease, bodily or mental infirmity, or medical or surgical treatment of these, except for;
  - (a) pyogenic infections resulting from an accidental bodily injury; or
  - (b) the accidental ingestion of contaminated substances;

(3) participation in a riot;

(4) duty as a member of any military, naval or air force;

(5) war or any act of war, declared or undeclared;

(6) participation in the commission of a felony;

(7) voluntary use of drugs; except when prescribed by a Physician;

(8) voluntary inhalation of gas, including carbon monoxide, while sane;

(9) travel or flight in any aircraft, including balloons and gliders; except as a fare paying passenger on a regularly scheduled flight; or

(10) driving a vehicle while intoxicated.

**DEFINITIONS.**

"Common Carrier Accident" means a covered accidental bodily injury, which is sustained while riding as a fare paying passenger (not a pilot, operator or crew member) in or on, boarding or getting off from a Common Carrier.

"Common Carrier" means any land, air or water conveyance operated under a license to transport passengers for hire.

"Intoxicated" shall be defined by the jurisdiction where the accident occurs. The exclusion will apply whether or not the driver is convicted.

"Loss of a Member" includes the following:
(1) "Loss of Hand or Foot," means complete severance through or above the wrist or ankle joint.
(2) "Loss of an Eye," means total and irrevocable loss of sight in that eye.

**INDIVIDUAL TERMINATION OF INSURANCE FOR A DEPENDENT SPOUSE.** Accidental Death and Dismemberment Insurance for your Dependent Spouse will cease on the earlier of:
(1) the date he or she is no longer an eligible spouse; or
(2) the date you are no longer eligible for coverage under the Policy.

## SAFE DRIVER BENEFIT

BENEFIT. If you die as a direct result of a covered auto accident, for which Accidental Death and Dismemberment Benefits are payable; then:

(1) an additional Seat Belt Benefit will be payable, if you were wearing a properly fastened seat belt at the time of the accident; and
(2) an additional Air Bag Benefit will be payable, if the auto was equipped with air bag(s).

The Seat Belt Benefit equals $10,000 or 10% of the Principal Sum, whichever is less; and the Air Bag Benefit equals $10,000 or 10% of the Principal Sum, whichever is less. The Seat Belt Benefit and the Air Bag Benefit will not be less than $1,000. The Principal Sum is the amount payable because of the Insured Person's accidental death.

A copy of the police report must be submitted with the claim. The position of the seat belt or presence of an air bag must be certified by:

(1) the official accident report; or
(2) the coroner, traffic officer or other investigating officer.

Upon receipt of satisfactory written proof, the additional benefit will be paid in accord with the Beneficiary section.

DEFINITIONS. As used in this provision:

"Auto" means a 4-wheel passenger car, station wagon, jeep, pick-up truck or van-type car. It must be licensed for use on public highways. It includes a car owned or leased by the Employer.

"Intoxicated," "Impaired," or "Under the Influence of Drugs" shall be defined as by the jurisdiction where the accident occurs.

"Seat Belt" means a properly installed:

(1) seat belt or lap and shoulder restraint; or
(2) other restraint approved by the National Highway Traffic Safety Administration.

LIMITATIONS. Safe Driver Benefits will not be paid if:

(1) the Accidental Death and Dismemberment Benefits is not paid under the Policy for your death; or
(2) at the time of the accident, you or any other person who was driving the auto in which you were traveling:
    (a) was driving without a valid drivers' license;
    (b) was driving in excess of the legal speed limit; or
    (c) was driving while intoxicated, impaired, or under the influence of drugs (except for drugs taken as prescribed by a Physician for the driver's use).

    The above limitations will apply, whether or not the driver is convicted.

## CLAIMS PROCEDURES
## FOR LIFE OR ACCIDENTAL DEATH AND DISMEMBERMENT BENEFITS

**NOTE: The Policy may include an Extension of Death Benefit, an Accelerated Death Benefit or a Living Benefit. If so, please refer to that section for special claim procedures.**

### NOTICE AND PROOF OF CLAIM

**Notice of Claim.** Written notice of an accidental death or dismemberment (AD&D) claim must be given within 20 days after the loss occurs; or as soon as reasonably possible after that.* The notice must be sent to the Company's Group Insurance Service Office. It should include your name, address and Policy number.

**Claim Forms.** When notice of claim is received, the Company will send claim forms for filing the required proof. If the Company does not send the forms within 15 days; then you or your Beneficiary (the claimant) may send the Company written proof of claim in a letter. It should state the nature, date and cause of the loss.

**Proof of Claim.** The Company must be given written proof of an AD&D claim within 90 days after the date of the loss; or as soon as reasonably possible after that.* Proof of claim must be provided at the claimant's own expense. It must show the nature, date and cause of the loss. In addition to the information requested on the claim form, documentation must include:

(1) A certified copy of the death certificate, for proof of death.
(2) A copy of any police report, for proof of accidental death or dismemberment.
(3) A signed authorization for the Company to obtain more information.
(4) Any other items the Company may reasonably require in support of the claim.

*** Exception:** Failure to give notice or furnish proof of claim within the required time period will not invalidate or reduce the claim; if it is shown that it was done as soon as reasonably possible. These time limits will not apply to a life insurance claim, or to any claim while the claimant lacks legal capacity.

**EXAM OR AUTOPSY.** At anytime while a claim is pending, the Company may have you examined:

(1) by a Physician of the Company's choice;
(2) as often as reasonably required.

If you fail to cooperate with an examiner or fail to take an exam, without good cause; then the Company may deny benefits, until the exam is completed. In case of death, the Company may also have an autopsy done, where it is not forbidden by law. Any such exam or autopsy will be at the Company's expense.

**TIME OF PAYMENT OF CLAIMS.** Any benefits payable under the Policy will be paid:

(1) immediately after the Company receives complete proof of claim and confirms liability; and
(2) in no event more than 30 days after the Company receives acceptable proof of claim.

### TO WHOM PAYABLE

**Death.** Any benefits payable for your death will be paid in accord with the Beneficiary, Facility of Payment and Settlement Options sections of the Policy. If the Policy includes Dependent Life Insurance; then any benefits payable for an insured Dependent's death will be paid to:

(1) you, if you survive that Dependent; or
(2) your Beneficiary, or in accord with the Facility of Payment section; if you do not survive that Dependent.

**Dismemberment.** If the Policy includes Accidental Death and Dismemberment Benefits; then any benefit, other than your death benefit, will be paid to you.

## CLAIMS PROCEDURES
## (Continued)

**NOTICE OF CLAIM DECISION.** The Company will send the claimant a written notice of its claim decision. If the Company denies any part of the claim; then the written notice will explain:
(1) the reason for the denial, under the terms of the Policy and any internal guidelines;
(2) how the claimant may request a review of the Company's decision; and
(3) whether more information is needed to support the claim.

The Company will send this notice:
(1) within 15 days after resolving the claim;
(2) within 30 days after receiving acceptable proof of claim; and
(3) if reasonably possible, within:
  (a) 90 days after receiving the first proof of a death or dismemberment claim; or
  (b) 45 days after receiving the first proof of a claim for any Extension of Death Benefit, Living Benefit or Accelerated Death Benefit available under the Policy.

**Delay Notice.** If the Company needs more than 15 days to process a claim, in a special case; then an extension will be permitted. If needed, the Company will send the claimant a written delay notice:
(1) by the 15th day after receiving the first proof of claim; and
(2) every 30 days after that, until the claim is resolved.

The notice will explain the special circumstances which require the delay, and when a decision can be expected. In any event, the Company must send written notice of its decision within:
(1) 180 days after receiving the first proof of a death or dismemberment claim; or
(2) 105 days after receiving the first proof of a claim for any Extension of Death Benefit, Living Benefit or Accelerated Death Benefit available under the Policy.
If the Company fails to do so; then there is a right to an immediate review, as if the claim was denied.

**Exception:** If the Company needs more information from the claimant to process a claim; then it must be supplied within 45 days after the Company requests it. The resulting delay will not count towards the above time limits for claim processing.

**REVIEW PROCEDURE.** The claimant may request a claim review, within:
(1) 60 days after receiving a denial notice of a death or dismemberment claim; or
(2) 180 days after receiving a denial notice of a claim for any Extension of Death Benefit, Living Benefit or Accelerated Death Benefit available under the Policy.
To request a review, the claimant must send the Company a written request, and any written comments or other items to support the claim. The claimant may review certain non-privileged information relating to the request for review.

**Notice of Decision.** The Company will review the claim and send the claimant a written notice of its decision. The notice will explain the reasons for the Company's decision, under the terms of the Policy and any internal guidelines. If the Company upholds the denial of all or part of the claim; then the notice will also describe:
(1) any further appeal procedures available under the Policy;
(2) the right to access relevant claim information; and
(3) the right to request a state insurance department review, or to bring legal action.

For a death or dismemberment claim, the notice will be sent within 60 days after the Company receives the request for review; or within 120 days, if a special case requires more time. For a claim for any Extension of Death Benefit, Living Benefit or Accelerated Death Benefit available under the Policy, the notice will be sent within 45 days after the Company receives the request for review; or within 90 days, if a special case requires more time.

**CLAIMS PROCEDURES**
**(Continued)**

**Delay Notice.** If the Company needs more time to process an appeal, in a special case; then it will send the claimant a written delay notice, by the 30th day after receiving the request for review. The notice will explain:
(1) the special circumstances which require the delay;
(2) whether more information is needed to review the claim; and
(3) when a decision can be expected.

**Exception:** If the Company needs more information from the claimant to process an appeal; then it must be supplied within 45 days after the Company requests it. The resulting delay will not count towards the above time limits for appeal processing.

**Claims Subject to ERISA** (Employee Retirement Income Security Act of 1974). Before bringing a civil legal action under the federal labor law known as ERISA, an employee benefit plan participant or beneficiary must exhaust available administrative remedies. Under the Policy, the claimant must first seek two administrative reviews of the adverse claim decision, in accord with this section. If an ERISA claimant brings legal action under Section 502(a) of ERISA after the required reviews; then the Company will waive any right to assert that he or she failed to exhaust administrative remedies.

**RIGHT OF RECOVERY.** If benefits have been overpaid on any claim; then full reimbursement to the Company is required within 60 days. If reimbursement is not made; then the Company has the right to:
(1) reduce future benefits until full reimbursement is made; and
(2) recover such overpayments from you, or from your Beneficiary or estate.
Such reimbursement is required whether the overpayment is due to fraud, the Company's error in processing a claim, or any other reason.

**LEGAL ACTIONS.** No legal action to recover any AD&D benefits may be brought until 60 days after the required written proof of claim has been given. No such legal action may be brought more than three years after the date written proof of claim is required. These time limits will not apply to a life insurance claim, however.

**CERTIFICATE AMENDMENT**

**TO BE ATTACHED TO THE CERTIFICATE FOR GROUP POLICY NO 000400001000-19469**

**ISSUED TO: Trinity Village, Inc.**

**Your Certificate is amended by the addition of the following provision.**

**ACCELERATED DEATH BENEFIT**

BENEFIT. The Accelerated Death Benefit is an advance payment of part of your Personal Life Insurance or Spouse Life Insurance. It may be paid to you, in a lump sum, once during your lifetime.

To qualify, you must:
- (1) have satisfied the Active Work requirement under the Policy;
- (2) have been insured under the Policy:
  - (a) on the date of an injury which results in a Terminal condition; or
  - (b) for 60 days before being diagnosed Terminal as a result of sickness; and
- (3) have at least $2,000 of Personal Life Insurance under the Policy on the day before the Accelerated Death Benefit is paid.

To qualify, your Terminal Dependent spouse must:
- (1) have satisfied the Nonconfinement or Period of Limited Activity requirement under the Policy;
- (2) have been insured under the Policy:
  - (a) on the date of an injury which results in a Terminal condition; or
  - (b) for 60 days before being diagnosed Terminal as a result of sickness; and
- (3) have at least $2,000 of Spouse Life Insurance under the Policy on the day before the Accelerated Death Benefit is paid.

Receiving the Accelerated Death Benefit will reduce the Remaining Life Insurance and the Death Benefit payable at death, as shown on the next page.

"Claimant," as used in this section, means the Terminal Insured Person or Terminal Dependent spouse for whom the Accelerated Death Benefit is requested.

"Terminal" means you or your Dependent spouse has a medical condition which is expected to result in death within 12 months, despite appropriate medical treatment.

APPLYING FOR THE BENEFIT. To withdraw the Accelerated Death Benefit, you (or your legal representative) must send the Company:
- (1) written election of the Accelerated Death Benefit, on forms supplied by the Company; and
- (2) satisfactory proof that the Claimant is Terminal, including a Physician's written statement.

The Company reserves the right to decide whether such proof is satisfactory.

Before paying an Accelerated Death Benefit, the Company must also receive the written consent of any irrevocable beneficiary, assignee or bankruptcy court with an interest in the benefit. Before paying an Accelerated Death Benefit for your Dependent spouse, the Company must also receive your written consent. (See Limitations 3, 4, 5, and 6.)

**NOTE: THIS IS NOT A LONG-TERM CARE POLICY. RECEIVING THIS ACCELERATED DEATH BENEFIT WILL REDUCE THE BENEFIT PAYABLE AT DEATH. ANY AMOUNT WITHDRAWN MAY BE TAXABLE INCOME, SO YOU SHOULD CONSULT A TAX ADVISOR BEFORE APPLYING FOR THIS BENEFIT.**

AMOUNT OF THE BENEFIT. You may elect to withdraw an Accelerated Death Benefit in any $1,000 increment; subject to:

**CERTIFICATE AMENDMENT**
**(Continued)**

(1) a minimum of $1,000 or 10% of the Claimant's amount of Life Insurance (whichever is greater); and
(2) a maximum of $250,000 or 75% of the Claimant's amount of Life Insurance (whichever is less).

To determine the Accelerated Death Benefit, the Company will use the lesser of A or B below:
A. the Claimant's amount of Life Insurance which is in force on the day before the Accelerated Death Benefit is paid; or
B. the Claimant's amount of Life Insurance which would be in force 12 months after that date; if the coverage is scheduled to reduce, due to age, within 12 months after the Accelerated Death Benefit is paid.

ADMINISTRATIVE CHARGE: NONE

WITHDRAWAL FEE: NONE

EFFECT ON AMOUNT OF LIFE INSURANCE. "Remaining Life Insurance" means the amount of Life Insurance which remains in force on the Claimant's life after an Accelerated Death Benefit is paid. The Remaining Life Insurance will equal:
(1) the Claimant's amount of Life Insurance which was used to determine the Accelerated Death Benefit (A or B above); minus
(2) any percentage by which the Claimant's coverage is scheduled to reduce, due to age; if the reduction occurs more than 12 months after the Accelerated Death Benefit is paid, and while he or she is still living; minus
(3) the amount of the Accelerated Death Benefit withdrawn.

PREMIUM: There is no additional charge for this benefit. Continuation of the Remaining Life Insurance will be subject to timely payment of the premium for the reduced amount; unless you qualify for waiver of premium under the Policy's Extension of Death Benefit provision, if included.

CONDITIONS. If the Claimant exercises the Conversion Privilege after an Accelerated Death Benefit is paid, the amount of the conversion policy will not exceed the amount of his or her Remaining Life Insurance. If the Claimant has Accidental Death and Dismemberment benefits under the Policy, the Principal Sum will not be affected by the payment of an Accelerated Death Benefit.

EFFECT ON DEATH BENEFIT. When the Claimant dies after an Accelerated Death Benefit is paid, the amount of Remaining Life Insurance in force on the date of death will be paid as a Death Benefit. Your Death Benefit will be paid in accord with the Beneficiary section of the Policy. Your Dependent spouse's Death Benefit will be paid to you, or in accord with the Dependent Life Insurance section of the Policy. If the Claimant dies after application for an Accelerated Death Benefit has been made, but before the Company has made payment; then the request will be void and no Accelerated Death Benefit will be paid. The amount of Life Insurance in force on the date of death will be paid in accord with Policy provisions.

EFFECT ON TAXES AND GOVERNMENT BENEFITS. Any Accelerated Death Benefit amount withdrawn may be taxable income to you. Receipt of the Accelerated Death Benefit may also affect the Claimant's eligibility for Medicaid, Supplemental Security Income and other government benefits. The Claimant should consult his or her own tax and legal advisor before applying for an Accelerated Death Benefit. The Company is not responsible for any tax owed or government benefit denied, as a result of the Accelerated Death Benefit payment.

## CERTIFICATE AMENDMENT
## (Continued)

LIMITATIONS. No Accelerated Death Benefit will be paid:

(1) if any required premium is due and unpaid;
(2) on any conversion policy purchased in accord with the Conversion Privilege;
(3) without the written approval of the bankruptcy court, if you have filed for bankruptcy;
(4) without the written consent of the beneficiary, if you have named an irrevocable beneficiary;
(5) without your written consent, if the Claimant is your Terminal Dependent spouse;
(6) without the written consent of the assignee, if you have assigned your rights under the Policy;
(7) if any part of the Life Insurance must be paid to your child, spouse or former spouse; pursuant to a legal separation agreement, divorce decree, child support order or other court order;
(8) if the Claimant is Terminal due to a suicide attempt, while sane or insane; or due to an intentionally self-inflicted injury;
(9) if a government agency requires you or the Claimant to use the Accelerated Death Benefit to apply for, receive or continue a government benefit or entitlement; or
(10) if an Accelerated Death Benefit has been previously paid for the Claimant under the Policy.

**This Amendment takes effect on your effective date of coverage under the Policy. However, if you are not Actively at Work on that date, the change will not take effect until the date you resume Active Work. In all other respects, the Policy remains the same.**

**THE LINCOLN NATIONAL LIFE INSURANCE COMPANY**

Officer of the Company

# CERTIFICATE AMENDMENT

**TO BE ATTACHED TO THE CERTIFICATE FOR GROUP POLICY NO: 000400001000-19469**

**ISSUED TO: Trinity Village, Inc.**

**Your Certificate is amended by the addition of the following provisions.**

## PRIOR INSURANCE CREDIT UPON TRANSFER OF LIFE INSURANCE CARRIERS

This provision prevents loss of life insurance coverage for you, which could otherwise occur solely because of a transfer of insurance carriers. The Policy will provide the following Prior Insurance Credit, when it replaces a prior plan.

**"Prior Plan"** means a prior carrier's group life insurance policy, which the Policy replaced within 1 day of the prior plan's termination date.

FAILURE TO SATISFY ACTIVE WORK RULE. Subject to payment of premiums, the Policy will provide life coverage if you:

(1) were insured under the prior plan on its termination date;
(2) were otherwise eligible under the Policy; but were not Actively-At-Work due to Injury or Sickness on its Effective Date;
(3) are not entitled to any extension of life insurance under the prior plan; and
(4) are not Totally Disabled (as defined in the Extension of Death Benefit section of the Policy) on the date the Policy takes effect.

AMOUNT OF LIFE INSURANCE. Until you satisfy the Policy's Active Work rule, the amount of your group life insurance under the Policy will not exceed the amount for which you were insured under the prior plan on its termination date.

**This Amendment takes effect on your effective date of coverage under the Policy. In all other respects, your Certificate remains the same.**

**THE LINCOLN NATIONAL LIFE INSURANCE COMPANY**

Officer of the Company

# CERTIFICATE AMENDMENT

**TO BE ATTACHED TO THE CERTIFICATE FOR GROUP POLICY NO: 000400001000-19469**

**ISSUED TO: Trinity Village, Inc.**

**FOR CERTIFICATES DELIVERED IN ARKANSAS**

**A. On the CLAIMS PROCEDURES FOR HEALTH AND ACCIDENT INSURANCE page, the TIME OF PAYMENT OF CLAIMS section is amended to read as follows:**

TIME OF PAYMENT OF CLAIMS. Any Accidental Death and Dismemberment Benefits payable under the Policy will be paid as soon as the Company receives acceptable written proof of loss.

Any Weekly Disability Income Benefits payable under the Policy will be paid every two weeks, after the Company receives acceptable written proof of loss. Payment will be made by the end of each 15-day period for which the Company is liable. Any balance remaining unpaid at the end of that period of liability will be paid on a pro-rata basis, immediately upon receipt of due proof of claim. The daily rate will equal 1/7 of the weekly benefit.

**B. SERVICE AND COMPLAINT CONTACTS**

The Company's Policyholder Service Office may be contacted at: The Lincoln National Life Insurance Company, 8801 Indian Hills Drive, Omaha, Nebraska 68114-4066 (Phone (800) 423-2765).

If we fail to provide you with reasonable and adequate service, you should feel free to contact: Arkansas Insurance Department, Customer Services Division, 1200 West Third Street, Little Rock, Arkansas 72201 (Phone 1-800-852-5494).

**This amendment applies only to Certificates delivered to Participating Employers in the state of Arkansas. This amendment takes effect on your effective date of coverage under the Policy. In all other respects, the Policy remains the same.**

**THE LINCOLN NATIONAL LIFE INSURANCE COMPANY**

Officer of the Company

## LIMITATIONS AND EXCLUSIONS UNDER THE ARKANSAS LIFE AND HEALTH INSURANCE GUARANTY ASSOCIATION ACT

Residents of this state who purchase life insurance, annuities or health and accident insurance should know that the insurance companies licensed in this state to write these types of insurance are members of the Arkansas Life and Health Insurance Guaranty Association ("Guaranty Association"). The purpose of the Guaranty Association is to assure that policy and contract owners will be protected, within certain limits, in the unlikely event that a member insurer becomes financially unable to meet its obligations. If this should happen, the Guaranty Association will assess its other member insurance companies for the money to pay the claims of policy owners who live in this state and, in some cases, to keep coverage in force. The valuable extra protection provided by the member insurers through the Guaranty Association is not unlimited, however. And, as noted in the box below, this protection is not a substitute for consumers' care in selecting insurance companies that are well managed and financially stable.

### DISCLAIMER

**The Arkansas Life and Health Insurance Guaranty Association ("Guaranty Association") may not provide coverage for this policy, if coverage is provided, it may be subject to substantial limitations or exclusions, and require continued residency in this state. You should not rely on coverage by the Guaranty Association in purchasing an insurance policy or contract.**

**Coverage is NOT provided for your policy or contract or any portion of it that is not guaranteed by the insurer or for which you have assumed the risk, such as non-guaranteed amounts held in a separate account under a variable life or variable annuity contract.**

**Insurance companies or their agents are required by law to provide you with this notice. However, insurance companies and their agents are prohibited by law from using the existence of the Guaranty Association to induce you to purchase any kind of insurance policy.**

**The Arkansas Life and Health Insurance Guaranty Association**<br>**c/o The Liquidation Division**<br>**1023 West Capitol**<br>**Little Rock, Arkansas 72201**

**Arkansas Insurance Department**<br>**1200 West Third Street**<br>**Little Rock, Arkansas 72201-1904**

The state law that provides for this safety-net is called the Arkansas Life and Health Insurance Guaranty Association Act ("Act"). Below is a brief summary of the Act's coverages, exclusions and limits. This summary does not cover all provisions of the Act; nor does it in any way change anyone's rights or obligations under the Act or the rights or obligations of the Guaranty Association.

### COVERAGE

Generally, individuals will be protected by the Guaranty Association if they live in this state and hold a life, annuity or health insurance contract or policy, or if they are insured under a group insurance contract issued by a member insurer. The beneficiaries, payees or assignees of policy or contract owners are protected as well, even if they live in another state.

## EXCLUSIONS FROM COVERAGE

However, persons owning such policies are NOT protected by the Guaranty Association if:

- They are eligible for protection under the laws of another state (this may occur when the insolvent insurer was incorporated in another state whose guaranty association protects insureds who live outside that state);
- The insurer was not authorized to do business in this State;
- Their policy or contract was issued by a nonprofit hospital or medical service organization, an HMO, a fraternal benefit society, a mandatory state pooling plan, a mutual assessment company or similar plan in which the policy or contract owner is subject to future assessments, or by an insurance exchange.

The Guaranty Association also does NOT provide coverage for:

- Any policy or contract or portion thereof which is not guaranteed by the insurer or for which the owner has assumed the risk, such as non-guaranteed amounts held in a separate account under a variable life or variable annuity contract;
- Any policy of reinsurance (unless an assumption certificate was issued);
- Interest rate yields that exceed an average rate;
- Dividends and, voting rights, and experience rating credits;
- Credits given in connection with the administration of a policy by a group contract holder;
- Employers' plans to the extent they are self-funded (that is, not insured by an insurance company, even if an insurance company administers them);
- Unallocated annuity contracts (which give rights to group contractholders, not individuals);
- Unallocated annuity contracts issued to/in connection with benefit plans protected under Federal Pension Benefit Corporation ("FPBC") (whether the FPBC is yet liable or not);
- Portions of an unallocated annuity contract not owned by a benefit plan or a government lottery (unless the owner is a resident) or issued to a collective investment trust or similar pooled fund offered by a bank or other financial institution;
- Portions of a policy or contract to the extent assessments required by law for the Guaranty Association are preempted by State or Federal law;
- Obligations that do not arise under the policy or contract, including claims based on marketing materials or side letters, riders, or other documents which do not meet filing requirements, or claims for policy misrepresentations, or extra-contractual or penalty claims;
- Contractual agreements establishing the member insurer's obligations to provide book value accounting guarantees for defined contribution benefit plan participants (by reference to a portfolio of assets owned by a nonaffiliate benefit plan or its trustees).

## LIMITS ON AMOUNT OF COVERAGE

The Act also limits the amount the Guaranty Association is obligated to cover: The Guaranty Association cannot pay more than what the insurance company would owe under a policy or contract. Also, for any one insured life, the Guaranty Association will pay a maximum of $300,000 in life and annuity benefits and $500,000 in health insurance benefits - no matter how many policies and contracts there were with the same company, even if they provided different types of coverages. Within these overall limits, the Association will not pay more than $300,000 in disability and long term care benefits, $500,000 in health insurance benefits, $300,000 in present value of annuity benefits, or $300,000 in life insurance death benefits or net cash surrender values - again, no matter how many policies and contracts there were with the same company, and no matter how many different types of coverages. There is a $1,000,000 limit with respect to any contract holder for unallocated annuity benefits, irrespective of the number of contracts held by the contract holder. These are limitations for which the Guaranty Association is obligated before taking into account either its subrogation and assignment rights or the extent to which those benefits could be provided out of the assets of the impaired or insolvent insurer.

## IMPORTANT INFORMATION REGARDING YOUR INSURANCE.

In the event you need to contact someone about this insurance for any reason, please contact your agent. If no agent was involved in the sale of this insurance, or if you have additional questions, you may contact the insurance company issuing this insurance at the following address and telephone number: Group Insurance Service Office, 8801 Indian Hills Drive, Omaha, Nebraska 68114-4066, (800) 423-2765.

If you have been unable to contact or obtain satisfaction from the company or agent, you may contact the state regulatory agency at Arkansas Insurance Department, 1200 West Third Street, Little Rock, Arkansas 72201-1904 or phone them at 1-800-852-5494 or 1-501-371-2640. Please have your policy number available.

**CERTIFICATE AMENDMENT**

**TO BE ATTACHED TO THE CERTIFICATE FOR GROUP POLICY NO: 000400001000**

**ISSUED TO: The Commerce Trust Company as Trustee for The Lincoln National Life Insurance Company Voluntary Insurance Trust**

**For Participating Employer: Trinity Village, Inc. (19469)**

It is agreed that the above policy be amended as follows.

Any exclusion for suicide for a death benefit under life insurance coverage is amended to read as follows:

EXCLUSION. Benefits will not be payable if your death or the death of your Dependent:
(1) results from suicide while sane or insane; and
(2) occurs within one year after your Personal Life Insurance or insurance for that Dependent takes effect.

If benefits are not payable as a result of your or your Dependent's suicide, the Company will promptly refund any premium from your or your Dependent's Effective Date of coverage.

If there is an increase to your amount of Personal Life Insurance or your Dependent's amount of life insurance following the Effective Date of coverage, the one-year period will apply; but only for the increased Amount of Personal Life Insurance or the increased amount of Dependent's life insurance.

If you or your Dependent were covered under any prior group life insurance policy that the Policy replaced with 1 day of the prior plan's termination date, the continuous months of coverage under the prior plan just before it terminated will count toward the one-year period.

The effective date of this Certificate Amendment is **January 1, 2015 or your effective date of coverage under the Policy (whichever is later)**; but only with respect to losses incurred on or after that date. Nothing contained in this Certificate Amendment shall change any of the terms and conditions of the Policy, except as stated above.

**THE LINCOLN NATIONAL LIFE INSURANCE COMPANY**

[signature]

Officer of the Company

# SUMMARY PLAN DESCRIPTION

The following information together with your group insurance certificate issued to you by The Lincoln National Life Insurance Company of Fort Wayne, Indiana, is the Summary Plan Description required by the Employee Retirement Income Security Act of 1974 to be distributed to participants in the Plan. This Summary Plan Description is only intended to provide an outline of the Plan's benefits. The Plan Document will govern if there is any discrepancy between the information contained in this Description and the Plan.

The name of the Plan is: Group Life, Dependent Life, Accidental Death and Dismemberment and Dependent AD&D Insurance for Employees of Trinity Village, Inc..

The name, address and ZIP code of the Sponsor of the Plan is: Trinity Village, Inc., 6400 Trinity Drive, Pine Bluff, AR, 71603.

Employer Identification Number (EIN): 23-7378872 IRS Plan Number: 501

The name, business address, ZIP code and business telephone number of the Plan Administrator is: Trinity Village, Inc., 6400 Trinity Drive, Pine Bluff, AR, 71603, (870) 879-3113.

The Plan Administrator is responsible for the administration of the Plan and is the designated agent for the service of legal process for the Plan. Functions performed by the Plan Administrator include: the receipt and deposit of contributions, maintenance of records of Plan participants, authorization and payment of Plan administrative expenses, selection of the insurance consultant, selection of the insurance carrier and assisting The Lincoln National Life Insurance Company. The Lincoln National Life Insurance Company has the sole discretionary authority to determine eligibility and to administer claims in accord with its interpretation of policy provisions, on the Plan Administrator's behalf.

Type of Administration. The Plan is administered directly by the Plan Administrator with benefits provided in accordance with provisions of the group insurance policy issued by The Lincoln National Life Insurance Company whose Group Insurance Service Office address is 8801 Indian Hills Drive, Omaha, Nebraska.

Type of Plan. The benefits provided under the Plan are: Group Life, Dependent Life, Accidental Death and Dismemberment and Dependent AD&D Insurance benefits.

Type of Funding Arrangement: The Lincoln National Life Insurance Company.

All employees are given a Certificate of Group Insurance which contains a detailed description of the Benefits. The Certificate also contains the Schedule of Insurance which includes the amount of Personal Life insurance, AD&D Principal Sum, Dependent Life amounts (if any), Waiting Period and age reduction information. If your Booklet, Certificate or Schedule of Insurance has been misplaced, you may obtain a copy from the Plan Administrator at no charge.

Eligibility. Full-time employees working at least 30 hours per week.

Employees become eligible on the first of the month coinciding with or next following completion of 60 days of active full-time employment.

Evidence of Insurability is required as outlined in the Certificate Schedule of Insurance.

CONTRIBUTIONS: You are required to make contributions for Personal Life & AD&D Insurance, Spouse Life & AD&D Insurance and Child Life Insurance.

The Plan's year ends on: December 31st of each year.

The name and section of relevant Collective Bargaining Agreements: None

The name, title and address of each Plan Trustee: None

**Loss of Benefits.** The Plan Administrator may terminate the policy, or subject to The Lincoln National Life Insurance Company's approval, may modify, amend or change the provisions, terms and conditions of the policy. Coverage will also terminate if the premiums are not paid when due. No consent of any Insured Person or any other person referred to in the policy will be required to terminate, modify, amend or change the policy. See your Plan Administrator to determine what, if any, arrangements may be made to continue your coverage beyond the date you cease active work.

**Claims Procedures.** You may obtain claim forms and instructions for filing claims from the Plan Administrator or from the Group Insurance Service Office of The Lincoln National Life Insurance Company. To expedite the processing of your claim, instructions on the claim form should be followed carefully; be sure all questions are answered fully. In accordance with ERISA, The Lincoln National Life Insurance Company will send you or your beneficiary a written notice of its claim decision within:

- 90 days after receiving the first proof of a death or dismemberment claim (180 days under special circumstances);
- 45 days after receiving the first proof of a claim for any Extension of Death Benefit or Accelerated Death Benefit, if available under the Policy (105 days under special circumstances).

If a claim is partially or wholly denied, this written notice will explain the reason(s) for denial, how a review of the decision may be requested, and whether more information is needed to support the claim. You, or another person on your behalf, may request a review of the claim by making a written request The Lincoln National Life Insurance Company within:

- 60 days after receiving a denial notice of a death or dismemberment claim;
- 180 days after receiving a denial notice of a claim for any Extension of Death Benefit or Accelerated Death Benefit, if available under the Policy.

This written request for review should state the reasons why you feel the claim should not have been denied and should include any additional documentation to support your claim. You may also submit for consideration additional questions or comments you feel are appropriate, and you may review certain non-privileged information relating to the request for review. The Lincoln National Life Insurance Company will make a full and fair review of the claim and provide a final written decision to you or your beneficiary within:

- 60 days after receiving the request for a review of a death or dismemberment claim (120 days under special circumstances);
- 45 days after receiving the request for review of a claim for any Extension of Death Benefit or Accelerated Death Benefit, if available under the Policy (90 days under special circumstances).

If more information is needed to resolve a claim, the information must be supplied within 45 days after requested. Any resulting delay will not count toward the above time limits for claims or appeals processing. Please refer to your certificate of insurance for more information about how to file a claim, how to appeal a denied claim, and for details regarding the claims procedures.

## Statement of ERISA Rights

The following statement of ERISA rights is required by federal law and regulation. As a participant in this plan, you are entitled to certain rights and protections under the Employee Retirement Income Security Act of 1974 (ERISA). ERISA provides that all Plan participants shall be entitled to:

**Receive Information About Your Plan and Benefits.** Examine, without charge, at the Plan Administrator's office and at other specified locations, such as work sites and union halls, all documents governing the plan, including insurance contracts and collective bargaining agreements, and a copy of the latest annual report (Form 5500 Series), if any, filed by the plan with the U.S. Department of Labor and available at the Public Disclosure Room of the Pension and Welfare Benefit Administration.

Obtain, upon written request to the Plan Administrator, copies of documents governing the operation of the plan, including insurance contracts and collective bargaining agreements, and copies of the latest annual report (Form 5500 Series), if any, and updated summary plan description. The administrator may make a reasonable charge for copies.

Receive a summary of the plan's annual financial report if the plan covers 100 or more participants. The Plan Administrator is required by law to furnish each participant with a copy of this summary annual report.

**Prudent Actions by Plan Fiduciaries.** In addition to creating rights for plan participants, ERISA imposes duties upon the people who are responsible for the operation of the employee benefit plan. The people who operate your plan, called "fiduciaries" of the plan, have a duty to do so prudently and in the interest of you and other plan participants and beneficiaries. No one, including your employer, your union, or any other person, may fire you or otherwise discriminate against you in any way to prevent you from obtaining a welfare benefit or exercising your rights under ERISA.

**Enforce Your Rights.** If your claim for a welfare benefit is denied or ignored, in whole or in part, you have a right to know why this was done, to obtain copies of documents relating to the decision without charge, and to appeal any denial, all within certain time schedules.

Under ERISA, there are steps you can take to enforce the above rights. For instance, if you request a copy of plan documents or the latest annual report from the plan and do not receive them within 30 days, you may file suit in a Federal court. In such a case, the court may require the Plan Administrator to provide the materials and pay you up to $110 a day until you receive the materials, unless the materials were not sent because of reasons beyond the control of the Administrator. If you have a claim for benefits which is denied or ignored, in whole or in part, you may file suit in a state or Federal court. If it should happen that plan fiduciaries misuse the plan's money, or if you are discriminated against for asserting your rights, you may seek assistance from the U.S. Department of Labor, or you may file suit in a Federal court. The court will decide who should pay court costs and legal fees. If you are successful the court may order the person you have sued to pay these costs and fees. If you lose, the court may order you to pay these costs and fees, for example, if it finds your claim is frivolous.

**Assistance with Your Questions.** If you have any questions about your plan, you should contact the Plan Administrator. If you have any questions about this statement or about your rights under ERISA, or if you need assistance in obtaining documents from the plan administrator, you should contact the nearest office of the Pension and Welfare Benefits Administration, U.S. Department of Labor, listed in your telephone directory or the Division of Technical Assistance and Inquiries, Pension and Welfare Benefits Administration, U.S. Department of Labor, 200 Constitution Avenue, N.W., Washington, D.C. 20210. You may also obtain certain publications about your rights and responsibilities under ERISA by calling the publications hotline of the Pension and Welfare Benefits Administration.

Lincoln Financial

Lincoln Financial® Privacy Practices Notice

## What Does Lincoln Financial Do with Your Personal Information?

The Lincoln Financial companies* are committed to protecting your privacy. To provide the products and services you expect from a financial services leader, we must collect personal information about you. While your relationship with us continues, we will update and send our Privacy Practices Notice as required by law. Even after that relationship ends, we will continue to protect your personal information. You do not need to take any action because of this Notice, but you do have certain rights as described below.

We are committed to the responsible use of information and protecting individual privacy rights. As such, we look to leading data protection standards to guide our privacy program. These standards include collecting data through fair and lawful means, such as obtaining your consent when appropriate.

## Information We May Collect and Use

We collect personal information about you:

- to help us identify you as a consumer, our customer, or our former customer;
- to process your requests and transactions;
- to offer investment, insurance, retirement, and other financial services to you;
- to pay your claim;
- to enhance our products and services;
- to tell you about our products or services we believe you may want and use; and
- as otherwise permitted by law.

The types of personal information we collect depends on your relationship and on the products or services you request and may include the following:

- **Information from you:** When you submit your application or other forms, you give us information such as your name; address; Social Security number; your financial health; and employment history. We may also collect voice recordings or biometric data for use in accordance with applicable law.
- **Information about your transactions:** We maintain information about your transactions with us, such as the products you buy from us; the amount you paid for those products; your account balances; payment details; and your payment and claims history.
- **Information from outside our family of companies:** If you are applying for or purchasing insurance products, we may collect information from consumer reporting agencies, such as your credit history; credit scores; and driving and employment records. With your authorization, we may also collect information (such as medical information, retirement information, and information related to Social Security benefits), from other individuals or businesses.
- **Information from your employer:** If your employer applies for or purchases group products from us, we may obtain information about you from your employer or group representative to enroll you in the plan.

When you are no longer our customer, we continue to share your information as described in this notice.

## How We Share and Use Your Personal Information

We may share your personal information within our companies and with certain service providers. They may use this information:

- to process transactions you, your employer, or your group representative have requested;
- to provide customer service;
- to evaluate or enhance our products and services;
- to gain customer insight; to provide education and training to our workforce and customers; and/or
- to inform you of products or services we offer that you may find useful.

Our service providers may or may not be affiliated with us. Affiliates are companies related by common ownership or control. Nonaffiliates are companies not related by common ownership or control. They include:

- Financial service providers: third party administrators; broker-dealers; insurance agents and brokers; registered representatives; reinsurers and other financial services companies with which we have joint marketing agreements. A joint marketing agreement is a formal agreement between nonaffiliated financial companies that together market financial products or services to you. Our joint marketing partners include, but are not limited to, insurance providers and financial technology solutions.
- Non-financial companies and individuals: consultants; vendors; and companies that perform marketing services on our behalf.

Information we obtain from a report prepared by a service provider may be kept by the service provider and shared with other persons; however, we require our service providers to protect your personal information and to use or disclose it only for the work they are performing for us, or as permitted by law. We may execute agreements with our service providers that permit the service provider to process your personal information outside of the United States, when not prohibited by our contracts and permitted by applicable law.

When you apply for one of our products:

- We may share information about your application with credit bureaus.
- We may provide information to group policy owners or their designees (for example, to your employer for employer-sponsored plans and their authorized service providers).
- We may provide information to regulatory authorities, law enforcement officials, and to other nonaffiliated or affiliated parties as permitted by law.
- In the event of a sale of all or part of our businesses, we may share customer information with the acquiror as part of the sale.
- **We do not sell or release your information to outside marketers who may want to offer you their own products and services unless we receive your express consent; nor do we release information we receive about you from a consumer reporting agency.**

All financial companies need to share customers' personal information to run their everyday business. In the section below, we list the reasons financial companies can share their customers' personal information, the reasons Lincoln chooses to share, and whether you can limit this sharing.

| **Reasons we can share your personal information** | **Does Lincoln share?** | **Can you limit this sharing?** |
|---|---|---|
| **For our everyday business purposes—**such as to process your transactions, maintain your account(s), respond to court orders and legal investigations, or report to credit bureaus | Yes | No |
| **For our marketing purposes—**to offer our products and services to you | Yes | No |
| **For joint marketing with other financial companies** | Yes | No |
| **For our affiliates' everyday business purposes—** information about your transactions and experiences | Yes | No |
| **For our affiliates' everyday business purposes—** information about your creditworthiness | No | We Don't Share |
| **For our affiliates to market to you** | No | We Don't Share |
| **For nonaffiliates to market to you** | No | We Don't Share |

Federal law gives you the right to limit only:

- sharing for our affiliates' everyday business purposes – information about your creditworthiness;
- sharing for our affiliates to market to you; and
- sharing for nonaffiliates to market to you.

State laws and individual companies may give you additional rights to limit sharing. California residents can review our California Privacy Notice located at https://www.lincolnfinancial.com/public/general/privacy/californiaprivacynotice.

## Security of Information

We have an important responsibility to keep your information safe. We use safeguards to protect your information from unauthorized disclosure. To protect your personal information from unauthorized access and use, we use security measures that comply with federal law. These measures include computer safeguards, secure files, and buildings. Our employees are authorized to access your information only when they need it to perform their job responsibilities. Employees who have access to your personal information are required to keep it confidential. Employees are required to complete privacy training annually.

## Your Rights Regarding Your Personal Information

Lincoln complies with all applicable laws and regulations regarding the provision of personal information. The rights provided to you in this Privacy Notice will be administered in accordance with your state's specific laws and regulations.

**Access to personal information:** You must submit a written request to receive a copy of your personal information. You may see your personal information in person, or you may ask us to send you a copy of your personal information by mail or electronically. We will need to verify your identity before we process the request. Within 30 business days of receiving your request, we will, depending on the specific request you make, (1) inform you of the nature and substance of the recorded personal information we have about you; (2) permit you to obtain a copy of your personal information; and (3) provide the identity (if recorded) of persons to whom we disclosed your personal information within two years prior to the request (if this information is not recorded, we will provide you with the names of those insurance institutions, agents, insurance support organizations or other persons to whom such information is normally disclosed). We will send you notification within 30 business days if we need additional time to respond to your request. If you request a copy of your information by mail, we may charge you a fee for copying and mailing costs.

**Changes to personal information:** If you believe that your personal information is inaccurate or incomplete, you may ask us to correct, amend, or delete the information. Your request must be in writing and must include the reason you are requesting the change. We will respond within 30 business days from the date we receive your request.

If we make changes to your records because of your request, we will notify you in writing and we will send the updated information, at your request, to any person who may have received your personal information within the past two years. We will also send the updated information to any insurance support organization that gave us the information, and any insurance support organization that systematically received personal information from us within the prior 7 years unless that support organization no longer maintains your personal information.

If we deny your request to correct, amend, or delete your information, we will provide you with the reasons for the denial. You may write to us and concisely describe what you believe our records should say and why you disagree with our denial of your request to correct, amend, or delete that information. We will file this communication from you with the disputed information, identify the disputed information if it is disclosed, and provide notice of the disagreement to the recipients and in the manner described in the paragraph above.

**Basis for adverse underwriting decision:** You may ask in writing for specific reasons for an adverse underwriting decision. An adverse underwriting decision is where we decline your application for insurance, offer to insure you at a higher than standard rate, or terminate your coverage.

Your state may provide additional privacy protections under applicable laws. We will protect your information in accordance with these additional protections.

If you would like to exercise your rights regarding your personal information, please provide your full name, address and telephone number and either email your inquiry to our Data Subject Access Request Team at DSAR@lfg.com or mail to: Lincoln Financial, Attn: Corporate Privacy Office, 1301 South Harrison St., Fort Wayne, IN 46802. **The DSAR@lfg.com email address should only be used for inquiries related to this Privacy Notice.**

For general account service requests or inquiries unrelated to this Privacy Notice, please call 1-877-ASK-LINC.

*This information applies to the following Lincoln Financial companies:

First Penn-Pacific Life Insurance Company
Lincoln Retirement Services Company, LLC
Lincoln Life & Annuity Company of New York
Financial Investments Corporation (formerly
Lincoln Investment Advisors Corporation)

Lincoln Financial Distributors, Inc.
Lincoln Financial Group Trust Company, Inc.
Lincoln Variable Insurance Products Trust Lincoln
The Lincoln National Life Insurance Company
Lincoln Financial Insurance Agency Incorporated

Date: Wed Jan 11 08:30:34 CST 2023
From: Sharee Bryson <Sharee.Bryson@lfg.com>
To:
Message-ID: <358728446.2497.1673447434453.JavaMail.webadmin@ne1plwas107.lnc.com>
Subject:Lincoln Financial Group Information for Claim 1220054596 (SECURE)

E-communication from Lincoln Financial Group

Lincoln Financial Group

LINCOLN FOR GROUP BENEFITS

## Important Information for Claim #1220054596

Please review the attached letter and/or document(s) regarding the Claim #1220054596 for Adam Bobb. You may submit claim forms and additional documentation via email to DisabilityClaims@LFG.com. If you have any questions regarding this information, please contact us at claims@lfg.com or 1-800-423-2765.

**Sharee Bryson**
**Claims Examiner II, Life Waiver 2**
OMAHA, Toll Free Phone: 1-800-423-2765
Phone: 800-423-2765 * 6854
Email: Sharee.Bryson@lfg.com

Insurance products are issued by the insurance company affiliates of Lincoln Financial Group: The Lincoln National Life Insurance Company and Lincoln Life & Annuity Company of New York. The Lincoln National Life Insurance Company is not authorized in the state of New York. Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

©2013 Lincoln National Corporation

LincolnFinancial.com

You're In Charge™

Lincoln Financial Group

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

**The Lincoln National Life Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
Toll free (800) 423-2765
Toll free Fax (877) 843-3950
www.LincolnFinancial.com

January 11, 2023

ADAM K BOBB
MARCUS VADEN LAW
PO BOX 203
CONWAY, AR 72033

RE: Extension of Death Benefit
Policyholder: Trinity Village, Inc.
Policy Number: 00040000100019469
Claim Number: 1220054596
Claimant: Adam Bobb

Dear Mr. Bobb:

In order to provide the highest quality of customer service, The Lincoln National Life Insurance Company has implemented an integrated process that provides a prompt assessment of the Extension of Death Benefit provided by the group life policy under which you are covered. Application for this benefit does not have to be initiated by you or your employer. We conduct this assessment to determine whether your group life insurance coverage can remain in force without payment of premiums as defined in the Extension of Death Benefit provision.

For the life insurance coverage to be continued without payment of premiums, you must remain Totally Disabled as defined the policy. Based on information gathered in connection with your claim, waiver of your life insurance premiums has been approved for the period of 06/17/2021 to 12/27/21 for the following:

- Voluntary Employee Life coverage in the amount of $100,000.00

For Voluntary Life:

Total disability (1) means you are unable, due to sickness or injury, to perform the material and substantial duties of any employment or occupation for which you are or become qualified by reason of education, training, or experience; and (2) must continue for at least 180 days.

The documentation on file shows you ceased active work on 6/17/21 due to a diagnosis of right hip pain. After a thorough review of the information currently contained in your claim file, we have determined that you do not meet the policy's definition of Total Disability, as defined

©2023 Lincoln National Corporation www.LincolnFinancial.com
Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

above, throughout your 6/17/21 elimination period. Outlined below is the information reviewed which led to our determination.

Attending Physician Statement from Dr. Mark Ramiro on 7/8/2021, addressed your diagnosis of right hip pain. Your treatment plan listed as Physical Therapy, you were given restrictions and limitations of avoid prolonged standing, lifting and walking. Attending Physician Statement from Dr. Mark Ramiro on 9/2/21, you were given restrictions and limitations of no prolonged standing, walking, climbing, bending or squatting.

In addition, we recently sent your claim file for an External Physician Review. Your file was reviewed by Dr. Eric Finkelstein on 12/7/22 Board Certified in Physical Medicine and Rehabilitation. Based on the review of your medical records it was determined that from 12/27/21 onward you would have the ability to constantly sit; occasionally stand, walk as tolerated, up to a total of 2 hours a day and lift, push, pull, carry up to 10 pounds utilizing both upper extremities together.

While your impairment may prevent you from performing the essential duties of your own occupation as Maintenance Worker, the medical evidence we have been provided does not support a significant impairment resulting in restrictions and limitations from working in any capacity.

The medical findings do not support functional impairments that would preclude frequent sitting, independent occasional standing/walking (with reasonable positional changes throughout the day), lifting up to 10lbs occasionally, and performing repetitive tasks such as typing and keyboarding.

We evaluated this claim by applying the provisions of the policy to the facts and opinions contained in the claim file. Other than what is set out in the policy, we did not rely upon any guidelines, internal rules, protocols, standards or other similar criteria in reaching this claim determination.

Because of these reasons, you no longer meet the definition of and therefore, do not qualify for continued life coverage without payment of premiums under the Extension of Death Benefit provision.

If you choose to appeal this decision, as part of our review of your appeal, you may also submit information associated with your Social Security Disability Award for our review, which may include a copy of the Administrative Law Judge Favorable Decision or a complete copy of your administrative file from the Social Security Administration. The pursuit and submission of this information will be at your own cost is optional.

Therefore, we cannot waive your group life insurance premiums under the Extension of Death Benefit provision of the policy after 12/27/21.

A separate letter that does not include your confidential information has been mailed to Trinity Village, Inc. advising of our decision.

We will also be refunding Trinity Village, Inc. for all the premiums paid to us for your group life insurance for the period of 06/17/2021 to 12/27/21. Please contact Trinity Village, Inc. directly to obtain a refund for these premiums paid.

Additionally, you may have the right to convert your group life insurance to an individual life insurance policy. Please contact Trinity Village, Inc. within 15 days from the date of this letter regarding your eligibility for the conversion privilege.

**Appeal Rights**

You, your attorney or a person legally authorized as your representative may appeal the denial by requesting a review of your denied claim. To initiate this process, submit your written request for review to us at the following address within 180 days after you receive this denial notice.

Claims Shared Services
The Lincoln National Life Insurance Company
PO Box 2337
Omaha, NE 68103
Fax: 402-361-1460

Please include the following with your appeal:

1. The policy and claim number;
2. Your reason(s) for appealing; and
3. If applicable, any additional documentation to support the appeal, such as medical treatment records, laboratory results, x-rays or other testing results.

Once we receive your appeal, we will review the claim and provide you with a full written explanation of the decision within 45 days. You may also request copies of records and other information relevant to your claim free of charge.

If your policy is subject to ERISA, you may have other voluntary alternative dispute resolution options, such as mediation. One way to find out what may be available is to contact your local U.S. Department of Labor Office or your state insurance regulatory agency.

In addition, once all required reviews of your claim have been completed, you have the right to bring a civil action under law.

Please contact us at the number listed below or at disabilityclaims@lfg.com with any questions. You can also register for our website at www.LincolnFinancial.com to view your benefits and claim status.

Sincerely,

Sharee Bryson
800-423-2765 * 6854
Claims Examiner II, Life Waiver 2
The Lincoln National Life Insurance Company

Chinese (Simplified)

注意：如果您说普通话，可以选择免费语言支持服务。 请拨打 1-800-423-2765.

Chinese (Traditional)

注意：若您講國語，可使用我們的免費語言支援服務。 請致電 1-800-423-2765.

Tagalog

Pansinin: Kung nagsasalita ka ng Tagalog, mayroon kang magagamit na mga libreng serbisyo ng tulong sa wika. Tumawag sa 1-800-423-2765.

Spanish

Atención: si habla español, tenemos disponibles servicios de apoyo con el idioma sin costo para usted. Llame al 1-800-423-2765.

Navajo

DÍÍ BAA AKÓ NÍNÍZIN: Díí bee yáníłti’go Diné bizaad, saad bee áká’ánida’áwo’dę́ę́’ t’áá jiik’eh, ná hólǫ́. Kojį’ hódíílnih áǫįóóǫéąą́ǫąíę́ę.

Date: Wed Jan 11 08:05:18 CST 2023
From: Sharee Bryson <Sharee.Bryson@lfg.com>
To: abogy@trinityretirement.com
Message-ID: <1528040398.2490.1673445918869.JavaMail.webadmin@ne1plwas107.lnc.com>
Subject:Lincoln Financial Group Information for Claim 1220054596 (SECURE)

E-communication from Lincoln Financial Group

Lincoln Financial Group

LINCOLN FOR GROUP BENEFITS

# Important Information for Claim #1220054596

Please review the attached letter and/or document(s) regarding the Claim #1220054596 for Adam Bobb. You may submit claim forms and additional documentation via email to DisabilityClaims@LFG.com. If you have any questions regarding this information, please contact us at claims@lfg.com or 1-800-423-2765.

**Sharee Bryson**
**Claims Examiner II, Life Waiver 2**
OMAHA, Toll Free Phone: 1-800-423-2765
Phone: 800-423-2765 * 6854
Email: Sharee.Bryson@lfg.com

Insurance products are issued by the insurance company affiliates of Lincoln Financial Group: The Lincoln National Life Insurance Company and Lincoln Life & Annuity Company of New York. The Lincoln National Life Insurance Company is not authorized in the state of New York. Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

©2013 Lincoln National Corporation

LincolnFinancial.com

You're In Charge™

Lincoln Financial Group

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

**The Lincoln National Life Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
Toll free (800) 423-2765
Toll free Fax (877) 843-3950
www.LincolnFinancial.com

January 11, 2023

TRINITY VILLAGE, INC.
ATTN April Haynes
6400 Trinity Drive
Pine Bluff, AR 71603

Re: Extension of Death Benefit
Insured: Adam Bobb
Policy Number: 00040000100019469
Claim Number: 1220054596

Dear April Haynes:

We have conducted a review of Adam Bobb's Extension of Death Benefit claim. Based upon the information submitted, we are unable to continue coverage under the Extension of Death Benefit provision of the above referenced policy.

A detailed letter has been sent to Mr. Bobb advising of our decision and offering appeal rights. Due to protected health information, we are unable to provide you with a copy of the termination letter.

Mr. Bobb has also been advised to contact The Lincoln National Life Insurance Company within 15 days from the date of this letter regarding eligibility for the policy's Conversion Privilege.

Please contact our office with any questions you may have at the number listed above or email us at Claims@LFG.com.

Sincerely,

Sharee Bryson
800-423-2765 * 6854
Claims Examiner II, Life Waiver 2
The Lincoln National Life Insurance Company

©2023 Lincoln National Corporation www.LincolnFinancial.com
Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

Lincoln
Financial Group®

**To:** **SCOTT ALLSION R. JOHNSON, LCSW**
Company:
Fax: 870-538-5412
Phone:

**From:** **Jill Felten**
Fax: 877-843-3950
Phone: 800-423-2765

**NOTES:**

2nd Refax

This facsimile transmission may include confidential and/or proprietary information, and may be used only by the person or entity to which it is addressed. If the recipient of this facsimile transmission is not the intended recipient or his or her authorized agent, the recipient is hereby notified that any dissemination, distribution, or copying of this facsimile transmission is prohibited. If you have received this facsimile transmission in error, please notify the sender and destroy this facsimile immediately.

**Date and time of transmission:** Wednesday, August 10, 2022 8:34:20 AM
**Number of pages including this cover sheet:** 07

Lincoln Financial Group®

The Lincoln National Life Insurance Company
PO Box 2609, Omaha, NE 68103-2609
Toll free (800) 423-2765
Fax (877) 843-3950
www.LincolnFinancial.com

## AUTHORIZATION FOR RELEASE OF INFORMATION

☑ **Please check this box if you or your authorized representative would like to receive a copy of this form.**

I (the undersigned) authorize any physician, medical professional, or other provider of health care services, hospital, clinic, other medical or medically related facility, or insurance or reinsurance company to release information to The Lincoln National Life Insurance Company (Lincoln) in connection with a claim for benefits.

**Patient Information:** (Name of Claimant Whose Information Will Be Released)

Patient Name: (Last, First, Middle) Bobb Adam K Date of Birth:

Other Names Used: Kel Social Security Number:

**Description of the information to be disclosed:**

☑ Entire Medical Record, including but not limited to patient histories, office notes (EXCEPT psychotherapy notes), test results, radiology studies, films, prescriptions, referrals, consults, billing records, insurance records, and other related records sent to you by other health care providers.

☐ Other: ________________

**Expiration:** This Authorization will be considered valid until the happening of the earliest following event:

1. The term of the coverage of the policy if the claim is for a health insurance benefit;
2. The duration of the claim if the claim is not for a health insurance benefit; or
3. Twelve (12) months from the date of the signature below.

**Right to Revoke:** I have the right to revoke this authorization, in writing, at any time. I understand that revocation is not effective to the extent that Lincoln has taken action in reliance on this authorization. To initiate revocation of this Authorization, direct all correspondence to Lincoln at the above address.

**Claimant Rights:**

1. I understand that the information used or disclosed may be subject to re-disclosure by the recipient and may no longer be protected by federal or state law. For Colorado claims, the disclosed information may not be redisclosed or reused by the recipient under Colorado law.
2. I understand that a photocopy of this Authorization is to be considered as valid as the original.
3. I understand that I am entitled to receive a copy of this Authorization.
4. I understand that this information may be released to my employer for self-insured plans only.
5. I understand that my treatment, payment, enrollment, or eligibility for benefits will not be conditioned on whether I sign this Authorization.

**Authorized Representative Information:** Complete this section if a personal representative is authorizing disclosure of the claimant's information. A copy of a power of attorney or other court-initiated document will be required, unless parent signing for patient under 18.

Name: (Last, First, Middle) ________ Relationship to claimant: ________

Address: ________ Phone: ________

**Signature/Date:** The Claimant whose information will be released or the claimant's authorized representative must sign and date this form in order to process.

Sign: Adam K Bobb [signature] Date: 7-8-21

Lincoln Financial Group

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

**The Lincoln National Life Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
Toll free (800) 423-2765
Toll free Fax (877) 843-3950
www.LincolnFinancial.com

August 8, 2022

SCOTT ALLSION R. JOHNSON, LCSW
RELEASE OF INFORMATION
1404 E CHURCH
WARREN, AR 716717167

| | | |
|---|---|---|
| Re: | Policy Number: | 00040000100019469 |
| | Claim Number: | 1220054596 |
| | Patient: | Adam Bobb |
| | DOB: | |

**ATTN MED RECORDS/ROI DEPT:**
We are evaluating your patient's life waiver claim. Please submit the requested records listed below. A signed authorization form is included.

| **Documentation** | **Time Period** |
|---|---|
| Office/Treatment Notes | 6/1/2021 to present |

****Please fill out all forms that are attached****

Current state statutes for Arkansas: Cost of each photocopy, excluding X rays, shall not exceed $0.50 per page for the first twenty-five (25) pages and $0.25 for each additional page. A labor charge not exceeding $15.00 may be added for each request for medical records under subdivision (a)(1) of this section, and the actual cost of any required postage may also be charged. In addition a reasonable retrieval fee for stored records of a hospital, a physician's office, or an ambulance provider may be added to the photocopy charges, only if the requested records are stored at a location other than the location of the hospital, physician's office, or ambulance provider.

**YOU MUST RETURN THIS COMPLETED FORM TO RECEIVE PAYMENT.**

Payment instructions:

©2022 Lincoln National Corporation www.LincolnFinancial.com
Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

| Qty | Description | Unit Price | Line Total |
|---|---|---|---|
| | Processing Fee | | |
| | Pages - | | |
| | Actual Postage | | |
| | Tax Identification Number | TIN- | |
| | | Total | |

- **We must have your Tax Identification Number (TIN) & NPI.**
- **Please fax this remittance form and records to 1-800-462-4660.**

***Payment Options:***

☐ ***Credit Card***

- If you accept a credit card, ***payment can be made immediately*** upon receipt of your invoice.

☐ ***Direct Deposit*** (Please complete the below)

Direct Deposit Agreement

Authorization Agreement

We hereby authorize Lincoln Financial Group / The Lincoln National Life Insurance Company to initiate automatic deposits to our account at the Financial Institution named below. We also authorize Lincoln Financial Group / The Lincoln National Life Insurance Company to make withdrawals from this account in the event that a credit entry is made in error.

Further, we agree not to hold Lincoln Financial Group / The Lincoln National Life Insurance Company responsible for any delay or loss of funds due to incorrect or incomplete information supplied by us or by our financial institution or due to an error on the part of our financial institution in depositing funds to our account.

This agreement will remain in effect until Lincoln Financial Group / The Lincoln National Life Insurance Company received a written notice of cancellation from us or our financial institution, or until we submit a new direct deposit form.

Account Information

Name of Financial Institution: ______________________________

Routing Number: ______________________________

Account Number: ______________________________

Authorized Signature: ________________________________________ Date: ________________________

☐ ***Checks Only*** (Please note that pre-payment via check could delay payment by up to 30 days)

Please contact Claim Services on our toll free line at **1-800-423-2765** with any questions regarding this request. Thank you for your cooperation.

Sincerely,

Jill Felten
Assisting on behalf of Erica Wilson
800-423-2765 *7064
Coordinator, Clinical Support
The Lincoln National Life Insurance Company

RecordQuest

Mail Payments To
RecordQuest
PO Box 2017
Mt Pleasant, SC 29465-2017

Overnight Shipping and Certified Mail
RecordQuest
115 Fairchild St Ste 160
Daniel Island, SC 29492-7504

Customer Service
Phone: (888) 300-7410
Fax: (866) 560-8109
Email: help@recordquest.com
Tax ID: 71-1008946

Deliver To
Jill Felten
The Lincoln National Life Insurance Company
8801 Indian Hills Dr
Omaha, NE 68114-4059

PAID

RQ-ID
1797970-29

Facility
Mainline Health Systems, Inc.

Patient Name
Adam Bobb

Claim #
1220054596

| Total Pages | Billable Pages | Date | Amount Due | Due Date |
|---|---|---|---|---|
| 29 | 21 | Sep 29 2022 | $0.00 | No Payment Due |

| Description | Qty | Cost Per | Cost |
|---|---|---|---|
| $15.00 Search and retrieval fee per AR Code Section 16-46-106 | 1 | $15.00 | $15.00 |
| $0.50 per page for pages 1-25 | 9 | $0.50 | $4.50 |
| | | Subtotal | $19.50 |
| | | Payments | $19.50 |
| | | Balance | $0.00 |

Thank you for your payment.

**Secure Release Center**

# Download your records online. It's easy!

Visit the link below to begin the process: Record Locator: 4CL9V7QG

https://rq.link/4CL9V7QG

On January 23, 2020 a federal court vacated the 'third-party directive' within 2013 Omnibus Rule. As a result, the fee limitation set forth at 45 C.F.R. § 164.524(c)(4) will apply only to an individual's request for access to their own records. It does not apply to an individual's request to transmit records to a third party. Please see https://www.hhs.gov/hipaa/court-order-right-of-access/index.html for additional information. By paying this invoice, you agree that the pricing is accurate and reasonable and therefore hold RecordQuest and Mainline Health Systems, Inc. harmless in any and all legal matters pertaining to this transaction. If you do not agree, please contact RecordQuest immediately.

Mainline Health Systems, Inc. has contracted with RecordQuest to process and deliver patient health information. RecordQuest is authorized to bill and collect fees in accordance with state and federal regulated rates. The information contained in this transmission is privileged and confidential. It is intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copy of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately and destroy all copies.

Lincoln Financial Group®

**The Lincoln National Life Insurance Company**
8801 Indian Hills Drive, Omaha, NE 68103-2649
toll free (800) 423-2765
www.LincolnFinancial.com

# PSYCHIATRIC SUPPLEMENTAL INFORMATION

## PART 1 - PATIENT INFORMATION

Name: ______________________ SS#: ____________ Date of Birth: __________

## PART 2 - ATTENDING PHYSICIAN'S STATEMENT

**Diagnosis (DSM IV CRITERIA)**

Axis I ______________________

Axis II ______________________

Axis III ______________________

Axis IV 0 1 2 3 4 5 6

Axis V Current GAF Score __________

Highest GAF Score Past Year __________

Symptoms Reported: ______________________

Symptoms Observed: ______________________

**History**

Date symptoms first appeared __________

Date patient ceased to work because of incapacity __________

Date of first visit for treatment or consultation __________

**History of Treatment for Psychiatric/Psychological Problems**

| Treatment Dates | For what Problem? | Treatment Provider of Facility (Level of care IOP, PHP, INPT) |
|---|---|---|
| | | |
| | | |
| | | |

**Current Treatment**

Therapy Method and Goal(s): ______________________

Frequency and Length of Sessions: ______________________

Number of Sessions to Date: ______________________

Treatment Compliance: ______________________

Treatment Response to Date: ______________________

Expected Outcomes and Time Frame: ______________________

**Medications**

| | | | | |
|---|---|---|---|---|
| Medication Name | | | | |
| Date Started | | | | |
| Initial Dosage | | | | |
| Initial Response | | | | |
| Date of Last Dosage Change | | | | |
| Current Dosage | | | | |
| Response | | | | |
| Side Effects | | | | |
| Serum Levels | | | | |
| Compliance | | | | |
| Date Medication Discontinued | | | | |

**Future Treatment Plans**

What changes in your treatment are underway or being considered?________________________

**Mental Status Evaluation**

| | | | | | | |
|---|---|---|---|---|---|---|
| Behavioral: | Appearance | ☐ Groomed | ☐ Disheveled | ☐ Poor Hygiene | | |
| | Eye Contact | ☐ Good | ☐ Fair | ☐ Poor | | |
| | Motor Activity | ☐ Normal | ☐ Hyperactive | ☐ Hypoactive | | |
| | Speech | ☐ Clear | ☐ Pressured | ☐ Soft | ☐ Slurred | |
| | Impulse Control | ☐ Adequate | ☐ Impaired | | | |
| | Comments: | | | | | |
| Cognitive: | Orientation | ☐ Time | ☐ Place | ☐ Person | ☐ Situation | |
| | Language Problems | ☐ Expressive | ☐ Receptive | ☐ Comprehension | | |
| | Memory Problems | ☐ Immediate | ☐ Recent | ☐ Remote | | |
| | Concentration/Attention | ☐ Intact | ☐ Impaired | ☐ Fluctuates | | |
| | Judgment | ☐ Intact | ☐ Impaired | | | |
| | Insight | ☐ Good | ☐ Fair | ☐ Poor | | |
| | Comments: | | | | | |
| Affective: | Affect | ☐ Appropriate | ☐ Blunted | ☐ Labile | ☐ Inappropriate | |
| | Mood | ☐ Appropriate | ☐ Depressed | ☐ anxious | ☐ Irritable | ☐ Panic Attacks |
| | Suicidal Ideation | ☐ Yes | ☐ No | ☐ Ideation | ☐ Plans | |
| | Homicidal | ☐ Yes | ☐ No | ☐ Ideation | ☐ Plans | |
| | Comments: | | | | | |
| Perceptual: | Thought Flow | ☐ Slow | ☐ Coherent | ☐ Loose | ☐ Tangential | ☐ Circumstantial |
| | Thought Content | ☐ Delusional | ☐ Paranoid | ☐ Bizarre | ☐ Grandiose | |
| | Hallucinations | ☐ Yes | ☐ No | | | |
| | Comments: | | | | | |
| Other: | Energy Level | ☐ Adequate | ☐ Increased | ☐ Decreased | | |
| | Sleep | ☐ Adequate | ☐ Increased | ☐ Decreased | | |
| | Interest/Motivation | ☐ Adequate | ☐ Decreased | | | |
| | Comments: | | | | | |

**Client Self Reporting of Activities of Daily Living:**

Is client currently performing ☐ Volunteer Work ☐ Self-Employed ☐ Attending School ☐ No Work Activities ☐ Work at Lesser Demand

Socialization Problems ☐ Yes ☐ No Describe ____________________

Cleans/Maintains Residence? ☐ Yes ☐ No

Performs Routine Shopping? ☐ Yes ☐ No

Pays Bills ☐ Yes ☐ No

Operates Motor Vehicle ☐ Yes ☐ No

Explain

**Precipitating and Complicating Factors to Leaving Work**

Workplace ☐ increase in work demands ☐ Dissatisfaction with Supervisor ☐ Conflicts with Supervisor ☐ Recent unfavorable work evaluation

Social/Family Describe: ____________________

Physical/Medical Describe: ____________________

Financial/Legal Describe: ____________________

Alcohol/Drug Abuse Describe: ____________________

Other Describe: ____________________

Have you advised patient to return to work?

☐ Yes Date of return to work ______________ Regular Occupation ☐ FT ☐ PT
Any Occupation ☐ FT ☐ PT

☐ No If No, please give appropriate date patient should be able to return to work
Date of return to work ______________ Regular Occupation ☐ FT ☐ PT
Any Occupation ☐ FT ☐ PT

Describe restrictions and limitations currently preventing a return to work.

____________________

Thank you for providing this information.

____________________ ____________________
Attending Physician Name and Specialty (Please Print) Date

____________________ ____________________
Therapist/Counselor Name and Degree/License (Please Print) Date

BOBB, ADAM **DOB:** (38 yo M) **Acc No.** 126774 **DOS:** 10/25/2021

mainlinehealth systems, inc.

BOBB, ADAM
38 Y old Male, DOB:
Account Number: 126774

Home:
Guarantor: BOBB, ADAM Insurance: MEDICAID OF ARKANSAS Payer ID: 00185
PCP: Kerry Pennington Referring: Kerry Pennington
Appointment Facility: 18-Warren-Mainline Heatlh Systems, Inc

10/25/2021 Progress Notes: Kerry Pennington, MD

### Current Medications

Taking:
- Meloxicam 15 MG Tablet 1 tablet Orally Once a day
- amLODIPine Besylate 10 MG Tablet 1 tablet Orally Once a day
- Acetaminophen-Codeine #3 300-30 MG Tablet 1 tablet as needed Orally three times daily prn
- [illegible] 120 MG Capsule Delayed Release Particles 1 capsule Orally Once a day
- HydroCHLOROthiazide 12.5 MG Tablet 1 tablet in the morning Orally Once a day
- Cyclobenzaprine HCl 5 MG Tablet 1 tablet at bedtime as needed Orally Once a day

Medication List reviewed and reconciled with the patient

### Past Medical History

Hypertension.
Anxiety.

### Surgical History

heart surgery at 2 years old

### Family History

Father: unknown.
Mother: alive, diagnosed with Diabetes, Hypertension.
1 son(s), 1 daughter(s).
pt denies mental health issues or substance abuse in family-kspencerlpn 10/25/21.

### Social History

Tobacco Use Screening: yes. Are you a current smoker: When did you start smoking? [illegible] years.
PRAPARE: [illegible] Date Completed/Updated: 10/25/2021. What is your current housing situation? I have housing. Are you worried about losing [illegible]

### Reason for Appointment

1. pt WANTS TO ESTABLISH CARE -kspencerlpn97.3
2. Pt uses drug room-kspencerlpn
3. Pt due for hiv screening-kspencerlpn

### History of Present Illness

Depression Screening:

PHQ-2 (2015 Edition) Little interest or pleasure in doing things? Not at all, Feeling down, depressed, or hopeless? Not at all, Total Score 0.

Visit HPI:

This is a new patient. He has chronic pain in the right hip. He has lost his job and has no insurance. He has been followed by Dr. Pollard for the hip pain and needs an MRI, but the insurance company continued denial until he lost his job. He also has a history of hypertension and anxiety related to these issues. He has been told in the workup that he has arthritis of the hip and lumbar spine and apparently Dr. Pollard considers him having a torn labrum to be a very real possibility. He presents to establish care, for medicine adjustment, and hopefully to be able to get an MRI at some point. He was given physical therapy for his right hip,But he states that therapy made it much worse so he had to stop it.

### Vital Signs

Wt **197 lbs**, Ht 6ft3in, BMI **24.62 Index**, BP **150/92 mm Hg**, HR 110 /min, RR 20, Temp 97.3, SaO2 97.

### Examination

GENERAL EXAM:

Neural: Well-developed, well-nourished white male in no acute distress.

HEENT: Ears, nose, mouth, and throat were normal.

Neck: Supple without adenopathy or thyromegaly.

Chest: Clear to auscultation and palpation.

Heart: Regular rate and rhythm without murmur, gallop, or rub.

Abdomen: No masses, tenderness, or organomegaly.

Extremities: There is no edema.

Neurological: Cranial nerves II through XII and peripheral neurological intact.

Musculoskeletal: Moderate osteoarthritis of the hands. He has decreased range of motion in his right hip secondary to pain particularly



Note generated by eClinicalWorks EMR/PM Software (www.eClinicalWorks.com)

BOBB, ADAM **DOB:** (38 yo M) **Acc No.** 126774 **DOS:** 10/25/2021

[illegible]

with internal rotation. There is tenderness to palpation anteriorly at the hip. There is moderate stiffness of the lumbar spine.

Skin: No new lesions or rashes.

Psych: Moderate anxiety.

### Assessments

1. Essential hypertension - I10 (Primary)
2. Chronic anxiety - F41.9
3. Pain in right hip - M25.551
4. Other chronic pain - G89.29
5. Spondylosis of lumbar region without myelopathy or radiculopathy - M47.816
6. Primary osteoarthritis of right hip - M16.11

### Treatment

**1. Essential hypertension**

Notes: Continue a low-salt diet and current medication.He had lab this summer that was normal.

**2. Chronic anxiety**

Notes: Increase duloxetine to 2 a day, 30 mg each.

**3. Pain in right hip**

Notes: Add ibuprofen 600 3 times a day and tramadol 50 every 6 hours when necessary. We will see if we can get him set up with UA MS.

**4. Spondylosis of lumbar region without myelopathy or radiculopathy**

Notes: Add ibuprofen 600 3 times a dayy and he has cyclobenzaprine to take at bedtime.

**5. Primary osteoarthritis of right hip**

Notes: Ibuprofen 600 3 times a day.

**6. Others**

Start Ibuprofen Tablet, 600 MG, Take 1 tablet with food, Orally, 3 times a day for arthritis and pain, 30 days, 90 Tablet, Refills 2

Start traMADol HCl Tablet, 50 MG, Take 1 tablet, Orally, Every 6 hours as needed for pain, 7 days, 28 Tablet, Refills 2, Notes: pdmp checked

### Preventive Medicine

NUTRITION COUNSELING: Weight management: BMI Management Plan: Yes, BMI Management Plan: Yes, Counseling for nutrition provided Yes, Counseling for physical activity provided Yes.

CARE MANAGEMENT: Treatment Goals: Established/Updated treatment goals: Yes Blood pressure less than 140/90, Condition: Stable; continue current treatment plan as directed, Has patient met treatment goals? Yes Patient instructed to maintain current treatment goals and self management plan., Self Management Goals/Plan: Yes Take medications as directed, SMG/Action Plan with Healthy Living sheet given to patient Yes, Level of Confidence to meet goal per patient: 8, Additional Care Management Support needed? No No additional care support needed., Additional Resources Provided: Yes Blood pressure log,

BOBB, ADAM **DOB:** (38 yo M) **Acc No.** 126774 **DOS:** 10/25/2021

Have you ever had a period lasting several days or longer when most of the time you were so irritable or grouchy that you either started arguments, shouted at people or hit people? No.
Depression Screening Completed: yes, Spencer, Kristy [illegible] PM >, PHQ9.
Pre-Visit Planning Completed: yes, Spencer, Kristy [illegible] PM >, Yes.
Smoking: yes, Spencer, Kristy [illegible] PM >, [illegible].
Recreational drug use: yes, Spencer, Kristy [illegible] PM >, Denies.
Alcohol: yes, Spencer, Kristy [illegible] PM > yes.
SOGI Data: yes, Sexual Orientation: Straight (Not Lesbian or Gay), Gender Identity: Male, Date Taken/Updated: [illegible].
Learning Assessment: yes, Completed: [illegible], Hearing problems: No, Vision problems: No, Reading problems: No, Writing Problems: No, Highest Education completed: [illegible] grade, Health Literacy Screening completed: No.
Dental Home: yes, Dental visit within the last year? No.
Household/Environmental Factors: yes, Lives with: spouse, children.
Caffeine: yes, frequency, Spencer, Kristy [illegible] PM >, Soda, [illegible] cup/day.
Exercise: yes, Spencer, Kristy [illegible] PM >, Per Age.
Travel outside US: yes, Spencer, Kristy [illegible] PM >, No.
Sexually active: yes, Spencer, Kristy [illegible] PM >, Yes.
Herbal & OTC medications: yes, Spencer, Kristy [illegible] PM >, None.
Advance Directive: yes, Spencer, Kristy [illegible] PM >, No.

Allergies
Sulfa Antibiotics: swelling - Allergy - Criticality High - Onset Date [illegible]

Hospitalization/Major Diagnostic Procedure
see above

Review of Systems
Psychiatry:
Crying [illegible]. Nervous [illegible].
Paranoid [illegible]. Concentration trouble [illegible].
Insomnia [illegible].
CARDIOLOGY:
Patient denies chest pain, orthopnea, palpitations, dyspnea on exertion, paroxysmal

DASH/low sodium diet, Barriers to reaching treatment and/or self management goals identified: No, Care Plan given to Patient/Family/Caregiver Yes, Review/Renew Care Plan: every 6 months or PRN. Medication Management Barriers to Medication Adherence: No, Education provided about medications including NEW: Yes Verbalized instructions for taking medications, Verbalized potential side effects and drug interactions, Verbalized consequence of not taking medications, Verbalized medication education: when, how much, how often, Patient states understanding of medication regimen: Yes.

**Visit Codes**
99203 Office Visit, New Pt., Level 3.

**Follow Up**
3 Months,prn

**Care Plan Details**

Electronically signed by Kerry Pennington , MD on 10/30/2021 at 04:19 PM CDT

Sign off status: Completed

18-Warren-Mainline Heatlh Systems, Inc
1012 E Church St
STE B
Warren, AR 716713530
Tel: 870-226-6786
Fax: 870-226-7925



Note generated by eClinicalWorks EMR/PM Software (www.eClinicalWorks.com)

BOBB, ADAM **DOB:** (38 yo M) **Acc No.** 126774 **DOS:** 10/25/2021

nocturnal dyspnea.
-CONSTITUTIONAL:
Patient denies fatigue , fever , weakness , weight gain , weight loss.
-ENDOCRINOLOGY:
Patient denies cold intolerance , excessive sweating , excessive thirst , hair changes , heat intolerance , weight gain , , weight loss.
-ENT:
no Rhinorrhea, no Sinus pain, no Sore throat.
-GASTROENTEROLOGY:
no Constipation, no Diarrhea, no Indigestion, no Nausea, no Vomiting.
-MUSCULOSKELETAL:
muscle spasms no, Patient complaining of R hip pain , no Arthritis, no Back pain, no Joint stiffness.
-NEUROLOGY:
lightheaded no, numbness no, Convulsions no, no Headache, no Vertigo.
-RESPIRATORY:
no Cough, no Hemoptysis, no Shortness of breath, no Wheezing.
-SKIN:
Redness No, Itching No, Burning/Stinging No.
-UROLOGY:
no Dysuria, no Nocturia, no Urinary frequency.

---

Progress Note: Kerry Pennington, MD 10/25/2021

*Note generated by eClinicalWorks EMR/PM Software (www.eClinicalWorks.com)*

BOBB, ADAM **DOB:** (38 yo M) **Acc No.** 126774 **DOS:** 03/08/2022

mainlinehealth systems, inc.

# BOBB, ADAM

38 Y old Male, DOB:
Account Number: 126774
Home:
Guarantor: BOBB, ADAM Insurance: MEDICAID OF ARKANSAS Payer ID: 00185
PCP: Kerry Pennington Referring: Kerry Pennington
Appointment Facility: 18-Warren-Mainline Heatlh Systems, Inc

03/08/2022 Progress Notes: Kerry Pennington, MD

### Current Medications

Taking
- tiZANidine HCl 4 MG Tablet 1 tablet as needed Orally Three times a day
- Hydrocodone-Acetaminophen 5-325 MG Tablet 1 tablet qd-bid PRN for pain Orally
- amLODIPine Besylate 10 MG Tablet 1 tablet Orally Once a day
- hydroCHLOROthiazide 12.5 MG Tablet 1 tablet in the morning Orally Once a day
- DULoxetine HCl 30 MG Capsule Delayed Release Particles 1 capsule Orally Once a day, Notes: dose increase [discontinued]
- Meloxicam 15 MG Tablet 1 tablet Orally Once a day
- Acetaminophen-Codeine #3 300-30 MG Tablet 1 tablet as needed Orally three times daily prn
- Cyclobenzaprine HCl 5 MG Tablet 1 tablet at bedtime as needed Orally Once a day
- traMADol HCl 50 MG Tablet Take 1 tablet Orally Every 6 hours as needed for pain, Notes: pdmp checked
- Acetaminophen-Codeine #3 300-30 MG Tablet Take 1 tablet Orally Every 6 hours as needed for pain, Notes: pdmp checked

Medication List reviewed and reconciled with the patient

### Past Medical History

Hypertension
Anger issue

### Surgical History

heart surgery at 2 years old

### Family History

Father: unknown
Mother: alive, diagnosed with Unspecified essential hypertension, Diabetes mellitus without mention of

### Reason for Appointment

1. consultation, FILL OUT PAPER WORK FOR SHORT TERM DISABILITY AGRICE MA
2. DUE FOR HIV AGRICE ,Ma
3. DRUG ROOM PB AGRICE ,MA
4. GAD7 SCORE 16 SEVERE ANXIETY , PHQ9 SCORE 19 MODERATELY SEVERE AGRICE MA

### History of Present Illness

Depression Screening:

PHQ-2 (2015 Edition) Little interest or pleasure in doing things? Nearly every day, Feeling down, depressed, or hopeless? Several days, Total Score 4. PHQ-9 Little interest or pleasure in doing things Nearly every day, Feeling down, depressed, or hopeless Several days, Trouble falling or staying asleep, or sleeping too much Nearly every day, Feeling tired or having little energy Nearly every day, Poor appetite or overeating Nearly every day, Feeling bad about yourself-or that you are a failure or have let yourself or your family down Nearly every day, Trouble concentrating on things, such as reading the newspaper or watching television Several days, Moving or speaking so slowly that other people could have noticed. Or the opposite- being so fidgety or restless that you have been moving around a lot more than usual More than half the days, Thoughts that you would be better off dead, or of hurting yourself in some way? Not at all, Total Score: 19, Interpretation Moderately severe depression.

Visit HPI:

This patient is follow-up for chronic right hip pain secondary to a labral tear as well as chronic low back pain and chronic cervical spine pain. he is being treated for his neck and back discomfort at the pain clinic. He is seeing orthopedic surgery at UAMS and they are planning on labral surgery in the future.He has had steroid injections in his neck which have helped. He continues to have pain requiring hydrocodone in the hip and lower back. He needs disability papers completed.

### Vital Signs

Wt **200.4 lbs**, Ht 75 in, BMI 25.05 Index, BP 155/92 mm Hg, HR 102 /min, RR 20, Temp 97.7, SaO2 99.

### Examination

GENERAL EXAM:



Note generated by eClinicalWorks EMR/PM Software (www.eClinicalWorks.com)

[illegible]

General:Thin white male who is awake and alert and in no acute distress.

Neck: Supple without adenopathy or thyromegaly. There is decreased range of motion bilaterally with tenderness to palpation in the medial trapezius bilaterally that goes up into the paraspinous muscles of the neck itself.

Chest: Clear to auscultation and palpation.

Heart: Regular rate and rhythm without murmur, gallop, or rub.

Musculoskeletal: There is pain with internal and external rotation of the right hip. Both knees show mild stiffness bilaterally. There is moderate tenderness in the right SI joint as well as the lumbar spiue midline. There is mild tenderness in the left SI joint. Reflexes are 1+ and 1+ bilaterally.

Neurological: Cranial nerves II through XII and peripheral neurological are intact.

## Assessments

1. Tear of right acetabular labrum, subsequent encounter - S73.191D (Primary)
2. Spondylosis without myelopathy or radiculopathy, cervical region - M47.812
3. Spondylosis without myelopathy or radiculopathy, lumbar region - M47.816
4. Essential hypertension - I10

## Treatment

**1. Tear of right acetabular labrum, subsequent encounter**

Continue tiZANidine HCl Tablet, 4 MG, 1 tablet as needed, Orally, Three times a day

Continue Hydrocodone-Acetaminophen Tablet, 5-325 MG, 1 tablet q4-6h PRN for pain, Orally

Notes: He should continue follow-up with orthopedics at U AMS. Continue follow with pain clinic for pain control. Forms are completed for long-term disability.

**2. Spondylosis without myelopathy or radiculopathy, cervical region**

Notes: Continue tizanidine 4 mg at bedtime and 3 times a day when necessary. Continue follow-up with the pain clinic.

**3. Spondylosis without myelopathy or radiculopathy, lumbar region**

Notes: Continue tizanidine 4 mg at bedtime and 3 times a day when necessary as well as follow-up with the paiu clinic.

**4. Essential hypertension**

Refill amLODIPine Besylate Tablet, 10 MG, 1 tablet, Orally, Once a day, 30 day(s), 30 Tablet, Refills 3

Refill hydroCHLOROthiazide Tablet, 12.5 MG, 1 tablet in the morning, Orally, Once a day, 30 day(s), 30 Tablet, Refills 3

Notes: His blood pressure is elevated today. He is advised that he must take his medications as prescribed and follow a low salt diet. He needs to return in 2 weeks for BP check. RJonesLPN, 3/9/22.

**5. Others**

BOBB, ADAM **DOB:** (38 yo M) **Acc No.** 126774 **DOS:** 03/08/2022

[redacted]

Refill DULoxetine HCl Capsule Delayed Release Particles, 30 MG, 3 capsule, Orally, Once a day, 30 day(s), 90 Capsule, Refills 5, Notes: dose increase

### Preventive Medicine

NUTRITION COUNSELING: Weight management: Counseling for nutrition provided Yes, Counseling for physical activity provided Yes Exercise 30 minutes a day at least 5 days a week, as tolerated, then increase., BMI Management Plan: Yes Exercise daily 30 minutes & water intake to decrease BMI, Counseling for nutrition provided Yes Well balance diet consisting of lean meats, fresh fruits and vegetables, low fat milk and cheeses., Counseling for physical activity provided Yes 60 minutes physical activity most days, BMI Management Plan: Yes, BMI Management Plan: Yes, Counseling for nutrition provided Yes Well balance diet consisting of lean meats, fresh fruits and vegetables, low fat milk and cheeses., Counseling for physical activity provided Yes 60 minutes physical activity most days, BMI Management Plan: Yes, BMI Management Plan: Yes, Counseling for nutrition provided Yes, Counseling for physical activity provided Yes. Education Provided: . CARE MANAGEMENT: Treatment Goals: Established/Updated treatment goals: Yes Blood pressure less than 140/90, Condition: Stable; continue current treatment plan as directed, Has patient met treatment goals? Yes Patient instructed to maintain current treatment goals and self management plan., Self Management Goals/Plan: Yes Take medications as directed, SMG/Action Plan with Healthy Living sheet given to patient Yes, Level of Confidence to meet goal per patient: 8, Additional Care Management Support needed? No No additional care support needed., Additional Resources Provided: Yes Blood pressure log, DASH/low sodium diet, Barriers to reaching treatment and/or self management goals identified: No, Care Plan given to Patient/Family/Caregiver Yes, Review/Renew Care Plan: every 6 months or PRN, Established/Updated treatment goals: Yes Blood pressure less than 140/90, Condition: Stable; continue current treatment plan as directed, Has patient met treatment goals? Yes Patient instructed to maintain current treatment goals and self management plan., Self Management Goals/Plan: Yes Take medications as directed, SMG/Action Plan with Healthy Living sheet given to patient Yes, Level of Confidence to meet goal per patient: 8, Additional Care Management Support needed? No No additional care support needed., Additional Resources Provided: Yes Blood pressure log, DASH/low sodium diet, Barriers to reaching treatment and/or self management goals identified: No, Care Plan given to Patient/Family/Caregiver Yes, Review/Renew Care Plan: every 6 months or PRN, Established/Updated treatment goals: Yes Maintain physical activity and social interaction, Condition: Stable; continue current treatment plan as directed, Has patient met treatment goals? Yes, Self Management Goals/Plan: Yes Take medications as directed, Stay Connected to family/friends- Depression, SMG/Action Plan with Healthy Living sheet given to patient Yes, Level of Confidence to meet goal per patient: 8, Additional Care Management Support needed? No No additional care support needed., Additional Resources Provided: Yes Daily Symptom log, Barriers to reaching treatment and/or self management goals identified: No, Care Plan given to Patient/Family/Caregiver Yes, Review/Renew Care Plan: every 6 months or PRN. Medication

BOBB, ADAM **DOB:** (38 yo M) **Acc No.** 126774 **DOS:** 03/08/2022

Criticality High - Onset Date [illegible]

[illegible]

Diagnostic Procedures

see above

Review of Systems

Psychiatry:

Crying no, Nervous no, Paranoid no, Concentration trouble no, [illegible] no.

CARDIOLOGY:

Patient denies chest pain, orthopnea, palpitations, dyspnea on exertion, paroxysmal nocturnal dyspnea.

CONSTITUTIONAL:

Patient denies fatigue, fever, weakness, weight gain, weight loss.

ENDOCRINOLOGY:

Patient denies cold intolerance, excessive sweating, excessive thirst, hair changes, heat intolerance, weight gain, weight loss.

ENT:

no Epistaxis, no Sinus pain, no Sore throat.

GASTROENTEROLOGY:

no Constipation, no Diarrhea, no Indigestion, no Nausea, no Vomiting.

MUSCULOSKELETAL:

muscle spasms no, no Arthritis, no Back pain, no Joint stiffness.

NEUROLOGY:

lightheaded no, numbness no, Convulsions no, no Headache, no Vertigo.

RESPIRATORY:

no Cough, no Hemoptysis, no Shortness of breath, no Wheezing.

SKIN:

Redness No, Itching No, Burning/Stinging No.

UROLOGY:

no Dysuria, no Nocturia, no Urinary frequency.

Management Barriers to Medication Adherence: No, Education provided about medications including NEW: Yes Verbalized instructions for taking medications, Verbalized potential side effects and drug interactions, Verbalized consequence of not taking medications, Verbalized medication education: when, how much, how often, Patient states understanding of medication regimen: Yes, Barriers to Medication Adherence: No, Education provided about medications including NEW: Yes Verbalized instructions for taking medications, Verbalized potential side effects and drug interactions, Verbalized consequence of not taking medications, Verbalized medication education: when, how much, how often, Patient states understanding of medication regimen: Yes, Patient states understanding of medication regimen: Yes, Education provided about medications including NEW: Yes Verbalized instructions for taking medications, Verbalized potential side effects and drug interactions, Verbalized consequence of not taking medications, Barriers to Medication Adherence: No.

COUNSELING: Communication to Patient Counseling for nutrition provided Yes, Counseling for physical activity provided Yes. Take ALL medications as prescribed .

**Procedure Codes**

T1015 FQHC-99213, Modifiers: U5
3077F SYST BP = 140 MM HG6 IT
3080F DIAST BP >/= 90 MM HG

**Follow Up**

prn,4 Months

**Care Plan Details**

Electronically signed by Kerry Pennington , MD on 03/10/2022 at 07:53 AM CST

Sign off status: Completed

18-Warren-Mainline Heatlh Systems, Inc
1012 E Church St
STE B
Warren, AR 716713530

BOBB, ADAM **DOB:** (38 yo M) **Acc No.** 126774 **DOS:** 03/08/2022

[redacted]

Tel: 870-226-6786
Fax: 870-226-7925

---

Progress Note: Kerry Pennington, MD 03/08/2022

*Note generated by eClinicalWorks EMR/PM Software (www.eClinicalWorks.com)*

BOBB, ADAM **DOB:** (39 yo M) **Acc No.** 126774 **DOS:** 08/16/2022

**Patient:** BOBB, ADAM
**Account Number:** 126774
**DOB:** **Age:** 39 Y **Sex:** Male
**Phone:** 870-461-0711
**Address:**
**Pcp:** Kerry Pennington

**Provider:** Scott Allison Johnson, LCSW
**Date:** 08/16/2022

## Subjective:

**Chief Complaints:**

1. BH FU. 2. Client still has symptoms of anxiety, negative cognitions.

**HPI:**

Referral:

PCP: Referral Source: self-referral PCP is Dr. Pennington. Duration: approximately 45 minutes.

Subjective:

Patient Reports: Client and BHC worked to continue to build rapport. Client stated he is still having anxiety. BHC and client reviewed CBT and discussed how reframing his thinking could help with negative cognitions. He participated well with exercise and examples provided and was an active part during this time. Client was show a worksheet on negative cognitions and this was gone over with him, he understood. .

BHC Assessment:

Focus: Intervention Focus: engaged pt. in cognitive restructuring, BHC used Soctratic Questioning to gently challenge irrational thoughts, BHC stressed the importance of prioritizing self-care., BHC spent time building rapport with pt, BHC explored with pt. stressors, changes, conflict, etc. Modality: Intervention Focus: Reflective Listening, Supportive Therapy, problem solving techniques, solution focus approach, Narrative Therapy.

Treatment Plan:

Goal 1: Acknowledge the depression verbally and resolve its causes, leading to normalization of the emotional state. Outcome 1: New. Objective 1A: Learn new ways to cope with anxiety and depression through activity and implementation of stress reducing techniques.

MSE:

Observation/Attitude: Pleasant , Cooperative , Anxious. Affect: Appropriate to mood. Mood: Anxious. Appearance: Appropriate , casual. Disturbance of Perception: Denied. SI/HI: Denied. Motor Activity: Restless. Speech/Communication: Normal rate/volume. Thought Content: Logical/Coherent. Thought Process: Goal-Oriented. Insight: Fair. Judgement: Fair.

Assessment:

Severity of Symptoms: Moderate.

Screening Tools:

Utilized: None Today.

Plan:

BHC will: BHC will monitor and modify treatment as required.. Patient will: Pt will consistently participate in scheduled BH TX sessions.. PCP will continue to evaluate and treat medical and/or mental health issues as needed. Case Manager will: contact pt per f/u appts.

Depression Screening:

PHQ-2 (2015 Edition) Little interest or pleasure in doing things? Several days, Feeling down, depressed, or hopeless? More than half the days, Total Score 3. PHQ-9 Little interest or pleasure in doing things Several days, Feeling down, depressed, or hopeless More than half the days, Trouble falling or staying asleep, or sleeping too much Several days, Feeling tired or having little energy Several days, Poor appetite or overeating More than half the days, Feeling bad about yourself-or that you are a failure or have let yourself or your family down Several days, Trouble concentrating on things, such as reading the newspaper or watching television Not at all, Moving or speaking so slowly that other people could have noticed. Or the opposite- being so fidgety or restless that you have been moving around a lot more than usual Not at all, Thoughts that you would be better off dead, or of hurting yourself in some way? Not at all, Total Score: 8, Interpretation Mild Depression.

**Medical History:**

BOBB, ADAM **DOB:** (39 yo M) **Acc No.** 126774 **DOS:** 08/16/2022

**Social History:** Tobacco Use Screening: yes Are you a: current smoker, When did you start smoking? 1/1/2000. PRAPARE: yes Date Completed/Updated: 08/16/2022, What is your current housing situation? I have housing, Are you worried about losing your housing? No, What is the highest level of school that you have finished? High school diploma or GED, What is your current work situation? Unemployed and seeking work, In the past year, have you or any family members you live with been unable to get any of the following when it was really needed? Check all that apply I do not have problems meeting my needs, Has lack of transportation kept you from medical appointments, meetings, work or from getting things needed for daily living? No, How often do you see or talk to people that you care about and feel close to? (For example: talking to friends on the phone, visiting friends or family, going to church or club meetings) More than 5 times a week, How stressed are you? Stress is when someone feels tense, nervous, anxious, or can't sleep at night because their mind is troubled Not at all, In the past year have you spent more than 2 nights in a row in a jail, prison, detention center, or juvenile correctional facility? Yes, Are you a refugee? No, What country are you from? United States, Do you feel physically and emotionally safe where you currently live? Yes, In the past year, have you been afraid of your partner or ex-partner? No, PRAPARE Score: 5. GAD7- Anxiety: yes Feeling nervous, anxious or on edge? 1- Several days, Not being able to stop or control worrying? 2- More than half the days, Worrying too much about different things? 2- More than half the days, Trouble relaxing? 2- More than half the days, Being so restless that it is hard to sit still? 3- Nearly every day, Becoming easily annoyed or irritable? 2- More than half the days was before med,but ok now, Feeling afraid as if something awful might happen? 0- Not at all, Total Score: 12, Intepretation: 10-14: Moderate (Notify BH) Established w/ Scott Allison Johnson, LCSW, Completed: 08/16/2022. Alcohol Screening: yes Did you have a drink containing alcohol in the past year? Yes, How often did you have a drink containing alcohol in the past year? Two to three times per week (3 points), How many drinks did you have on a typical day when you were drinking in the past year? 3 or 4 (1 point), How often did you have six or more drinks on one occasion in the past year? Monthly (2 points), Points 6, Interpretation Positive. Bipolar Screening: yes 1. Some people have periods lasting several days when they feel much more excited and full of energy than usual. Their minds go too fast. They talk a lot. They are very restless or unable to sit still and they sometimes do things that are unusual for them, such as driving too fast or spending too much money. Have you ever had a period like this lasting several days or longer? No, 2. Have you ever had a period lasting several days or longer when most of the time you were so irritable or grouchy that you either started arguments, shouted at people or hit people? No. Depression Screening Completed: yes, Streeter, Katy 08/16/2022 03:53:59 PM CDT > , PHQ2, PHQ9. Sexual Hx Had sex in the last 12 months (vaginal, oral, or anal)? Yes, with Women only, Use protection? No, Prevention Strategies discussed: Other. Pre-Visit Planning Completed: yes, Streeter, Katy 08/16/2022 03:54:12 PM CDT > , Yes:. Smoking: yes, Streeter, Katy 08/16/2022 03:54:16 PM CDT > , , YES. Recreational drug use: yes, Streeter, Katy 08/16/2022 03:54:20 PM CDT > , , Denies. Alcohol: yes, Streeter, Katy 08/16/2022 03:54:24 PM CDT > , Drinks/Week, Beer, Liquor, 6, 5. SO/GI Data: yes Sexual Orientation: Straight (Not Lesbian or Gay), Gender Identity: Male, Date Taken/Updated: 08/16/2022. Learning Assessment: yes Completed: 08/16/2022, Hearing problems: No, Vision problems: No, Reading problems: No, Writing Problems: No, Highest Education completed: 12th grade, Health Literacy Screening completed: No. Dental Home: yes Dental visit within the last year? No. Household/Enviromental Factors: yes Lives with: spouse, children. Caffeine: yes, Streeter, Katy 08/16/2022 03:54:46 PM CDT > , frequency:, Soda, 1 cup/day. Exercise: yes, Streeter, Katy 08/16/2022 03:54:50 PM CDT > , Per Age. Travel outside US: yes, Streeter, Katy 08/16/2022 03:54:53 PM CDT > , No. Sexually active: yes, Streeter, Katy 08/16/2022 03:54:58 PM CDT > , >, , Yes. Herbal & OTC medications: yes, Streeter, Katy 08/16/2022 03:55:03 PM CDT > , , None. Advance Directive: yes, Streeter, Katy 08/16/2022 03:55:07 PM CDT > , No.
GAD7 SCORE 16 SEVERE ANXIETY AGRICE ,MA 03/08/2022.

## Objective:

## Assessment:

**Assessment:**

1. PTSD (post-traumatic stress disorder) - F43.10 (Primary)
2. MDD (major depressive disorder), recurrent episode, moderate - F33.1
3. GAD (generalized anxiety disorder) - F41.1

## Plan:

**Procedure Codes:** 90834 PSYTX W PT 45 MINUTES

**Follow Up:** 3-4 Weeks

BOBB, ADAM **DOB:** (39 yo M) **Acc No.** 126774 **DOS:** 08/16/2022

## Billing Information:

**Visit Code:**
**Procedure Codes:**
90834 PSYTX W PT 45 MINUTES.

## Care Plan Details

**Electronically signed by Scott Allison Johnson on 09/06/2022 at 09:13 AM CDT**
**Sign off status: Completed**

---

**Provider: Scott Allison Johnson, LCSW** **Date: 08/16/2022**

BOBB, ADAM **DOB:** (38 yo M) **Acc No.** 126774 **DOS:** 06/22/2022

**Patient:** BOBB, ADAM
**Account Number:** 126774
**DOB:** **Age:** 38 Y **Sex:** Male
**Phone:**
**Address:**
**Pcp:** Kerry Pennington

**Provider:** Scott Allison Johnson, LCSW
**Date:** 06/22/2022

## Subjective:

**Chief Complaints:**

1. BH FU. 2. Recent arrest, legal conflicts, increased anxiety.

**HPI:**

Referral:

PCP: Referral Source: self-referral PCP is Dr. Pennington. Duration: approximately 60 minutes.

Subjective:

Patient Reports: Client stated a plethora of "bad" events have occurred since last session. He stated "We went mud riding and backed into the neighbors cattle fence it happened in Nov 2021. My neighbor figured it out came on my property cussed out my son and demanded client to pay $150 right then." Client stated "get off my property and take me to small claims court." Client didn't hear anything until last month when police showed up with a warrant for a misdemeanor and arrested client and took to jail. Warrant stated criminal mischief 1st degree. Client was released without bail needing to be posted.

Client gets an attorney and attorney stated that Tim Reed was a witness to incident of fence. Then client "got drunk" and I went his home, cussed his brother (Tyler) out then went home after stating he would "kick his ass". Then 8 days later sheriffs dept calls him while client is in Jacksonville at pain clinic and asked him to come by police station when in town. Shows up, he has 2 felonies for terroristic threatening and intimidating a witness. They kept client in jail for 2 days until wife could bond him out.

Judge has ordered no alcohol, no marijuana

August 15 & 19 court dates. Luke Zurzinski is attorney.

BHC utilized active listening. Client and wife processed thoughts and feelings. Client stated that he has anxiety about going outside the home, fearing if he "looks in neighbors direction" that he will be arrested again. Client is upset because all of this is based off of hear-say. BHC and client discussed coping skills such as deep breathing and distraction techniques. Also discussed negative cognitions and not jumping to the worst case scenario. He understood and stated he would work on this. .

BHC Assessment:

Focus: Intervention Focus: engaged pt. in cognitive restructuring, BHC used Soctratic Questioning to gently challenge irrational thoughts, BHC stressed the importance of prioritizing self-care., BHC spent time building rapport with pt, BHC explored with pt. stressors, changes, conflict, etc. Modality: Intervention Focus: Reflective Listening, Supportive Therapy, problem solving techniques, solution focus approach, Narrative Therapy.

Treatment Plan:

Goal 1: Acknowledge the depression verbally and resolve its causes, leading to normalization of the emotional state. Outcome 1: New. Objective 1A: Learn new ways to cope with anxiety and depression through activity and implementation of stress reducing techniques.

MSE:

Observation/Attitude: Pleasant , Cooperative , Anxious. Affect: Appropriate to mood. Mood: Anxious. Appearance: Appropriate , casual. Disturbance of Perception: Denied. SI/HI: Denied. Motor Activity: Restless. Speech/Communication: Normal rate/volume. Thought Content: Logical/Coherent. Thought Process: Goal-Oriented. Insight: Fair. Judgement: Fair.

Assessment:

BOBB, ADAM **DOB:** (38 yo M) **Acc No.** 126774 **DOS:** 06/22/2022

Severity of Symptoms: Moderate.
Screening Tools:
Utilized: None Today.
Plan:
BHC will: BHC will monitor and modify treatment as required.. Patient will: Pt will consistently participate in scheduled BH TX sessions.. PCP will continue to evaluate and treat medical and/or mental health issues as needed. Case Manager will: contact pt per f/u appts.
Depression Screening:
PHQ-2 (2015 Edition) Little interest or pleasure in doing things? More than half the days, Feeling down, depressed, or hopeless? More than half the days, Total Score 4. PHQ-9 Little interest or pleasure in doing things More than half the days, Feeling down, depressed, or hopeless More than half the days, Trouble falling or staying asleep, or sleeping too much More than half the days, Feeling tired or having little energy More than half the days, Poor appetite or overeating More than half the days, Feeling bad about yourself-or that you are a failure or have let yourself or your family down More than half the days, Trouble concentrating on things, such as reading the newspaper or watching television More than half the days, Moving or speaking so slowly that other people could have noticed. Or the opposite- being so fidgety or restless that you have been moving around a lot more than usual Several days, Thoughts that you would be better off dead, or of hurting yourself in some way? Several days(Consider Suicide Assessment Risk), Total Score: 16, Interpretation Moderately severe depression.

**Medical History:**

**Social History:** Tobacco Use Screening: yes Are you a: current smoker, When did you start smoking? 1/1/2000. PRAPARE: yes Date Completed/Updated: 06/22/2022, What is your current housing situation? I have housing, Are you worried about losing your housing? No, What is the highest level of school that you have finished? High school diploma or GED, What is your current work situation? Unemployed and seeking work, In the past year, have you or any family members you live with been unable to get any of the following when it was really needed? Check all that apply I do not have problems meeting my needs, Has lack of transportation kept you from medical appointments, meetings, work or from getting things needed for daily living? No, How often do you see or talk to people that you care about and feel close to? (For example: talking to friends on the phone, visiting friends or family, going to church or club meetings) More than 5 times a week, How stressed are you? Stress is when someone feels tense, nervous, anxious, or can't sleep at night because their mind is troubled Not at all, In the past year have you spent more than 2 nights in a row in a jail, prison, detention center, or juvenile correctional facility? No, Are you a refugee? No, What country are you from? United States, Do you feel physically and emotionally safe where you currently live? Yes, In the past year, have you been afraid of your partner or ex-partner? No, PRAPARE Score: 4. GAD7- Anxiety: yes Feeling nervous, anxious or on edge? 3- Nearly every day, Not being able to stop or control worrying? 2- More than half the days, Worrying too much about different things? 2- More than half the days, Trouble relaxing? 3- Nearly every day, Being so restless that it is hard to sit still? 3- Nearly every day, Becoming easily annoyed or irritable? 3- Nearly ever day was before med,but ok now, Feeling afraid as if something awful might happen? 0- Not at all, Total Score: 16, Intepretation: 15+: Severe (Notify BH) Established w/ Scott Allison Johnson, LCSW, Completed: 06/22/2022. Alcohol Screening: yes Did you have a drink containing alcohol in the past year? Yes, How often did you have a drink containing alcohol in the past year? Two to three times per week (3 points), How many drinks did you have on a typical day when you were drinking in the past year? 3 or 4 (1 point), How often did you have six or more drinks on one occasion in the past year? Monthly (2 points), Points 6, Interpretation Positive. Bipolar Screening: yes 1. Some people have periods lasting several days when they feel much more excited and full of energy than usual. Their minds go too fast. They talk a lot. They are very restless or unable to sit still and they sometimes do things that are unusual for them, such as driving too fast or spending too much money. Have you ever had a period like this lasting several days or longer? Yes, 2. Have you ever had a period lasting several days or longer when most of the time you were so irritable or grouchy that you either started arguments, shouted at people or hit people? Yes, 3. People who have episodes like this often have changes in their thinking and behavior at the same time, like being more talkative, needing very little sleep, being very restless, going on buying sprees, and behaving in many ways they would normally think inappropriate. Did you ever have any of these changes during your episodes of being excited and full of energy or very irritable or grouchy? Yes, 1. Were you so irritable that you either started arguments, shouted at people, or hit people? No, 2. Did you become so restless or fidgety that you paced up and down or couldn't stand still? No, 3. Did you do anything else that wasn't usual for you-like talking about things you would normally keep private or acting in ways that you would usually find embarrassing? No, 4. Did you try to do things that were impossible to do, like taking on large amounts of work? Yes, 5. Did you constantly keep changing your plans or activities? Yes, 6. Did you find it hard to keep your mind on what you were doing? Yes, 7. Did your thoughts seem to jump from one thing to another or race through your head so fast you couldn't keep track of them?

BOBB, ADAM **DOB:** (38 yo M) **Acc No.** 126774 **DOS:** 06/22/2022

Yes, 8. Did you sleep far less than usual and still not get tired or sleepy? Yes, 9. Did you spend so much more money than usual that it caused you to have financial trouble? Yes. Depression Screening Completed: yes, Streeter, Katy 6/22/2022 05:13:25 PM >, , PHQ2, PHQ9. Sexual Hx Had sex in the last 12 months (vaginal, oral, or anal)? Yes, with Women only, Use protection? No, Prevention Strategies discussed: Other. Pre-Visit Planning Completed: yes, Streeter, Katy 6/22/2022 05:13:42 PM >, , Yes:. Smoking: yes, Streeter, Katy 6/22/2022 05:13:47 PM >, , YES. Recreational drug use: yes, Streeter, Katy 6/22/2022 05:13:51 PM >, , Denies. Alcohol: yes, Streeter, Katy 6/22/2022 05:13:55 PM >, , Drinks/Week, Beer, Liquor, 6, 5. SO/GI Data: yes Sexual Orientation: Straight (Not Lesbian or Gay), Gender Identity: Male, Date Taken/Updated: 06/22/2022. Learning Assessment: yes Completed: 06/22/2022, Hearing problems: No, Vision problems: No, Reading problems: No, Writing Problems: No, Highest Education completed: 12th grade, Health Literacy Screening completed: No. Dental Home: yes Dental visit within the last year? No. Household/Enviromental Factors: yes Lives with: spouse, children. Caffeine: yes, Streeter, Katy 6/22/2022 05:14:33 PM >, , frequency:, Soda, 1 cup/day. Exercise: yes, Streeter, Katy 6/22/2022 05:14:37 PM >, Per Age. Travel outside US: yes, Streeter, Katy 6/22/2022 05:14:41 PM >, No. Sexually active: yes, Streeter, Katy 6/22/2022 05:14:45 PM >, , Yes. Herbal & OTC medications: yes, Streeter, Katy 6/22/2022 05:14:49 PM >, , None. Advance Directive: yes, Streeter, Katy 6/22/2022 05:14:54 PM >, No.
GAD7 SCORE 16 SEVERE ANXIETY AGRICE ,MA 03/08/2022.

**Medications:** Taking tiZANidine HCl 4 MG Tablet 1 tablet as needed Orally Three times a day, Taking Hydrocodone-Acetaminophen 5-325 MG Tablet 1 tablet q4-6h PRN for pain Orally , Taking amLODIPine Besylate 10 MG Tablet 1 tablet Orally Once a day, Taking hydroCHLOROthiazide 12.5 MG Tablet 1 tablet in the morning Orally Once a day, Taking DULoxetine HCl 30 MG Capsule Delayed Release Particles 3 capsule Orally Once a day, Notes: dose increase

## Objective:

## Assessment:

**Assessment:**

1. PTSD (post-traumatic stress disorder) - F43.10 (Primary)
2. MDD (major depressive disorder), recurrent episode, moderate - F33.1
3. GAD (generalized anxiety disorder) - F41.1

## Plan:

**Procedure Codes:** 90837 PSYTX W PT 60 MINUTES

**Follow Up:** 2 Weeks

## Billing Information:

**Visit Code:**
**Procedure Codes:**
90837 PSYTX W PT 60 MINUTES.

## Care Plan Details

**Electronically signed by Scott Allison Johnson , LCSW on 07/06/2022 at 12:45 AM CDT**
**Sign off status: Completed**

**Provider: Scott Allison Johnson, LCSW** **Date: 06/22/2022**

BOBB, ADAM **DOB:** (38 yo M) **Acc No.** 126774 **DOS:** 04/07/2022

**Patient:** BOBB, ADAM
**Account Number:** 126774
**DOB:** **Age:** 38 Y **Sex:** Male
**Phone:**
**Address:**
**Pcp:** Kerry Pennington

**Provider:** Scott Allison Johnson, LCSW
**Date:** 04/07/2022

## Subjective:

**Chief Complaints:**

1. BH NP. 2. Intake - depression, ptsd, gad.

**HPI:**

Referral:

PCP: Referral Source: self-referral PCP is Dr. Pennington. Duration: approximately 60 minutes.

Presenting Complaints:

Current Functioning: Patient: Adam Bobb
Referral from: self referral
Date: 04/07/2022

Screeners - scanned into BH file

Presenting Complaint/Problem:

Client is a 38-year-old married Caucasian male, 2 children. He has been married for +20 year to current wife.

Client presented wearing a t-shirt, blue jeans, long salt and pepper facial hair - beard, several earrings in each ear and wearing a hat. He also had on corrective lenses.

Client stated "I've done maintenance and mechanic work but I lost my job, I tore my labriam in my hip and I couldn't do the maintenance anymore and I can't mechanic that well either with my back and hip problems. I have had a lot of vehicle wrecks, a 4wheeler wreck, and I flipped a tractor pushing up some brush and there was a stump under it. My mood has changed, I'm moody, I want to be left alone. I feel bad that I can't provide from my family and I used to love to spoil my children. This happened about 1 year ago. I don't feel that I can defend myself and take care of the people I love, the past year has been rough." Client has issues in his back and his hip. He states he has difficulty sleep and profusely sweats in sleep.

He stated he had a "bad" ATV wreck several years ago (approximately 11 years ago). He stated that he was 4-wheeler riding with his wife "and some idiot was driving wreck less and stopped right in front of me, the 4-wheeler flipped on top of us, my wife stopped breathing and her heart stopped 3x between there and the hospital. She messed her knee up, I feel so bad, she was going back to school to do physical therapy and it ruined her life. While she was in the ER a policeman grabbed me the back of the neck and said he was taking me to prison. He charged me with DWI (client stated he had 3 beer that day and took a BAC at the hospital and passed the test) endangering a minor, and if she died they were going to charge me with manslaughter. They dropped all the charges but the child endangerment. The hospital we went to was where I worked, they told me I had to go to rehab because I was representing the hospital, I passed the BAC but the HR woman told everyone that I was in the ER drunk. I went to outpatient rehab for 6 months, was sober, and went 3x a week on Monday, Wednesday, and Friday. I don't and never had a drinking problem, but they (his job superiors at the hospital) I had to go to rehab and had to make a decision that day, or I was going to be fired. I also found out that day my wife had the wreck she was pregnant."

Client stated that he had a traumatic childhood, he saw his father brutally/physically assault his mother on several occasions. He saw her pushed into a glass coffee table and break several fingers. He

BOBB, ADAM **DOB:** (38 yo M) **Acc No.** 126774 **DOS:** 04/07/2022

stated "at 7 years old I pulled out a knife and threatened to stab him because he was hurting her and I thought he would kill her." I graduated from high school at 16 years old, a few weeks later I came home and all my stuff was on a trailer, he told me he didn't care where I went but I had to get the hell out of there." I bounced around, sold weed for a little while to get by, I saw people get shot, just some bad stuff I would like to forget at those crack houses, but I didn't mess with none of that stuff." Client stated that he used to smoke THC but denied doing so recently as "I don't have a card."

Previous therapy (outpatient/acute/rehab): none, except outpatient rehab - see presenting problem

Previous Diagnosis: ADHD - diagnosed as a child by PCP - took Ritalin when he was in grade school

Current Medications: Cymbalta 90 mg 3x daily - "it helps but I get that nervous irritated feeling."

Past Psychiatric Medications/effectiveness:

Wellbutrin "after taking it for three days I ended up in the psychiatric ward at JRMC, I was talking to things that weren't there, that is the first and last time that has happened."

Allergies: sulfur drugs and Silvadene burn cream

Anxiety/Depression: yes, both

ADHD: yes - previously diagnosed but BHC did not screen for today

Trauma (abuse history/sexual/physical/verbal): see presenting problem, reports physical and verbal abuse from father

Substance Use: uses nicotine and alcohol occasionally but states he does not drink in excess (several beers a day 11-14)

Legal Issues: endangering the welfare of a minor 11 years ago. He stated "when i was young i used to be in and out of jail all the time for fighting"

Education: graduated from high school and went to college to be a certified mechanic

Employment: unemployed due to health issues with hip and back

Interest/Hobbies: hunting and fishing and stated drinking

Family History of substance use: no known

Family history of mental illness: no known

Living History/current: currently lives with wife Nancy Bobb, 18 year old son, and 11 year old daughter

Relationship/Marriage/orientation: heterosexual, married for +20 years

Children: 2 children, one step daughter 24 years old

Siblings: none, he is an only child

Health Concerns: hip and back problems, he keeps "putting off surgery because I'm scared to death to be put to sleep" also reports having high blood pressure. 2 years old had heart surgery, one of his arteries didn't develop "I'm short one artery"

Sleep Problems: difficulty staying asleep - reports "lots" of sleep issues and sweats profusely in his sleep "wake up wringing wet"

Goal for therapy: "to see if I can get to feeling better and get back to normal, not worry, get out and about again."

Referrals for medication management: wants to continue to see PCP for medications at this time

Pharmacy: The drug room in Pine Bluff

_________Client reported the listed symptoms below on Current System Checklist_______-

<u>Cognition</u>: low intelligence, learning problems/comprehension struggles, memory difficulties

<u>Attention</u>: attention problems, forgetful

<u>Psychosis</u>: paranoia

<u>Addictions</u>: n/a

<u>Anxiety</u>: sweating, pounding heart/increased heart rate, shaking or trembling, avoidance of people/situations due to fear, constant worry that is uncontrollable, fear/worry of crowds/public places, chills or hot flashes, fear of

BOBB, ADAM **DOB:** (38 yo M) **Acc No.** 126774 **DOS:** 04/07/2022

social situations

Eating Behaviors: n/a

Obsessive/Compulsive Behaviors: n/a

Mood or Physical Changes: weight loss/gain, depressed moods, lack of pleasure/withdrawal from activities, excessive guilt, insomnia/oversleeping, feeling restless or slowed down, change in energy level (high/low)

Trauma: extreme startle response/jumpiness, irritability or increased aggression, history of trauma or abuse, fear related trauma or abuse, trauma reminders that cause distress, avoiding situations related to trauma, blocking out memories related to trauma, recurrent thoughts related to trauma, trauma-related nightmares

Adult Daily Living: difficulty managing budget/household income

Other Symptoms not listed: n/a

-

---Diagnosis---
PTSD
MDD
GAD

.
Treatment Plan:
Goal 1: Acknowledge the depression verbally and resolve its causes, leading to normalization of the emotional state. Outcome 1: New. Objective 1A: Learn new ways to cope with anxiety and depression through activity and implementation of stress reducing techniques.

BHC Assessment:
Focus: Intervention focus: BHC provided initial BH contract and evaluations., BHC provided consent forms., BHC reviewed with pt. confidentiality guidelines.. Modality: Intervention Focus: provided BH, consent, and evaluation forms.

Brief Risk Assessment:
Brief Risk Assessment: Have you ever made any suicidal statements or thoughts of hurting yourself or others? No, Do you have intent? No, Have you ever had a psychiatric hospitalization? Yes see presenting problem, it was after he tried a new medication (Wellbutrin) and went into psychosis after taking it for three days. It has never happened before or since that time several several years ago, Have you ever attempted suicide? No, Have you ever been engaged in self multilation? No, Do you have access to firearms/weapons or other means of injury? No, Have you ever made impulsive, reckless or dangerous decisions? No, Based upon the response given, will a Safety Plan be implemented? No.

MSE:
Observation/Attitude: Pleasant , Cooperative , Anxious. Affect: Appropriate to mood. Mood: Anxious. Appearance: Appropriate , casual. Disturbance of Perception: Denied. SI/HI: Denied. Motor Activity: Restless. Speech/Communication: Normal rate/volume. Thought Content: Logical/Coherent. Thought Process: Goal-Oriented. Insight: Fair. Judgement: Fair.

Screening Tools:
Utilized: to be scanned to BH folder in pt documents.

Diagnostic Impressions:
see assessment section below see assessment section below.

Screening Tools::
GAD-7 (Generalized Anxiety Disorder) Feeling nervous, anxious, or on edge? 3, Not being able to stop or control worrying? 3, Worrying too much about different things? 3, Trouble relaxing? 3, Being so restless that it's hard to sit still? 3, Becoming easilty annoyed or irritable? 3, Feeling afraid as if something awful might happen? 0, Score: 18, Interpretation: 15 +: Severe Anxiety 4/11/2022 KS. Beck Anxiety Inventory Numbness or tingling 3- Severly- it bothered me a lot, Feeling hot 3- Severly- it bothered me alot, Wobbliness in legs 3- Severly- it bothered me at lot, Unable to relax 3- Severly- it bothered me a lot, Fear of worst happening 0- Not at all, Dizzy or lightheaded 0- Not at all, Heart pounding/racing 3- Severly- it bothered me alot, Unsteady 3- Severly- it bothered me a lot, Terrified or afraid 0- Not at all, Nervous 2- Moderately- it wasn't pleasant at

BOBB, ADAM **DOB:** (38 yo M) **Acc No.** 126774 **DOS:** 04/07/2022

times, Feeling of choking 0- Not at all, Hands trembling 3- Severly- it bothered me a lot, Shaky/unsteady 3- Severly- it bothered me a lot, Difficulty in breathing 0- Not at all, Fear of dying 0- Not at all, Scared 0- Not at all, Indigestion 0- Not at all, Faint/ Lightheaded 0- Not at all, Face flushed 0- Not at all, Hot/cold sweats 3- Severly- it bothered me a lot, Score: 29, Interpretation: 17-29: Moderate 4/11/2022 KS.

Depression Screening:

PHQ-2 (2015 Edition) Little interest or pleasure in doing things? Nearly every day, Feeling down, depressed, or hopeless? More than half the days, Total Score 5. PHQ-9 Little interest or pleasure in doing things Nearly every day, Feeling down, depressed, or hopeless More than half the days, Trouble falling or staying asleep, or sleeping too much Nearly every day, Feeling tired or having little energy Nearly every day, Poor appetite or overeating Nearly every day, Feeling bad about yourself-or that you are a failure or have let yourself or your family down Several days, Trouble concentrating on things, such as reading the newspaper or watching television Nearly every day, Moving or speaking so slowly that other people could have noticed. Or the opposite- being so fidgety or restless that you have been moving around a lot more than usual Nearly every day, Thoughts that you would be better off dead, or of hurting yourself in some way? Not at all, Total Score: 21, Interpretation Severe Depression.

**Medical History:**

**Social History:** PRAPARE: yes Date Completed/Updated: 03/08/2022, What is your current housing situation? I have housing, Are you worried about losing your housing? No, What is the highest level of school that you have finished? High school diploma or GED, What is your current work situation? Unemployed and seeking work, In the past year, have you or any family members you live with been unable to get any of the following when it was really needed? Check all that apply I do not have problems meeting my needs, Has lack of transportation kept you from medical appointments, meetings, work or from getting things needed for daily living? No, How often do you see or talk to people that you care about and feel close to? (For example: talking to friends on the phone, visiting friends or family, going to church or club meetings) More than 5 times a week, How stressed are you? Stress is when someone feels tense, nervous, anxious, or can't sleep at night because their mind is troubled Not at all, In the past year have you spent more than 2 nights in a row in a jail, prison, detention center, or juvenile correctional facility? No, Are you a refugee? No, What country are you from? United States, Do you feel physically and emotionally safe where you currently live? Yes, In the past year, have you been afraid of your partner or ex-partner? No, PRAPARE Score: 4. Tobacco Use Screening: yes Are you a: current smoker, When did you start smoking? 1/1/2000. GAD7- Anxiety: yes Feeling nervous, anxious or on edge? 3- Nearly every day, Not being able to stop or control worrying? 2- More than half the days, Worrying too much about different things? 2- More than half the days, Trouble relaxing? 3- Nearly every day, Being so restless that it is hard to sit still? 3- Nearly every day, Becoming easily annoyed or irritable? 3- Nearly ever day was before med,but ok now, Feeling afraid as if something awful might happen? 0- Not at all, Total Score: 16, Intepretation: 15+: Severe (Notify BH), Completed: 03/08/2022. Alcohol Screening: yes Did you have a drink containing alcohol in the past year? Yes, How often did you have a drink containing alcohol in the past year? Two to three times per week (3 points), How many drinks did you have on a typical day when you were drinking in the past year? 3 or 4 (1 point), How often did you have six or more drinks on one occasion in the past year? Monthly (2 points), Points 6, Interpretation Positive. Bipolar Screening: yes 1. Some people have periods lasting several days when they feel much more excited and full of energy than usual. Their minds go too fast. They talk a lot. They are very restless or unable to sit still and they sometimes do things that are unusual for them, such as driving too fast or spending too much money. Have you ever had a period like this lasting several days or longer? Yes, 2. Have you ever had a period lasting several days or longer when most of the time you were so irritable or grouchy that you either started arguments, shouted at people or hit people? Yes, 3. People who have episodes like this often have changes in their thinking and behavior at the same time, like being more talkative, needing very little sleep, being very restless, going on buying sprees, and behaving in many ways they would normally think inappropriate. Did you ever have any of these changes during your episodes of being excited and full of energy or very irritable or grouchy? Yes, 1. Were you so irritable that you either started arguments, shouted at people, or hit people? Yes, 2. Did you become so restless or fidgety that you paced up and down or couldn't stand still? Yes, 3. Did you do anything else that wasn't usual for you-like talking about things you would normally keep private or acting in ways that you would usually find embarrassing? No, 4. Did you try to do things that were impossible to do, like taking on large amounts of work? No, 5. Did you constantly keep changing your plans or activities? No, 6. Did you find it hard to keep your mind on what you were doing? Yes, 7. Did your thoughts seem to jump from one thing to another or race through your head so fast you couldn't keep track of them? Yes, 8. Did you sleep far less than usual and still not get tired or sleepy? Yes, 9. Did you spend so much more money than usual that it caused you to have financial trouble? No, INTERPRETATION: 2. High risk (50-79%). Depression Screening Completed: yes, Grice, Anna 3/8/2022 02:05:14 PM >, , PHQ2, PHQ9. Pre-Visit Planning Completed: yes, Grice, Anna 3/8/2022 02:05:22 PM >, , Yes:. Smoking: yes, Grice, Anna 3/8/2022 02:05:33 PM >, YES. Recreational drug use: yes, Grice, Anna

BOBB, ADAM **DOB:** (38 yo M) **Acc No.** 126774 **DOS:** 04/07/2022

3/8/2022 02:05:38 PM >, , Denies. Alcohol: yes, Grice, Anna 3/8/2022 02:05:46 PM >, >yes. SO/GI Data: yes Sexual Orientation: Straight (Not Lesbian or Gay), Gender Identity: Male, Date Taken/Updated: 03/08/2022. Learning Assessment: yes Completed: 03/08/2022, Hearing problems: No, Vision problems: No, Reading problems: No, Writing Problems: No, Highest Education completed: 12th grade, Health Literacy Screening completed: No. Dental Home: yes Dental visit within the last year? No. Household/Enviromental Factors: yes Lives with: spouse, children. Caffeine: yes, Grice, Anna 3/8/2022 02:06:10 PM >, frequency:, Soda, 1 cup/day. Exercise: yes, Grice, Anna 3/8/2022 02:06:18 PM >, Per Age. Travel outside US: yes, Grice, Anna 3/8/2022 02:06:22 PM >, , No. Sexually active: yes, Grice, Anna 3/8/2022 02:06:28 PM >, > , Yes. Herbal & OTC medications: yes, Grice, Anna 3/8/2022 02:06:32 PM >, , None. Advance Directive: yes, Grice, Anna 3/8/2022 02:06:37 PM >, , No.
GAD7 SCORE 16 SEVERE ANXIETY AGRICE ,MA 03/08/2022.

**Medications:** Taking tiZANidine HCl 4 MG Tablet 1 tablet as needed Orally Three times a day, Taking Hydrocodone-Acetaminophen 5-325 MG Tablet 1 tablet q4-6h PRN for pain Orally , Taking amLODIPine Besylate 10 MG Tablet 1 tablet Orally Once a day, Taking hydroCHLOROthiazide 12.5 MG Tablet 1 tablet in the morning Orally Once a day, Taking DULoxetine HCl 30 MG Capsule Delayed Release Particles 3 capsule Orally Once a day, Notes: dose increase

## Objective:

## Assessment:

**Assessment:**

1. PTSD (post-traumatic stress disorder) - F43.10 (Primary)
2. MDD (major depressive disorder), recurrent episode, moderate - F33.1
3. GAD (generalized anxiety disorder) - F41.1

## Plan:

**Procedure Codes:** 90791 PSYCH DIAGNOSTIC EVALUATION

**Follow Up:** 2-3 Weeks (Reason: 1st available appt with BHC)

## Billing Information:

**Visit Code:**
**Procedure Codes:**
90791 PSYCH DIAGNOSTIC EVALUATION.

## Care Plan Details

Scott Allison Johnson, LCSW

**Electronically signed by Scott Allison Johnson , LCSW on 04/25/2022 at 03:00 PM CDT**
**Sign off status: Completed**

Lincoln Financial Group®

The Lincoln National Life Insurance Company
PO Box 2609, Omaha, NE 68103-2609
Toll free (800) 423-2765
Fax (877) 843-3950
www.LincolnFinancial.com

# AUTHORIZATION FOR RELEASE OF INFORMATION

☑ **Please check this box if you or your authorized representative would like to receive a copy of this form.**

I (the undersigned) authorize any physician, medical professional, or other provider of health care services, hospital, clinic, other medical or medically related facility, or insurance or reinsurance company to release information to The Lincoln National Life Insurance Company (Lincoln) in connection with a claim for benefits.

**Patient Information:** (Name of Claimant Whose Information Will Be Released)

Patient Name: (Last, First, Middle) Bobb Adam K Date of Birth:

Other Names Used: N/A Social Security Number:

**Description of the information to be disclosed:**

☑ Entire Medical Record, including but not limited to patient histories, office notes (EXCEPT psychotherapy notes), test results, radiology studies, films, prescriptions, referrals, consults, billing records, insurance records, and other related records sent to you by other health care providers.

☐ Other: ______

**Expiration:** This Authorization will be considered valid until the happening of the earliest following event:

1. The term of the coverage of the policy if the claim is for a health insurance benefit;
2. The duration of the claim if the claim is not for a health insurance benefit; or
3. Twelve (12) months from the date of the signature below.

**Right to Revoke:** I have the right to revoke this authorization, in writing, at any time. I understand that revocation is not effective to the extent that Lincoln has taken action in reliance on this authorization. To initiate revocation of this Authorization, direct all correspondence to Lincoln at the above address.

**Claimant Rights:**

1. I understand that the information used or disclosed may be subject to re-disclosure by the recipient and may no longer be protected by federal or state law. For Colorado claims, the disclosed information may not be redisclosed or reused by the recipient under Colorado law.
2. I understand that a photocopy of this Authorization is to be considered as valid as the original.
3. I understand that I am entitled to receive a copy of this Authorization.
4. I understand that this information may be released to my employer for self-insured plans only.
5. I understand that my treatment, payment, enrollment, or eligibility for benefits will not be conditioned on whether I sign this Authorization.

**Authorized Representative Information:** Complete this section if a personal representative is authorizing disclosure of the claimant's information. A copy of a power of attorney or other court-initiated document will be required, unless parent signing for patient under 18.

Name: (Last, First, Middle) ______ Relationship to claimant: ______

Address: ______ Phone: ______

**Signature/Date:** The Claimant whose information will be released or the claimant's authorized representative must sign and date this form in order to process.

Sign: [signature] Date: 7-8-21

Lincoln Financial Group®

The Lincoln National Life Insurance Company
PO Box 2609, Omaha, NE 68103-2609
Toll free (800) 423-2765
Fax (877) 843-3950
www.LincolnFinancial.com

## AUTHORIZATION FOR RELEASE OF INFORMATION

☑ **Please check this box if you or your authorized representative would like to receive a copy of this form.**

I (the undersigned) authorize any physician, medical professional, or other provider of health care services, hospital, clinic, other medical or medically related facility, or insurance or reinsurance company to release information to The Lincoln National Life Insurance Company (Lincoln) in connection with a claim for benefits.

**Patient Information:** (Name of Claimant Whose Information Will Be Released)

Patient Name: (Last, First, Middle) Bobb Adam K Date of Birth:

Other Names Used: Kel Social Security Number:

**Description of the information to be disclosed:**

☑ Entire Medical Record, including but not limited to patient histories, office notes (EXCEPT psychotherapy notes), test results, radiology studies, films, prescriptions, referrals, consults, billing records, insurance records, and other related records sent to you by other health care providers.

☐ Other:

**Expiration:** This Authorization will be considered valid until the happening of the earliest following event:

1. The term of the coverage of the policy if the claim is for a health insurance benefit;
2. The duration of the claim if the claim is not for a health insurance benefit; or
3. Twelve (12) months from the date of the signature below.

**Right to Revoke:** I have the right to revoke this authorization, in writing, at any time. I understand that revocation is not effective to the extent that Lincoln has taken action in reliance on this authorization. To initiate revocation of this Authorization, direct all correspondence to Lincoln at the above address.

**Claimant Rights:**

1. I understand that the information used or disclosed may be subject to re-disclosure by the recipient and may no longer be protected by federal or state law. For Colorado claims, the disclosed information may not be redisclosed or reused by the recipient under Colorado law.
2. I understand that a photocopy of this Authorization is to be considered as valid as the original.
3. I understand that I am entitled to receive a copy of this Authorization.
4. I understand that this information may be released to my employer for self-insured plans only.
5. I understand that my treatment, payment, enrollment, or eligibility for benefits will not be conditioned on whether I sign this Authorization.

**Authorized Representative Information:** Complete this section if a personal representative is authorizing disclosure of the claimant's information. A copy of a power of attorney or other court-initiated document will be required, unless parent signing for patient under 18.

Name: (Last, First, Middle) Relationship to claimant:

Address: Phone:

**Signature/Date:** The Claimant whose information will be released or the claimant's authorized representative must sign and date this form in order to process.

Sign: [signature] Date: 7-8-21

Lincoln Financial Group

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

**The Lincoln National Life Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
Toll free (800) 423-2765
Toll free Fax (877) 843-3950
www.LincolnFinancial.com

August 8, 2022

SCOTT ALLSION R. JOHNSON, LCSW
RELEASE OF INFORMATION
1404 E CHURCH
WARREN, AR 716717167

| | | |
|---|---|---|
| Re: | Policy Number: | 00040000100019469 |
| | Claim Number: | 1220054596 |
| | Patient: | Adam Bobb |
| | DOB: | |

**ATTN MED RECORDS/ROI DEPT:**
We are evaluating your patient's life waiver claim. Please submit the requested records listed below. A signed authorization form is included.

| **Documentation** | **Time Period** |
|---|---|
| Office/Treatment Notes | 6/1/2021 to present |

****Please fill out all forms that are attached****

Current state statutes for Arkansas: Cost of each photocopy, excluding X rays, shall not exceed $0.50 per page for the first twenty-five (25) pages and $0.25 for each additional page. A labor charge not exceeding $15.00 may be added for each request for medical records under subdivision (a)(1) of this section, and the actual cost of any required postage may also be charged. In addition a reasonable retrieval fee for stored records of a hospital, a physician's office, or an ambulance provider may be added to the photocopy charges, only if the requested records are stored at a location other than the location of the hospital, physician's office, or ambulance provider.

**YOU MUST RETURN THIS COMPLETED FORM TO RECEIVE PAYMENT.**

Payment instructions:

©2022 Lincoln National Corporation www.LincolnFinancial.com
Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

| Qty | Description | Unit Price | Line Total |
|---|---|---|---|
| | Processing Fee | | |
| | Pages - | | |
| | Actual Postage | | |
| | Tax Identification Number | TIN- | |
| | | Total | |

- **We must have your Tax Identification Number (TIN) & NPI.**
- **Please fax this remittance form and records to 1-800-462-4660.**

***Payment Options:***

☐ ***Credit Card***

- If you accept a credit card, ***payment can be made immediately*** upon receipt of your invoice.

☐ ***Direct Deposit*** (Please complete the below)

Direct Deposit Agreement

Authorization Agreement

We hereby authorize Lincoln Financial Group / The Lincoln National Life Insurance Company to initiate automatic deposits to our account at the Financial Institution named below. We also authorize Lincoln Financial Group / The Lincoln National Life Insurance Company to make withdrawals from this account in the event that a credit entry is made in error.

Further, we agree not to hold Lincoln Financial Group / The Lincoln National Life Insurance Company responsible for any delay or loss of funds due to incorrect or incomplete information supplied by us or by our financial institution or due to an error on the part of our financial institution in depositing funds to our account.

This agreement will remain in effect until Lincoln Financial Group / The Lincoln National Life Insurance Company received a written notice of cancellation from us or our financial institution, or until we submit a new direct deposit form.

Account Information

Name of Financial Institution: ______________________

Routing Number: ______________________

Account Number: ______________________

Authorized Signature: ______________________ Date: ______________________

☐ ***Checks Only*** (Please note that pre-payment via check could delay payment by up to 30 days)

Please contact Claim Services on our toll free line at **1-800-423-2765** with any questions regarding this request. Thank you for your cooperation.

Sincerely,

Jill Felten
Assisting on behalf of Erica Wilson
800-423-2765 *7064
Coordinator, Clinical Support
The Lincoln National Life Insurance Company

Lincoln Financial Group®

**The Lincoln National Life Insurance Company**
8801 Indian Hills Drive, Omaha, NE 68103-2649
toll free (800) 423-2765
www.LincolnFinancial.com

# PSYCHIATRIC SUPPLEMENTAL INFORMATION

## PART 1 - PATIENT INFORMATION

Name: ______________________ SS#: ______________ Date of Birth: __________

## PART 2 - ATTENDING PHYSICIAN'S STATEMENT

**Diagnosis (DSM IV CRITERIA)**

Axis I ______________________

Axis II ______________________

Axis III ______________________

Axis IV 0 1 2 3 4 5 6

Axis V Current GAF Score ______________

Highest GAF Score Past Year ______________

Symptoms Reported: ______________________

Symptoms Observed: ______________________

**History**

Date symptoms first appeared ______________

Date patient ceased to work because of incapacity ______________

Date of first visit for treatment or consultation ______________

**History of Treatment for Psychiatric/Psychological Problems**

| Treatment Dates | For what Problem? | Treatment Provider of Facility (Level of care IOP, PHP, INPT) |
|---|---|---|
| | | |
| | | |
| | | |

**Current Treatment**

Therapy Method and Goal(s): ______________________

Frequency and Length of Sessions: ______________________

Number of Sessions to Date: ______________________

Treatment Compliance: ______________________

Treatment Response to Date: ______________________

Expected Outcomes and Time Frame: ______________________

**Medications**

| | | | | |
|---|---|---|---|---|
| Medication Name | | | | |
| Date Started | | | | |
| Initial Dosage | | | | |
| Initial Response | | | | |
| Date of Last Dosage Change | | | | |
| Current Dosage | | | | |
| Response | | | | |
| Side Effects | | | | |
| Serum Levels | | | | |
| Compliance | | | | |
| Date Medication Discontinued | | | | |

**Future Treatment Plans**

What changes in your treatment are underway or being considered?______________________________

**Mental Status Evaluation**

| | | | | | | |
|---|---|---|---|---|---|---|
| Behavioral: | Appearance | ☐ Groomed | ☐ Disheveled | ☐ Poor Hygiene | | |
| | Eye Contact | ☐ Good | ☐ Fair | ☐ Poor | | |
| | Motor Activity | ☐ Normal | ☐ Hyperactive | ☐ Hypoactive | | |
| | Speech | ☐ Clear | ☐ Pressured | ☐ Soft | ☐ Slurred | |
| | Impulse Control | ☐ Adequate | ☐ Impaired | | | |
| | Comments: | | | | | |
| Cognitive: | Orientation | ☐ Time | ☐ Place | ☐ Person | ☐ Situation | |
| | Language Problems | ☐ Expressive | ☐ Receptive | ☐ Comprehension | | |
| | Memory Problems | ☐ Immediate | ☐ Recent | ☐ Remote | | |
| | Concentration/Attention | ☐ Intact | ☐ Impaired | ☐ Fluctuates | | |
| | Judgment | ☐ Intact | ☐ Impaired | | | |
| | Insight | ☐ Good | ☐ Fair | ☐ Poor | | |
| | Comments: | | | | | |
| Affective: | Affect | ☐ Appropriate | ☐ Blunted | ☐ Labile | ☐ Inappropriate | |
| | Mood | ☐ Appropriate | ☐ Depressed | ☐ anxious | ☐ Irritable | ☐ Panic Attacks |
| | Suicidal Ideation | ☐ Yes | ☐ No | ☐ Ideation | ☐ Plans | |
| | Homicidal | ☐ Yes | ☐ No | ☐ Ideation | ☐ Plans | |
| | Comments: | | | | | |
| Perceptual: | Thought Flow | ☐ Slow | ☐ Coherent | ☐ Loose | ☐ Tangential | ☐ Circumstantial |
| | Thought Content | ☐ Delusional | ☐ Paranoid | ☐ Bizarre | ☐ Grandiose | |
| | Hallucinations | ☐ Yes | ☐ No | | | |
| | Comments: | | | | | |
| Other: | Energy Level | ☐ Adequate | ☐ Increased | ☐ Decreased | | |
| | Sleep | ☐ Adequate | ☐ Increased | ☐ Decreased | | |
| | Interest/Motivation | ☐ Adequate | ☐ Decreased | | | |
| | Comments: | | | | | |

**Client Self Reporting of Activities of Daily Living:**

Is client currently performing ☐ Volunteer Work ☐ Self-Employed ☐ Attending School ☐ No Work Activities ☐ Work at Lesser Demand

Socialization Problems ☐ Yes ☐ No Describe ______

Cleans/Maintains Residence? ☐ Yes ☐ No

Performs Routine Shopping? ☐ Yes ☐ No

Pays Bills ☐ Yes ☐ No

Operates Motor Vehicle ☐ Yes ☐ No

Explain

**Precipitating and Complicating Factors to Leaving Work**

Workplace ☐ increase in work demands ☐ Dissatisfaction with Supervisor ☐ Conflicts with Supervisor ☐ Recent unfavorable work evaluation

Social/Family Describe: ______

Physical/Medical Describe: ______

Financial/Legal Describe: ______

Alcohol/Drug Abuse Describe: ______

Other Describe: ______

Have you advised patient to return to work?

☐ Yes Date of return to work ______ Regular Occupation ☐ FT ☐ PT
Any Occupation ☐ FT ☐ PT

☐ No If No, please give appropriate date patient should be able to return to work
Date of return to work ______ Regular Occupation ☐ FT ☐ PT
Any Occupation ☐ FT ☐ PT

Describe restrictions and limitations currently preventing a return to work.

______

Thank you for providing this information.

______
Attending Physician Name and Specialty (Please Print)

______
Date

______
Therapist/Counselor Name and Degree/License (Please Print)

______
Date

BOBB, ADAM **DOB:** (38 yo M) **Acc No.** 126774 **DOS:** 10/25/2021

mainlinehealth systems, inc.

BOBB, ADAM
38 Y old Male, DOB: 0
Account Number: 126774

Home: 1
Guarantor: BOBB, ADAM Insurance: MEDICAID OF ARKANSAS Payer ID: 00185
PCP: Kerry Pennington Referring: Kerry Pennington
Appointment Facility: 18-Warren-Mainline Heatlh Systems, Inc

10/25/2021 Progress Notes: Kerry Pennington, MD

Current Medications
Taking
[illegible]

Past Medical History
[illegible]

Surgical History
[illegible]

Family History
[illegible]

Social History
[illegible]

### Reason for Appointment

1. pt WANTS TO ESTABLISH CARE -kspencerlpn97.3
2. Pt uses drug room-kspencerlpn
3. Pt due for hiv screening-kspencerlpn

### History of Present Illness

Depression Screening:

PHQ-2 (2015 Edition) Little interest or pleasure in doing things? Not at all, Feeling down, depressed, or hopeless? Not at all, Total Score 0.

Visit HPI:

This is a new patient. He has chronic pain in the right hip. He has lost his job and has no insurance. He has been followed by Dr. Pollard for the hip pain and needs an MRI, but the insurance company continued denial until he lost his job. He also has a history of hypertension and anxiety related to these issues. He has been told in the workup that he has arthritis of the hip and lumbar spine and apparently Dr. Pollard considers him having a torn labrum to be a very real possibility. He presents to establish care, for medicine adjustment, and hopefully to be able to get an MRI at some point. He was given physical therapy for his right hip,But he states that therapy made it much worse so he had to stop it.

### Vital Signs

Wt **197 lbs**, Ht 6ft3in, BMI **24.62 Index**, BP **150/92 mm Hg**, HR 110 /min, RR 20, Temp 97.3, SaO2 97.

### Examination

GENERAL EXAM:

Neural: Well-developed, well-nourished white male in no acute distress.
HEENT: Ears, nose, mouth, and throat were normal.
Neck: Supple without adenopathy or thyromegaly.
Chest: Clear to auscultation and palpation.
Heart: Regular rate and rhythm without murmur, gallop, or rub.
Abdomen: No masses, tenderness, or organomegaly.
Extremities: There is no edema.
Neurological: Cranial nerves II through XII and peripheral neurological intact.
Musculoskeletal: Moderate osteoarthritis of the hands. He has decreased range of motion in his right hip secondary to pain particularly

BOBB, ADAM **DOB:** (38 yo M) **Acc No.** 126774 **DOS:** 10/25/2021

your housing? No. What is the highest level of school that you have finished? High school diploma or GED. What is your current work situation? Unemployed and seeking work. In the past year, have you or any family members you live with been unable to get any of the following when it was really needed? Check all that apply. I do not have problems meeting my needs. Has lack of transportation kept you from medical appointments, meetings, work or from getting things needed for daily living? No. How often do you see or talk to people that you care about and feel close to? (For example, talking to friends on the phone, visiting friends or family, going to church or club meetings) More than 3 times a week. How stressed are you? Stress is when someone feels tense, nervous, anxious, or can't sleep at night because their mind is troubled. Not at all. In the past year have you spent more than 2 nights in a row in a jail, prison, detention center, or juvenile correctional facility? No. Are you a refugee? No. What country are you from? United States. Do you feel physically and emotionally safe where you currently live? Yes. In the past year, have you been afraid of your partner or ex-partner? No. PRAPARE Score: [illegible]
GAD-7 Anxiety: yes. Feeling nervous, anxious or on edge? [illegible] Not being able to stop or control worrying? [illegible] Worrying too much about different things? [illegible] Trouble relaxing? [illegible] Being so restless that it is hard to sit still? [illegible] Becoming easily annoyed or irritable? [illegible] Feeling afraid as if something awful might happen? [illegible] Total Score: [illegible] Interpretation: [illegible]
Alcohol Screening: yes. [illegible]
Bipolar Screening: yes. [illegible]

with internal rotation. There is tenderness to palpation anteriorly at the hip. There is moderate stiffness of the lumbar spine.
Skin: No new lesions or rashes.
Psych: Moderate anxiety.

### Assessments

1. Essential hypertension - I10 (Primary)
2. Chronic anxiety - F41.9
3. Pain in right hip - M25.551
4. Other chronic pain - G89.29
5. Spondylosis of lumbar region without myelopathy or radiculopathy - M47.816
6. Primary osteoarthritis of right hip - M16.11

### Treatment

**1. Essential hypertension**
Notes: Continue a low-salt diet and current medication.He had lab this summer that was normal.

**2. Chronic anxiety**
Notes: Increase duloxetine to 2 a day, 30 mg each.

**3. Pain in right hip**
Notes: Add ibuprofen 600 3 times a day and tramadol 50 every 6 hours when necessary. We will see if we can get him set up with UA MS.

**4. Spondylosis of lumbar region without myelopathy or radiculopathy**
Notes: Add ibuprofen 600 3 times a dayy and he has cyclobenzaprine to take at bedtime.

**5. Primary osteoarthritis of right hip**
Notes: Ibuprofen 600 3 times a day.

**6. Others**
Start Ibuprofen Tablet, 600 MG, Take 1 tablet with food, Orally, 3 times a day for arthritis and pain, 30 days, 90 Tablet, Refills 2
Start traMADol HCl Tablet, 50 MG, Take 1 tablet, Orally, Every 6 hours as needed for pain, 7 days, 28 Tablet, Refills 2, Notes: pdmp checked

### Preventive Medicine

NUTRITION COUNSELING: Weight management: BMI Management Plan: Yes, BMI Management Plan: Yes, Counseling for nutrition provided Yes, Counseling for physical activity provided Yes.
CARE MANAGEMENT: Treatment Goals: Established/Updated treatment goals: Yes Blood pressure less than 140/90, Condition: Stable; continue current treatment plan as directed, Has patient met treatment goals? Yes Patient instructed to maintain current treatment goals and self management plan., Self Management Goals/Plan: Yes Take medications as directed, SMG/Action Plan with Healthy Living sheet given to patient Yes, Level of Confidence to meet goal per patient: 8, Additional Care Management Support needed? No No additional care support needed., Additional Resources Provided: Yes Blood pressure log,

BOBB, ADAM **DOB:** (38 yo M) **Acc No.** 126774 **DOS:** 10/25/2021

Have you ever had a period lasting several days or longer when most of the time you were so irritable or grouchy that you either started arguments, shouted at people or hit people? No.
Depression Screening Completed: yes, Spencer, Kristy [illegible] PM >, PHQ9.
Pre-Visit Planning Completed: yes, Spencer, Kristy [illegible] PM >, Yes.
Smoking: yes, Spencer, Kristy [illegible] PM >, YES.
Recreational drug use: yes, Spencer, Kristy [illegible] PM >, Denies.
Alcohol: yes, Spencer, Kristy [illegible] PM > yes.
SOGI Data: yes, Sexual Orientation: Straight (Not Lesbian or Gay), Gender Identity: Male, Date Taken/Updated: [illegible].
Learning Assessment: yes, Completed: [illegible], Hearing problems: No, Vision problems: No, Reading problems: No, Writing Problems: No, Highest Education completed: 11th grade, Health Literacy Screening completed: No.
Dental Home: yes, Dental visit within the last year?: No.
Household/Environmental Factors: yes, Lives with: spouse, children.
Caffeine: yes, frequency, Spencer, Kristy [illegible] PM >, Soda, 1 cup/day.
Exercise: yes, Spencer, Kristy [illegible] PM >, Per Age.
Travel outside U.S: yes, Spencer, Kristy [illegible] PM >, No.
Sexually active: yes, Spencer, Kristy [illegible] PM >, Yes.
Herbal & OTC medications: yes, Spencer, Kristy [illegible] PM >, None.
Advance Directive: yes, Spencer, Kristy [illegible] PM >, No.

Allergies
Sulfa Antibiotics: swelling - Allergy - Criticality High - Onset Date [illegible]

Hospitalization/Major Diagnostic Procedure
see above

Review of Systems
Psychiatry:
Crying NO. Nervous NO.
Paranoid NO. Concentration trouble NO.
Insomnia NO.
CARDIOLOGY:
Patient denies chest pain, orthopnea, palpitations, dyspnea on exertion, paroxysmal

DASH/low sodium diet, Barriers to reaching treatment and/or self management goals identified: No, Care Plan given to Patient/Family/Caregiver Yes, Review/Renew Care Plan: every 6 months or PRN. Medication Management Barriers to Medication Adherence: No, Education provided about medications including NEW: Yes Verbalized instructions for taking medications, Verbalized potential side effects and drug interactions, Verbalized consequence of not taking medications, Verbalized medication education: when, how much, how often, Patient states understanding of medication regimen: Yes.

### Visit Codes

99203 Office Visit, New Pt., Level 3.

### Follow Up

3 Months,prn

### Care Plan Details

Electronically signed by Kerry Pennington , MD on 10/30/2021 at 04:19 PM CDT

Sign off status: Completed

18-Warren-Mainline Heatlh Systems, Inc
1012 E Church St
STE B
Warren, AR 716713530
Tel: 870-226-6786
Fax: 870-226-7925



Note generated by eClinicalWorks EMR/PM Software (www.eClinicalWorks.com)



PAGE 11/29 * RCVD AT 9/29/2022 6:43:09 PM [Eastern Daylight Time] * SVR:VA1PWFAX401/2 * DNIS:8004624660 * CSID: * ANI:8434712550 * DURATION (mm-ss):32-38

BOBB, ADAM **DOB:** (38 yo M) **Acc No.** 126774 **DOS:** 10/25/2021

nocturnal dyspnea.

-CONSTITUTIONAL:

Patient denies fatigue , fever , weakness , weight gain , weight loss.

-ENDOCRINOLOGY:

Patient denies cold intolerance , excessive sweating , excessive thirst , hair changes , heat intolerance , weight gain , , weight loss.

-ENT:

no Rhinorrhea, no Sinus pain, no Sore throat.

-GASTROENTEROLOGY:

no Constipation, no Diarrhea, no Indigestion, no Nausea, no Vomiting.

-MUSCULOSKELETAL:

muscle spasms no, Patient complaining of R hip pain , no Arthritis, no Back pain, no Joint stiffness.

-NEUROLOGY:

lightheaded no, numbness no, Convulsions no, no Headache, no Vertigo.

-RESPIRATORY:

no Cough, no Hemoptysis, no Shortness of breath, no Wheezing.

-SKIN:

Rashes No, Itching No, Burning/Stinging No.

-UROLOGY:

no Dysuria, no Nocturia, no Urinary frequency.

---

BOBB, ADAM **DOB:** (38 yo M) **Acc No.** 126774 **DOS:** 03/08/2022

mainlinehealth systems, inc.

BOBB, ADAM
38 Y old Male, DOB:
Account Number: 126774
Home:
Guarantor: BOBB, ADAM Insurance: MEDICAID OF ARKANSAS Payer ID: 00185
PCP: Kerry Pennington Referring: Kerry Pennington
Appointment Facility: 18-Warren-Mainline Heatlh Systems, Inc

03/08/2022 Progress Notes: Kerry Pennington, MD

### Current Medications

Taking

- tiZANidine HCl 4 MG Tablet 1 tablet as needed Orally Three times a day
- Hydrocodone-Acetaminophen 5-325 MG Tablet 1 tablet q4-6h PRN for pain Orally
- amLODIPine Besylate 10 MG Tablet 1 tablet Orally Once a day
- hydroCHLOROthiazide 12.5 MG Tablet 1 tablet in the morning Orally Once a day
- DULoxetine HCl 30 MG Capsule Delayed Release Particles 1 capsule Orally Once a day, Notes: dose increase [discontinued]
- Meloxicam 15 MG Tablet 1 tablet Orally Once a day
- Acetaminophen-Codeine #3 300-30 MG Tablet 1 tablet as needed Orally three times daily prn
- Cyclobenzaprine HCl 5 MG Tablet 1 tablet at bedtime as needed Orally Once a day
- traMADol HCl 50 MG Tablet Take 1 tablet Orally Every 6 hours as needed for pain, Notes: pdmp checked
- Acetaminophen-Codeine #3 300-30 MG Tablet Take 1 tablet Orally Every 6 hours as needed for pain, Notes: pdmp checked

Medication List reviewed and reconciled with the patient

### Past Medical History

Hypertension
Anger issue

### Surgical History

heart surgery at 2 years old

### Family History

Father: unknown
Mother: alive, diagnosed with Unspecified essential hypertension, Diabetes mellitus without mention of

### Reason for Appointment

1. consultation, FILL OUT PAPER WORK FOR SHORT TERM DISABILITY AGRICE MA
2. DUE FOR HIV AGRICE ,Ma
3. DRUG ROOM PB AGRICE ,MA
4. GAD7 SCORE 16 SEVERE ANXIETY , PHQ9 SCORE 19 MODERATELY SEVERE AGRICE MA

### History of Present Illness

Depression Screening:

PHQ-2 (2015 Edition) Little interest or pleasure in doing things? Nearly every day, Feeling down, depressed, or hopeless? Several days, Total Score 4. PHQ-9 Little interest or pleasure in doing things Nearly every day, Feeling down, depressed, or hopeless Several days, Trouble falling or staying asleep, or sleeping too much Nearly every day, Feeling tired or having little energy Nearly every day, Poor appetite or overeating Nearly every day, Feeling bad about yourself-or that you are a failure or have let yourself or your family down Nearly every day, Trouble concentrating on things, such as reading the newspaper or watching television Several days, Moving or speaking so slowly that other people could have noticed. Or the opposite- being so fidgety or restless that you have been moving around a lot more than usual More than half the days, Thoughts that you would be better off dead, or of hurting yourself in some way? Not at all, Total Score: 19, Interpretation Moderately severe depression.

Visit HPI:

This patient is follow-up for chronic right hip pain secondary to a labral tear as well as chronic low back pain and chronic cervical spine pain. he is being treated for his neck and back discomfort at the pain clinic. He is seeing orthopedic surgery at UAMS and they are planning on labral surgery in the future.He has had steroid injections in his neck which have helped. He continues to have pain requiring hydrocodone in the hip and lower back. He needs disability papers completed.

### Vital Signs

Wt **200.4 lbs**, Ht 75 in, BMI 25.05 Index, BP 155/92 mm Hg, HR 102 /min, RR 20, Temp 97.7, SaO2 99.

### Examination

GENERAL EXAM:



Note generated by eClinicalWorks EMR/PM Software (www.eClinicalWorks.com)



PAGE 13/29 * RCVD AT 9/29/2022 6:43:09 PM [Eastern Daylight Time] * SVR:VA1PWFAX401/2 * DNIS:8004624660 * CSID: * ANI:8434712550 * DURATION (mm-ss):32-38

[illegible]

General:Thin white male who is awake and alert and in no acute distress.

Neck: Supple without adenopathy or thyromegaly. There is decreased range of motion bilaterally with tenderness to palpation in the medial trapezius bilaterally that goes up into the paraspinous muscles of the neck itself.

Chest: Clear to auscultation and palpation.

Heart: Regular rate and rhythm without murmur, gallop, or rub.

Musculoskeletal: There is pain with internal and external rotation of the right hip. Both knees show mild stiffness bilaterally. There is moderate tenderness in the right SI joint as well as the lumbar spiue midline. There is mild tenderness in the left SI joint. Reflexes are 1+ and 1+ bilaterally.

Neurological: Cranial nerves II through XII and peripheral neurological are intact.

## Assessments

1. Tear of right acetabular labrum, subsequent encounter - S73.191D (Primary)
2. Spondylosis without myelopathy or radiculopathy, cervical region - M47.812
3. Spondylosis without myelopathy or radiculopathy, lumbar region - M47.816
4. Essential hypertension - I10

## Treatment

**1. Tear of right acetabular labrum, subsequent encounter**

Continue tiZANidine HCl Tablet, 4 MG, 1 tablet as needed, Orally, Three times a day

Continue Hydrocodone-Acetaminophen Tablet, 5-325 MG, 1 tablet q4-6h PRN for pain, Orally

Notes: He should continue follow-up with orthopedics at U AMS. Continue follow with pain clinic for pain control. Forms are completed for long-term disability.

**2. Spondylosis without myelopathy or radiculopathy, cervical region**

Notes: Continue tizanidine 4 mg at bedtime and 3 times a day when necessary. Continue follow-up with the pain clinic.

**3. Spondylosis without myelopathy or radiculopathy, lumbar region**

Notes: Continue tizanidine 4 mg at bedtime and 3 times a day when necessary as well as follow-up with the paiu clinic.

**4. Essential hypertension**

Refill amLODIPine Besylate Tablet, 10 MG, 1 tablet, Orally, Once a day, 30 day(s), 30 Tablet, Refills 3

Refill hydroCHLOROthiazide Tablet, 12.5 MG, 1 tablet in the morning, Orally, Once a day, 30 day(s), 30 Tablet, Refills 3

Notes: His blood pressure is elevated today. He is advised that he must take his medications as prescribed and follow a low salt diet. He needs to return in 2 weeks for BP check. RJonesLPN, 3/9/22.

**5. Others**

BOBB, ADAM **DOB:** (38 yo M) **Acc No.** 126774 **DOS:** 03/08/2022

[illegible]

Refill DULoxetine HCl Capsule Delayed Release Particles, 30 MG, 3 capsule, Orally, Once a day, 30 day(s), 90 Capsule, Refills 5, Notes: dose increase

### Preventive Medicine

NUTRITION COUNSELING: Weight management: Counseling for nutrition provided Yes, Counseling for physical activity provided Yes Exercise 30 minutes a day at least 5 days a week, as tolerated, then increase., BMI Management Plan: Yes Exercise daily 30 minutes & water intake to decrease BMI, Counseling for nutrition provided Yes Well balance diet consisting of lean meats, fresh fruits and vegetables, low fat milk and cheeses., Counseling for physical activity provided Yes 60 minutes physical activity most days, BMI Management Plan: Yes, BMI Management Plan: Yes, Counseling for nutrition provided Yes Well balance diet consisting of lean meats, fresh fruits and vegetables, low fat milk and cheeses., Counseling for physical activity provided Yes 60 minutes physical activity most days, BMI Management Plan: Yes, BMI Management Plan: Yes, Counseling for nutrition provided Yes, Counseling for physical activity provided Yes. Education Provided: .
CARE MANAGEMENT: Treatment Goals: Established/Updated treatment goals: Yes Blood pressure less than 140/90, Condition: Stable; continue current treatment plan as directed, Has patient met treatment goals? Yes Patient instructed to maintain current treatment goals and self management plan., Self Management Goals/Plan: Yes Take medications as directed, SMG/Action Plan with Healthy Living sheet given to patient Yes, Level of Confidence to meet goal per patient: 8, Additional Care Management Support needed? No No additional care support needed., Additional Resources Provided: Yes Blood pressure log, DASH/low sodium diet, Barriers to reaching treatment and/or self management goals identified: No, Care Plan given to Patient/Family/Caregiver Yes, Review/Renew Care Plan: every 6 months or PRN, Established/Updated treatment goals: Yes Blood pressure less than 140/90, Condition: Stable; continue current treatment plan as directed, Has patient met treatment goals? Yes Patient instructed to maintain current treatment goals and self management plan., Self Management Goals/Plan: Yes Take medications as directed, SMG/Action Plan with Healthy Living sheet given to patient Yes, Level of Confidence to meet goal per patient: 8, Additional Care Management Support needed? No No additional care support needed., Additional Resources Provided: Yes Blood pressure log, DASH/low sodium diet, Barriers to reaching treatment and/or self management goals identified: No, Care Plan given to Patient/Family/Caregiver Yes, Review/Renew Care Plan: every 6 months or PRN, Established/Updated treatment goals: Yes Maintain physical activity and social interaction, Condition: Stable; continue current treatment plan as directed, Has patient met treatment goals? Yes, Self Management Goals/Plan: Yes Take medications as directed, Stay Connected to family/friends- Depression, SMG/Action Plan with Healthy Living sheet given to patient Yes, Level of Confidence to meet goal per patient: 8, Additional Care Management Support needed? No No additional care support needed., Additional Resources Provided: Yes Daily Symptom log, Barriers to reaching treatment and/or self management goals identified: No, Care Plan given to Patient/Family/Caregiver Yes, Review/Renew Care Plan: every 6 months or PRN. Medication

BOBB, ADAM **DOB:** (38 yo M) **Acc No.** 126774 **DOS:** 03/08/2022

Criticality High - Onset Date [illegible]

[illegible]

Diagnostic Procedure
see above

Review of Systems
Psychiatry:
Crying no. Nervous no.
Paranoid no. Concentration trouble no.
Insomnia no.
CARDIOLOGY:
Patient denies chest pain, orthopnea, palpitations, dyspnea on exertion, paroxysmal nocturnal dyspnea.
CONSTITUTIONAL:
Patient denies fatigue, fever, weakness, weight gain, weight loss.
ENDOCRINOLOGY:
Patient denies cold intolerance, excessive sweating, excessive thirst, hair changes, heat intolerance, weight gain, , weight loss.
ENT:
no Nosebleeds. no Sinus pain. no Sore throat.
GASTROENTEROLOGY:
no Constipation. no Diarrhea. no Indigestion. no Nausea. no Vomiting.
MUSCULOSKELETAL:
muscle spasms no. no Arthritis. no Back pain. no Joint stiffness.
NEUROLOGY:
lightheaded no. numbness no. Convulsions no. no Headache. no Vertigo.
RESPIRATORY:
no Cough. no Hemoptysis. no Shortness of breath. no Wheezing.
SKIN:
Redness No. Itching No. Burning/Stinging No.
UROLOGY:
no Dysuria. no Nocturia. no Urinary frequency.

Management Barriers to Medication Adherence: No, Education provided about medications including NEW: Yes Verbalized instructions for taking medications, Verbalized potential side effects and drug interactions, Verbalized consequence of not taking medications, Verbalized medication education: when, how much, how often, Patient states understanding of medication regimen: Yes, Barriers to Medication Adherence:
No, Education provided about medications including NEW: Yes Verbalized instructions for taking medications, Verbalized potential side effects and drug interactions, Verbalized consequence of not taking medications, Verbalized medication education: when, how much, how often, Patient states understanding of medication regimen: Yes, Patient states understanding of medication regimen: Yes, Education provided about medications including NEW: Yes Verbalized instructions for taking medications, Verbalized potential side effects and drug interactions, Verbalized consequence of not taking medications, Barriers to Medication Adherence: No.
COUNSELING: Communication to Patient Counseling for nutrition provided Yes, Counseling for physical activity provided Yes. Take ALL medications as prescribed .

### Procedure Codes

T1015 FQHC-99213, Modifiers: U5
3077F SYST BP = 140 MM HG6 IT
3080F DIAST BP >/= 90 MM HG

### Follow Up

prn,4 Months

### Care Plan Details

Electronically signed by Kerry Pennington , MD on 03/10/2022 at 07:53 AM CST

Sign off status: Completed

18-Warren-Mainline Heatlh Systems, Inc
1012 E Church St
STE B
Warren, AR 716713530



PAGE 16/29 * RCVD AT 9/29/2022 6:43:09 PM [Eastern Daylight Time] * SVR:VA1PWFAX401/2 * DNIS:8004624660 * CSID: * ANI:8434712550 * DURATION (mm-ss):32-38

BOBB, ADAM **DOB:** (38 yo M) **Acc No.** 126774 **DOS:** 03/08/2022

[redacted]

Tel: 870-226-6786
Fax: 870-226-7925

---

Progress Note: Kerry Pennington, MD 03/08/2022

*Note generated by eClinicalWorks EMR/PM Software (www.eClinicalWorks.com)*

BOBB, ADAM **DOB:** (39 yo M) **Acc No.** 126774 **DOS:** 08/16/2022

**Patient:** BOBB, ADAM
**Account Number:** 126774
**DOB:** **Age:** 39 Y **Sex:** Male
**Phone:**
**Address:**
**Pcp:** Kerry Pennington

**Provider:** Scott Allison Johnson, LCSW
**Date:** 08/16/2022

## Subjective:

**Chief Complaints:**

1. BH FU. 2. Client still has symptoms of anxiety, negative cognitions.

**HPI:**

Referral:

PCP: Referral Source: self-referral PCP is Dr. Pennington. Duration: approximately 45 minutes.

Subjective:

Patient Reports: Client and BHC worked to continue to build rapport. Client stated he is still having anxiety. BHC and client reviewed CBT and discussed how reframing his thinking could help with negative cognitions. He participated well with exercise and examples provided and was an active part during this time. Client was show a worksheet on negative cognitions and this was gone over with him, he understood. .

BHC Assessment:

Focus: Intervention Focus: engaged pt. in cognitive restructuring, BHC used Soctratic Questioning to gently challenge irrational thoughts, BHC stressed the importance of prioritizing self-care., BHC spent time building rapport with pt, BHC explored with pt. stressors, changes, conflict, etc. Modality: Intervention Focus: Reflective Listening, Supportive Therapy, problem solving techniques, solution focus approach, Narrative Therapy.

Treatment Plan:

Goal 1: Acknowledge the depression verbally and resolve its causes, leading to normalization of the emotional state. Outcome 1: New. Objective 1A: Learn new ways to cope with anxiety and depression through activity and implementation of stress reducing techniques.

MSE:

Observation/Attitude: Pleasant , Cooperative , Anxious. Affect: Appropriate to mood. Mood: Anxious. Appearance: Appropriate , casual. Disturbance of Perception: Denied. SI/HI: Denied. Motor Activity: Restless. Speech/Communication: Normal rate/volume. Thought Content: Logical/Coherent. Thought Process: Goal-Oriented. Insight: Fair. Judgement: Fair.

Assessment:

Severity of Symptoms: Moderate.

Screening Tools:

Utilized: None Today.

Plan:

BHC will: BHC will monitor and modify treatment as required.. Patient will: Pt will consistently participate in scheduled BH TX sessions.. PCP will continue to evaluate and treat medical and/or mental health issues as needed. Case Manager will: contact pt per f/u appts.

Depression Screening:

PHQ-2 (2015 Edition) Little interest or pleasure in doing things? Several days, Feeling down, depressed, or hopeless? More than half the days, Total Score 3. PHQ-9 Little interest or pleasure in doing things Several days, Feeling down, depressed, or hopeless More than half the days, Trouble falling or staying asleep, or sleeping too much Several days, Feeling tired or having little energy Several days, Poor appetite or overeating More than half the days, Feeling bad about yourself-or that you are a failure or have let yourself or your family down Several days, Trouble concentrating on things, such as reading the newspaper or watching television Not at all, Moving or speaking so slowly that other people could have noticed. Or the opposite- being so fidgety or restless that you have been moving around a lot more than usual Not at all, Thoughts that you would be better off dead, or of hurting yourself in some way? Not at all, Total Score: 8, Interpretation Mild Depression.

**Medical History:**

BOBB, ADAM **DOB:** (39 yo M) **Acc No.** 126774 **DOS:** 08/16/2022

**Social History:** Tobacco Use Screening: yes Are you a: current smoker, When did you start smoking? 1/1/2000. PRAPARE: yes Date Completed/Updated: 08/16/2022, What is your current housing situation? I have housing, Are you worried about losing your housing? No, What is the highest level of school that you have finished? High school diploma or GED, What is your current work situation? Unemployed and seeking work, In the past year, have you or any family members you live with been unable to get any of the following when it was really needed? Check all that apply I do not have problems meeting my needs, Has lack of transportation kept you from medical appointments, meetings, work or from getting things needed for daily living? No, How often do you see or talk to people that you care about and feel close to? (For example: talking to friends on the phone, visiting friends or family, going to church or club meetings) More than 5 times a week, How stressed are you? Stress is when someone feels tense, nervous, anxious, or can't sleep at night because their mind is troubled Not at all, In the past year have you spent more than 2 nights in a row in a jail, prison, detention center, or juvenile correctional facility? Yes, Are you a refugee? No, What country are you from? United States, Do you feel physically and emotionally safe where you currently live? Yes, In the past year, have you been afraid of your partner or ex-partner? No, PRAPARE Score: 5. GAD7- Anxiety: yes Feeling nervous, anxious or on edge? 1- Several days, Not being able to stop or control worrying? 2- More than half the days, Worrying too much about different things? 2- More than half the days, Trouble relaxing? 2- More than half the days, Being so restless that it is hard to sit still? 3- Nearly every day, Becoming easily annoyed or irritable? 2- More than half the days was before med,but ok now, Feeling afraid as if something awful might happen? 0- Not at all, Total Score: 12, Intepretation: 10-14: Moderate (Notify BH) Established w/ Scott Allison Johnson, LCSW, Completed: 08/16/2022. Alcohol Screening: yes Did you have a drink containing alcohol in the past year? Yes, How often did you have a drink containing alcohol in the past year? Two to three times per week (3 points), How many drinks did you have on a typical day when you were drinking in the past year? 3 or 4 (1 point), How often did you have six or more drinks on one occasion in the past year? Monthly (2 points), Points 6, Interpretation Positive. Bipolar Screening: yes 1. Some people have periods lasting several days when they feel much more excited and full of energy than usual. Their minds go too fast. They talk a lot. They are very restless or unable to sit still and they sometimes do things that are unusual for them, such as driving too fast or spending too much money. Have you ever had a period like this lasting several days or longer? No, 2. Have you ever had a period lasting several days or longer when most of the time you were so irritable or grouchy that you either started arguments, shouted at people or hit people? No. Depression Screening Completed: yes, Streeter, Katy 08/16/2022 03:53:59 PM CDT > , PHQ2, PHQ9. Sexual Hx Had sex in the last 12 months (vaginal, oral, or anal)? Yes, with Women only, Use protection? No, Prevention Strategies discussed: Other. Pre-Visit Planning Completed: yes, Streeter, Katy 08/16/2022 03:54:12 PM CDT > , Yes:. Smoking: yes, Streeter, Katy 08/16/2022 03:54:16 PM CDT > , , YES. Recreational drug use: yes, Streeter, Katy 08/16/2022 03:54:20 PM CDT > , , Denies. Alcohol: yes, Streeter, Katy 08/16/2022 03:54:24 PM CDT > , Drinks/Week, Beer, Liquor, 6, 5. SO/GI Data: yes Sexual Orientation: Straight (Not Lesbian or Gay), Gender Identity: Male, Date Taken/Updated: 08/16/2022. Learning Assessment: yes Completed: 08/16/2022, Hearing problems: No, Vision problems: No, Reading problems: No, Writing Problems: No, Highest Education completed: 12th grade, Health Literacy Screening completed: No. Dental Home: yes Dental visit within the last year? No. Household/Enviromental Factors: yes Lives with: spouse, children. Caffeine: yes, Streeter, Katy 08/16/2022 03:54:46 PM CDT > , frequency:, Soda, 1 cup/day. Exercise: yes, Streeter, Katy 08/16/2022 03:54:50 PM CDT > , Per Age. Travel outside US: yes, Streeter, Katy 08/16/2022 03:54:53 PM CDT > , No. Sexually active: yes, Streeter, Katy 08/16/2022 03:54:58 PM CDT > , >, , Yes. Herbal & OTC medications: yes, Streeter, Katy 08/16/2022 03:55:03 PM CDT > , , None. Advance Directive: yes, Streeter, Katy 08/16/2022 03:55:07 PM CDT > , No.
GAD7 SCORE 16 SEVERE ANXIETY AGRICE ,MA 03/08/2022.

## Objective:

## Assessment:

**Assessment:**

1. PTSD (post-traumatic stress disorder) - F43.10 (Primary)
2. MDD (major depressive disorder), recurrent episode, moderate - F33.1
3. GAD (generalized anxiety disorder) - F41.1

## Plan:

**Procedure Codes:** 90834 PSYTX W PT 45 MINUTES

**Follow Up:** 3-4 Weeks

BOBB, ADAM **DOB:** (39 yo M) **Acc No.** 126774 **DOS:** 08/16/2022

### Billing Information:

**Visit Code:**
**Procedure Codes:**
90834 PSYTX W PT 45 MINUTES.

### Care Plan Details

Scott Allison Johnson, LCSW

**Electronically signed by Scott Allison Johnson on 09/06/2022 at 09:13 AM CDT**
**Sign off status: Completed**

---

**Provider: Scott Allison Johnson, LCSW** **Date: 08/16/2022**

BOBB, ADAM **DOB:** (38 yo M) **Acc No.** 126774 **DOS:** 06/22/2022

**Patient:** BOBB, ADAM
**Account Number:** 126774
**DOB:** **Age:** 38 Y **Sex:** Male
**Phone:**
**Address:**
**Pcp:** Kerry Pennington

**Provider:** Scott Allison Johnson, LCSW
**Date:** 06/22/2022

## Subjective:

**Chief Complaints:**

1. BH FU. 2. Recent arrest, legal conflicts, increased anxiety.

**HPI:**

Referral:

PCP: Referral Source: self-referral PCP is Dr. Pennington. Duration: approximately 60 minutes.

Subjective:

Patient Reports: Client stated a plethora of "bad" events have occurred since last session. He stated "We went mud riding and backed into the neighbors cattle fence it happened in Nov 2021. My neighbor figured it out came on my property cussed out my son and demanded client to pay $150 right then." Client stated "get off my property and take me to small claims court." Client didn't hear anything until last month when police showed up with a warrant for a misdemeanor and arrested client and took to jail. Warrant stated criminal mischief 1st degree. Client was released without bail needing to be posted.

Client gets an attorney and attorney stated that Tim Reed was a witness to incident of fence. Then client "got drunk" and I went his home, cussed his brother (Tyler) out then went home after stating he would "kick his ass". Then 8 days later sheriffs dept calls him while client is in Jacksonville at pain clinic and asked him to come by police station when in town. Shows up, he has 2 felonies for terroristic threatening and intimidating a witness. They kept client in jail for 2 days until wife could bond him out.

Judge has ordered no alcohol, no marijuana

August 15 & 19 court dates. Luke Zurzinski is attorney.

BHC utilized active listening. Client and wife processed thoughts and feelings. Client stated that he has anxiety about going outside the home, fearing if he "looks in neighbors direction" that he will be arrested again. Client is upset because all of this is based off of hear-say. BHC and client discussed coping skills such as deep breathing and distraction techniques. Also discussed negative cognitions and not jumping to the worst case scenario. He understood and stated he would work on this. .

BHC Assessment:

Focus: Intervention Focus: engaged pt. in cognitive restructuring, BHC used Soctratic Questioning to gently challenge irrational thoughts, BHC stressed the importance of prioritizing self-care., BHC spent time building rapport with pt, BHC explored with pt. stressors, changes, conflict, etc. Modality: Intervention Focus: Reflective Listening, Supportive Therapy, problem solving techniques, solution focus approach, Narrative Therapy.

Treatment Plan:

Goal 1: Acknowledge the depression verbally and resolve its causes, leading to normalization of the emotional state. Outcome 1: New. Objective 1A: Learn new ways to cope with anxiety and depression through activity and implementation of stress reducing techniques.

MSE:

Observation/Attitude: Pleasant , Cooperative , Anxious. Affect: Appropriate to mood. Mood: Anxious. Appearance: Appropriate , casual. Disturbance of Perception: Denied. SI/HI: Denied. Motor Activity: Restless. Speech/Communication: Normal rate/volume. Thought Content: Logical/Coherent. Thought Process: Goal-Oriented. Insight: Fair. Judgement: Fair.

Assessment:

BOBB, ADAM **DOB:** (38 yo M) **Acc No.** 126774 **DOS:** 06/22/2022

Severity of Symptoms: Moderate.
Screening Tools:
Utilized: None Today.
Plan:
BHC will: BHC will monitor and modify treatment as required.. Patient will: Pt will consistently participate in scheduled BH TX sessions.. PCP will continue to evaluate and treat medical and/or mental health issues as needed. Case Manager will: contact pt per f/u appts.
Depression Screening:
PHQ-2 (2015 Edition) Little interest or pleasure in doing things? More than half the days, Feeling down, depressed, or hopeless? More than half the days, Total Score 4. PHQ-9 Little interest or pleasure in doing things More than half the days, Feeling down, depressed, or hopeless More than half the days, Trouble falling or staying asleep, or sleeping too much More than half the days, Feeling tired or having little energy More than half the days, Poor appetite or overeating More than half the days, Feeling bad about yourself-or that you are a failure or have let yourself or your family down More than half the days, Trouble concentrating on things, such as reading the newspaper or watching television More than half the days, Moving or speaking so slowly that other people could have noticed. Or the opposite- being so fidgety or restless that you have been moving around a lot more than usual Several days, Thoughts that you would be better off dead, or of hurting yourself in some way? Several days(Consider Suicide Assessment Risk), Total Score: 16, Interpretation Moderately severe depression.

**Medical History:**

**Social History:** Tobacco Use Screening: yes Are you a: current smoker, When did you start smoking? 1/1/2000. PRAPARE: yes Date Completed/Updated: 06/22/2022, What is your current housing situation? I have housing, Are you worried about losing your housing? No, What is the highest level of school that you have finished? High school diploma or GED, What is your current work situation? Unemployed and seeking work, In the past year, have you or any family members you live with been unable to get any of the following when it was really needed? Check all that apply I do not have problems meeting my needs, Has lack of transportation kept you from medical appointments, meetings, work or from getting things needed for daily living? No, How often do you see or talk to people that you care about and feel close to? (For example: talking to friends on the phone, visiting friends or family, going to church or club meetings) More than 5 times a week, How stressed are you? Stress is when someone feels tense, nervous, anxious, or can't sleep at night because their mind is troubled Not at all, In the past year have you spent more than 2 nights in a row in a jail, prison, detention center, or juvenile correctional facility? No, Are you a refugee? No, What country are you from? United States, Do you feel physically and emotionally safe where you currently live? Yes, In the past year, have you been afraid of your partner or ex-partner? No, PRAPARE Score: 4. GAD7- Anxiety: yes Feeling nervous, anxious or on edge? 3- Nearly every day, Not being able to stop or control worrying? 2- More than half the days, Worrying too much about different things? 2- More than half the days, Trouble relaxing? 3- Nearly every day, Being so restless that it is hard to sit still? 3- Nearly every day, Becoming easily annoyed or irritable? 3- Nearly ever day was before med,but ok now, Feeling afraid as if something awful might happen? 0- Not at all, Total Score: 16, Intepretation: 15+: Severe (Notify BH) Established w/ Scott Allison Johnson, LCSW, Completed: 06/22/2022. Alcohol Screening: yes Did you have a drink containing alcohol in the past year? Yes, How often did you have a drink containing alcohol in the past year? Two to three times per week (3 points), How many drinks did you have on a typical day when you were drinking in the past year? 3 or 4 (1 point), How often did you have six or more drinks on one occasion in the past year? Monthly (2 points), Points 6, Interpretation Positive. Bipolar Screening: yes 1. Some people have periods lasting several days when they feel much more excited and full of energy than usual. Their minds go too fast. They talk a lot. They are very restless or unable to sit still and they sometimes do things that are unusual for them, such as driving too fast or spending too much money. Have you ever had a period like this lasting several days or longer? Yes, 2. Have you ever had a period lasting several days or longer when most of the time you were so irritable or grouchy that you either started arguments, shouted at people or hit people? Yes, 3. People who have episodes like this often have changes in their thinking and behavior at the same time, like being more talkative, needing very little sleep, being very restless, going on buying sprees, and behaving in many ways they would normally think inappropriate. Did you ever have any of these changes during your episodes of being excited and full of energy or very irritable or grouchy? Yes, 1. Were you so irritable that you either started arguments, shouted at people, or hit people? No, 2. Did you become so restless or fidgety that you paced up and down or couldn't stand still? No, 3. Did you do anything else that wasn't usual for you-like talking about things you would normally keep private or acting in ways that you would usually find embarrassing? No, 4. Did you try to do things that were impossible to do, like taking on large amounts of work? Yes, 5. Did you constantly keep changing your plans or activities? Yes, 6. Did you find it hard to keep your mind on what you were doing? Yes, 7. Did your thoughts seem to jump from one thing to another or race through your head so fast you couldn't keep track of them?

Yes, 8. Did you sleep far less than usual and still not get tired or sleepy? Yes, 9. Did you spend so much more money than usual that it caused you to have financial trouble? Yes. Depression Screening Completed: yes, Streeter, Katy 6/22/2022 05:13:25 PM >, , PHQ2, PHQ9. Sexual Hx Had sex in the last 12 months (vaginal, oral, or anal)? Yes, with Women only, Use protection? No, Prevention Strategies discussed: Other. Pre-Visit Planning Completed: yes, Streeter, Katy 6/22/2022 05:13:42 PM >, , Yes:. Smoking: yes, Streeter, Katy 6/22/2022 05:13:47 PM >, , YES. Recreational drug use: yes, Streeter, Katy 6/22/2022 05:13:51 PM >, , Denies. Alcohol: yes, Streeter, Katy 6/22/2022 05:13:55 PM >, , Drinks/Week, Beer, Liquor, 6, 5. SO/GI Data: yes Sexual Orientation: Straight (Not Lesbian or Gay), Gender Identity: Male, Date Taken/Updated: 06/22/2022. Learning Assessment: yes Completed: 06/22/2022, Hearing problems: No, Vision problems: No, Reading problems: No, Writing Problems: No, Highest Education completed: 12th grade, Health Literacy Screening completed: No. Dental Home: yes Dental visit within the last year? No. Household/Enviromental Factors: yes Lives with: spouse, children. Caffeine: yes, Streeter, Katy 6/22/2022 05:14:33 PM >, , frequency:, Soda, 1 cup/day. Exercise: yes, Streeter, Katy 6/22/2022 05:14:37 PM >, Per Age. Travel outside US: yes, Streeter, Katy 6/22/2022 05:14:41 PM >, No. Sexually active: yes, Streeter, Katy 6/22/2022 05:14:45 PM >, , Yes. Herbal & OTC medications: yes, Streeter, Katy 6/22/2022 05:14:49 PM >, , None. Advance Directive: yes, Streeter, Katy 6/22/2022 05:14:54 PM >, No.
GAD7 SCORE 16 SEVERE ANXIETY AGRICE ,MA 03/08/2022.

**Medications:** Taking tiZANidine HCl 4 MG Tablet 1 tablet as needed Orally Three times a day, Taking Hydrocodone-Acetaminophen 5-325 MG Tablet 1 tablet q4-6h PRN for pain Orally , Taking amLODIPine Besylate 10 MG Tablet 1 tablet Orally Once a day, Taking hydroCHLOROthiazide 12.5 MG Tablet 1 tablet in the morning Orally Once a day, Taking DULoxetine HCl 30 MG Capsule Delayed Release Particles 3 capsule Orally Once a day, Notes: dose increase

### Objective:

### Assessment:

**Assessment:**

1. PTSD (post-traumatic stress disorder) - F43.10 (Primary)
2. MDD (major depressive disorder), recurrent episode, moderate - F33.1
3. GAD (generalized anxiety disorder) - F41.1

### Plan:

**Procedure Codes:** 90837 PSYTX W PT 60 MINUTES

**Follow Up:** 2 Weeks

### Billing Information:

**Visit Code:**
**Procedure Codes:**
90837 PSYTX W PT 60 MINUTES.

### Care Plan Details



**Electronically signed by Scott Allison Johnson , LCSW on 07/06/2022 at 12:45 AM CDT**
**Sign off status: Completed**

**Provider: Scott Allison Johnson, LCSW** **Date: 06/22/2022**

BOBB, ADAM **DOB:** (38 yo M) **Acc No.** 126774 **DOS:** 04/07/2022

**Patient:** BOBB, ADAM
**Account Number:** 126774
**DOB:**
870-461-0711
**Address:**
**Pcp:** Kerry Pennington

**Provider:** Scott Allison Johnson, LCSW
**Date:** 04/07/2022

## Subjective:

**Chief Complaints:**
1. BH NP. 2. Intake - depression, ptsd, gad.

**HPI:**

Referral:

PCP: Referral Source: self-referral PCP is Dr. Pennington. Duration: approximately 60 minutes.

Presenting Complaints:

Current Functioning: Patient: Adam Bobb
Referral from: self referral
Date: 04/07/2022

Screeners - scanned into BH file

Presenting Complaint/Problem:

Client is a 38-year-old married Caucasian male, 2 children. He has been married for +20 year to current wife.

Client presented wearing a t-shirt, blue jeans, long salt and pepper facial hair - beard, several earrings in each ear and wearing a hat. He also had on corrective lenses.

Client stated "I've done maintenance and mechanic work but I lost my job, I tore my labriam in my hip and I couldn't do the maintenance anymore and I can't mechanic that well either with my back and hip problems. I have had a lot of vehicle wrecks, a 4wheeler wreck, and I flipped a tractor pushing up some brush and there was a stump under it. My mood has changed, I'm moody, I want to be left alone. I feel bad that I can't provide from my family and I used to love to spoil my children. This happened about 1 year ago. I don't feel that I can defend myself and take care of the people I love, the past year has been rough." Client has issues in his back and his hip. He states he has difficulty sleep and profusely sweats in sleep.

He stated he had a "bad" ATV wreck several years ago (approximately 11 years ago). He stated that he was 4-wheeler riding with his wife "and some idiot was driving wreck less and stopped right in front of me, the 4-wheeler flipped on top of us, my wife stopped breathing and her heart stopped 3x between there and the hospital. She messed her knee up, I feel so bad, she was going back to school to do physical therapy and it ruined her life. While she was in the ER a policeman grabbed me the back of the neck and said he was taking me to prison. He charged me with DWI (client stated he had 3 beer that day and took a BAC at the hospital and passed the test) endangering a minor, and if she died they were going to charge me with manslaughter. They dropped all the charges but the child endangerment. The hospital we went to was where I worked, they told me I had to go to rehab because I was representing the hospital, I passed the BAC but the HR woman told everyone that I was in the ER drunk. I went to outpatient rehab for 6 months, was sober, and went 3x a week on Monday, Wednesday, and Friday. I don't and never had a drinking problem, but they (his job superiors at the hospital) I had to go to rehab and had to make a decision that day, or I was going to be fired. I also found out that day my wife had the wreck she was pregnant."

Client stated that he had a traumatic childhood, he saw his father brutally/physically assault his mother on several occasions. He saw her pushed into a glass coffee table and break several fingers. He

BOBB, ADAM **DOB:** (38 yo M) **Acc No.** 126774 **DOS:** 04/07/2022

stated "at 7 years old I pulled out a knife and threatened to stab him because he was hurting her and I thought he would kill her." I graduated from high school at 16 years old, a few weeks later I came home and all my stuff was on a trailer, he told me he didn't care where I went but I had to get the hell out of there." I bounced around, sold weed for a little while to get by, I saw people get shot, just some bad stuff I would like to forget at those crack houses, but I didn't mess with none of that stuff." Client stated that he used to smoke THC but denied doing so recently as "I don't have a card."

Previous therapy (outpatient/acute/rehab): none, except outpatient rehab - see presenting problem

Previous Diagnosis: ADHD - diagnosed as a child by PCP - took Ritalin when he was in grade school

Current Medications: Cymbalta 90 mg 3x daily - "it helps but I get that nervous irritated feeling."

Past Psychiatric Medications/effectiveness:

Wellbutrin "after taking it for three days I ended up in the psychiatric ward at JRMC, I was talking to things that weren't there, that is the first and last time that has happened."

Allergies: sulfur drugs and Silvadene burn cream

Anxiety/Depression: yes, both

ADHD: yes - previously diagnosed but BHC did not screen for today

Trauma (abuse history/sexual/physical/verbal): see presenting problem, reports physical and verbal abuse from father

Substance Use: uses nicotine and alcohol occasionally but states he does not drink in excess (several beers a day 11-14)

Legal Issues: endangering the welfare of a minor 11 years ago. He stated "when i was young i used to be in and out of jail all the time for fighting"

Education: graduated from high school and went to college to be a certified mechanic

Employment: unemployed due to health issues with hip and back

Interest/Hobbies: hunting and fishing and stated drinking

Family History of substance use: no known

Family history of mental illness: no known

Living History/current: currently lives with wife Nancy Bobb, 18 year old son, and 11 year old daughter

Relationship/Marriage/orientation: heterosexual, married for +20 years

Children: 2 children, one step daughter 24 years old

Siblings: none, he is an only child

Health Concerns: hip and back problems, he keeps "putting off surgery because I'm scared to death to be put to sleep" also reports having high blood pressure. 2 years old had heart surgery, one of his arteries didn't develop "I'm short one artery"

Sleep Problems: difficulty staying asleep - reports "lots" of sleep issues and sweats profusely in his sleep "wake up wringing wet"

Goal for therapy: "to see if I can get to feeling better and get back to normal, not worry, get out and about again."

Referrals for medication management: wants to continue to see PCP for medications at this time

Pharmacy: The drug room in Pine Bluff

_________Client reported the listed symptoms below on Current System Checklist_______-

Cognition: low intelligence, learning problems/comprehension struggles, memory difficulties

Attention: attention problems, forgetful

Psychosis: paranoia

Addictions: n/a

Anxiety: sweating, pounding heart/increased heart rate, shaking or trembling, avoidance of people/situations due to fear, constant worry that is uncontrollable, fear/worry of crowds/public places, chills or hot flashes, fear of

BOBB, ADAM **DOB:** (38 yo M) **Acc No.** 126774 **DOS:** 04/07/2022

social situations

Eating Behaviors: n/a

Obsessive/Compulsive Behaviors: n/a

Mood or Physical Changes: weight loss/gain, depressed moods, lack of pleasure/withdrawal from activities, excessive guilt, insomnia/oversleeping, feeling restless or slowed down, change in energy level (high/low)

Trauma: extreme startle response/jumpiness, irritability or increased aggression, history of trauma or abuse, fear related trauma or abuse, trauma reminders that cause distress, avoiding situations related to trauma, blocking out memories related to trauma, recurrent thoughts related to trauma, trauma-related nightmares

Adult Daily Living: difficulty managing budget/household income

Other Symptoms not listed: n/a

-

---Diagnosis---
PTSD
MDD
GAD

.

Treatment Plan:

Goal 1: Acknowledge the depression verbally and resolve its causes, leading to normalization of the emotional state. Outcome 1: New. Objective 1A: Learn new ways to cope with anxiety and depression through activity and implementation of stress reducing techniques.

BHC Assessment:

Focus: Intervention focus: BHC provided initial BH contract and evaluations., BHC provided consent forms., BHC reviewed with pt. confidentiality guidelines.. Modality: Intervention Focus: provided BH, consent, and evaluation forms.

Brief Risk Assessment:

Brief Risk Assessment: Have you ever made any suicidal statements or thoughts of hurting yourself or others? No, Do you have intent? No, Have you ever had a psychiatric hospitalization? Yes see presenting problem, it was after he tried a new medication (Wellbutrin) and went into psychosis after taking it for three days. It has never happened before or since that time several several years ago, Have you ever attempted suicide? No, Have you ever been engaged in self multilation? No, Do you have access to firearms/weapons or other means of injury? No, Have you ever made impulsive, reckless or dangerous decisions? No, Based upon the response given, will a Safety Plan be implemented? No.

MSE:

Observation/Attitude: Pleasant , Cooperative , Anxious. Affect: Appropriate to mood. Mood: Anxious. Appearance: Appropriate , casual. Disturbance of Perception: Denied. SI/HI: Denied. Motor Activity: Restless. Speech/Communication: Normal rate/volume. Thought Content: Logical/Coherent. Thought Process: Goal-Oriented. Insight: Fair. Judgement: Fair.

Screening Tools:

Utilized: to be scanned to BH folder in pt documents.

Diagnostic Impressions:

see assessment section below see assessment section below.

Screening Tools::

GAD-7 (Generalized Anxiety Disorder) Feeling nervous, anxious, or on edge? 3, Not being able to stop or control worrying? 3, Worrying too much about different things? 3, Trouble relaxing? 3, Being so restless that it's hard to sit still? 3, Becoming easilty annoyed or irritable? 3, Feeling afraid as if something awful might happen? 0, Score: 18, Interpretation: 15 +: Severe Anxiety 4/11/2022 KS. Beck Anxiety Inventory Numbness or tingling 3- Severly- it bothered me a lot, Feeling hot 3- Severly- it bothered me alot, Wobbliness in legs 3- Severly- it bothered me at lot, Unable to relax 3- Severly- it bothered me a lot, Fear of worst happening 0- Not at all, Dizzy or lightheaded 0- Not at all, Heart pounding/racing 3- Severly- it bothered me alot, Unsteady 3- Severly- it bothered me a lot, Terrified or afraid 0- Not at all, Nervous 2- Moderately- it wasn't pleasant at

BOBB, ADAM **DOB:** (38 yo M) **Acc No.** 126774 **DOS:** 04/07/2022

times, Feeling of choking 0- Not at all, Hands trembling 3- Severly- it bothered me a lot, Shaky/unsteady 3- Severly- it bothered me a lot, Difficulty in breathing 0- Not at all, Fear of dying 0- Not at all, Scared 0- Not at all, Indigestion 0- Not at all, Faint/ Lightheaded 0- Not at all, Face flushed 0- Not at all, Hot/cold sweats 3- Severly- it bothered me a lot, Score: 29, Interpretation: 17-29: Moderate 4/11/2022 KS.

Depression Screening:

PHQ-2 (2015 Edition) Little interest or pleasure in doing things? Nearly every day, Feeling down, depressed, or hopeless? More than half the days, Total Score 5. PHQ-9 Little interest or pleasure in doing things Nearly every day, Feeling down, depressed, or hopeless More than half the days, Trouble falling or staying asleep, or sleeping too much Nearly every day, Feeling tired or having little energy Nearly every day, Poor appetite or overeating Nearly every day, Feeling bad about yourself-or that you are a failure or have let yourself or your family down Several days, Trouble concentrating on things, such as reading the newspaper or watching television Nearly every day, Moving or speaking so slowly that other people could have noticed. Or the opposite- being so fidgety or restless that you have been moving around a lot more than usual Nearly every day, Thoughts that you would be better off dead, or of hurting yourself in some way? Not at all, Total Score: 21, Interpretation Severe Depression.

**Medical History:**

**Social History:** PRAPARE: yes Date Completed/Updated: 03/08/2022, What is your current housing situation? I have housing, Are you worried about losing your housing? No, What is the highest level of school that you have finished? High school diploma or GED, What is your current work situation? Unemployed and seeking work, In the past year, have you or any family members you live with been unable to get any of the following when it was really needed? Check all that apply I do not have problems meeting my needs, Has lack of transportation kept you from medical appointments, meetings, work or from getting things needed for daily living? No, How often do you see or talk to people that you care about and feel close to? (For example: talking to friends on the phone, visiting friends or family, going to church or club meetings) More than 5 times a week, How stressed are you? Stress is when someone feels tense, nervous, anxious, or can't sleep at night because their mind is troubled Not at all, In the past year have you spent more than 2 nights in a row in a jail, prison, detention center, or juvenile correctional facility? No, Are you a refugee? No, What country are you from? United States, Do you feel physically and emotionally safe where you currently live? Yes, In the past year, have you been afraid of your partner or ex-partner? No, PRAPARE Score: 4. Tobacco Use Screening: yes Are you a: current smoker, When did you start smoking? 1/1/2000. GAD7- Anxiety: yes Feeling nervous, anxious or on edge? 3- Nearly every day, Not being able to stop or control worrying? 2- More than half the days, Worrying too much about different things? 2- More than half the days, Trouble relaxing? 3- Nearly every day, Being so restless that it is hard to sit still? 3- Nearly every day, Becoming easily annoyed or irritable? 3- Nearly ever day was before med,but ok now, Feeling afraid as if something awful might happen? 0- Not at all, Total Score: 16, Intepretation: 15+: Severe (Notify BH), Completed: 03/08/2022. Alcohol Screening: yes Did you have a drink containing alcohol in the past year? Yes, How often did you have a drink containing alcohol in the past year? Two to three times per week (3 points), How many drinks did you have on a typical day when you were drinking in the past year? 3 or 4 (1 point), How often did you have six or more drinks on one occasion in the past year? Monthly (2 points), Points 6, Interpretation Positive. Bipolar Screening: yes 1. Some people have periods lasting several days when they feel much more excited and full of energy than usual. Their minds go too fast. They talk a lot. They are very restless or unable to sit still and they sometimes do things that are unusual for them, such as driving too fast or spending too much money. Have you ever had a period like this lasting several days or longer? Yes, 2. Have you ever had a period lasting several days or longer when most of the time you were so irritable or grouchy that you either started arguments, shouted at people or hit people? Yes, 3. People who have episodes like this often have changes in their thinking and behavior at the same time, like being more talkative, needing very little sleep, being very restless, going on buying sprees, and behaving in many ways they would normally think inappropriate. Did you ever have any of these changes during your episodes of being excited and full of energy or very irritable or grouchy? Yes, 1. Were you so irritable that you either started arguments, shouted at people, or hit people? Yes, 2. Did you become so restless or fidgety that you paced up and down or couldn't stand still? Yes, 3. Did you do anything else that wasn't usual for you-like talking about things you would normally keep private or acting in ways that you would usually find embarrassing? No, 4. Did you try to do things that were impossible to do, like taking on large amounts of work? No, 5. Did you constantly keep changing your plans or activities? No, 6. Did you find it hard to keep your mind on what you were doing? Yes, 7. Did your thoughts seem to jump from one thing to another or race through your head so fast you couldn't keep track of them? Yes, 8. Did you sleep far less than usual and still not get tired or sleepy? Yes, 9. Did you spend so much more money than usual that it caused you to have financial trouble? No, INTERPRETATION: 2. High risk (50-79%). Depression Screening Completed: yes, Grice, Anna 3/8/2022 02:05:14 PM >, , PHQ2, PHQ9. Pre-Visit Planning Completed: yes, Grice, Anna 3/8/2022 02:05:22 PM >, , Yes:. Smoking: yes, Grice, Anna 3/8/2022 02:05:33 PM >, YES. Recreational drug use: yes, Grice, Anna

BOBB, ADAM **DOB:** (38 yo M) **Acc No.** 126774 **DOS:** 04/07/2022

3/8/2022 02:05:38 PM >, , Denies. Alcohol: yes, Grice, Anna 3/8/2022 02:05:46 PM >, >yes. SO/GI Data: yes Sexual Orientation: Straight (Not Lesbian or Gay), Gender Identity: Male, Date Taken/Updated: 03/08/2022. Learning Assessment: yes Completed: 03/08/2022, Hearing problems: No, Vision problems: No, Reading problems: No, Writing Problems: No, Highest Education completed: 12th grade, Health Literacy Screening completed: No. Dental Home: yes Dental visit within the last year? No. Household/Enviromental Factors: yes Lives with: spouse, children. Caffeine: yes, Grice, Anna 3/8/2022 02:06:10 PM >, frequency:, Soda, 1 cup/day. Exercise: yes, Grice, Anna 3/8/2022 02:06:18 PM >, Per Age. Travel outside US: yes, Grice, Anna 3/8/2022 02:06:22 PM >, , No. Sexually active: yes, Grice, Anna 3/8/2022 02:06:28 PM >, > , Yes. Herbal & OTC medications: yes, Grice, Anna 3/8/2022 02:06:32 PM >, , None. Advance Directive: yes, Grice, Anna 3/8/2022 02:06:37 PM >, , No.
GAD7 SCORE 16 SEVERE ANXIETY AGRICE ,MA 03/08/2022.

**Medications:** Taking tiZANidine HCl 4 MG Tablet 1 tablet as needed Orally Three times a day, Taking Hydrocodone-Acetaminophen 5-325 MG Tablet 1 tablet q4-6h PRN for pain Orally , Taking amLODIPine Besylate 10 MG Tablet 1 tablet Orally Once a day, Taking hydroCHLOROthiazide 12.5 MG Tablet 1 tablet in the morning Orally Once a day, Taking DULoxetine HCl 30 MG Capsule Delayed Release Particles 3 capsule Orally Once a day, Notes: dose increase

### Objective:

### Assessment:

**Assessment:**

1. PTSD (post-traumatic stress disorder) - F43.10 (Primary)
2. MDD (major depressive disorder), recurrent episode, moderate - F33.1
3. GAD (generalized anxiety disorder) - F41.1

### Plan:

**Procedure Codes:** 90791 PSYCH DIAGNOSTIC EVALUATION

**Follow Up:** 2-3 Weeks (Reason: 1st available appt with BHC)

### Billing Information:

**Visit Code:**
**Procedure Codes:**
90791 PSYCH DIAGNOSTIC EVALUATION.

### Care Plan Details

**Electronically signed by Scott Allison Johnson , LCSW on 04/25/2022 at 03:00 PM CDT**
**Sign off status: Completed**

**Provider: Scott Allison Johnson, LCSW** **Date: 04/07/2022**

Date: Wed Sep 28 10:26:41 CDT 2022
From: Sharee Bryson <Sharee.Bryson@lfg.com>
To:
Message-ID: <32266974.13.1664378801094.JavaMail.gman@ne1pldb201c.lnc.com>
Subject:Lincoln Financial Group Information for Claim 1220054596 (SECURE)

E-communication from Lincoln Financial Group

Lincoln Financial Group

LINCOLN FOR GROUP BENEFITS

## Important Information for Claim #1220054596

Please review the attached letter and/or document(s) regarding the Claim #1220054596 for Adam Bobb. You may submit claim forms and additional documentation via email to DisabilityClaims@LFG.com. If you have any questions regarding this information, please contact us at claims@lfg.com or 1-800-423-2765.

**Sharee Bryson**
**Claims Examiner II, Life Waiver 2**
OMAHA, Toll Free Phone: 1-800-423-2765
Phone: 402-361-6854
Email: Sharee.Bryson@lfg.com

Insurance products are issued by the insurance company affiliates of Lincoln Financial Group: The Lincoln National Life Insurance Company and Lincoln Life & Annuity Company of New York. The Lincoln National Life Insurance Company is not authorized in the state of New York. Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

©2013 Lincoln National Corporation

LincolnFinancial.com

You're In Charge™

Lincoln Financial Group

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

**The Lincoln National Life Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
Toll free (800) 423-2765
Toll free Fax (877) 843-3950
www.LincolnFinancial.com

September 28, 2022

ADAM K BOBB
MARCUS VADEN LAW
PO BOX 203
CONWAY, AR 72033

RE: Extension of Death Benefit
Policyholder: Trinity Village, Inc.
Policy Number: 00040000100019469
Claim Number: 1220054596
Claimant: Adam Bobb

Dear Mr. Bobb:

In order to provide the highest quality of customer service, The Lincoln National Life Insurance Company has implemented an integrated process that provides a prompt assessment of the Extension of Death Benefit provided by your Group Life Policy. Eligibility for this benefit does not have to be initiated by you or your employer. We conduct this assessment to determine whether your group life insurance coverage can remain in force without payment of premiums as defined in the Extension of Death Benefit provision.

As of this date, your Extension of Death Benefit claim has been **provisionally** approved; however, we have not yet concluded our review of your eligibility for continued benefits.

In order to determine your eligibility for benefits from 06/17/2021, we have requested additional information from your treating providers. To date, we have not received the requested information. Any assistance you can provide us in expediting the request would be greatly appreciated.

Until we have made a final determination on your eligibility for benefits, your claim will **remain provisionally approved, however**, this decision cannot be construed as an admission of present or future liability, and we reserve our right to enforce any and all provisions of the policy.

- Voluntary Employee Life coverage in the amount of $100,000.00

©2022 Lincoln National Corporation www.LincolnFinancial.com
Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

The amount(s), however, will be subject to the reductions and the termination provision of the policy under which this benefit is provided. The policy lists the following termination reasons:

Any life insurance continued under this benefit will terminate automatically on:

1) the day the Insured Person ceases to be Totally Disabled;
2) the day the Insured Person fails to take a required medical examination;
3) the 60th day after the company mails a request for additional proof, if it is not given;
4) the effective date of the Insured Person's individual conversion policy, with respect to any amount of life insurance converted in accord with the Conversion Privilege section; or
5) the day the Insured Person reaches Social Security Normal Retirement Age (SSNRA), as shown in the Schedule of Insurance (Whichever occurs first).

For voluntary coverage:

Any life insurance which has been continued under this benefit will be terminated automatically on the day:

(1) you cease to be Totally Disabled;
(2) you fail to take a required medical examination;
(3) you fail to submit any required proofs; or
(4) you reach Social Security Normal Retirement Age (SSNRA), as shown in the Schedule of Insurance.

As a courtesy, we have included a new Beneficiary Designation Form. If you do not return this form to our office then your beneficiary will be based on the most recent beneficiary designation form you completed and submitted to either us or your employer. If you do not complete a beneficiary designation form and benefits become payable, your life insurance benefit will be paid according to the group life insurance policy issued to your employer.

In the future, we will require updated medical information from your physician. We will coordinate our efforts with your Long Term Disability claim in obtaining and reviewing your medical information. Failure to provide requested documentation for your Long Term Disability claim or for your Extension of Death Benefit claim may result in the termination of benefits under both policies. To avoid any mailing delays, it is vital that we are also notified of all address changes.

Please contact your Group Administrator regarding any coverages you have that may not have qualified for the Extension of Death Benefit. Continuation options may be available to you.

If you are applying for Social Security Disability or have been awarded, we encourage you to request a copy of your file directly from the Social Security Administration and submit the information directly to Lincoln. In addition, if you submit additional information to the SSA, please send a copy to Lincoln. If we receive this information, we will evaluate it as part of your claim.

Please contact our office with any questions you may have at the number listed below or email us at . You can also register for our website at www.LincolnFinancial.com to view your benefits and claim status online 24 hours a day.

Please contact us at the number listed below or at disabilityclaims@lfg.com with any questions. You can also register for our website at www.LincolnFinancial.com to view your benefits and claim status.

Sincerely,

Sharee Bryson
800-4232765 ext 6854
Claims Examiner II, Life Waiver 2
The Lincoln National Life Insurance Company

Enclosure: Beneficiary designation form
CC: Trinity Village, Inc.
ATTN: April Haynes
6400 Trinity Drive
Pine Bluff, AR 71603

Lincoln Financial Group®

# Beneficiary Designation Form

**The Lincoln National Life Insurance Company**
PO Box 2609, Omaha, NE 68103-2609
Toll free (800) 423-2765 Toll free Fax (877) 843-3950
www.LincolnFinancial.com

| | |
|---|---|
| Policyholder/Employer<br>Trinity Village, Inc. | Policy Number(s)<br>00040000100019469 |
| Employee Name<br>Adam Bobb | curity or Certificate Number |
| Employee Address (Street, City, State)<br>MARCUS VADEN LAW CONWAY, AR 72033 | Employee Telephone Number |

## WHO ARE YOUR BENEFICIARIES?

It is very important to clearly indicate your primary beneficiary(ies) and contingent beneficiary(ies). Proceeds are paid to contingent beneficiary(ies) only if there is no surviving primary beneficiary(ies). If multiple primary beneficiaries or contingent beneficiaries are named and no percentage distribution is noted, then any proceeds payable to such beneficiaries will be split equally. If more space is needed to list your beneficiaries please attach a sheet to this form. **The beneficiary(ies) named on this form will be valid for all basic, optional, and/or voluntary group term life and AD&D, Accident and Critical Illness coverages unless otherwise indicated by you. The beneficiary designation may not go into effect until this form is signed and dated by you. Page 2 of this form includes examples of how to complete this form.**

**PRIMARY BENEFICIARY(IES)**

| Primary Beneficiary's Name and Address | Social Security Number | Relationship to You | Date of Birth | Percentage: Must equal 100% |
|---|---|---|---|---|
| Name:<br>Address: | | | | |
| Name:<br>Address: | | | | |
| Name:<br>Address: | | | | |

**CONTINGENT BENEFICIARY(IES):** Contingent beneficiaries will only receive benefit if there are no surviving primary beneficiaries.

| Contingent Beneficiary's Name and Address | Social Security Number | Relationship to You | Date of Birth | Percentage: Must equal 100% |
|---|---|---|---|---|
| Name:<br>Address: | | | | |
| Name:<br>Address: | | | | |
| Name:<br>Address: | | | | |

**Community Property State Consent for residents of Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Texas, Washington, or Wisconsin.** If you are married, live in a community property state, and name someone other than your spouse as beneficiary, you may have your spouse sign below to waive his or her rights to any community property interest in the benefit.

As the insured's spouse, I do hereby consent to the beneficiary designation(s) indicated on this form and waive any right that I may have to the proceeds of such insurance under applicable community property laws.

Signature of Spouse ____________________ Date ____________________

**Signature of Employee** ____________________ **Date** ____________________

## COMPLETING YOUR BENEFICIARY DESIGNATION FORM

1. At the top of the form, fill in the information regarding your employer and yourself.
2. Next complete the information regarding who will be your primary and contingent beneficiaries. A primary beneficiary will be the person/people that you want to receive the life insurance benefit. The contingent beneficiary or beneficiaries will only receive the life insurance benefit if the primary beneficiary(ies) is no longer living. Indicate the percentage of the benefit amount that the beneficiary will receive. Do not use dollar amounts. Percentages must add up to 100%.
3. If you live in a community property state, are married and naming someone other than your spouse as the primary beneficiary, you should have your spouse sign this form to avoid any delays at claim time.
4. Sign and date the form.

**Below is an example of how to complete the beneficiary designations:**

**PRIMARY BENEFICIARY(IES)**

| Primary Beneficiary's Name and Address | Social Security Number | Relationship to You | Date of Birth | Percentage: Must equal 100% |
|---|---|---|---|---|
| Name: Jill Doe<br>Address: 123 Main St, Anytown, NE 00000 | XXX-XX-XXXX | Wife | XX/XX/XX | 100% |
| Name:<br>Address: | | | | |
| Name:<br>Address: | | | | |

**CONTINGENT BENEFICIARY(IES):** Contingent beneficiaries will only receive benefit if there are no surviving primary beneficiaries.

| Contingent Beneficiary's Name and Address | Social Security Number | Relationship to You | Date of Birth | Percentage: Must equal 100% |
|---|---|---|---|---|
| Name: John Doe Sr<br>Address: 456 Main Ln, Anytown, NE 00000 | XXX-XX-XXXX | Father | XX/XX/XX | 50% |
| Name: Mary Doe<br>Address: 789 Main Rd, Anytown, NE 00000 | XXX-XX-XXXX | Sister | XX/XX/XX | 25% |
| Name: Jack Doe Irrevocable Trust, Jill Doe TTEE UTA 1/04<br>Address: 123 Main St, Anytown, NE 00000 | XXX-XX-XXXX | Trust | XX/XX/XX | 25% |

### FREQUENTLY ASKED QUESTIONS

**Should I name a minor child as a beneficiary?**
You may name a minor child as a beneficiary, however please be aware that we cannot make payment of a claim directly to a minor. If a claim is incurred we would need to make payment via UTMA or to the guardian of the minor's financial estate. Or, if guardianship is not obtained and if UTMA does not apply, the benefit will be placed On Hold - Age of Majority and payable once the minor reaches the age of majority.

**How would I name a Charitable Organization as a beneficiary?**
A charitable organization that is not your employer may be named as a beneficiary. You will need to indicate the name of the charitable organization, a contact for the organization, their tax identification number, and the percentage of the benefit that would be payable to them.

**How do I name my Estate as the beneficiary?**
You may name your estate as a beneficiary. To name your estate as the beneficiary indicate "My Estate" as the beneficiary. If you know who will be the executor or administrator of your estate you should also include that person's name. For example: My Estate, John Doe Executor.

**How do I name a Trust as the beneficiary?**
You may designate a trust as a beneficiary. To name a trust as a beneficiary, indicate Trustee (show Name and address) under Trust Agreement Dated (show date). If the trust has a tax identification number that will need to be supplied in place of the social security number. For example: Jack Doe Irrevocable Trust, Jill Doe TTEE UTA 1/1/04.

**FRAUD NOTICES. For your protection, certain states require that the following notices appear on this form.**

**Alabama.** Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or who knowingly presents false information in an application for insurance is guilty of a crime and may be subject to restitution fines or confinement in prison, or any combination thereof.

**Alaska.** A person who knowingly and with intent to injure, defraud, or deceive an insurance company files a claim containing false, incomplete or misleading information may be prosecuted under state law.

**Arizona.** For your protection Arizona law requires the following statement to appear on this form. Any person who knowingly presents a false or fraudulent claim for payment of a loss is subject to criminal and civil penalties.

**Arkansas, Louisiana, Rhode Island and West Virginia.** Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

**California.** For your protection California law requires the following to appear on this form: Any person who knowingly presents a false or fraudulent claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison.

**Colorado.** It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policyholder or claimant for the purpose of defrauding or attempting to defraud the policyholder or claimant with regard to a settlement or award payable from insurance proceeds shall be reported to the Colorado Division of Insurance within the Department of Regulatory Agencies.

**Delaware.** Any person who knowingly, and with intent to injure, defraud or deceive any insurer, files a statement of claim containing any false, incomplete or misleading information is guilty of a felony.

**District of Columbia.** It is a crime to provide false or misleading information to an insurer for the purpose of defrauding the insurer or any other person. Penalties include imprisonment and/or fines. In addition, an insurer may deny insurance benefits if false information materially related to a claim was provided by the applicant.

**Florida.** Any person who knowingly and with intent to injure, defraud, or deceive any insurer files a statement of claim or application containing any false, incomplete, or misleading information is guilty of a felony of the third degree.

**Idaho.** Any person who knowingly, and with intent to defraud or deceive any insurance company, files a statement or claim containing any false, incomplete or misleading information is guilty of a felony.

**Indiana.** A person who knowingly and with intent to defraud an insurer files a statement of claim containing any false, incomplete, or misleading information commits a felony.

**Kentucky.** Any person who knowingly and with intent to defraud any insurance company or other person files a statement of claim containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime.

**Maine.** It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties may include imprisonment, fines or a denial of insurance benefits.

**Maryland.** Any person who knowingly or willfully presents a false or fraudulent claim for payment of a loss or benefit or who knowingly or willfully presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

**Minnesota.** A person who files a claim with intent to defraud or helps commit a fraud against an insurer is guilty of a crime.

**New Hampshire.** Any person who, with a purpose to injure, defraud or deceive any insurance company, files a statement of claim containing any false, incomplete or misleading information is subject to prosecution and punishment for insurance fraud, as provided in RSA 638:20.

**New Jersey.** Any person who knowingly files a statement of claim containing any false or misleading information is subject to criminal and civil penalties.

**New Mexico.** Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to civil fines and criminal penalties.

**New York.** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation.

**Ohio.** Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud.

**Oklahoma.** Any person who knowingly, and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony.

**Oregon.** Any person who knowingly and with intent to defraud any insurance company or other person: (1) files an application for insurance or statement of claim containing any materially false information; or, (2) conceals for the purpose of misleading, information concerning any material fact, may have committed a fraudulent insurance act.

**Pennsylvania.** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.

**Puerto Rico.** Any person who knowingly and with the intention of defrauding presents false information in an insurance application, or presents, helps, or causes the presentation of a fraudulent claim for the payment of a loss or any other benefit, or presents more than one claim for the same damage or loss, shall incur a felony and, upon conviction, shall be sanctioned for each violation by a fine of not less than five thousand dollars ($5,000) and not more than ten thousand dollars ($10,000), or a fixed term of imprisonment for three (3) years, or both penalties. Should aggravating circumstances be present, the penalty thus established may be increased to a maximum of five (5) years, if extenuating circumstances are present, it may be reduced to a minimum of two (2) years.

**Tennessee, Virginia and Washington.** It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits.

**Texas.** Any person who knowingly presents a false or fraudulent claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison.

**FOR ALL OTHER STATES EXCLUDING CONNECTICUT AND KANSAS.** A person may be committing insurance fraud, if he or she submits an application or claim containing a false or deceptive statement with intent to defraud (or knowing that he or she is helping to defraud) an insurance company.

Date: Wed Sep 28 10:26:45 CDT 2022
From: Sharee Bryson <Sharee.Bryson@lfg.com>
To: abogy@trinityretirement.com
Message-ID: <1472241207.18.1664378805091.JavaMail.gman@ne1pldb201c.lnc.com>
Subject:Lincoln Financial Group Information for Claim 1220054596 (SECURE)

E-communication from Lincoln Financial Group

Lincoln Financial Group

LINCOLN FOR GROUP BENEFITS

## Important Information for Claim #1220054596

Please review the attached letter and/or document(s) regarding the Claim #1220054596 for Adam Bobb. You may submit claim forms and additional documentation via email to DisabilityClaims@LFG.com. If you have any questions regarding this information, please contact us at claims@lfg.com or 1-800-423-2765.

**Sharee Bryson**
**Claims Examiner II, Life Waiver 2**
OMAHA, Toll Free Phone: 1-800-423-2765
Phone: 402-361-6854
Email: Sharee.Bryson@lfg.com

Insurance products are issued by the insurance company affiliates of Lincoln Financial Group: The Lincoln National Life Insurance Company and Lincoln Life & Annuity Company of New York. The Lincoln National Life Insurance Company is not authorized in the state of New York. Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

©2013 Lincoln National Corporation

LincolnFinancial.com

You're In Charge™

Lincoln Financial Group

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

**The Lincoln National Life Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
Toll free (800) 423-2765
Toll free Fax (877) 843-3950
www.LincolnFinancial.com

September 28, 2022

ADAM K BOBB
MARCUS VADEN LAW
PO BOX 203
CONWAY, AR 72033

RE: Extension of Death Benefit
Policyholder: Trinity Village, Inc.
Policy Number: 00040000100019469
Claim Number: 1220054596
Claimant: Adam Bobb

Dear Mr. Bobb:

In order to provide the highest quality of customer service, The Lincoln National Life Insurance Company has implemented an integrated process that provides a prompt assessment of the Extension of Death Benefit provided by your Group Life Policy. Eligibility for this benefit does not have to be initiated by you or your employer. We conduct this assessment to determine whether your group life insurance coverage can remain in force without payment of premiums as defined in the Extension of Death Benefit provision.

As of this date, your Extension of Death Benefit claim has been **provisionally** approved; however, we have not yet concluded our review of your eligibility for continued benefits.

In order to determine your eligibility for benefits from 06/17/2021, we have requested additional information from your treating providers. To date, we have not received the requested information. Any assistance you can provide us in expediting the request would be greatly appreciated.

Until we have made a final determination on your eligibility for benefits, your claim will **remain provisionally approved, however**, this decision cannot be construed as an admission of present or future liability, and we reserve our right to enforce any and all provisions of the policy.

- Voluntary Employee Life coverage in the amount of $100,000.00

©2022 Lincoln National Corporation www.LincolnFinancial.com
Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

The amount(s), however, will be subject to the reductions and the termination provision of the policy under which this benefit is provided. The policy lists the following termination reasons:

Any life insurance continued under this benefit will terminate automatically on:

1) the day the Insured Person ceases to be Totally Disabled;
2) the day the Insured Person fails to take a required medical examination;
3) the 60th day after the company mails a request for additional proof, if it is not given;
4) the effective date of the Insured Person's individual conversion policy, with respect to any amount of life insurance converted in accord with the Conversion Privilege section; or
5) the day the Insured Person reaches Social Security Normal Retirement Age (SSNRA), as shown in the Schedule of Insurance (Whichever occurs first).

For voluntary coverage:

Any life insurance which has been continued under this benefit will be terminated automatically on the day:

(1) you cease to be Totally Disabled;
(2) you fail to take a required medical examination;
(3) you fail to submit any required proofs; or
(4) you reach Social Security Normal Retirement Age (SSNRA), as shown in the Schedule of Insurance.

As a courtesy, we have included a new Beneficiary Designation Form. If you do not return this form to our office then your beneficiary will be based on the most recent beneficiary designation form you completed and submitted to either us or your employer. If you do not complete a beneficiary designation form and benefits become payable, your life insurance benefit will be paid according to the group life insurance policy issued to your employer.

In the future, we will require updated medical information from your physician. We will coordinate our efforts with your Long Term Disability claim in obtaining and reviewing your medical information. Failure to provide requested documentation for your Long Term Disability claim or for your Extension of Death Benefit claim may result in the termination of benefits under both policies. To avoid any mailing delays, it is vital that we are also notified of all address changes.

Please contact your Group Administrator regarding any coverages you have that may not have qualified for the Extension of Death Benefit. Continuation options may be available to you.

If you are applying for Social Security Disability or have been awarded, we encourage you to request a copy of your file directly from the Social Security Administration and submit the information directly to Lincoln. In addition, if you submit additional information to the SSA, please send a copy to Lincoln. If we receive this information, we will evaluate it as part of your claim.

Please contact our office with any questions you may have at the number listed below or email us at . You can also register for our website at www.LincolnFinancial.com to view your benefits and claim status online 24 hours a day.

Please contact us at the number listed below or at disabilityclaims@lfg.com with any questions. You can also register for our website at www.LincolnFinancial.com to view your benefits and claim status.

Sincerely,

Sharee Bryson
800-4232765 ext 6854
Claims Examiner II, Life Waiver 2
The Lincoln National Life Insurance Company

Enclosure: Beneficiary designation form
CC: Trinity Village, Inc.
ATTN: April Haynes
6400 Trinity Drive
Pine Bluff, AR 71603

Lincoln Financial Group®

# Beneficiary Designation Form

**The Lincoln National Life Insurance Company**
PO Box 2609, Omaha, NE 68103-2609
Toll free (800) 423-2765 Toll free Fax (877) 843-3950
www.LincolnFinancial.com

| | |
|---|---|
| Policyholder/Employer<br>Trinity Village, Inc. | Policy Number(s)<br>00040000100019469 |
| Employee Name<br>Adam Bobb | curity or Certificate Number |
| Employee Address (Street, City, State)<br>MARCUS VADEN LAW CONWAY, AR 72033 | Employee Telephone Number |

## WHO ARE YOUR BENEFICIARIES?

It is very important to clearly indicate your primary beneficiary(ies) and contingent beneficiary(ies). Proceeds are paid to contingent beneficiary(ies) only if there is no surviving primary beneficiary(ies). If multiple primary beneficiaries or contingent beneficiaries are named and no percentage distribution is noted, then any proceeds payable to such beneficiaries will be split equally. If more space is needed to list your beneficiaries please attach a sheet to this form. **The beneficiary(ies) named on this form will be valid for all basic, optional, and/or voluntary group term life and AD&D, Accident and Critical Illness coverages unless otherwise indicated by you. The beneficiary designation may not go into effect until this form is signed and dated by you. Page 2 of this form includes examples of how to complete this form.**

**PRIMARY BENEFICIARY(IES)**

| Primary Beneficiary's Name and Address | Social Security Number | Relationship to You | Date of Birth | Percentage: Must equal 100% |
|---|---|---|---|---|
| Name:<br>Address: | | | | |
| Name:<br>Address: | | | | |
| Name:<br>Address: | | | | |

**CONTINGENT BENEFICIARY(IES):** Contingent beneficiaries will only receive benefit if there are no surviving primary beneficiaries.

| Contingent Beneficiary's Name and Address | Social Security Number | Relationship to You | Date of Birth | Percentage: Must equal 100% |
|---|---|---|---|---|
| Name:<br>Address: | | | | |
| Name:<br>Address: | | | | |
| Name:<br>Address: | | | | |

**Community Property State Consent for residents of Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Texas, Washington, or Wisconsin.** If you are married, live in a community property state, and name someone other than your spouse as beneficiary, you may have your spouse sign below to waive his or her rights to any community property interest in the benefit.

As the insured's spouse, I do hereby consent to the beneficiary designation(s) indicated on this form and waive any right that I may have to the proceeds of such insurance under applicable community property laws.

Signature of Spouse ______________________ Date ______________________

**Signature of Employee** ______________________ **Date** ______________________

## COMPLETING YOUR BENEFICIARY DESIGNATION FORM

1. At the top of the form, fill in the information regarding your employer and yourself.
2. Next complete the information regarding who will be your primary and contingent beneficiaries. A primary beneficiary will be the person/people that you want to receive the life insurance benefit. The contingent beneficiary or beneficiaries will only receive the life insurance benefit if the primary beneficiary(ies) is no longer living. Indicate the percentage of the benefit amount that the beneficiary will receive. Do not use dollar amounts. Percentages must add up to 100%.
3. If you live in a community property state, are married and naming someone other than your spouse as the primary beneficiary, you should have your spouse sign this form to avoid any delays at claim time.
4. Sign and date the form.

**Below is an example of how to complete the beneficiary designations:**

**PRIMARY BENEFICIARY(IES)**

| Primary Beneficiary's Name and Address | Social Security Number | Relationship to You | Date of Birth | Percentage: Must equal 100% |
|---|---|---|---|---|
| Name: Jill Doe<br>Address: 123 Main St, Anytown, NE 00000 | XXX-XX-XXXX | Wife | XX/XX/XX | 100% |
| Name:<br>Address: | | | | |
| Name:<br>Address: | | | | |

**CONTINGENT BENEFICIARY(IES):** Contingent beneficiaries will only receive benefit if there are no surviving primary beneficiaries.

| Contingent Beneficiary's Name and Address | Social Security Number | Relationship to You | Date of Birth | Percentage: Must equal 100% |
|---|---|---|---|---|
| Name: John Doe Sr<br>Address: 456 Main Ln, Anytown, NE 00000 | XXX-XX-XXXX | Father | XX/XX/XX | 50% |
| Name: Mary Doe<br>Address: 789 Main Rd, Anytown, NE 00000 | XXX-XX-XXXX | Sister | XX/XX/XX | 25% |
| Name: Jack Doe Irrevocable Trust, Jill Doe TTEE UTA 1/04<br>Address: 123 Main St, Anytown, NE 00000 | XXX-XX-XXXX | Trust | XX/XX/XX | 25% |

## FREQUENTLY ASKED QUESTIONS

**Should I name a minor child as a beneficiary?**
You may name a minor child as a beneficiary, however please be aware that we cannot make payment of a claim directly to a minor. If a claim is incurred we would need to make payment via UTMA or to the guardian of the minor's financial estate. Or, if guardianship is not obtained and if UTMA does not apply, the benefit will be placed On Hold - Age of Majority and payable once the minor reaches the age of majority.

**How would I name a Charitable Organization as a beneficiary?**
A charitable organization that is not your employer may be named as a beneficiary. You will need to indicate the name of the charitable organization, a contact for the organization, their tax identification number, and the percentage of the benefit that would be payable to them.

**How do I name my Estate as the beneficiary?**
You may name your estate as a beneficiary. To name your estate as the beneficiary indicate "My Estate" as the beneficiary. If you know who will be the executor or administrator of your estate you should also include that person's name. For example: My Estate, John Doe Executor.

**How do I name a Trust as the beneficiary?**
You may designate a trust as a beneficiary. To name a trust as a beneficiary, indicate Trustee (show Name and address) under Trust Agreement Dated (show date). If the trust has a tax identification number that will need to be supplied in place of the social security number. For example: Jack Doe Irrevocable Trust, Jill Doe TTEE UTA 1/1/04.

**FRAUD NOTICES. For your protection, certain states require that the following notices appear on this form.**

**Alabama.** Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or who knowingly presents false information in an application for insurance is guilty of a crime and may be subject to restitution fines or confinement in prison, or any combination thereof.

**Alaska.** A person who knowingly and with intent to injure, defraud, or deceive an insurance company files a claim containing false, incomplete or misleading information may be prosecuted under state law.

**Arizona.** For your protection Arizona law requires the following statement to appear on this form. Any person who knowingly presents a false or fraudulent claim for payment of a loss is subject to criminal and civil penalties.

**Arkansas, Louisiana, Rhode Island and West Virginia.** Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

**California.** For your protection California law requires the following to appear on this form: Any person who knowingly presents a false or fraudulent claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison.

**Colorado.** It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policyholder or claimant for the purpose of defrauding or attempting to defraud the policyholder or claimant with regard to a settlement or award payable from insurance proceeds shall be reported to the Colorado Division of Insurance within the Department of Regulatory Agencies.

**Delaware.** Any person who knowingly, and with intent to injure, defraud or deceive any insurer, files a statement of claim containing any false, incomplete or misleading information is guilty of a felony.

**District of Columbia.** It is a crime to provide false or misleading information to an insurer for the purpose of defrauding the insurer or any other person. Penalties include imprisonment and/or fines. In addition, an insurer may deny insurance benefits if false information materially related to a claim was provided by the applicant.

**Florida.** Any person who knowingly and with intent to injure, defraud, or deceive any insurer files a statement of claim or application containing any false, incomplete, or misleading information is guilty of a felony of the third degree.

**Idaho.** Any person who knowingly, and with intent to defraud or deceive any insurance company, files a statement or claim containing any false, incomplete or misleading information is guilty of a felony.

**Indiana.** A person who knowingly and with intent to defraud an insurer files a statement of claim containing any false, incomplete, or misleading information commits a felony.

**Kentucky.** Any person who knowingly and with intent to defraud any insurance company or other person files a statement of claim containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime.

**Maine.** It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties may include imprisonment, fines or a denial of insurance benefits.

**Maryland.** Any person who knowingly or willfully presents a false or fraudulent claim for payment of a loss or benefit or who knowingly or willfully presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

**Minnesota.** A person who files a claim with intent to defraud or helps commit a fraud against an insurer is guilty of a crime.

**New Hampshire.** Any person who, with a purpose to injure, defraud or deceive any insurance company, files a statement of claim containing any false, incomplete or misleading information is subject to prosecution and punishment for insurance fraud, as provided in RSA 638:20.

**New Jersey.** Any person who knowingly files a statement of claim containing any false or misleading information is subject to criminal and civil penalties.

**New Mexico.** Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to civil fines and criminal penalties.

**New York.** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation.

**Ohio.** Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud.

**Oklahoma.** Any person who knowingly, and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony.

**Oregon.** Any person who knowingly and with intent to defraud any insurance company or other person: (1) files an application for insurance or statement of claim containing any materially false information; or, (2) conceals for the purpose of misleading, information concerning any material fact, may have committed a fraudulent insurance act.

**Pennsylvania.** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.

**Puerto Rico.** Any person who knowingly and with the intention of defrauding presents false information in an insurance application, or presents, helps, or causes the presentation of a fraudulent claim for the payment of a loss or any other benefit, or presents more than one claim for the same damage or loss, shall incur a felony and, upon conviction, shall be sanctioned for each violation by a fine of not less than five thousand dollars ($5,000) and not more than ten thousand dollars ($10,000), or a fixed term of imprisonment for three (3) years, or both penalties. Should aggravating circumstances be present, the penalty thus established may be increased to a maximum of five (5) years, if extenuating circumstances are present, it may be reduced to a minimum of two (2) years.

**Tennessee, Virginia and Washington.** It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits.

**Texas.** Any person who knowingly presents a false or fraudulent claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison.

**FOR ALL OTHER STATES EXCLUDING CONNECTICUT AND KANSAS.** A person may be committing insurance fraud, if he or she submits an application or claim containing a false or deceptive statement with intent to defraud (or knowing that he or she is helping to defraud) an insurance company.

RecordQuest

# INVOICE

Mail Payments To
RecordQuest
PO Box 2017
Mt Pleasant, SC 29465-2017

Overnight Shipping and Certified Mail
RecordQuest
115 Fairchild St Ste 160
Daniel Island, SC 29492-7504

Customer Service
Phone: (888) 300-7410
Fax: (866) 560-8109
Email: help@recordquest.com
Tax ID: 71-1008946

Bill To
Jill Felten
The Lincoln National Life Insurance Company
8801 Indian Hills Dr
Omaha, NE 68114-4059

RQ-ID
1797970-29

For Delivery To
Jill Felten
The Lincoln National Life Insurance Company
8801 Indian Hills Dr
Omaha, NE 68114-4059

Phone 800-423-2765
Fax 800-462-4660

Facility
Mainline Health Systems, Inc.

Patient Name
Adam Bobb

Claim #
1220054596

| Total Pages | Billable Pages | Date | Amount Due | Due Date |
|---|---|---|---|---|
| 17 | 9 | Aug 30 2022 | $21.42 | ON RECEIPT |

| Description | Qty | Cost Per | Cost |
|---|---|---|---|
| $15.00 Search and retrieval fee per AR Code Section 16-46-106 | 1 | $15.00 | $15.00 |
| $0.50 per page for pages 1-25 | 9 | $0.50 | $4.50 |
| Actual postage | 1 | $1.92 | $1.92 |
| | | Subtotal | $21.42 |
| | | Payments | $0.00 |
| | | Balance | $21.42 |

Records will be released upon receipt of payment.

**Secure Release Center**

**Pay and download your records online. It's easy!**

Visit the link below to begin the process: Record Locator: 4CL9V7QG

https://rq.link/4CL9V7QG

If paying by check, please make it payable to RecordQuest and reference RQ-ID

On January 23, 2020 a federal court vacated the 'third-party directive' within 2013 Omnibus Rule. As a result, the fee limitation set forth at 45 C.F.R. § 164.524(c)(4) will apply only to an individual's request for access to their own records. It does not apply to an individual's request to transmit records to a third party. Please see https://www.hhs.gov/hipaa/court-order-right-of-access/index.html for additional information. By paying this invoice, you agree that the pricing is accurate and reasonable and therefore hold RecordQuest and Mainline Health Systems, Inc. harmless in any and all legal matters pertaining to this transaction. If you do not agree, please contact RecordQuest immediately.

Mainline Health Systems, Inc. has contracted with RecordQuest to process and deliver patient health information. RecordQuest is authorized to bill and collect fees in accordance with state and federal regulated rates. The information contained in this transmission is privileged and confidential. It is intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copy of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately and destroy all copies.

PAGE 1/8 * RCVD AT 8/30/2022 11:00:24 AM [Eastern Daylight Time] * SVR:VA1PWFAX301/3 * DNIS:8004624660 * CSID: * ANI:8434712553 * DURATION (mm-ss):06-16

Lincoln
Financial Group®

**To: SCOTT ALLSION R. JOHNSON, LCSW**
Company:
Fax: 870-538-5412
Phone:

**From: Jill Felten**
Fax: 877-843-3950
Phone: 800-423-2765

**NOTES:**

2nd Refax

This facsimile transmission may include confidential and/or proprietary information, and may be used only by the person or entity to which it is addressed. If the recipient of this facsimile transmission is not the intended recipient or his or her authorized agent, the recipient is hereby notified that any dissemination, distribution, or copying of this facsimile transmission is prohibited. If you have received this facsimile transmission in error, please notify the sender and destroy this facsimile immediately.

**Date and time of transmission:** Wednesday, August 10, 2022 8:34:20 AM
**Number of pages including this cover sheet:** 07

Lincoln Financial Group

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

**The Lincoln National Life Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
Toll free (800) 423-2765
Toll free Fax (877) 843-3950
www.LincolnFinancial.com

August 8, 2022

SCOTT ALLSION R. JOHNSON, LCSW
RELEASE OF INFORMATION
1404 E CHURCH
WARREN, AR 716717167

Re: Policy Number: 00040000100019469
Claim Number: 1220054596
Patient: Adam Bobb
DOB:

**ATTN MED RECORDS/ROI DEPT:**
We are evaluating your patient's life waiver claim. Please submit the requested records listed below. A signed authorization form is included.

| **Documentation** | **Time Period** |
|---|---|
| Office/Treatment Notes | 6/1/2021 to present |

****Please fill out all forms that are attached****

Current state statutes for Arkansas: Cost of each photocopy, excluding X rays, shall not exceed $0.50 per page for the first twenty-five (25) pages and $0.25 for each additional page. A labor charge not exceeding $15.00 may be added for each request for medical records under subdivision (a)(1) of this section, and the actual cost of any required postage may also be charged. In addition a reasonable retrieval fee for stored records of a hospital, a physician's office, or an ambulance provider may be added to the photocopy charges, only if the requested records are stored at a location other than the location of the hospital, physician's office, or ambulance provider.

**YOU MUST RETURN THIS COMPLETED FORM TO RECEIVE PAYMENT.**

Payment instructions:

©2022 Lincoln National Corporation www.LincolnFinancial.com
Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

| Qty | Description | Unit Price | Line Total |
|---|---|---|---|
| | Processing Fee | | |
| | Pages - | | |
| | Actual Postage | | |
| | Tax Identification Number | TIN- | |
| | | Total | |

- **We must have your Tax Identification Number (TIN) & NPI.**
- **Please fax this remittance form and records to 1-800-462-4660.**

***Payment Options:***

☐ ***Credit Card***

- If you accept a credit card, ***payment can be made immediately*** upon receipt of your invoice.

☐ ***Direct Deposit*** (Please complete the below)

Direct Deposit Agreement

Authorization Agreement

We hereby authorize Lincoln Financial Group / The Lincoln National Life Insurance Company to initiate automatic deposits to our account at the Financial Institution named below. We also authorize Lincoln Financial Group / The Lincoln National Life Insurance Company to make withdrawals from this account in the event that a credit entry is made in error.

Further, we agree not to hold Lincoln Financial Group / The Lincoln National Life Insurance Company responsible for any delay or loss of funds due to incorrect or incomplete information supplied by us or by our financial institution or due to an error on the part of our financial institution in depositing funds to our account.

This agreement will remain in effect until Lincoln Financial Group / The Lincoln National Life Insurance Company received a written notice of cancellation from us or our financial institution, or until we submit a new direct deposit form.

Account Information

Name of Financial Institution: ______________________________

Routing Number: ______________________________

Account Number: ______________________________

Authorized Signature: ________________________________________ Date: ________________________

☐ ***Checks Only*** (Please note that pre-payment via check could delay payment by up to 30 days)

Please contact Claim Services on our toll free line at **1-800-423-2765** with any questions regarding this request. Thank you for your cooperation.

Sincerely,

Jill Felten
Assisting on behalf of Erica Wilson
800-423-2765 *7064
Coordinator, Clinical Support
The Lincoln National Life Insurance Company

Lincoln Financial Group®

The Lincoln National Life Insurance Company
PO Box 2609, Omaha, NE 68103-2609
Toll free (800) 423-2765
Fax (877) 843-3950
www.LincolnFinancial.com

## AUTHORIZATION FOR RELEASE OF INFORMATION

☑ **Please check this box if you or your authorized representative would like to receive a copy of this form.**

I (the undersigned) authorize any physician, medical professional, or other provider of health care services, hospital, clinic, other medical or medically related facility, or insurance or reinsurance company to release information to The Lincoln National Life Insurance Company (Lincoln) in connection with a claim for benefits.

**Patient Information:** (Name of Claimant Whose Information Will Be Released)

Patient Name: (Last, First, Middle) Bobb Adam K Date of Birth:

Other Names Used: Ken Social Security Number:

**Description of the information to be disclosed:**

☑ Entire Medical Record, including but not limited to patient histories, office notes (EXCEPT psychotherapy notes), test results, radiology studies, films, prescriptions, referrals, consults, billing records, insurance records, and other related records sent to you by other health care providers.

☐ Other: ______

**Expiration:** This Authorization will be considered valid until the happening of the earliest following event:

1. The term of the coverage of the policy if the claim is for a health insurance benefit;
2. The duration of the claim if the claim is not for a health insurance benefit; or
3. Twelve (12) months from the date of the signature below.

**Right to Revoke:** I have the right to revoke this authorization, in writing, at any time. I understand that revocation is not effective to the extent that Lincoln has taken action in reliance on this authorization. To initiate revocation of this Authorization, direct all correspondence to Lincoln at the above address.

**Claimant Rights:**

1. I understand that the information used or disclosed may be subject to re-disclosure by the recipient and may no longer be protected by federal or state law. For Colorado claims, the disclosed information may not be redisclosed or reused by the recipient under Colorado law.
2. I understand that a photocopy of this Authorization is to be considered as valid as the original.
3. I understand that I am entitled to receive a copy of this Authorization.
4. I understand that this information may be released to my employer for self-insured plans only.
5. I understand that my treatment, payment, enrollment, or eligibility for benefits will not be conditioned on whether I sign this Authorization.

**Authorized Representative Information:** Complete this section if a personal representative is authorizing disclosure of the claimant's information. A copy of a power of attorney or other court-initiated document will be required, unless parent signing for patient under 18.

Name: (Last, First, Middle) ______ Relationship to claimant: ______

Address: ______ Phone: ______

**Signature/Date:** The Claimant whose information will be released or the claimant's authorized representative must sign and date this form in order to process.

Sign: [signature] Date: 7-8-21

Lincoln Financial Group®

**The Lincoln National Life Insurance Company**
8801 Indian Hills Drive, Omaha, NE 68103-2649
toll free (800) 423-2765
www.LincolnFinancial.com

# PSYCHIATRIC SUPPLEMENTAL INFORMATION

## PART 1 - PATIENT INFORMATION

Name: ______________________ SS#: ____________ Date of Birth: __________

## PART 2 - ATTENDING PHYSICIAN'S STATEMENT

**Diagnosis (DSM IV CRITERIA)**

Axis I ______________________

Axis II ______________________

Axis III ______________________

Axis IV 0 1 2 3 4 5 6

Axis V Current GAF Score ________

Highest GAF Score Past Year ________

Symptoms Reported: ______________________

Symptoms Observed: ______________________

**History**

Date symptoms first appeared ________

Date patient ceased to work because of incapacity ________

Date of first visit for treatment or consultation ________

**History of Treatment for Psychiatric/Psychological Problems**

| Treatment Dates | For what Problem? | Treatment Provider of Facility (Level of care IOP, PHP, INPT) |
|---|---|---|
| | | |
| | | |
| | | |

**Current Treatment**

Therapy Method and Goal(s): ______________________

Frequency and Length of Sessions: ______________________

Number of Sessions to Date: ______________________

Treatment Compliance: ______________________

Treatment Response to Date: ______________________

Expected Outcomes and Time Frame: ______________________

**Medications**

| | | | | |
|---|---|---|---|---|
| Medication Name | | | | |
| Date Started | | | | |
| Initial Dosage | | | | |
| Initial Response | | | | |
| Date of Last Dosage Change | | | | |
| Current Dosage | | | | |
| Response | | | | |
| Side Effects | | | | |
| Serum Levels | | | | |
| Compliance | | | | |
| Date Medication Discontinued | | | | |

**Future Treatment Plans**

What changes in your treatment are underway or being considered?________________________________

________________________________________________

**Mental Status Evaluation**

| | | | | | | |
|---|---|---|---|---|---|---|
| Behavioral: | Appearance | ☐ Groomed | ☐ Disheveled | ☐ Poor Hygiene | | |
| | Eye Contact | ☐ Good | ☐ Fair | ☐ Poor | | |
| | Motor Activity | ☐ Normal | ☐ Hyperactive | ☐ Hypoactive | | |
| | Speech | ☐ Clear | ☐ Pressured | ☐ Soft | ☐ Slurred | |
| | Impulse Control | ☐ Adequate | ☐ Impaired | | | |
| | Comments: __________ | | | | | |
| Cognitive: | Orientation | ☐ Time | ☐ Place | ☐ Person | ☐ Situation | |
| | Language Problems | ☐ Expressive | ☐ Receptive | ☐ Comprehension | | |
| | Memory Problems | ☐ Immediate | ☐ Recent | ☐ Remote | | |
| | Concentration/Attention | ☐ Intact | ☐ Impaired | ☐ Fluctuates | | |
| | Judgment | ☐ Intact | ☐ Impaired | | | |
| | Insight | ☐ Good | ☐ Fair | ☐ Poor | | |
| | Comments: __________ | | | | | |
| Affective: | Affect | ☐ Appropriate | ☐ Blunted | ☐ Labile | ☐ Inappropriate | |
| | Mood | ☐ Appropriate | ☐ Depressed | ☐ anxious | ☐ Irritable | ☐ Panic Attacks |
| | Suicidal Ideation | ☐ Yes | ☐ No | ☐ Ideation | ☐ Plans | |
| | Homicidal | ☐ Yes | ☐ No | ☐ Ideation | ☐ Plans | |
| | Comments: __________ | | | | | |
| Perceptual: | Thought Flow | ☐ Slow | ☐ Coherent | ☐ Loose | ☐ Tangential | ☐ Circumstantial |
| | Thought Content | ☐ Delusional | ☐ Paranoid | ☐ Bizarre | ☐ Grandiose | |
| | Hallucinations | ☐ Yes | ☐ No | | | |
| | Comments: __________ | | | | | |
| Other: | Energy Level | ☐ Adequate | ☐ Increased | ☐ Decreased | | |
| | Sleep | ☐ Adequate | ☐ Increased | ☐ Decreased | | |
| | Interest/Motivation | ☐ Adequate | ☐ Decreased | | | |
| | Comments: __________ | | | | | |

**Client Self Reporting of Activities of Daily Living:**

Is client currently performing ☐ Volunteer Work ☐ Self-Employed ☐ Attending School ☐ No Work Activities ☐ Work at Lesser Demand

Socialization Problems ☐ Yes ☐ No Describe ______

Cleans/Maintains Residence? ☐ Yes ☐ No

Performs Routine Shopping? ☐ Yes ☐ No

Pays Bills ☐ Yes ☐ No

Operates Motor Vehicle ☐ Yes ☐ No

Explain

**Precipitating and Complicating Factors to Leaving Work**

Workplace ☐ increase in work demands ☐ Dissatisfaction with Supervisor ☐ Conflicts with Supervisor ☐ Recent unfavorable work evaluation

Social/Family Describe: ______

Physical/Medical Describe: ______

Financial/Legal Describe: ______

Alcohol/Drug Abuse Describe: ______

Other Describe: ______

Have you advised patient to return to work?

☐ Yes Date of return to work ______ Regular Occupation ☐ FT ☐ PT
Any Occupation ☐ FT ☐ PT

☐ No If No, please give appropriate date patient should be able to return to work
Date of return to work ______ Regular Occupation ☐ FT ☐ PT
Any Occupation ☐ FT ☐ PT

Describe restrictions and limitations currently preventing a return to work.

______

Thank you for providing this information.

______
Attending Physician Name and Specialty (Please Print) Date

______
Therapist/Counselor Name and Degree/License (Please Print) Date

RecordQuest

# INVOICE

Mail Payments To
RecordQuest
PO Box 2017
Mt Pleasant, SC 29465-2017

Overnight Shipping and Certified Mail
RecordQuest
115 Fairchild St Ste 160
Daniel Island, SC 29492-7504

Customer Service
Phone: (888) 300-7410
Fax: (866) 560-8109
Email: help@recordquest.com
Tax ID: 71-1008946

Bill To
Jill Felten
The Lincoln National Life Insurance Company
8801 Indian Hills Dr
Omaha, NE 68114-4059

RQ-ID
1797970-29

For Delivery To
Jill Felten
The Lincoln National Life Insurance Company
8801 Indian Hills Dr
Omaha, NE 68114-4059
Phone 800-423-2765 Fax 800-462-4660

Facility
Mainline Health Systems, Inc.
Patient Name
Adam Bobb
Claim #
1220054596

| Total Pages | Billable Pages | Date | Amount Due | Due Date |
|---|---|---|---|---|
| 17 | 9 | Aug 30 2022 | $21.42 | ON RECEIPT |

| Description | Qty | Cost Per | Cost |
|---|---|---|---|
| $15.00 Search and retrieval fee per AR Code Section 16-46-106 | 1 | $15.00 | $15.00 |
| $0.50 per page for pages 1-25 | 9 | $0.50 | $4.50 |
| Actual postage | 1 | $1.92 | $1.92 |
| | | Subtotal | $21.42 |
| | | Payments | $0.00 |
| | | Balance | $21.42 |

Records will be released upon receipt of payment.

**Secure Release Center**

**Pay and download your records online. It's easy!**

Visit the link below to begin the process: Record Locator: 4CL9V7QG

https://rq.link/4CL9V7QG

If paying by check, please make it payable to RecordQuest and reference RQ-ID

On January 23, 2020 a federal court vacated the 'third-party directive' within 2013 Omnibus Rule. As a result, the fee limitation set forth at 45 C.F.R. § 164.524(c)(4) will apply only to an individual's request for access to their own records. It does not apply to an individual's request to transmit records to a third party. Please see https://www.hhs.gov/hipaa/court-order-right-of-access/index.html for additional information. By paying this invoice, you agree that the pricing is accurate and reasonable and therefore hold RecordQuest and Mainline Health Systems, Inc. harmless in any and all legal matters pertaining to this transaction. If you do not agree, please contact RecordQuest immediately.

Mainline Health Systems, Inc. has contracted with RecordQuest to process and deliver patient health information. RecordQuest is authorized to bill and collect fees in accordance with state and federal regulated rates. The information contained in this transmission is privileged and confidential. It is intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copy of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately and destroy all copies.

Lincoln
Financial Group®

**To:** **SCOTT ALLSION R. JOHNSON, LCSW**
Company:
Fax: 870-538-5412
Phone:

**From:** **Jill Felten**
Fax: 877-843-3950
Phone: 800-423-2765

**NOTES:**

2nd Refax

This facsimile transmission may include confidential and/or proprietary information, and may be used only by the person or entity to which it is addressed. If the recipient of this facsimile transmission is not the intended recipient or his or her authorized agent, the recipient is hereby notified that any dissemination, distribution, or copying of this facsimile transmission is prohibited. If you have received this facsimile transmission in error, please notify the sender and destroy this facsimile immediately.

**Date and time of transmission:** Wednesday, August 10, 2022 8:34:20 AM
**Number of pages including this cover sheet:** 07

Lincoln Financial Group

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

**The Lincoln National Life Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
Toll free (800) 423-2765
Toll free Fax (877) 843-3950
www.LincolnFinancial.com

August 8, 2022

SCOTT ALLSION R. JOHNSON, LCSW
RELEASE OF INFORMATION
1404 E CHURCH
WARREN, AR 716717167

Re: Policy Number: 00040000100019469
Claim Number: 1220054596
Patient: Adam Bobb
DOB:

**ATTN MED RECORDS/ROI DEPT:**
We are evaluating your patient's life waiver claim. Please submit the requested records listed below. A signed authorization form is included.

| **Documentation** | **Time Period** |
|---|---|
| Office/Treatment Notes | 6/1/2021 to present |

****Please fill out all forms that are attached****

Current state statutes for Arkansas: Cost of each photocopy, excluding X rays, shall not exceed $0.50 per page for the first twenty-five (25) pages and $0.25 for each additional page. A labor charge not exceeding $15.00 may be added for each request for medical records under subdivision (a)(1) of this section, and the actual cost of any required postage may also be charged. In addition a reasonable retrieval fee for stored records of a hospital, a physician's office, or an ambulance provider may be added to the photocopy charges, only if the requested records are stored at a location other than the location of the hospital, physician's office, or ambulance provider.

**YOU MUST RETURN THIS COMPLETED FORM TO RECEIVE PAYMENT.**

Payment instructions:

©2022 Lincoln National Corporation www.LincolnFinancial.com
Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

| Qty | Description | Unit Price | Line Total |
|---|---|---|---|
| | Processing Fee | | |
| | Pages - | | |
| | Actual Postage | | |
| | Tax Identification Number | TIN- | |
| | | Total | |

- **We must have your Tax Identification Number (TIN) & NPI.**
- **Please fax this remittance form and records to 1-800-462-4660.**

***Payment Options:***

☐ ***Credit Card***

- If you accept a credit card, ***payment can be made immediately*** upon receipt of your invoice.

☐ ***Direct Deposit*** (Please complete the below)

Direct Deposit Agreement

Authorization Agreement

We hereby authorize Lincoln Financial Group / The Lincoln National Life Insurance Company to initiate automatic deposits to our account at the Financial Institution named below. We also authorize Lincoln Financial Group / The Lincoln National Life Insurance Company to make withdrawals from this account in the event that a credit entry is made in error.

Further, we agree not to hold Lincoln Financial Group / The Lincoln National Life Insurance Company responsible for any delay or loss of funds due to incorrect or incomplete information supplied by us or by our financial institution or due to an error on the part of our financial institution in depositing funds to our account.

This agreement will remain in effect until Lincoln Financial Group / The Lincoln National Life Insurance Company received a written notice of cancellation from us or our financial institution, or until we submit a new direct deposit form.

Account Information

Name of Financial Institution: ______________________

Routing Number: ______________________

Account Number: ______________________

Authorized Signature: ______________________ Date: ______________________

☐ ***Checks Only*** (Please note that pre-payment via check could delay payment by up to 30 days)

Please contact Claim Services on our toll free line at **1-800-423-2765** with any questions regarding this request. Thank you for your cooperation.

Sincerely,

Jill Felten
Assisting on behalf of Erica Wilson
800-423-2765 *7064
Coordinator, Clinical Support
The Lincoln National Life Insurance Company

Lincoln Financial Group®

The Lincoln National Life Insurance Company
PO Box 2609, Omaha, NE 68103-2609
Toll free (800) 423-2765
Fax (877) 843-3950
www.LincolnFinancial.com

## AUTHORIZATION FOR RELEASE OF INFORMATION

☑ **Please check this box if you or your authorized representative would like to receive a copy of this form.**

I (the undersigned) authorize any physician, medical professional, or other provider of health care services, hospital, clinic, other medical or medically related facility, or insurance or reinsurance company to release information to The Lincoln National Life Insurance Company (Lincoln) in connection with a claim for benefits.

**Patient Information:** (Name of Claimant Whose Information Will Be Released)

Patient Name: (Last, First, Middle) Bobb Adam K Date of Birth:

Other Names Used: N/A Social Security Number:

**Description of the information to be disclosed:**

☑ Entire Medical Record, including but not limited to patient histories, office notes (EXCEPT psychotherapy notes), test results, radiology studies, films, prescriptions, referrals, consults, billing records, insurance records, and other related records sent to you by other health care providers.

☐ Other: ______

**Expiration:** This Authorization will be considered valid until the happening of the earliest following event:

1. The term of the coverage of the policy if the claim is for a health insurance benefit;
2. The duration of the claim if the claim is not for a health insurance benefit; or
3. Twelve (12) months from the date of the signature below.

**Right to Revoke:** I have the right to revoke this authorization, in writing, at any time. I understand that revocation is not effective to the extent that Lincoln has taken action in reliance on this authorization. To initiate revocation of this Authorization, direct all correspondence to Lincoln at the above address.

**Claimant Rights:**

1. I understand that the information used or disclosed may be subject to re-disclosure by the recipient and may no longer be protected by federal or state law. For Colorado claims, the disclosed information may not be redisclosed or reused by the recipient under Colorado law.
2. I understand that a photocopy of this Authorization is to be considered as valid as the original.
3. I understand that I am entitled to receive a copy of this Authorization.
4. I understand that this information may be released to my employer for self-insured plans only.
5. I understand that my treatment, payment, enrollment, or eligibility for benefits will not be conditioned on whether I sign this Authorization.

**Authorized Representative Information:** Complete this section if a personal representative is authorizing disclosure of the claimant's information. A copy of a power of attorney or other court-initiated document will be required, unless parent signing for patient under 18.

Name: (Last, First, Middle) ______ Relationship to claimant: ______

Address: ______ Phone: ______

**Signature/Date:** The Claimant whose information will be released or the claimant's authorized representative must sign and date this form in order to process.

Sign: Adam K Bobb [signature] Date: 7-8-21

Lincoln Financial Group®

**The Lincoln National Life Insurance Company**
8801 Indian Hills Drive, Omaha, NE 68103-2649
toll free (800) 423-2765
www.LincolnFinancial.com

# PSYCHIATRIC SUPPLEMENTAL INFORMATION

## PART 1 - PATIENT INFORMATION

Name: ______________________ SS#: ____________ Date of Birth: __________

## PART 2 - ATTENDING PHYSICIAN'S STATEMENT

**Diagnosis (DSM IV CRITERIA)**

Axis I ______________________

Symptoms Reported: ______________________

Axis II ______________________

Symptoms Observed: ______________________

Axis III ______________________

Axis IV 0 1 2 3 4 5 6

Axis V Current GAF Score __________

Highest GAF Score Past Year __________

**History**

Date symptoms first appeared __________

Date patient ceased to work because of incapacity __________

Date of first visit for treatment or consultation __________

**History of Treatment for Psychiatric/Psychological Problems**

| Treatment Dates | For what Problem? | Treatment Provider of Facility (Level of care IOP, PHP, INPT) |
|---|---|---|
| | | |
| | | |
| | | |

**Current Treatment**

Therapy Method and Goal(s): ______________________

Frequency and Length of Sessions: ______________________

Number of Sessions to Date: ______________________

Treatment Compliance: ______________________

Treatment Response to Date: ______________________

Expected Outcomes and Time Frame: ______________________

**Medications**

| | | | | |
|---|---|---|---|---|
| Medication Name | | | | |
| Date Started | | | | |
| Initial Dosage | | | | |
| Initial Response | | | | |
| Date of Last Dosage Change | | | | |
| Current Dosage | | | | |
| Response | | | | |
| Side Effects | | | | |
| Serum Levels | | | | |
| Compliance | | | | |
| Date Medication Discontinued | | | | |

**Future Treatment Plans**

What changes in your treatment are underway or being considered?________________________________________________

**Mental Status Evaluation**

| | | | | | | |
|---|---|---|---|---|---|---|
| Behavioral: | Appearance | ☐ Groomed | ☐ Disheveled | ☐ Poor Hygiene | | |
| | Eye Contact | ☐ Good | ☐ Fair | ☐ Poor | | |
| | Motor Activity | ☐ Normal | ☐ Hyperactive | ☐ Hypoactive | | |
| | Speech | ☐ Clear | ☐ Pressured | ☐ Soft | ☐ Slurred | |
| | Impulse Control | ☐ Adequate | ☐ Impaired | | | |
| | Comments: | | | | | |
| Cognitive: | Orientation | ☐ Time | ☐ Place | ☐ Person | ☐ Situation | |
| | Language Problems | ☐ Expressive | ☐ Receptive | ☐ Comprehension | | |
| | Memory Problems | ☐ Immediate | ☐ Recent | ☐ Remote | | |
| | Concentration/Attention | ☐ Intact | ☐ Impaired | ☐ Fluctuates | | |
| | Judgment | ☐ Intact | ☐ Impaired | | | |
| | Insight | ☐ Good | ☐ Fair | ☐ Poor | | |
| | Comments: | | | | | |
| Affective: | Affect | ☐ Appropriate | ☐ Blunted | ☐ Labile | ☐ Inappropriate | |
| | Mood | ☐ Appropriate | ☐ Depressed | ☐ anxious | ☐ Irritable | ☐ Panic Attacks |
| | Suicidal Ideation | ☐ Yes | ☐ No | ☐ Ideation | ☐ Plans | |
| | Homicidal | ☐ Yes | ☐ No | ☐ Ideation | ☐ Plans | |
| | Comments: | | | | | |
| Perceptual: | Thought Flow | ☐ Slow | ☐ Coherent | ☐ Loose | ☐ Tangential | ☐ Circumstantial |
| | Thought Content | ☐ Delusional | ☐ Paranoid | ☐ Bizarre | ☐ Grandiose | |
| | Hallucinations | ☐ Yes | ☐ No | | | |
| | Comments: | | | | | |
| Other: | Energy Level | ☐ Adequate | ☐ Increased | ☐ Decreased | | |
| | Sleep | ☐ Adequate | ☐ Increased | ☐ Decreased | | |
| | Interest/Motivation | ☐ Adequate | ☐ Decreased | | | |
| | Comments: | | | | | |

**Client Self Reporting of Activities of Daily Living:**

Is client currently performing ☐ Volunteer Work ☐ Attending School ☐ Work at Lesser Demand ☐ Self-Employed ☐ No Work Activities

Socialization Problems ☐ Yes ☐ No Describe ____________________

Cleans/Maintains Residence? ☐ Yes ☐ No

Performs Routine Shopping? ☐ Yes ☐ No

Pays Bills ☐ Yes ☐ No

Operates Motor Vehicle ☐ Yes ☐ No

Explain

**Precipitating and Complicating Factors to Leaving Work**

Workplace ☐ increase in work demands ☐ Conflicts with Supervisor ☐ Dissatisfaction with Supervisor ☐ Recent unfavorable work evaluation

Social/Family Describe: ____________________

Physical/Medical Describe: ____________________

Financial/Legal Describe: ____________________

Alcohol/Drug Abuse Describe: ____________________

Other Describe: ____________________

Have you advised patient to return to work?

☐ Yes Date of return to work ______________ Regular Occupation ☐ FT ☐ PT
Any Occupation ☐ FT ☐ PT

☐ No If No, please give appropriate date patient should be able to return to work
Date of return to work ______________ Regular Occupation ☐ FT ☐ PT
Any Occupation ☐ FT ☐ PT

Describe restrictions and limitations currently preventing a return to work.

____________________

Thank you for providing this information.

____________________ ____________________
Attending Physician Name and Specialty (Please Print) Date

____________________ ____________________
Therapist/Counselor Name and Degree/License (Please Print) Date

Date: Wed Aug 24 17:55:15 CDT 2022
From: Erica Wilson <Erica.Wilson@lfg.com>
To:
Message-ID: <658135690.3.1661381715219.JavaMail.gman@ne1pldb201c.lnc.com>
Subject:Lincoln Financial Group Information for Claim 1220054596 (SECURE)

E-communication from Lincoln Financial Group

Lincoln Financial Group

LINCOLN FOR GROUP BENEFITS

## Important Information for Claim #1220054596

Please review the attached letter and/or document(s) regarding the Claim #1220054596 for Adam Bobb. You may submit claim forms and additional documentation via email to DisabilityClaims@LFG.com. If you have any questions regarding this information, please contact us at claims@lfg.com or 1-800-423-2765.

**Erica Wilson**
**Claims Examiner II, Life Waiver 2**
LN10-Lincoln National Life Insurance Co
8801 Indian Hills Dr.
Omaha, NE Toll Free Phone: 1-800-423-2765
Phone: 800-423-2765 *7064
Email: Erica.Wilson@lfg.com

Insurance products are issued by the insurance company affiliates of Lincoln Financial Group: The Lincoln National Life Insurance Company and Lincoln Life & Annuity Company of New York. The Lincoln National Life Insurance Company is not authorized in the state of New York. Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

©2013 Lincoln National Corporation

LincolnFinancial.com

You're In Charge™

Lincoln Financial Group

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

**The Lincoln National Life Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
Toll free (800) 423-2765
Toll free Fax (877) 843-3950
www.LincolnFinancial.com

August 24, 2022

ADAM K BOBB
MARCUS VADEN LAW
PO BOX 203
CONWAY, AR 72033

Re: Policyholder: Trinity Village, Inc.
Policy Number: 00040000100019469
Claim Number: 1220054596
Claimant: Adam Bobb

Dear Mr. Bobb:

On 06/16/2022 we received your claim for Extension of Death Benefits and advised that we were in the process of reviewing your claim. On 07/25/2022, we advised you the need for a 30-day extension to review your claim. In order to be eligible for Extension of Death Benefits, you must satisfy all of the provisions of the policy.

On 07/25/2022, we advised you of the need for a 30-day extension. We are approaching our second deadline for making a decision on your claim. Our decision is currently pending additional medical records from your treating provider(s).

For these reasons, we require a 30-day extension of time to make a determination on your claim. You can expect to receive a decision from us within 30 days.

Please contact us at the number listed below or at disabilityclaims@lfg.com with any questions. You can also register for our website at www.LincolnFinancial.com to view your benefits and claim status.

Sincerely,

Erica Wilson
800-423-2765 *7064
Claims Examiner II, Life Waiver 2
The Lincoln National Life Insurance Company

©2022 Lincoln National Corporation www.LincolnFinancial.com
Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

Lincoln Financial Group

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

**The Lincoln National Life Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
Toll free (800) 423-2765
Toll free Fax (877) 843-3950
www.LincolnFinancial.com

August 8, 2022

SCOTT ALLSION R. JOHNSON, LCSW
RELEASE OF INFORMATION
1404 E CHURCH
WARREN, AR 716717167

| | | |
|---|---|---|
| Re: | Policy Number: | 00040000100019469 |
| | Claim Number: | 1220054596 |
| | Patient: | Adam Bobb |
| | DOB: | |

**ATTN MED RECORDS/ROI DEPT:**
We are evaluating your patient's life waiver claim. Please submit the requested records listed below. A signed authorization form is included.

| **Documentation** | **Time Period** |
|---|---|
| Office/Treatment Notes | 6/1/2021 to present |

****Please fill out all forms that are attached****

Current state statutes for Arkansas: Cost of each photocopy, excluding X rays, shall not exceed $0.50 per page for the first twenty-five (25) pages and $0.25 for each additional page. A labor charge not exceeding $15.00 may be added for each request for medical records under subdivision (a)(1) of this section, and the actual cost of any required postage may also be charged. In addition a reasonable retrieval fee for stored records of a hospital, a physician's office, or an ambulance provider may be added to the photocopy charges, only if the requested records are stored at a location other than the location of the hospital, physician's office, or ambulance provider.

**YOU MUST RETURN THIS COMPLETED FORM TO RECEIVE PAYMENT.**

Payment instructions:

©2022 Lincoln National Corporation www.LincolnFinancial.com
Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

| Qty | Description | Unit Price | Line Total |
|---|---|---|---|
| | Processing Fee | | |
| | Pages - | | |
| | Actual Postage | | |
| | Tax Identification Number | TIN- | |
| | | Total | |

- **We must have your Tax Identification Number (TIN) & NPI.**
- **Please fax this remittance form and records to 1-800-462-4660.**

***Payment Options:***

☐ ***Credit Card***

- If you accept a credit card, ***payment can be made immediately*** upon receipt of your invoice.

☐ ***Direct Deposit*** *(*Please complete the below)

Direct Deposit Agreement

Authorization Agreement

We hereby authorize Lincoln Financial Group / The Lincoln National Life Insurance Company to initiate automatic deposits to our account at the Financial Institution named below. We also authorize Lincoln Financial Group / The Lincoln National Life Insurance Company to make withdrawals from this account in the event that a credit entry is made in error.

Further, we agree not to hold Lincoln Financial Group / The Lincoln National Life Insurance Company responsible for any delay or loss of funds due to incorrect or incomplete information supplied by us or by our financial institution or due to an error on the part of our financial institution in depositing funds to our account.

This agreement will remain in effect until Lincoln Financial Group / The Lincoln National Life Insurance Company received a written notice of cancellation from us or our financial institution, or until we submit a new direct deposit form.

Account Information

Name of Financial Institution: ______________________________

Routing Number: ______________________________

Account Number: ______________________________

Authorized Signature: ________________________________________ Date: ________________________

☐ ***Checks Only*** (Please note that pre-payment via check could delay payment by up to 30 days)

Please contact Claim Services on our toll free line at **1-800-423-2765** with any questions regarding this request. Thank you for your cooperation.

Sincerely,

Jill Felten
Assisting on behalf of Erica Wilson
800-423-2765 *7064
Coordinator, Clinical Support
The Lincoln National Life Insurance Company

Lincoln Financial Group®

The Lincoln National Life Insurance Company
PO Box 2609, Omaha, NE 68103-2609
Toll free (800) 423-2765
Fax (877) 843-3950
www.LincolnFinancial.com

## AUTHORIZATION FOR RELEASE OF INFORMATION

☑ **Please check this box if you or your authorized representative would like to receive a copy of this form.**

I (the undersigned) authorize any physician, medical professional, or other provider of health care services, hospital, clinic, other medical or medically related facility, or insurance or reinsurance company to release information to The Lincoln National Life Insurance Company (Lincoln) in connection with a claim for benefits.

**Patient Information:** (Name of Claimant Whose Information Will Be Released)

Patient Name: (Last, First, Middle) Bobb Adam K Date of Birth:

Other Names Used: Kel Social Security Number

**Description of the information to be disclosed:**

☑ Entire Medical Record, including but not limited to patient histories, office notes (EXCEPT psychotherapy notes), test results, radiology studies, films, prescriptions, referrals, consults, billing records, insurance records, and other related records sent to you by other health care providers.

☐ Other: ___

**Expiration:** This Authorization will be considered valid until the happening of the earliest following event:

1. The term of the coverage of the policy if the claim is for a health insurance benefit;
2. The duration of the claim if the claim is not for a health insurance benefit; or
3. Twelve (12) months from the date of the signature below.

**Right to Revoke:** I have the right to revoke this authorization, in writing, at any time. I understand that revocation is not effective to the extent that Lincoln has taken action in reliance on this authorization. To initiate revocation of this Authorization, direct all correspondence to Lincoln at the above address.

**Claimant Rights:**

1. I understand that the information used or disclosed may be subject to re-disclosure by the recipient and may no longer be protected by federal or state law. For Colorado claims, the disclosed information may not be redisclosed or reused by the recipient under Colorado law.
2. I understand that a photocopy of this Authorization is to be considered as valid as the original.
3. I understand that I am entitled to receive a copy of this Authorization.
4. I understand that this information may be released to my employer for self-insured plans only.
5. I understand that my treatment, payment, enrollment, or eligibility for benefits will not be conditioned on whether I sign this Authorization.

**Authorized Representative Information:** Complete this section if a personal representative is authorizing disclosure of the claimant's information. A copy of a power of attorney or other court-initiated document will be required, unless parent signing for patient under 18.

Name: (Last, First, Middle) ___ Relationship to claimant: ___

Address: ___ Phone: ___

**Signature/Date:** The Claimant whose information will be released or the claimant's authorized representative must sign and date this form in order to process.

Sign: [signature] Date: 7-8-21

Lincoln Financial Group®

**The Lincoln National Life Insurance Company**
8801 Indian Hills Drive, Omaha, NE 68103-2649
toll free (800) 423-2765
www.LincolnFinancial.com

# PSYCHIATRIC SUPPLEMENTAL INFORMATION

## PART 1 - PATIENT INFORMATION

Name: ______________________ SS#: ______________ Date of Birth: __________

## PART 2 - ATTENDING PHYSICIAN'S STATEMENT

**Diagnosis (DSM IV CRITERIA)**

Axis I ______________________

Axis II ______________________

Axis III ______________________

Axis IV 0 1 2 3 4 5 6

Axis V Current GAF Score __________

Highest GAF Score Past Year __________

Symptoms Reported: ______________________

Symptoms Observed: ______________________

**History**

Date symptoms first appeared __________

Date patient ceased to work because of incapacity __________

Date of first visit for treatment or consultation __________

**History of Treatment for Psychiatric/Psychological Problems**

| Treatment Dates | For what Problem? | Treatment Provider of Facility (Level of care IOP, PHP, INPT) |
|---|---|---|
| | | |
| | | |
| | | |

**Current Treatment**

Therapy Method and Goal(s): ______________________

Frequency and Length of Sessions: ______________________

Number of Sessions to Date: ______________________

Treatment Compliance: ______________________

Treatment Response to Date: ______________________

Expected Outcomes and Time Frame: ______________________

**Medications**

| | | | | |
|---|---|---|---|---|
| Medication Name | | | | |
| Date Started | | | | |
| Initial Dosage | | | | |
| Initial Response | | | | |
| Date of Last Dosage Change | | | | |
| Current Dosage | | | | |
| Response | | | | |
| Side Effects | | | | |
| Serum Levels | | | | |
| Compliance | | | | |
| Date Medication Discontinued | | | | |

**Future Treatment Plans**

What changes in your treatment are underway or being considered?________________________________________

__________________________________________________________________________________

**Mental Status Evaluation**

| | | | | | | |
|---|---|---|---|---|---|---|
| Behavioral: | Appearance | ☐ Groomed | ☐ Disheveled | ☐ Poor Hygiene | | |
| | Eye Contact | ☐ Good | ☐ Fair | ☐ Poor | | |
| | Motor Activity | ☐ Normal | ☐ Hyperactive | ☐ Hypoactive | | |
| | Speech | ☐ Clear | ☐ Pressured | ☐ Soft | ☐ Slurred | |
| | Impulse Control | ☐ Adequate | ☐ Impaired | | | |
| | Comments: __________ | | | | | |
| Cognitive: | Orientation | ☐ Time | ☐ Place | ☐ Person | ☐ Situation | |
| | Language Problems | ☐ Expressive | ☐ Receptive | ☐ Comprehension | | |
| | Memory Problems | ☐ Immediate | ☐ Recent | ☐ Remote | | |
| | Concentration/Attention | ☐ Intact | ☐ Impaired | ☐ Fluctuates | | |
| | Judgment | ☐ Intact | ☐ Impaired | | | |
| | Insight | ☐ Good | ☐ Fair | ☐ Poor | | |
| | Comments: __________ | | | | | |
| Affective: | Affect | ☐ Appropriate | ☐ Blunted | ☐ Labile | ☐ Inappropriate | |
| | Mood | ☐ Appropriate | ☐ Depressed | ☐ anxious | ☐ Irritable | ☐ Panic Attacks |
| | Suicidal Ideation | ☐ Yes | ☐ No | ☐ Ideation | ☐ Plans | |
| | Homicidal | ☐ Yes | ☐ No | ☐ Ideation | ☐ Plans | |
| | Comments: __________ | | | | | |
| Perceptual: | Thought Flow | ☐ Slow | ☐ Coherent | ☐ Loose | ☐ Tangential | ☐ Circumstantial |
| | Thought Content | ☐ Delusional | ☐ Paranoid | ☐ Bizarre | ☐ Grandiose | |
| | Hallucinations | ☐ Yes | ☐ No | | | |
| | Comments: __________ | | | | | |
| Other: | Energy Level | ☐ Adequate | ☐ Increased | ☐ Decreased | | |
| | Sleep | ☐ Adequate | ☐ Increased | ☐ Decreased | | |
| | Interest/Motivation | ☐ Adequate | ☐ Decreased | | | |
| | Comments: __________ | | | | | |

**Client Self Reporting of Activities of Daily Living:**

Is client currently performing ☐ Volunteer Work ☐ Attending School ☐ Work at Lesser Demand
☐ Self-Employed ☐ No Work Activities

Socialization Problems ☐ Yes ☐ No Describe ____________________

Cleans/Maintains Residence? ☐ Yes ☐ No

Performs Routine Shopping? ☐ Yes ☐ No

Pays Bills ☐ Yes ☐ No

Operates Motor Vehicle ☐ Yes ☐ No

Explain

**Precipitating and Complicating Factors to Leaving Work**

Workplace ☐ increase in work demands ☐ Conflicts with Supervisor
☐ Dissatisfaction with Supervisor ☐ Recent unfavorable work evaluation

Social/Family Describe: ____________________

Physical/Medical Describe: ____________________

Financial/Legal Describe: ____________________

Alcohol/Drug Abuse Describe: ____________________

Other Describe: ____________________

Have you advised patient to return to work?

☐ Yes Date of return to work ____________ Regular Occupation ☐ FT ☐ PT
Any Occupation ☐ FT ☐ PT

☐ No If No, please give appropriate date patient should be able to return to work
Date of return to work ____________ Regular Occupation ☐ FT ☐ PT
Any Occupation ☐ FT ☐ PT

Describe restrictions and limitations currently preventing a return to work.

____________________

Thank you for providing this information.

____________________ ____________________
Attending Physician Name and Specialty (Please Print) Date

____________________ ____________________
Therapist/Counselor Name and Degree/License (Please Print) Date

Date: Mon Jul 25 09:40:48 CDT 2022
From: Erica Wilson <Erica.Wilson@lfg.com>
To:
E-communication from Lincoln Financial Group
Message-ID: <18154127633.33.1658760048693.JavaMail.gman@ne1pldb201c.lnc.com>
Subject:Lincoln Financial Group Information for Claim 1220054596 (SECURE)

Lincoln Financial Group

LINCOLN FOR GROUP BENEFITS

## Important Information for Claim #1220054596

Please review the attached letter and/or document(s) regarding the Claim #1220054596 for Adam Bobb. You may submit claim forms and additional documentation via email to DisabilityClaims@LFG.com. If you have any questions regarding this information, please contact us at claims@lfg.com or 1-800-423-2765.

**Erica Wilson**
**Claims Examiner II, Life Waiver 2**
LN10-Lincoln National Life Insurance Co
8801 Indian Hills Dr.
Omaha, NE Toll Free Phone: 1-800-423-2765
Phone: 800-423-2765 *7064
Email: Erica.Wilson@lfg.com

Insurance products are issued by the insurance company affiliates of Lincoln Financial Group: The Lincoln National Life Insurance Company and Lincoln Life & Annuity Company of New York. The Lincoln National Life Insurance Company is not authorized in the state of New York. Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

©2013 Lincoln National Corporation

LincolnFinancial.com

You're In Charge™

Lincoln Financial Group

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

**The Lincoln National Life Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
Toll free (800) 423-2765
Toll free Fax (877) 843-3950
www.LincolnFinancial.com

July 25, 2022

ADAM K BOBB
MARCUS VADEN LAW
PO BOX 203
CONWAY, AR 72033

Re: Policyholder: Trinity Village, Inc.
Policy Number: 00040000100019469
Claim Number: 1220054596
Claimant: Adam Bobb

Dear Mr. Bobb:

On , 06/16/2022 we received your claim for Extension of Death Benefits and advised that we were in the process of reviewing your claim. In order to be eligible for Extension of Death Benefits, you must satisfy all of the provisions of the policy.

We are approaching our initial deadline for making a decision on your claim. Our decision is currently pending medical review.

For these reasons, we require a 30-day extension of time to make a determination on your claim. You can expect to receive a decision from us within 30 days or notification that an additional extension is required.

Please contact us at the number listed below or at disabilityclaims@lfg.com with any questions. You can also register for our website at www.LincolnFinancial.com to view your benefits and claim status.

Sincerely,

Erica Wilson
800-423-2765 *7064
Claims Examiner II, Life Waiver 2
The Lincoln National Life Insurance Company

©2022 Lincoln National Corporation www.LincolnFinancial.com
Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

Date: Thu Jun 30 14:16:05 CDT 2022
From: Erica Wilson <Erica.Wilson@lfg.com>
To:
E-communication from Lincoln Financial Group
Message-ID: <1914854964.38.1656616565926.JavaMail.gman@ne1pldb201c.lnc.com>
Subject:Lincoln Financial Group Information for Claim 1220054596 (SECURE)

Lincoln Financial Group

LINCOLN FOR GROUP BENEFITS

## Important Information for Claim #1220054596

Please review the attached letter and/or document(s) regarding the Claim #1220054596 for Adam Bobb. You may submit claim forms and additional documentation via email to DisabilityClaims@LFG.com. If you have any questions regarding this information, please contact us at claims@lfg.com or 1-800-423-2765.

**Erica Wilson**
**Claims Examiner II, Group Claims**
LN10-Lincoln National Life Insurance Co
8801 Indian Hills Dr.
Omaha, NE Toll Free Phone: 1-800-423-2765
Phone: 800-423-2765 *7064
Email: Erica.Wilson@lfg.com

Insurance products are issued by the insurance company affiliates of Lincoln Financial Group: The Lincoln National Life Insurance Company and Lincoln Life & Annuity Company of New York. The Lincoln National Life Insurance Company is not authorized in the state of New York. Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

©2013 Lincoln National Corporation

LincolnFinancial.com

You're In Charge™

Lincoln Financial Group

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

**The Lincoln National Life Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
Toll free (800) 423-2765
Toll free Fax (877) 843-3950
www.LincolnFinancial.com

June 30, 2022

ADAM K BOBB
MARCUS VADEN LAW
PO BOX 203
CONWAY, AR 72033

RE: Extension of Death Benefit
Policyholder: Trinity Village, Inc.
Policy Number: 00040000100019469
Claim Number: 1220054596
Claimant: Adam Bobb

Dear Mr. Bobb:

In order to provide the highest quality of customer service, The Lincoln National Life Insurance Company has implemented an integrated process that allows us to take a proactive approach in reviewing all disability related benefits you may be eligible for without you or your employer having to initiate the process.

Currently we are reviewing the documentation provided for your Long-Term Disability claim in order to make a determination regarding your Extension of Death Benefit under your group life insurance policy. Should you qualify for this benefit, your life insurance would remain in force without payment of premiums. We will contact you if additional information is needed or when a claim decision has been reached. Failure to provide requested documentation for your Long-Term Disability claim may result in the termination of benefits under both policies.

Please contact us at the number listed below or at disabilityclaims@lfg.com with any questions. You can also register for our website at www.LincolnFinancial.com to view your benefits and claim status.

Sincerely,

Erica Wilson
800-423-2765 *7064
Claims Examiner II, Group Claims
The Lincoln National Life Insurance Company

©2022 Lincoln National Corporation www.LincolnFinancial.com
Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

**Shalini, Baby**

| | |
|---|---|
| **From:** | Disability Claims |
| **Sent:** | Wednesday, August 31, 2022 2:13 PM |
| **To:** | entrprserip |
| **Subject:** | FW: ADAM BOBB- 1220054596 |

---

**From:** Kurtz, Keshia
**Sent:** Wednesday, August 31, 2022 2:12:55 PM (UTC-05:00) Eastern Time (US & Canada)
**To:** Disability Claims
**Subject:** ADAM BOBB- 1220054596

Please upload the attached records into AWD.
Thank you.
Keshia

# STD CLAIM PROFILE

**Date:** 3/17/2026 **LFG** **Claim #:** 1210071975

**Insurer:** The Lincoln National Life Insurance Company **Posted:** 7/19/2021 **Location:** ATLANTA
**Policy:** 00001020137600000 - Trinity Village, Inc. **Status:** CLOSED **User ID:** RXJOHNS
**Business:** TRUE STD
**Close Date:** 6/15/2022 **Close Reason:** Maximum Benefit Reached (T65, RBD, etc.)

## Claimant Information

**Name:** ADAM K BOBB **Phone:** **DOB:**
**SSN:** **Sex:** M **Hire:** 8/14/2014
**Address:** MARCUS VADEN LAW **Ins Eff:** 1/1/2017
PO BOX 203 **Occ:** MAINTENANCE REPAIRER, INDUSTRIAL **DOT** 899261014 ry) alternate titles
CONWAY AR 72033 USA **Salary:** $646.40 **Period:** Weekly

## Claim Information

**LTD Pol:** 1616114
**Special Provisions:** **Min Ben:** $100.00
**Ben:** 0% / $1,000.00 **Flat:** 250 **Labor:** 4 **Age:** 37 **Elim Per:** 14 day
**DLW:** 6/17/2021 **DOD:** 6/18/2021 **S/A:** S **W/R:** N **Ben Amt:** $250.00

**Diagnosis Pri:** M25.551Pain in right hip **Max Weeks:** 24
**Sec:** M76.891Other specified enthesopathies of right **Max Days:** 0
**Recovery Date:** 12/17/2021

## Benefit Information

**Date Ben Begin:** 7/2/2021 **Weeks Paid:** 24

## Policy Information

**SS Offset:** Primary & Family **Prex:** 6/12

## Offset Information

| Type | Status | Awarded | Terminated | Mo Amount | Mo Used |
|---|---|---|---|---|---|
| RehabAst | NOT QUALIFY | 7/2/2021 | | $32.32 | |
| CSection | PENDING | 7/2/2021 | 7/2/2022 | | |
| 3M SURV | PENDING | 7/2/2021 | 7/2/2022 | | |

## Alert Information

| Status | Level | Description | Posted | Resolved |
|---|---|---|---|---|
| T | W | FICA MAY APPLY TO BENEFITS PAID ON THIS REOPENED CLAIM | 10/29/2021 | 11/3/2021 |

## Action Plan

## Chronological Activity List

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Claimant:** | ADAM BOBB | | | **Occupation:** | MAINTENANCE REPAIRER, INDUSTRIAL (any industry) alternate title | | |
| **SSN:** | | **DOB:** | | **Received Date:** | 7/19/2021 | **Months Dis:** | 247 |
| **Claim #:** | 1210071975 | **DOD:** | 6/18/2021 | **Ben:** | $250.00 | **Months Pd:** | 24 |
| **Coverage:** | STD | **Status:** | CLOSED | **Close Date:** | 6/15/2022 | **Assignee:** | RXJOHNS |
| **Policy Holder:** | Trinity Village, Inc. | | | | | **Deceased:** | |
| **Case Mgr. Status:** | NONE | | | **Close Code:** | Maximum Benefit Reached (T65, RBD, etc.) | | |

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| | Action Plan | | | | |
| 7/21/2021 | Documents/Mail<br>2021-07-19-11.55.11.835100O01 | 2 | Claim Form - Authorization | Completed | MABEL4 |
| 7/21/2021 | Documents/Mail<br>2021-07-19-11.55.09.671100O01 | 1 | Envelope | Completed | MABEL4 |
| 7/21/2021 | Documents/Mail<br>2021-07-19-11.55.15.315100O01 | 3 | Claim Form - EE, ER, APS | Completed | MABEL4 |
| 7/21/2021 11:45:58 AM | Claim Tasks<br>The Date Last Worked Is Prior To The Effective Date<br><br>Item Closed w ith Claim by System - AJHICKS - Jun 15, 2022 02:03:00 pm | 3 | DLW Before Effective Date | Requested | MABEL4 |
| 7/21/2021 11:45:58 AM | Claim Tasks<br>Verify Offsets<br><br>Item Closed w ith Claim by System - AJHICKS - Jun 15, 2022 02:02:58 pm | 2 | Verify Offsets | Requested | MABEL4 |
| 7/21/2021 11:45:58 AM | Claim Tasks<br>DOT/Occupation w as Unknow n<br><br>Item Closed w ith Claim by System - AJHICKS - Jun 15, 2022 02:02:57 pm | 1 | Verify Occupation | Requested | MABEL4 |
| 7/22/2021 12:43:40 PM | Claim Tasks<br><br>Bill Type Missing In ARDIS<br>ER Data Missing: DLW<br>Self billed, <100% ER Paid<br>Bill Type did not return as G,N, or L<br>- SRP058 - Jul 22, 2021 12:43:53 pm<br><br>Item Closed w ith Claim by System - AJHICKS - Jun 15, 2022 02:03:01 pm | 4 | Update Claim Direction | Requested | MABEL4 |
| 7/22/2021 12:44:00 PM | Claim Tasks<br>Item Closed w ith Claim by System - AJHICKS - Jun 15, 2022 02:03:03 pm | 5 | Elig BOT Rvw - Contact Required | Requested | MABEL4 |
| 7/23/2021 1:53:04 PM | Documents/Mail<br>2021-07-22-08.32.49.967140O01<br><br>Item Closed w ith Claim by System - AJHICKS - Jun 15, 2022 02:03:24 pm | 4 | Email | Received | MABEL4 |
| 7/27/2021 | Documents/Mail<br>Pend Ltr to Employer | 6 | Pend Ltr to Employer | Completed | MABEL4 |
| 7/27/2021 | Documents/Mail<br>Pend Ltr to Employee | 5 | Pend Ltr to Employee | Completed | MABEL4 |
| 7/27/2021 | Documents/Mail<br>2021-07-22-08.32.49.967140O01<br><br>Item Closed w ith Claim by System - AJHICKS - Jun 15, 2022 02:03:24 pm | 4 | Email | Completed | MABEL4 |
| 7/27/2021 | Claim Tasks<br>Item Closed w ith Claim by System - AJHICKS - Jun 15, 2022 02:03:03 pm | 5 | Elig BOT Rvw - Contact Required | Completed | MABEL4 |
| 7/27/2021 | Claim Tasks<br><br>Bill Type Missing In ARDIS | 4 | Update Claim Direction | Completed | MABEL4 |

**Chronological Activity List**

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

ER Data Missing: DLW
Self billed, <100% ER Paid
Bill Type did not return as G,N, or L
 - SRP058 - Jul 22, 2021 12:43:53 pm

Item Closed w ith Claim by System - AJHICKS - Jun 15, 2022 02:03:01 pm

| 7/27/2021 5:15:22 PM | Summary/Assessment/Pa1h | | | Requested | RXJOHNS |
|---|---|---|---|---|---|

Summary Notes

Assessment Notes

Path Notes
Summary
Claimant age / sex: 37, Male
Occupation title / level: Maintenance
Being treated for (diagnosis): Hip Pain
DLW: 6/17/2021
DOD (address gap, if applicable): 6/18/2021

Eligibility Assessment
List or Self-Billed: List-Billed
Coverage confirmed via (census, enrollment form, Ardis, 100% ER paid): 0% ER paid
EE effective date: 1/1/2017
Pre-Ex _/_ (if no pre-ex, indicate none): N/A
PIC (only if pre-ex in policy): N/A
Continuance pay: N/A
LTD eff: 1/1/2017

Medical Assessment:
Physician Name: Mark Ramiro
Phone number: 890-247-5312
Date of APS: 7/8/2021
ICD Code:
MDA min/opt/max: 0/7/14
R& L's: Avoid prolonged standing, w alking, lifting
Treatment: medication/PT
ERTW per physician: 9/8/2021

Path:
Rationale (Claim status and the reason claim is in that status): Claim is pending, requesting additional medical documentation
 - MABEL4 - Jul 27, 2021 05:15:34 pm

************************************
AUTHO RECEIVED

PROGRESS NOTE 6/7/2021 - 8/23/2021

8/23 - F/U. RIGHT HIP AND GROIN PAIN CONT. WENT TO PT TWICE BUT EXERCISES NOT HELPED HIS PAIN, SEE DR POLLARD NEXT WEEK. ASSESSMENT OF HYPERTENSION AND RIGHT HIP PAIN.

6/18 - RIGHT HIP PAIN, RIGHT GROIN PAIN, BURN BOTTOM OF RIGHT FOOT. ASSEMENT - HYPERTENSION, SECOND DEGREE BURN OF FOOT, RIGHT HIP PAIN, BURSITIS OF HIP, RIGHT

6/7 - F/U, HYPERTENSION, HYPERLIPIDEMIA, RIGH HIP PAIN, WORSENING. BP 156/105 AND 140/100. RADILOGY REPORT - TROCHANTERS ARE NORMAL. ILEUM AND ISCHIUM ARE UNREMARKABLE.

SPK WITH EE SEE DR ON 9/7. WILL NOT BE RTW ON 9/8 AND SAID THAT DR WANT HIM OOW COUPLE MORE MONTHS. EE IS SAYING DR BELIEVE IT IS A TEAR BUT NEED TO GET A MRI. EE SAID THAT HE WILL SEE

SPECIALIST ON 9/1 TO SEE ABOUT ORDERING THE MRI. SPK WITH EE ABOUT APS SHOWING DOD OF 6/7 AND EE DLW WAS 6/17. EE SAID THAT HE WENT TO DR ON 6/7 AND DR THOUGHT HE HAD BURSITIS AND GAVE HIM STEROID BUT NOTHING CHANGE AND THAT IS WHEN EE WENT BACK AND WAS TOLD TO STOP WORKING. CE INFORM THAT RECEIVED MEDICAL AND SENDING FILE FOR CR THAT TAKES ABOUT 7-10 BUSINESS DAYS AND CE WILL CB ONCE COMPLETE.

PATH UPDATE
FILE SENT FOR CR
- RXJOHNS - Aug 31, 2021 10:48:10 am

**********************************
Clinical Assessment:

OVNs w ith Dr. Mark Ramiro, MD (family practice) 6/7/21-6/28/21 show s EE w as f/u for right hip pain and reported burn on right foot. The burn healed and hip pain continued. Right hip x-ray 6/7/21 w as unremarkable. MRI of the hip w as denied by insurance. Exams show ed limited hip ROM and tenderness. Gentle exercises w ere advised. An APS 7/8/21 from Mark Ramiro, MD (family practice) provides Dx of right hip pain, tendinitis/bursitis; Unable to w ork 6/7/21; Avoid prolonged standing, w alking, lifting; Treatment-medication, PT; ERTW 8/8/21-part-time, 9/8/21-full time. OV 7/8/21-8/23/21 show s EE started PT but reported pain w orsened w ith therapy and therapist noted possible labral tear in hip. Exams show ed limited ROM of right hip, and limping gait. Pain medication w as prescribed. EE w as pending appt. w ith Dr. Pollard and MRI of hip w as reordered. EE reported hip w as catching and popping as w ell. EE w as to remain off w ork. EE reported having appt. w ith specialist on 9/1/21.

Although there has been no definitive dx give for right hip, the medical evidence provided supports R&Ls of Avoid prolonged standing, w alking, lifting from DOD to 9/1/21 (appt. w ith specialist) based on persistent right hip pain w ith tenderness, limited ROM, and impaired gait w ith failed PT and minimal improvement w ith rest and medication. Recommend requesting OVNs from Dr. Pollard or specialist from appt 9/1/21 and MRI of right hip once it is completed for further review .

Whitney K., BSN, RN, CCM
Nurse Disability Consultant, Lincoln Financial Group

PATH UPDATE
CLAIM WAS APPRV TO 9/3 AND RECOMMEND TO OBTAIN OVN 9/1 ALONG WITH MRI RESULT

OVN 9/1/2021 - ON EXAM, RIGHT INTERNAL AND EXTERNAL HIP ROTATION CAUSES PAIN. POSITIVE SLR ON THE RIGHT. LOWER EXTREMITY MUSCLE GROUPS ARE 5/5 BILATERALLY. ORDERING AN MRI OF THE PELVIS COMPLETE RIGHT. F/U AFTER TESTING IS COMPLETE.

SPK WITH EE - EE HAS NOT HAD MRI DONE YET. HIS INSURANCE KEEP DENYING IT AND HIS DR HAS ALSO SENT REQUEST 3 TIMES TRYING TO GET IT APPROVE. DR WILL BE SENDING OVER REQUEST ONCE AGAIN ON TRYING TO GET IT APPROVE. CE WILL SEND OVER OVN OF 9/1 FROM DR POLLARD ON CR AND CB ONCE DONE

PATH UPDATE
SENDING FILE FOR ANOTHER REVIEW, MRI HAS BEEN DENIED
- RXJOHNS - Sep 21, 2021 05:52:59 pm

**********************
Clinical Assessment:

See prior CR 9/2/21 for full details. OV 9/1/21 w ith April McGhee, APRN (orthopedics) show s EE w as seen for right hip pain w ith severe right groin pain and right lateral leg pain w ith perceived w eakness and unsteady w ith multiple falls. Past medical hx includes high blood pressure and stroke. The exam show ed EE w as in obvious pain, pain w ith right hip internal and external rotation, positive straight leg raise on right, 5/5 strength, intact sensation. The provider noted the EE rises slow ly from exam table and w alks w ith antalgic gait to right. Lumbar x-ray show ed w ell maintained disc height. Pelvis x-ray show ed no acute fracture w ith w ell maintained hip joint w ith normal alignment. MRI of the pelvic right w as ordered w ith plan to f/u after. Dx of lumbago (low back pain) and right hip pain w as given. Updated APS from Dr. Mark Ramiro, MD (PCP) 9/2/21 provides R&Ls of no prolonged standing/w alking, climbing, bending, squatting; ERTW 11/2021. Per phone notes 9/21/21 MRI has not been done as it has been denied by insurance multiple times.

**Chronological Activity List**

The medical evidence provided does not support ongoing R&Ls beyond 9/3/21 as no significant lumbar or hip pathology has been identified and the orthopedic exam show ed full strength of low er extremities w ith no specific ROM limitations beyond pain w ith rotation, no unsteadiness or use of assistive device or imbalance w as noted, and sensation of the low er extremities w as normal. MRI remains pending and no future orthopedic evaluation or treatment being planned until MRI has been completed. Did complete phone consult w ith Dr. Cirincione to discuss file and findings.

Whitney K., BSN, RN, CCM
Nurse Disability Consultant, Lincoln Financial Group

PATH UPDATE
CLAIM EX IS NOT SUPPORTIVE. The medical evidence provided does not support ongoing R&Ls beyond 9/3/21 as no significant lumbar or hip pathology has been identified and the orthopedic exam show ed full strength of low er extremities w ith no specific ROM limitations beyond pain w ith rotation, no unsteadiness or use of assistive device or imbalance w as noted, and sensation of the low er extremities w as normal. MRI remains pending and no future orthopedic evaluation or treatment being planned until MRI has been completed. Did complete phone consult w ith Dr. Cirincione to discuss file and findings. DENIAL LETTER WILL BE PROCESS WITH APPEAL RIGHT TO SEND OUT - RXJOHNS - Oct 05, 2021 10:03:38 am

UPDATED ASSESSMENT
Email from mgr to extend to std max date

UPDATED PATH
per mgr direction claim ext to std max date
- RXJOHNS - Jun 14, 2022 04:32:52 pm

Backing out appeal as claim w as paid to max. There is no adverse decision to appeal. CE to contact atty. w ith approval information and complete claim. - SAEMI5 - Jun 15, 2022 12:11:19 pm

UPDATED ASSESSMENT
Notice of Representatin dated 12/21/2021 that law firm of Marcus Vaden Law w ill represent ee and may contact firm directly and release all documents. All future payments made to Marcus Vaden Law . Letter from law firm that all payments made on policy sent to their office

UPDATED PATH
claim already paid to std max - RXJOHNS - Jul 05, 2022 03:26:26 pm

| | | | | | |
|---|---|---|---|---|---|
| 7/27/2021 5:18:35 PM | Medical | 1 | | Initial | NA7SU3 |

INVALID AUTH - the only auth w e have on file is incomplete as it does not direct the provider as to w hat can be released; please obtain a new auth
TRACKING EMAIL OUT TO CE et al
CLOSING THIS TASK - NA7SU3 - Jul 29, 2021 10:51:18 am

Item Closed w ith Claim by System - AJHICKS - Jun 15, 2022 02:03:23 pm

| | | | | | |
|---|---|---|---|---|---|
| 7/27/2021 5:22:34 PM | Investigation | 1 | Determine Disability | Requested | MABEL4 |

Item Closed w ith Claim by System - AJHICKS - Jun 15, 2022 02:03:16 pm

| | | | | | |
|---|---|---|---|---|---|
| 7/27/2021 8:47:58 PM | Investigation | 2 | Determine Disability | Requested | MABEL4 |

Item Closed w ith Claim by System - AJHICKS - Jun 15, 2022 02:03:22 pm

| | | | | | |
|---|---|---|---|---|---|
| 7/29/2021 | Medical | 1 | | Closed | NA7SU3 |

INVALID AUTH - the only auth w e have on file is incomplete as it does not direct the provider as to w hat can be released; please obtain a new auth
TRACKING EMAIL OUT TO CE et al
CLOSING THIS TASK - NA7SU3 - Jul 29, 2021 10:51:18 am

## Chronological Activity List

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

Item Closed w ith Claim by System - AJHICKS - Jun 15, 2022 02:03:23 pm

| 8/16/2021 | Documents/Mail | 7 | Email | Completed | MABEL4 |
|---|---|---|---|---|---|

Hello Adam,

Thank you for your email. Please see the attached letter from your claims examiner dated 7/27/21. At this time w e are in receipt of your medical records from Dr. Ramiro.

Thank you,

Holly Graf
Customer Care
Lincoln Financial Group
8801 Indian Hills Drive
Omaha, NE 68114

Toll Free Phone: 800-423-2765

Administration
Fax: 877-573-6177
Email: clientservices@lfg.com

Claims
Disability Fax: 877-843-3950
Dental Fax: 877-843-3945
Life Fax: 800-462-4660
Email: claims@lfg.com

Insurance products are issued by the insurance company affiliates of Lincoln Financial Group: The Lincoln National Life Insurance Company and Lincoln Life & Annuity Company of New York. The Lincoln National Life Insurance Company is not authorized in the state of New York. Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

On 8/14/2021 2:27 PM, From: To: Claims@lfg.com; , Subject: Claim CTI_CALL, Adam Bobb w rote:
***This email is from an external source. Only open links and attachments from a Trusted Sender.***

Never received a phone call from anyone w as just checking on claim status

| 8/19/2021 | Telephone (IN) | 1 | ADAM BOBB | Completed | MABEL4 |
|---|---|---|---|---|---|

cb
DOB

Insured inquiring on claim status -- Per CE -Path:
Rationale (Claim status and the reason claim is in that status): Claim is pending, requesting additional medical documentation
- MABEL4 - Jul 27, 2021

Auth show ing Invalid per boxes not check per entire medical Insured adv w ill complete and send back --provided email address

## Chronological Activity List

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 8/20/2021 | Telephone (IN) | 2 | ADAM BOBB | Completed | MABEL4 |

callback:
member: adam bobb
ssn/claim#:
employer: Trinity Village, Inc.
reason: states forgot to check box to release med recs checking to see if w e got email
resolution: review ed claim edu no new auth form on file, verfied email address claimant had lsc.com instead of lfg.com, offered him to send it to my email and i can forw ard over to disabilityclaims@lfg.com

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 8/21/2021 | Documents/Mail | 8 | Email | Completed | MABEL4 |

(secure) Re: Authorization for release of information (TRINITYVIL)
to:
bcc: disabilityclaims@lfg.com;

Good Morning Adam,

Thank you for your email. I have forw arded this information to our Disability department to attach to claim 1210071975. Please allow 5-7 business days for review .

In the future, please feel free to email your Disability claim forms directly to our Disability team at disabilityclaims@lfg.com for processing. If you should have questions regarding the items you are submitting, please continue to contact us at claims@lfg.com.

Please let us know if w e can be of further assistance.

Thank you,

Debra Sedrel
Customer Care
Lincoln Financial Group
8801 Indian Hills Drive
Omaha, NE 68114

Toll Free Phone: 800-423-2765

Administration
Fax: 877-573-6177
Email: clientservices@lfg.com

Claims
Disability Fax: 877-843-3950
Dental Fax: 877-843-3945
Life Fax: 800-462-4660
Email: claims@lfg.com

Insurance products are issued by the insurance company affiliates of Lincoln Financial Group: The Lincoln National Life Insurance Company and Lincoln Life & Annuity Company of New York. The Lincoln National Life Insurance Company is not authorized in the state of New York. Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

On 8/20/2021 8:38 AM, From: To: Claims@lfg.com; , Subject: Authorization for release of information CTI_CALL, Adam Bobb w rote:
***This email is from an external source. Only open links and attachments from a Trusted Sender.***

Here is the form

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 8/21/2021 2:21:17 PM | Documents/Mail | 9 | Email | Received | MABEL4 |

2021-08-20-10.13.50.823520O01

## Chronological Activity List

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| | Item Closed with Claim by System - AJHICKS - Jun 15, 2022 02:03:29 pm | | | | |
| 8/21/2021 2:21:18 PM | Documents/Mail | 10 | Claim Form - Authorization | Received | MABEL4 |
| | 2021-08-21-15.20.59.615480O01<br><br>Item Closed with Claim by System - AJHICKS - Jun 15, 2022 02:03:59 pm | | | | |
| 8/21/2021 3:00:01 PM | Documents/Mail | 11 | Email | Received | MABEL4 |
| | 2021-08-20-09.39.01.663480O01<br><br>Item Closed with Claim by System - AJHICKS - Jun 15, 2022 02:03:31 pm | | | | |
| 8/21/2021 3:00:02 PM | Documents/Mail | 12 | Claim Form - Authorization | Received | MABEL4 |
| | 2021-08-21-15.59.16.599520O01<br><br>Item Closed with Claim by System - AJHICKS - Jun 15, 2022 02:03:58 pm | | | | |
| 8/23/2021 7:01:37 AM | Documents/Mail | 13 | Email | Received | MABEL4 |
| | 2021-08-20-09.39.31.742480O01<br><br>Item Closed with Claim by System - AJHICKS - Jun 15, 2022 02:03:55 pm | | | | |
| 8/23/2021 7:01:38 AM | Documents/Mail | 14 | Claim Form - Authorization | Received | MABEL4 |
| | 2021-08-21-15.59.56.247460O01<br><br>Item Closed with Claim by System - AJHICKS - Jun 15, 2022 02:03:56 pm | | | | |
| 8/23/2021 1:24:15 PM | Documents/Mail | 15 | Email | Received | MABEL4 |
| | 2021-08-21-09.23.12.631460O01<br><br>Item Closed with Claim by System - AJHICKS - Jun 15, 2022 02:03:32 pm | | | | |
| 8/23/2021 1:24:16 PM | Documents/Mail | 16 | Claim Form - Authorization | Received | MABEL4 |
| | 2021-08-23-14.22.12.911460O01<br><br>Item Closed with Claim by System - AJHICKS - Jun 15, 2022 02:03:48 pm | | | | |
| 8/26/2021 | Telephone (IN) | 4 | ADAM BOBB | Completed | MABEL4 |
| | nancy bob<br>8704610711<br>TRINITYVIL<br><br>can ce send req fr med recs | | | | |
| 8/26/2021 2:09:03 PM | Telephone (IN) | 3 | ADAM BOBB | Requested | MABEL4 |
| | Caller: nancy bobb<br><br>Callback#: 870-461-0711<br><br>ER: Trinity Village<br><br>husband did give wife permission to speak to us on the claim, advised that the claim is pending waiting on additional medical info, she would like a follow up because they need to pay the ER for the insurance or they will canc so they need an update, will create an open ticket to have the ce f/u<br><br>Item Closed with Claim by System - AJHICKS - Jun 15, 2022 02:02:42 pm | | | | |
| 8/26/2021 2:30:41 PM | Telephone (IN) | 5 | ADAM BOBB | Requested | MABEL4 |
| | nancy bob<br>8704610711<br>TRINITYVIL | | | | |

## Chronological Activity List

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| | can ce send req fr med recs | | | | |
| | Item Closed w ith Claim by System - AJHICKS - Jun 15, 2022 02:02:43 pm | | | | |
| 8/26/2021 4:16:22 PM | Telephone (IN) | 6 | ADAM BOBB | Requested | MABEL4 |
| | EE faxed 29 pages to correct fax number | | | | |
| | No RTW | | | | |
| | CE please call EE | | | | |
| | Item Closed w ith Claim by System - AJHICKS - Jun 15, 2022 02:02:44 pm | | | | |
| 8/26/2021 8:17:41 PM | Claim Tasks | 6 | 45 Day.Need Decision/Extension | Requested | MABEL4 |
| | Item Closed w ith Claim by System - AJHICKS - Jun 15, 2022 02:03:04 pm | | | | |
| 8/27/2021 3:41:51 PM | Documents/Mail | 17 | Fax | Received | MABEL4 |
| | 2021-08-26-16.25.51.492520O01 | | | | |
| | Item Closed w ith Claim by System - AJHICKS - Jun 15, 2022 02:03:47 pm | | | | |
| 8/27/2021 3:41:52 PM | Documents/Mail | 18 | Incoming Correspondence | Received | MABEL4 |
| | 2021-08-27-15.59.33.880480O01 | | | | |
| | Item Closed w ith Claim by System - AJHICKS - Jun 15, 2022 02:03:50 pm | | | | |
| 8/27/2021 3:41:53 PM | Documents/Mail | 20 | Claim Form - EE, ER, APS | Received | MABEL4 |
| | 2021-08-27-16.02.13.282480O01 | | | | |
| | Item Closed w ith Claim by System - AJHICKS - Jun 15, 2022 02:03:52 pm | | | | |
| 8/27/2021 3:41:53 PM | Documents/Mail | 19 | Claim Form - Authorization | Received | MABEL4 |
| | 2021-08-27-15.59.52.011480O01 | | | | |
| | Item Closed w ith Claim by System - AJHICKS - Jun 15, 2022 02:03:51 pm | | | | |
| 8/28/2021 10:42:17 AM | Documents/Mail | 21 | Incoming Correspondence | Received | MABEL4 |
| | 2021-08-27-09.19.54.007540O01 | | | | |
| | Item Closed w ith Claim by System - AJHICKS - Jun 15, 2022 02:03:53 pm | | | | |
| 8/30/2021 6:30:44 AM | Documents/Mail | 22 | Fax | Received | MABEL4 |
| | 2021-08-27-10.35.22.714540O01 | | | | |
| | Item Closed w ith Claim by System - AJHICKS - Jun 15, 2022 02:03:45 pm | | | | |
| 8/30/2021 6:30:46 AM | Documents/Mail | 23 | Claim Form - EE, ER, APS | Received | MABEL4 |
| | 2021-08-27-10.35.25.554540O01 | | | | |
| | Item Closed w ith Claim by System - AJHICKS - Jun 15, 2022 02:03:30 pm | | | | |
| 8/30/2021 6:30:47 AM | Documents/Mail | 25 | Incoming Correspondence | Received | MABEL4 |
| | 2021-08-27-10.35.33.133540O01 | | | | |
| | Item Closed w ith Claim by System - AJHICKS - Jun 15, 2022 02:03:33 pm | | | | |
| 8/30/2021 6:30:47 AM | Documents/Mail | 24 | Claim Form - Authorization | Received | MABEL4 |
| | 2021-08-27-10.35.28.535540O01 | | | | |
| | Item Closed w ith Claim by System - AJHICKS - Jun 15, 2022 02:03:54 pm | | | | |
| 8/30/2021 6:30:48 AM | Documents/Mail | 26 | Medical Records | Received | MABEL4 |
| | 2021-08-27-10.35.50.689540O01 | | | | |

**Chronological Activity List**

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| | Item Closed w ith Claim by System - AJHICKS - Jun 15, 2022 02:03:46 pm | | | | |
| 8/30/2021 3:20:27 PM | Telephone (IN) | 7 | ADAM K BOBB | Requested | MABEL4 |
| | nancy Bobb - spouse<br>adam bobb - insured<br>cb 8704610711<br>claim#1210071975<br><br>Insured states he w as told by Group that if he does not pay for this month's STD premium, his claim and STD w ill be cancelled. Insured states he has called CE several times w ith no return phone calls. Insured request to speak w ith CE's manager, Kimberlee. Transferred call. | | | | |
| | Item Closed w ith Claim by System - AJHICKS - Jun 15, 2022 02:02:45 pm | | | | |
| 8/31/2021 | Documents/Mail | 25 | Incoming Correspondence | Completed | MABEL4 |
| | 2021-08-27-10.35.33.133540O01 | | | | |
| | Item Closed w ith Claim by System - AJHICKS - Jun 15, 2022 02:03:33 pm | | | | |
| 8/31/2021 | Documents/Mail | 10 | Claim Form - Authorization | Completed | MABEL4 |
| | 2021-08-21-15.20.59.615480O01 | | | | |
| | Item Closed w ith Claim by System - AJHICKS - Jun 15, 2022 02:03:59 pm | | | | |
| 8/31/2021 | Documents/Mail | 12 | Claim Form - Authorization | Completed | MABEL4 |
| | 2021-08-21-15.59.16.599520O01 | | | | |
| | Item Closed w ith Claim by System - AJHICKS - Jun 15, 2022 02:03:58 pm | | | | |
| 8/31/2021 | Documents/Mail | 14 | Claim Form - Authorization | Completed | MABEL4 |
| | 2021-08-21-15.59.56.247460O01 | | | | |
| | Item Closed w ith Claim by System - AJHICKS - Jun 15, 2022 02:03:56 pm | | | | |
| 8/31/2021 | Documents/Mail | 15 | Email | Completed | MABEL4 |
| | 2021-08-21-09.23.12.631460O01 | | | | |
| | Item Closed w ith Claim by System - AJHICKS - Jun 15, 2022 02:03:32 pm | | | | |
| 8/31/2021 | Documents/Mail | 13 | Email | Completed | MABEL4 |
| | 2021-08-20-09.39.31.742480O01 | | | | |
| | Item Closed w ith Claim by System - AJHICKS - Jun 15, 2022 02:03:55 pm | | | | |
| 8/31/2021 | Documents/Mail | 24 | Claim Form - Authorization | Completed | MABEL4 |
| | 2021-08-27-10.35.28.535540O01 | | | | |
| | Item Closed w ith Claim by System - AJHICKS - Jun 15, 2022 02:03:54 pm | | | | |
| 8/31/2021 | Documents/Mail | 21 | Incoming Correspondence | Completed | MABEL4 |
| | 2021-08-27-09.19.54.007540O01 | | | | |
| | Item Closed w ith Claim by System - AJHICKS - Jun 15, 2022 02:03:53 pm | | | | |
| 8/31/2021 | Documents/Mail | 11 | Email | Completed | MABEL4 |
| | 2021-08-20-09.39.01.663480O01 | | | | |
| | Item Closed w ith Claim by System - AJHICKS - Jun 15, 2022 02:03:31 pm | | | | |
| 8/31/2021 | Documents/Mail | 20 | Claim Form - EE, ER, APS | Completed | MABEL4 |
| | 2021-08-27-16.02.13.282480O01 | | | | |
| | Item Closed w ith Claim by System - AJHICKS - Jun 15, 2022 02:03:52 pm | | | | |

## Chronological Activity List

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 8/31/2021 | Documents/Mail | 19 | Claim Form - Authorization | Completed | MABEL4 |
| | 2021-08-27-15.59.52.011480O01<br><br>Item Closed w ith Claim by System - AJHICKS - Jun 15, 2022 02:03:51 pm | | | | |
| 8/31/2021 | Documents/Mail | 18 | Incoming Correspondence | Completed | MABEL4 |
| | 2021-08-27-15.59.33.880480O01<br><br>Item Closed w ith Claim by System - AJHICKS - Jun 15, 2022 02:03:50 pm | | | | |
| 8/31/2021 | Documents/Mail | 16 | Claim Form - Authorization | Completed | MABEL4 |
| | 2021-08-23-14.22.12.911460O01<br><br>Item Closed w ith Claim by System - AJHICKS - Jun 15, 2022 02:03:48 pm | | | | |
| 8/31/2021 | Documents/Mail | 17 | Fax | Completed | MABEL4 |
| | 2021-08-26-16.25.51.492520O01<br><br>Item Closed w ith Claim by System - AJHICKS - Jun 15, 2022 02:03:47 pm | | | | |
| 8/31/2021 | Documents/Mail | 26 | Medical Records | Completed | MABEL4 |
| | 2021-08-27-10.35.50.689540O01<br><br>Item Closed w ith Claim by System - AJHICKS - Jun 15, 2022 02:03:46 pm | | | | |
| 8/31/2021 | Documents/Mail | 22 | Fax | Completed | MABEL4 |
| | 2021-08-27-10.35.22.714540O01<br><br>Item Closed w ith Claim by System - AJHICKS - Jun 15, 2022 02:03:45 pm | | | | |
| 8/31/2021 | Documents/Mail | 23 | Claim Form - EE, ER, APS | Completed | MABEL4 |
| | 2021-08-27-10.35.25.554540O01<br><br>Item Closed w ith Claim by System - AJHICKS - Jun 15, 2022 02:03:30 pm | | | | |
| 8/31/2021 | Documents/Mail | 9 | Email | Completed | MABEL4 |
| | 2021-08-20-10.13.50.823520O01<br><br>Item Closed w ith Claim by System - AJHICKS - Jun 15, 2022 02:03:29 pm | | | | |
| 8/31/2021 | Investigation | 2 | Determine Disability | Received | MABEL4 |
| | Item Closed w ith Claim by System - AJHICKS - Jun 15, 2022 02:03:22 pm | | | | |
| 8/31/2021 | Investigation | 1 | Determine Disability | Received | MABEL4 |
| | Item Closed w ith Claim by System - AJHICKS - Jun 15, 2022 02:03:16 pm | | | | |
| 8/31/2021 | Claim Tasks | 6 | 45 Day.Need Decision/Extension | Completed | MABEL4 |
| | Item Closed w ith Claim by System - AJHICKS - Jun 15, 2022 02:03:04 pm | | | | |
| 8/31/2021 | Claim Tasks | 3 | DLW Before Effective Date | Completed | MABEL4 |
| | The Date Last Worked Is Prior To The Effective Date<br><br>Item Closed w ith Claim by System - AJHICKS - Jun 15, 2022 02:03:00 pm | | | | |
| 8/31/2021 | Claim Tasks | 2 | Verify Offsets | Completed | MABEL4 |
| | Verify Offsets<br><br>Item Closed w ith Claim by System - AJHICKS - Jun 15, 2022 02:02:58 pm | | | | |
| 8/31/2021 | Claim Tasks | 1 | Verify Occupation | Completed | MABEL4 |
| | DOT/Occupation w as Unknow n<br><br>Item Closed w ith Claim by System - AJHICKS - Jun 15, 2022 02:02:57 pm | | | | |
| 8/31/2021 | Telephone (OUT) | 8 | ADAM K. BOBB | Completed | RXJOHNS |
| | SPK WITH EE SEE DR ON 9/7. WILL NOT BE RTW ON 9/8 AND SAID THAT DR WANT HIM OOW COUPLE MORE MONTHS. EE IS SAYING DR BELIEVE IT IS A TEAR BUT NEED TO GET A MRI. EE SAID THAT HE WILL SEE SPECIALIST ON 9/1 TO SEE ABOUT ORDERING THE MRI. SPK WITH EE ABOUT APS SHOWING DOD OF 6/7 AND EE DLW WAS 6/17. EE SAID THAT HE WENT TO DR ON 6/7 AND DR THOUGHT HE HAD BURSITIS AND GAVE HIM | | | | |

## Chronological Activity List

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

STEROID BUT NOTHING CHANGE AND THAT IS WHEN EE WENT BACK AND WAS TOLD TO STOP WORKING. CE INFORM THAT RECEIVED MEDICAL AND SENDING FILE FOR CR THAT TAKES ABOUT 7-10 BUSINESS DAYS AND CE WILL CB ONCE COMPLETE. - RXJOHNS - Aug 31, 2021 10:47:17 am

| 8/31/2021 10:54:21 AM | Referrals | 1 | Initial Claim Review | Initial | RXJOHNS |
|---|---|---|---|---|---|

Item Closed w ith Claim by System - AJHICKS - Jun 15, 2022 02:04:14 pm
Clinical Consultation - Review Referral Template
Demographics
Claimant Name: ADAM BOBB
Claim Number: 1210071975
Age: 37
Height:6'3
Weight:208
Occupation/level:MAINTENANCE/HEAVY
Diagnosis: RIGHT HIP PAIN, TENDINITIS, BURSITIS
DLW: 6/17/2021
DOD:6/18/2021

NO BENEFIT PAID ON CLAIM. STD MAX DATE 12/17/2021. EE HAS LTD

PROGRESS NOTE 6/7/2021 - 8/23/2021

8/23 - F/U. RIGHT HIP AND GROIN PAIN CONT. WENT TO PT TWICE BUT EXERCISES NOT HELPED HIS PAIN, SEE DR POLLARD NEXT WEEK. ASSESSMENT OF HYPERTENSION AND RIGHT HIP PAIN.

6/18 - RIGHT HIP PAIN, RIGHT GROIN PAIN, BURN BOTTOM OF RIGHT FOOT. ASSEMENT - HYPERTENSION, SECOND DEGREE BURN OF FOOT, RIGHT HIP PAIN, BURSITIS OF HIP, RIGHT

6/7 - F/U, HYPERTENSION, HYPERLIPIDEMIA, RIGH HIP PAIN, WORSENING. BP 156/105 AND 140/100. RADILOGY REPORT - TROCHANTERS ARE NORMAL. ILEUM AND ISCHIUM ARE

SPK WITH EE SEE DR ON 9/7. WILL NOT BE RTW ON 9/8 AND SAID THAT DR WANT HIM OOW COUPLE MORE MONTHS. EE IS SAYING DR BELIEVE IT IS A TEAR BUT NEED TO GET A MRI. EE SAID THAT HE WILL SEE SPECIALIST ON 9/1 TO SEE ABOUT ORDERING THE MRI. SPK WITH EE ABOUT APS SHOWING DOD OF 6/7 AND EE DLW WAS 6/17. EE SAID THAT HE WENT TO DR ON 6/7 AND DR THOUGHT HE HAD BURSITIS AND GAVE HIM STEROID BUT NOTHING CHANGE AND THAT IS WHEN EE WENT BACK AND WAS TOLD TO STOP WORKING.

Specific Medical Question:
Based on your review of the medical information in the claim file, is there adequate support for restrictions and limitations and if so please explain or provide your rationale. - RXJOHNS - Aug 31, 2021 10:56:13 am
Date:September 2, 2021

Subject:Nursing Memorandum

Claim#: 1210071975
Claimant: Adam Bobb

Clinical Assessment:

OVNs w ith Dr. Mark Ramiro, MD (family practice) 6/7/21-6/28/21 show s EE w as f/u for right hip pain and reported burn on right foot. The burn healed and hip pain continued. Right hip x-ray 6/7/21 w as unremarkable. MRI of the hip w as denied by insurance. Exams show ed limited hip ROM and tenderness. Gentle exercises w ere advised. An APS 7/8/21 from Mark Ramiro, MD (family practice) provides Dx of right hip pain, tendinitis/bursitis; Unable to w ork 6/7/21; Avoid prolonged standing, w alking, lifting; Treatment-medication, PT; ERTW 8/8/21-part-time, 9/8/21-full time. OV 7/8/21-8/23/21 show s EE started PT but reported pain w orsened w ith therapy and therapist noted possible labral tear in hip. Exams show ed limited ROM of right hip, and limping gait. Pain medication w as prescribed. EE w as pending appt. w ith Dr. Pollard and MRI of hip w as reordered. EE reported hip w as catching and popping as w ell. EE w as to remain off w ork. EE reported having appt. w ith specialist on 9/1/21.

Although there has been no definitive dx give for right hip, the medical evidence provided supports R&Ls of Avoid prolonged standing, w alking, lifting from DOD to 9/1/21 (appt. w ith specialist) based on persistent right hip pain w ith

## Chronological Activity List

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

tenderness, limited ROM, and impaired gait w ith failed PT and minimal improvement w ith rest and medication.
Recommend requesting OVNs from Dr. Pollard or specialist from appt 9/1/21 and MRI of right hip once it is completed for further review .

Whitney K., BSN, RN, CCM
Nurse Disability Consultant, Lincoln Financial Group - WMWKA2 - Sep 02, 2021 02:59:03 pm

| 8/31/2021 11:02:19 AM | Telephone (IN) | 9 | Nancy Bobb | Requested | RXJOHNS |
|---|---|---|---|---|---|

Nancy Bobb -
* EE gave permission to speak to Nancy Bobb*
870-461-0711

called to check status of claim.
adv claim w as sent to CR and adv 7-10 buisnes days.
Ms. Bobb w anted to speak to CE. requesting a call back from CE.

Item Closed w ith Claim by System - AJHICKS - Jun 15, 2022 02:02:46 pm

| 9/1/2021 | Telephone (OUT) | 11 | ADAM K. BOBB | Completed | KBHARRI |
|---|---|---|---|---|---|

TC w ith te Bobbs.

We discussed the details of the claim and I apologized for the delay in response to both of their inquiries.

We w ent over the information that w as received and w hy the claim w as sent for a clinical assessment.

They w ere appreciative of the time w e took to explained this process to them.

Again, w e w ent over the policy, timeline, and expectations. She voiced understanding and call ended. - KBHARRI - Sep 01, 2021 01:00:23 pm

| 9/1/2021 | Telephone (IN) | 10 | Nancy Bobb | Completed | RXJOHNS |
|---|---|---|---|---|---|

Nancy Bob

Adam Bob
Trinity village
8704610711

w ife is calling because she never recved a call back, w ants to know w hat is needed for std claim, recvd verbal auth from husband to speak w ith w ife .I informed that FILE SENT FOR CR gave tat of 7-10 bd

| 9/1/2021 | Telephone (IN) | 9 | Nancy Bobb | Completed | RXJOHNS |
|---|---|---|---|---|---|

Nancy Bobb -
* EE gave permission to speak to Nancy Bobb*
870-461-0711

called to check status of claim.
adv claim w as sent to CR and adv 7-10 buisnes days.
Ms. Bobb w anted to speak to CE. requesting a call back from CE.

Item Closed w ith Claim by System - AJHICKS - Jun 15, 2022 02:02:46 pm

| 9/1/2021 | Telephone (IN) | 7 | ADAM K BOBB | Completed | MABEL4 |
|---|---|---|---|---|---|

nancy Bobb - spouse
adam bobb - insured
cb 8704610711
claim#1210071975

Insured states he w as told by Group that if he does not pay for this month's STD premium, his claim and STD w ill be cancelled. Insured states he has called CE several times w ith no return phone calls. Insured request to speak w ith CE's manager, Kimberlee. Transferred call.

## Chronological Activity List

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| | Item Closed w ith Claim by System - AJHICKS - Jun 15, 2022 02:02:45 pm | | | | |
| 9/1/2021 | Telephone (IN) | 6 | ADAM BOBB | Completed | MABEL4 |

EE faxed 29 pages to correct fax number

No RTW

CE please call EE

Item Closed w ith Claim by System - AJHICKS - Jun 15, 2022 02:02:44 pm

| | | | | | |
|---|---|---|---|---|---|
| 9/1/2021 | Telephone (IN) | 5 | ADAM BOBB | Completed | MABEL4 |

nancy bob
8704610711
TRINITY VIL

can ce send req fr med recs

Item Closed w ith Claim by System - AJHICKS - Jun 15, 2022 02:02:43 pm

| | | | | | |
|---|---|---|---|---|---|
| 9/1/2021 | Telephone (IN) | 3 | ADAM BOBB | Completed | MABEL4 |

Caller: nancy bobb

Callback#: 870-461-0711

ER: Trinity Village

husband did give w ife permission to speak to us on the claim, advised that the claim is pending w aiting on additional medical info, she w ould like a follow up because they need to pay the ER for the insurance or they w ill canc so they need an update, w ill create an open ticket to have the ce f/u

Item Closed w ith Claim by System - AJHICKS - Jun 15, 2022 02:02:42 pm

| | | | | | |
|---|---|---|---|---|---|
| 9/2/2021 | Telephone (IN) | 12 | Nancy Bobb | Completed | RXJOHNS |

Name: Nancy Bobb (auth obtained)
CBR: 8704610711
Group: TRINITY VIL

rep of insured called to let us know w e w ill be receiving additional information today concerning extension of STD benefits... Dr. Ramiro stated that he could be contacted at any time to go over any of the information received

| | | | | | |
|---|---|---|---|---|---|
| 9/7/2021 | Telephone (IN) | 13 | NANCY BOBB | Completed | RXJOHNS |

Nancy Bobb (AUTH ON FILE)
Adam Bobb

Trinity Village Inc
870-461-0711

Nancy called to get the status of the claim. Advised it is still in cr. We did receive the new paperw ork. CE w ill f/u w ith ee once review is completed

| | | | | | |
|---|---|---|---|---|---|
| 9/7/2021 5:51:24 AM | Documents/Mail | 27 | Fax | Received | RXJOHNS |

2021-09-02-10.55.04.227460O01

Item Closed w ith Claim by System - AJHICKS - Jun 15, 2022 02:04:00 pm

**Chronological Activity List**

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 9/7/2021 5:51:26 AM | Documents/Mail | 28 | Claim Form - Authorization | Received | RXJOHNS |
| | 2021-09-02-10.55.06.615460O01 | | | | |
| | Item Closed w ith Claim by System - AJHICKS - Jun 15, 2022 02:03:41 pm | | | | |
| 9/7/2021 5:51:27 AM | Documents/Mail | 29 | Claim Form - EE, ER, APS | Received | RXJOHNS |
| | 2021-09-02-10.55.09.952460O01 | | | | |
| | Item Closed w ith Claim by System - AJHICKS - Jun 15, 2022 02:03:43 pm | | | | |
| 9/7/2021 5:51:28 AM | Documents/Mail | 30 | Incoming Correspondence | Received | RXJOHNS |
| | 2021-09-02-10.55.14.391460O01 | | | | |
| | Item Closed w ith Claim by System - AJHICKS - Jun 15, 2022 02:03:40 pm | | | | |
| 9/7/2021 5:52:20 AM | Documents/Mail | 32 | Claim Form - EE, ER, APS | Received | RXJOHNS |
| | 2021-09-02-10.59.37.676460O01 | | | | |
| | Item Closed w ith Claim by System - AJHICKS - Jun 15, 2022 02:03:27 pm | | | | |
| 9/7/2021 5:52:20 AM | Documents/Mail | 31 | Fax | Received | RXJOHNS |
| | 2021-09-02-10.59.32.432460O01 | | | | |
| | Item Closed w ith Claim by System - AJHICKS - Jun 15, 2022 02:03:36 pm | | | | |
| 9/7/2021 5:52:21 AM | Documents/Mail | 33 | Claim Form - Authorization | Received | RXJOHNS |
| | 2021-09-02-10.59.39.877460O01 | | | | |
| | Item Closed w ith Claim by System - AJHICKS - Jun 15, 2022 02:03:42 pm | | | | |
| 9/7/2021 5:52:22 AM | Documents/Mail | 34 | Incoming Correspondence | Received | RXJOHNS |
| | 2021-09-02-10.59.44.682460O01 | | | | |
| | Item Closed w ith Claim by System - AJHICKS - Jun 15, 2022 02:04:01 pm | | | | |
| 9/7/2021 5:52:23 AM | Documents/Mail | 35 | Claim Form - Authorization | Received | RXJOHNS |
| | 2021-09-02-10.59.46.920460O01 | | | | |
| | Item Closed w ith Claim by System - AJHICKS - Jun 15, 2022 02:03:37 pm | | | | |
| 9/7/2021 10:31:21 AM | Documents/Mail | 37 | Medical Records | Received | RXJOHNS |
| | 2021-09-02-14.11.06.207460O01 | | | | |
| | Item Closed w ith Claim by System - AJHICKS - Jun 15, 2022 02:03:25 pm | | | | |
| 9/7/2021 10:31:21 AM | Documents/Mail | 36 | Fax | Received | RXJOHNS |
| | 2021-09-02-14.11.02.676460O01 | | | | |
| | Item Closed w ith Claim by System - AJHICKS - Jun 15, 2022 02:03:38 pm | | | | |
| 9/7/2021 10:41:48 AM | Documents/Mail | 38 | Medical Records | Received | RXJOHNS |
| | 2021-09-02-14.16.36.066540O01 | | | | |
| | Item Closed w ith Claim by System - AJHICKS - Jun 15, 2022 02:04:02 pm | | | | |
| 9/8/2021 11:29:05 AM | Telephone (IN) | 14 | ADAM BOBB | Requested | RXJOHNS |
| | Nancy Bobb - spouse<br>Adam Bobb - insured<br>cb 8704610711<br>ssn# | | | | |
| | Advised pending CR per CE's summary notes dated 08/31/2021. Advised to allow 7-10 business days for review . | | | | |
| | Insured request to speak w ith CE regarding the status of the claim. Transferred call. | | | | |
| | Item Closed w ith Claim by System - AJHICKS - Jun 15, 2022 02:02:47 pm | | | | |

## Chronological Activity List

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 9/9/2021 | Referrals | 1 | Initial Claim Review | Completed | RXJOHNS |

Item Closed w ith Claim by System - AJHICKS - Jun 15, 2022 02:04:14 pm
Clinical Consultation - Review Referral Template
Demographics
Claimant Name: ADAM BOBB
Claim Number: 1210071975
Age: 37
Height:6'3
Weight:208
Occupation/level:MAINTENANCE/HEAVY
Diagnosis: RIGHT HIP PAIN, TENDINITIS, BURSITIS
DLW: 6/17/2021
DOD:6/18/2021

NO BENEFIT PAID ON CLAIM. STD MAX DATE 12/17/2021. EE HAS LTD

PROGRESS NOTE 6/7/2021 - 8/23/2021

8/23 - F/U. RIGHT HIP AND GROIN PAIN CONT. WENT TO PT TWICE BUT EXERCISES NOT HELPED HIS PAIN, SEE DR POLLARD NEXT WEEK. ASSESSMENT OF HYPERTENSION AND RIGHT HIP PAIN.

6/18 - RIGHT HIP PAIN, RIGHT GROIN PAIN, BURN BOTTOM OF RIGHT FOOT. ASSEMENT - HYPERTENSION, SECOND DEGREE BURN OF FOOT, RIGHT HIP PAIN, BURSITIS OF HIP, RIGHT

6/7 - F/U, HYPERTENSION, HYPERLIPIDEMIA, RIGH HIP PAIN, WORSENING. BP 156/105 AND 140/100. RADILOGY REPORT - TROCHANTERS ARE NORMAL. ILEUM AND ISCHIUM ARE

SPK WITH EE SEE DR ON 9/7. WILL NOT BE RTW ON 9/8 AND SAID THAT DR WANT HIM OOW COUPLE MORE MONTHS. EE IS SAYING DR BELIEVE IT IS A TEAR BUT NEED TO GET A MRI. EE SAID THAT HE WILL SEE SPECIALIST ON 9/1 TO SEE ABOUT ORDERING THE MRI. SPK WITH EE ABOUT APS SHOWING DOD OF 6/7 AND EE DLW WAS 6/17. EE SAID THAT HE WENT TO DR ON 6/7 AND DR THOUGHT HE HAD BURSITIS AND GAVE HIM STEROID BUT NOTHING CHANGE AND THAT IS WHEN EE WENT BACK AND WAS TOLD TO STOP WORKING.

Specific Medical Question:
Based on your review of the medical information in the claim file, is there adequate support for restrictions and limitations and if so please explain or provide your rationale. - RXJOHNS - Aug 31, 2021 10:56:13 am
Date:September 2, 2021

Subject:Nursing Memorandum

Claim#: 1210071975
Claimant: Adam Bobb

Clinical Assessment:

OVNs w ith Dr. Mark Ramiro, MD (family practice) 6/7/21-6/28/21 show s EE w as f/u for right hip pain and reported burn on right foot. The burn healed and hip pain continued. Right hip x-ray 6/7/21 w as unremarkable. MRI of the hip w as denied by insurance. Exams show ed limited hip ROM and tenderness. Gentle exercises w ere advised. An APS 7/8/21 from Mark Ramiro, MD (family practice) provides Dx of right hip pain, tendinitis/bursitis; Unable to w ork 6/7/21; Avoid prolonged standing, w alking, lifting; Treatment-medication, PT; ERTW 8/8/21-part-time, 9/8/21-full time. OV 7/8/21-8/23/21 show s EE started PT but reported pain w orsened w ith therapy and therapist noted possible labral tear in hip. Exams show ed limited ROM of right hip, and limping gait. Pain medication w as prescribed. EE w as pending appt. w ith Dr. Pollard and MRI of hip w as reordered. EE reported hip w as catching and popping as w ell. EE w as to remain off w ork. EE reported having appt. w ith specialist on 9/1/21.

Although there has been no definitive dx give for right hip, the medical evidence provided supports R&Ls of Avoid prolonged standing, w alking, lifting from DOD to 9/1/21 (appt. w ith specialist) based on persistent right hip pain w ith tenderness, limited ROM, and impaired gait w ith failed PT and minimal improvement w ith rest and medication. Recommend requesting OVNs from Dr. Pollard or specialist from appt 9/1/21 and MRI of right hip once it is completed for further review .

**Chronological Activity List**

| | | | | | |
|---|---|---|---|---|---|
| | Whitney K., BSN, RN, CCM<br>Nurse Disability Consultant, Lincoln Financial Group - WMWKA2 - Sep 02, 2021 02:59:03 pm | | | | |
| 9/9/2021 12:38:58 PM | Telephone (IN) | 15 | Nancy Bobb | Requested | RXJOHNS |
| | Nancy Bobb-spouse<br>call back # 870-461-0711<br><br>ee= Adam Bobb<br>claim # STD 1210071975<br>ss=<br><br>Recd verbal auth from ee to speak to his w ife about the claim.<br><br>She is checking on the status of cr<br><br>Recd ce's vm and she is out of the office.<br><br>Pls call ee back at 870-461-0711<br><br>Item Closed w ith Claim by System - AJHICKS - Jun 15, 2022 02:02:49 pm | | | | |
| 9/9/2021 11:32:56 PM | Payments | | DEPOSIT 7/2/2021 - 9/3/2021 | INITIAL | KBHARRI |
| 9/10/2021 8:02:00 PM | Claim Tasks | 7 | RTW w ithin2 w eeks | Requested | RXJOHNS |
| | Item Closed w ith Claim by System - AJHICKS - Jun 15, 2022 02:03:13 pm | | | | |
| 9/14/2021 | Claim Tasks | 7 | RTW w ithin2 w eeks | Completed | RXJOHNS |
| | Item Closed w ith Claim by System - AJHICKS - Jun 15, 2022 02:03:13 pm | | | | |
| 9/17/2021 9:34:32 AM | Telephone (IN) | 16 | Nancy Bobb | Requested | RXJOHNS |
| | EE:ADAM K BOBB<br>ER:Trinity Village, Inc<br>SS#:<br>CB:830-361-0711<br>EE gave me verbal consent to s/w callerCaller checking to see w hen next pymt w ill be iss and the status of ext req.<br><br>Item Closed w ith Claim by System - AJHICKS - Jun 15, 2022 02:02:50 pm | | | | |
| 9/17/2021 2:44:30 PM | Telephone (IN) | 17 | NANCY BOBB | Requested | RXJOHNS |
| | NANCY BOBB<br>ADAM BOBB<br><br>Trinity Village<br>8704610711<br><br>Wife is calling about payments, suppose to have deposit today , I recvd a verbal auth form husband to speak w ith w ife. I informed that the paymet has not been approved to be released yet, I called the ce and MR no answ er. I informed that if ee is fired w e w ill honor the benefits<br><br>ce please call ee back w ith the updated status of payment<br><br>Item Closed w ith Claim by System - AJHICKS - Jun 15, 2022 02:02:51 pm | | | | |
| 9/21/2021 | Documents/Mail | 38 | Medical Records | Completed | RXJOHNS |
| | 2021-09-02-14.16.36.066540O01<br><br>Item Closed w ith Claim by System - AJHICKS - Jun 15, 2022 02:04:02 pm | | | | |
| 9/21/2021 | Documents/Mail | 34 | Incoming Correspondence | Completed | RXJOHNS |
| | 2021-09-02-10.59.44.682460O01<br><br>Item Closed w ith Claim by System - AJHICKS - Jun 15, 2022 02:04:01 pm | | | | |
| 9/21/2021 | Documents/Mail | 27 | Fax | Completed | RXJOHNS |
| | 2021-09-02-10.55.04.227460O01 | | | | |

## Chronological Activity List

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| | Item Closed w ith Claim by System - AJHICKS - Jun 15, 2022 02:04:00 pm | | | | |
| 9/21/2021 | Documents/Mail | 32 | Claim Form - EE, ER, APS | Completed | RXJOHNS |
| | 2021-09-02-10.59.37.676460O01 | | | | |
| | Item Closed w ith Claim by System - AJHICKS - Jun 15, 2022 02:03:27 pm | | | | |
| 9/21/2021 | Documents/Mail | 29 | Claim Form - EE, ER, APS | Completed | RXJOHNS |
| | 2021-09-02-10.55.09.952460O01 | | | | |
| | Item Closed w ith Claim by System - AJHICKS - Jun 15, 2022 02:03:43 pm | | | | |
| 9/21/2021 | Documents/Mail | 33 | Claim Form - Authorization | Completed | RXJOHNS |
| | 2021-09-02-10.59.39.877460O01 | | | | |
| | Item Closed w ith Claim by System - AJHICKS - Jun 15, 2022 02:03:42 pm | | | | |
| 9/21/2021 | Documents/Mail | 28 | Claim Form - Authorization | Completed | RXJOHNS |
| | 2021-09-02-10.55.06.615460O01 | | | | |
| | Item Closed w ith Claim by System - AJHICKS - Jun 15, 2022 02:03:41 pm | | | | |
| 9/21/2021 | Documents/Mail | 37 | Medical Records | Completed | RXJOHNS |
| | 2021-09-02-14.11.06.207460O01 | | | | |
| | Item Closed w ith Claim by System - AJHICKS - Jun 15, 2022 02:03:25 pm | | | | |
| 9/21/2021 | Documents/Mail | 30 | Incoming Correspondence | Completed | RXJOHNS |
| | 2021-09-02-10.55.14.391460O01 | | | | |
| | Item Closed w ith Claim by System - AJHICKS - Jun 15, 2022 02:03:40 pm | | | | |
| 9/21/2021 | Documents/Mail | 36 | Fax | Completed | RXJOHNS |
| | 2021-09-02-14.11.02.676460O01 | | | | |
| | Item Closed w ith Claim by System - AJHICKS - Jun 15, 2022 02:03:38 pm | | | | |
| 9/21/2021 | Documents/Mail | 35 | Claim Form - Authorization | Completed | RXJOHNS |
| | 2021-09-02-10.59.46.920460O01 | | | | |
| | Item Closed w ith Claim by System - AJHICKS - Jun 15, 2022 02:03:37 pm | | | | |
| 9/21/2021 | Documents/Mail | 31 | Fax | Completed | RXJOHNS |
| | 2021-09-02-10.59.32.432460O01 | | | | |
| | Item Closed w ith Claim by System - AJHICKS - Jun 15, 2022 02:03:36 pm | | | | |
| 9/21/2021 | Telephone (OUT) | 19 | ADAM K. BOBB | Completed | RXJOHNS |
| | SPK WITH EE - EE HAS NOT HAD MRI DONE YET. HIS INSURANCE KEEP DENYING IT AND HIS DR HAS ALSO SENT REQUEST 3 TIMES TRYING TO GET IT APPROVE. DR WILL BE SENDING OVER REQUEST ONCE AGAIN ON TRYING TO GET IT APPROVE. CE WILL SEND OVER OVN OF 9/1 FROM DR POLLARD ON CR AND CB ONCE DONE - RXJOHNS - Sep 21, 2021 05:51:14 pm | | | | |
| 9/21/2021 | Telephone (IN) | 18 | ADAM BOBB | Completed | RXJOHNS |
| | Nancy (w ife) Adam Bobb called to speak w ith manager, transferred to Dianne Moulton - Manager<br><br>Name: Nancy (w ife) Adam Bobb<br>Claim Number:<br>Employer: Trinity Village Inc<br>Telephone number: 870 461 0711 | | | | |
| 9/21/2021 | Telephone (IN) | 17 | NANCY BOBB | Completed | RXJOHNS |
| | NANCY BOBB<br>ADAM BOBB | | | | |

## Chronological Activity List

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

Trinity Village
8704610711

Wife is calling about payments, suppose to have deposit today , I recvd a verbal auth form husband to speak w ith w ife. I informed that the paymet has not been approved to be released yet, I called the ce and MR no answ er. I informed that if ee is fired w e w ill honor the benefits

ce please call ee back w ith the updated status of payment

Item Closed w ith Claim by System - AJHICKS - Jun 15, 2022 02:02:51 pm

| 9/21/2021 | Telephone (IN) | 16 | Nancy Bobb | Completed | RXJOHNS |
|---|---|---|---|---|---|

EE:ADAM K BOBB
ER:Trinity Village, Inc
SS#:
CB:830-361-0711
EE gave me verbal consent to s/w callerCaller checking to see w hen next pymt w ill be iss and the status of ext req.

Item Closed w ith Claim by System - AJHICKS - Jun 15, 2022 02:02:50 pm

| 9/21/2021 | Telephone (IN) | 15 | Nancy Bobb | Completed | RXJOHNS |
|---|---|---|---|---|---|

Nancy Bobb-spouse
call back # 870-461-0711

ee= Adam Bobb
claim # STD 1210071975
ss=

Recd verbal auth from ee to speak to his w ife about the claim.

She is checking on the status of cr

Recd ce's vm and she is out of the office.

Pls call ee back at 870-461-0711

Item Closed w ith Claim by System - AJHICKS - Jun 15, 2022 02:02:49 pm

| 9/21/2021 | Telephone (IN) | 14 | ADAM BOBB | Completed | RXJOHNS |
|---|---|---|---|---|---|

Nancy Bobb - spouse
Adam Bobb - insured
cb 8704610711
ssn#

Advised pending CR per CE's summary notes dated 08/31/2021. Advised to allow 7-10 business days for review .

Insured request to speak w ith CE regarding the status of the claim. Transferred call.

Item Closed w ith Claim by System - AJHICKS - Jun 15, 2022 02:02:47 pm

| 9/21/2021 5:55:47 PM | Referrals | 2 | Ongoing Claim Review | Initial | RXJOHNS |
|---|---|---|---|---|---|

Item Closed w ith Claim by System - AJHICKS - Jun 15, 2022 02:04:11 pm
Clinical Consultation - Review Referral Template
Demographics
Claimant Name: ADAM BOBB
Claim Number: 1210071975
Age: 37
Height:6'3
Weight:208

Occupation/level:MAINTENANCE/HEAVY
Diagnosis: RIGHT HIP PAIN, TENDINITIS, BURSITIS
DLW: 6/17/2021
DOD:6/18/2021

*************ADDENDUM*****************

****NEW INFORMATION***
OVN 9/1/2021 - ON EXAM, RIGHT INTERNAL AND EXTERNAL HIP ROTATION CAUSES PAIN. POSITIVE SLR ON THE RIGHT. LOWER EXTREMITY MUSCLE GROUPS ARE 5/5 BILATERALLY. ORDERING AN MRI OF THE PELVIS COMPLETE RIGHT. F/U AFTER TESTING IS COMPLETE.

SPK WITH EE - EE HAS NOT HAD MRI DONE YET. HIS INSURANCE KEEP DENYING IT AND HIS DR HAS ALSO SENT REQUEST 3 TIMES TRYING TO GET IT APPROVE. DR WILL BE SENDING OVER REQUEST ONCE AGAIN ON TRYING TO GET IT APPROVE. CE WILL SEND OVER OVN OF 9/1 FROM DR POLLARD ON CR AND CB ONCE DONE

******PREVIOUS INFORMATION**********

NO BENEFIT PAID ON CLAIM. STD MAX DATE 12/17/2021. EE HAS LTD

PROGRESS NOTE 6/7/2021 - 8/23/2021

8/23 - F/U. RIGHT HIP AND GROIN PAIN CONT. WENT TO PT TWICE BUT EXERCISES NOT HELPED HIS PAIN, SEE DR POLLARD NEXT WEEK. ASSESSMENT OF HYPERTENSION AND RIGHT HIP PAIN.

6/18 - RIGHT HIP PAIN, RIGHT GROIN PAIN, BURN BOTTOM OF RIGHT FOOT. ASSEMENT - HYPERTENSION, SECOND DEGREE BURN OF FOOT, RIGHT HIP PAIN, BURSITIS OF HIP, RIGHT

6/7 - F/U, HYPERTENSION, HYPERLIPIDEMIA, RIGH HIP PAIN, WORSENING. BP 156/105 AND 140/100. RADILOGY REPORT - TROCHANTERS ARE NORMAL. ILEUM AND ISCHIUM ARE

SPK WITH EE SEE DR ON 9/7. WILL NOT BE RTW ON 9/8 AND SAID THAT DR WANT HIM OOW COUPLE MORE MONTHS. EE IS SAYING DR BELIEVE IT IS A TEAR BUT NEED TO GET A MRI. EE SAID THAT HE WILL SEE SPECIALIST ON 9/1 TO SEE ABOUT ORDERING THE MRI. SPK WITH EE ABOUT APS SHOWING DOD OF 6/7 AND EE DLW WAS 6/17. EE SAID THAT HE WENT TO DR ON 6/7 AND DR THOUGHT HE HAD BURSITIS AND GAVE HIM STEROID BUT NOTHING CHANGE AND THAT IS WHEN EE WENT BACK AND WAS TOLD TO STOP WORKING.

Specific Medical Question:
Based on your review of the medical information in the claim file, is there adequate support for restrictions and limitations and if so please explain or provide your rationale.

Date:September 2, 2021

Subject:Nursing Memorandum

Claim#: 1210071975
Claimant: Adam Bobb

Clinical Assessment:

OVNs w ith Dr. Mark Ramiro, MD (family practice) 6/7/21-6/28/21 show s EE w as f/u for right hip pain and reported burn on right foot. The burn healed and hip pain continued. Right hip x-ray 6/7/21 w as unremarkable. MRI of the hip w as denied by insurance. Exams show ed limited hip ROM and tenderness. Gentle exercises w ere advised. An APS 7/8/21 from Mark Ramiro, MD (family practice) provides Dx of right hip pain, tendinitis/bursitis; Unable to w ork 6/7/21; Avoid prolonged standing, w alking, lifting; Treatment-medication, PT; ERTW 8/8/21-part-time, 9/8/21-full time. OV 7/8/21-8/23/21 show s EE started PT but reported pain w orsened w ith therapy and therapist noted possible labral tear in hip. Exams show ed limited ROM of right hip, and limping gait. Pain medication w as prescribed. EE w as pending appt. w ith Dr. Pollard and MRI of hip w as reordered. EE reported hip w as catching and popping as w ell. EE w as to remain off w ork. EE reported having appt. w ith specialist on 9/1/21.

Although there has been no definitive dx give for right hip, the medical evidence provided supports R&Ls of Avoid prolonged standing, w alking, lifting from DOD to 9/1/21 (appt. w ith specialist) based on persistent right hip pain w ith tenderness, limited ROM, and impaired gait w ith failed PT and minimal improvement w ith rest and medication. Recommend requesting OVNs from Dr. Pollard or specialist from appt 9/1/21 and MRI of right hip once it is completed for further review .

Whitney K., BSN, RN, CCM
Nurse Disability Consultant, Lincoln Financial Group - RXJOHNS - Sep 21, 2021 05:58:57 pm
Whitney - PRAWA5 - Sep 23, 2021 04:00:21 pm
Date:September 24, 2021

Subject:Nursing Memorandum

Claim#: 1210071975
Claimant: Adam Bobb

Clinical Assessment:

See prior CR 9/2/21 for full details. OV 9/1/21 w ith April McGhee, APRN (orthopedics) show s EE w as seen for right hip pain w ith severe right groin pain and right lateral leg pain w ith perceived w eakness and unsteady w ith multiple falls. Past medical hx includes high blood pressure and stroke. The exam show ed EE w as in obvious pain, pain w ith right hip internal and external rotation, positive straight leg raise on right, 5/5 strength, intact sensation. The provider noted the EE rises slow ly from exam table and w alks w ith antalgic gait to right. Lumbar x-ray show ed w ell maintained disc height. Pelvis x-ray show ed no acute fracture w ith w ell maintained hip joint w ith normal alignment. MRI of the pelvic right w as ordered w ith plan to f/u after. Dx of lumbago (low back pain) and right hip pain w as given. Updated APS from Dr. Mark Ramiro, MD (PCP) 9/2/21 provides R&Ls of no prolonged standing/w alking, climbing, bending, squatting; ERTW 11/2021. Per phone notes 9/21/21 MRI has not been done as it has been denied by insurance multiple times.

The medical evidence provided does not support ongoing R&Ls beyond 9/3/21 as no significant lumbar or hip pathology has been identified and the orthopedic exam show ed full strength of low er extremities w ith no specific ROM limitations beyond pain w ith rotation, no unsteadiness or use of assistive device or imbalance w as noted, and sensation of the low er extremities w as normal. MRI remains pending and no future orthopedic evaluation or treatment being planned until MRI has been completed. Did complete phone consult w ith Dr. Cirincione to discuss file and findings.

Whitney K., BSN, RN, CCM
Nurse Disability Consultant, Lincoln Financial Group - WMWKA2 - Sep 24, 2021 01:55:17 pm

9/28/2021 3:53:32 PM | Telephone (IN) | 20 | Nancy BOBB | Requested | RXJOHNS

Name:Nancy Bob
Adam Bobb
SSN or Claim:58761321
ER:trinty village
CB:870-461-0711

Adv that its in CR and can take 7-10 tat
Wife w ould like it if the Ce could rech out to the EE about claim

Item Closed w ith Claim by System - AJHICKS - Jun 15, 2022 02:02:52 pm

10/1/2021 3:15:43 PM | Telephone (IN) | 21 | Nancy Bob | Requested | RXJOHNS

Nancy Bob
CB#8704610711
ADAM BOBB
SSN
Birthdate
Trinity Village, Inc.

Adam gave verbal auth to speak w ith Nancy about his claim

Spouse trying to get status of claim and see w hat is holding up.

## Chronological Activity List

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

Advised w as sent back for CR and asked her to give until Tuesday for FU call from CE

Item Closed w ith Claim by System - AJHICKS - Jun 15, 2022 02:02:53 pm

| 10/4/2021 4:31:46 PM | Telephone (IN) | 22 | Nancy Bobb | Requested | RXJOHNS |
|---|---|---|---|---|---|

Nancy Bobb- spouse
call back # 870-461-0711

ee= Adam Bobb

Recd verbal auth from ee to speak to his w ife on his behalf about the claim .

Advised not show ing a decision yet from the review . Pls call her back at 870-461-0711.

Item Closed w ith Claim by System - AJHICKS - Jun 15, 2022 02:02:54 pm

| 10/5/2021 | Referrals | 2 | Ongoing Claim Review | Completed | RXJOHNS |
|---|---|---|---|---|---|

Item Closed w ith Claim by System - AJHICKS - Jun 15, 2022 02:04:11 pm
Clinical Consultation - Review Referral Template
Demographics
Claimant Name: ADAM BOBB
Claim Number: 1210071975
Age: 37
Height:6'3
Weight:208
Occupation/level:MAINTENANCE/HEAVY
Diagnosis: RIGHT HIP PAIN, TENDINITIS, BURSITIS
DLW: 6/17/2021
DOD:6/18/2021

*************ADDENDUM*****************

****NEW INFORMATION***
OVN 9/1/2021 - ON EXAM, RIGHT INTERNAL AND EXTERNAL HIP ROTATION CAUSES PAIN. POSITIVE SLR ON THE RIGHT. LOWER EXTREMITY MUSCLE GROUPS ARE 5/5 BILATERALLY. ORDERING AN MRI OF THE PELVIS COMPLETE RIGHT. F/U AFTER TESTING IS COMPLETE.

SPK WITH EE - EE HAS NOT HAD MRI DONE YET. HIS INSURANCE KEEP DENYING IT AND HIS DR HAS ALSO SENT REQUEST 3 TIMES TRYING TO GET IT APPROVE. DR WILL BE SENDING OVER REQUEST ONCE AGAIN ON TRYING TO GET IT APPROVE. CE WILL SEND OVER OVN OF 9/1 FROM DR POLLARD ON CR AND CB ONCE DONE

******PREVIOUS INFORMATION**********

NO BENEFIT PAID ON CLAIM. STD MAX DATE 12/17/2021. EE HAS LTD

PROGRESS NOTE 6/7/2021 - 8/23/2021

8/23 - F/U. RIGHT HIP AND GROIN PAIN CONT. WENT TO PT TWICE BUT EXERCISES NOT HELPED HIS PAIN, SEE DR POLLARD NEXT WEEK. ASSESSMENT OF HYPERTENSION AND RIGHT HIP PAIN.

6/18 - RIGHT HIP PAIN, RIGHT GROIN PAIN, BURN BOTTOM OF RIGHT FOOT. ASSEMENT - HYPERTENSION, SECOND DEGREE BURN OF FOOT, RIGHT HIP PAIN, BURSITIS OF HIP, RIGHT

6/7 - F/U, HYPERTENSION, HYPERLIPIDEMIA, RIGH HIP PAIN, WORSENING. BP 156/105 AND 140/100. RADILOGY REPORT - TROCHANTERS ARE NORMAL. ILEUM AND ISCHIUM ARE

**Chronological Activity List**

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

SPK WITH EE SEE DR ON 9/7. WILL NOT BE RTW ON 9/8 AND SAID THAT DR WANT HIM OOW COUPLE MORE MONTHS. EE IS SAYING DR BELIEVE IT IS A TEAR BUT NEED TO GET A MRI. EE SAID THAT HE WILL SEE SPECIALIST ON 9/1 TO SEE ABOUT ORDERING THE MRI. SPK WITH EE ABOUT APS SHOWING DOD OF 6/7 AND EE DLW WAS 6/17. EE SAID THAT HE WENT TO DR ON 6/7 AND DR THOUGHT HE HAD BURSITIS AND GAVE HIM STEROID BUT NOTHING CHANGE AND THAT IS WHEN EE WENT BACK AND WAS TOLD TO STOP WORKING.

Specific Medical Question:
Based on your review of the medical information in the claim file, is there adequate support for restrictions and limitations and if so please explain or provide your rationale.

Date:September 2, 2021

Subject:Nursing Memorandum

Claim#: 1210071975
Claimant: Adam Bobb

Clinical Assessment:

OVNs w ith Dr. Mark Ramiro, MD (family practice) 6/7/21-6/28/21 show s EE w as f/u for right hip pain and reported burn on right foot. The burn healed and hip pain continued. Right hip x-ray 6/7/21 w as unremarkable. MRI of the hip w as denied by insurance. Exams show ed limited hip ROM and tenderness. Gentle exercises w ere advised. An APS 7/8/21 from Mark Ramiro, MD (family practice) provides Dx of right hip pain, tendinitis/bursitis; Unable to w ork 6/7/21; Avoid prolonged standing, w alking, lifting; Treatment-medication, PT; ERTW 8/8/21-part-time, 9/8/21-full time. OV 7/8/21-8/23/21 show s EE started PT but reported pain w orsened w ith therapy and therapist noted possible labral tear in hip. Exams show ed limited ROM of right hip, and limping gait. Pain medication w as prescribed. EE w as pending appt. w ith Dr. Pollard and MRI of hip w as reordered. EE reported hip w as catching and popping as w ell. EE w as to remain off w ork. EE reported having appt. w ith specialist on 9/1/21.

Although there has been no definitive dx give for right hip, the medical evidence provided supports R&Ls of Avoid prolonged standing, w alking, lifting from DOD to 9/1/21 (appt. w ith specialist) based on persistent right hip pain w ith tenderness, limited ROM, and impaired gait w ith failed PT and minimal improvement w ith rest and medication. Recommend requesting OVNs from Dr. Pollard or specialist from appt 9/1/21 and MRI of right hip once it is completed for further review .

Whitney K., BSN, RN, CCM
Nurse Disability Consultant, Lincoln Financial Group - RXJOHNS - Sep 21, 2021 05:58:57 pm
Whitney - PRAWA5 - Sep 23, 2021 04:00:21 pm
Date:September 24, 2021

Subject:Nursing Memorandum

Claim#: 1210071975
Claimant: Adam Bobb

Clinical Assessment:

See prior CR 9/2/21 for full details. OV 9/1/21 w ith April McGhee, APRN (orthopedics) show s EE w as seen for right hip pain w ith severe right groin pain and right lateral leg pain w ith perceived w eakness and unsteady w ith multiple falls. Past medical hx includes high blood pressure and stroke. The exam show ed EE w as in obvious pain, pain w ith right hip internal and external rotation, positive straight leg raise on right, 5/5 strength, intact sensation. The provider noted the EE rises slow ly from exam table and w alks w ith antalgic gait to right. Lumbar x-ray show ed w ell maintained disc height. Pelvis x-ray show ed no acute fracture w ith w ell maintained hip joint w ith normal alignment. MRI of the pelvic right w as ordered w ith plan to f/u after. Dx of lumbago (low back pain) and right hip pain w as given. Updated APS from Dr. Mark Ramiro, MD (PCP) 9/2/21 provides R&Ls of no prolonged standing/w alking, climbing, bending, squatting; ERTW 11/2021. Per phone notes 9/21/21 MRI has not been done as it has been denied by insurance multiple times.

The medical evidence provided does not support ongoing R&Ls beyond 9/3/21 as no significant lumbar or hip

pathology has been identified and the orthopedic exam show ed full strength of low er extremities w ith no specific ROM limitations beyond pain w ith rotation, no unsteadiness or use of assistive device or imbalance w as noted, and sensation of the low er extremities w as normal. MRI remains pending and no future orthopedic evaluation or treatment being planned until MRI has been completed. Did complete phone consult w ith Dr. Cirincione to discuss file and findings.

Whitney K., BSN, RN, CCM
Nurse Disability Consultant, Lincoln Financial Group - WMWKA2 - Sep 24, 2021 01:55:17 pm

10/5/2021 Telephone (OUT) 24 ADAM K. BOBB Completed RXJOHNS

PC TO SPOUSE, NANCY TO SEE IF EE WAS AVAILABLE - CALLING ON CLAIM EXTENSION DENIAL. CE WILL PROCESS DENIAL LETTER WITH APPEAL RIGHTS TO SEND OUT - RXJOHNS - Oct 05, 2021 10:02:42 am

10/5/2021 Telephone (OUT) 23 ADAM K. BOBB Completed RXJOHNS

PC TO EE ON EXT DENAIL - NO ANSWER - VM NOT SETUP YET - RXJOHNS - Oct 05, 2021 09:59:47 am

10/5/2021 Telephone (IN) 22 Nancy Bobb Completed RXJOHNS

Nancy Bobb- spouse
call back # 870-461-0711

ee= Adam Bobb

Recd verbal auth from ee to speak to his w ife on his behalf about the claim .

Advised not show ing a decision yet from the review . Pls call her back at 870-461-0711.

Item Closed w ith Claim by System - AJHICKS - Jun 15, 2022 02:02:54 pm

10/5/2021 Telephone (IN) 21 Nancy Bob Completed RXJOHNS

Nancy Bob
CB#8704610711
ADAM BOBB
SSN
Birthdate
Trinity Village, Inc.

Adam gave verbal auth to speak w ith Nancy about his claim

Spouse trying to get status of claim and see w hat is holding up.

Advised w as sent back for CR and asked her to give until Tuesday for FU call from CE

Item Closed w ith Claim by System - AJHICKS - Jun 15, 2022 02:02:53 pm

10/5/2021 Telephone (IN) 20 Nancy BOBB Completed RXJOHNS

Name:Nancy Bob
Adam Bobb
SSN or Claim:58761321
ER:trinty village
CB:870-461-0711

Adv that its in CR and can take 7-10 tat
Wife w ould like it if the Ce could rech out to the EE about claim

Item Closed w ith Claim by System - AJHICKS - Jun 15, 2022 02:02:52 pm

10/13/2021 Telephone (OUT) 25 ADAM K. BOBB Completed RXJOHNS

SPK WITH EE AND INFORM OF CLAIM EXT DENIAL AND THAT WILL SEND OUT DENIAL LETTER W/APPEAL RIGHTS - RXJOHNS - Oct 13, 2021 03:16:40 pm

## Chronological Activity List

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 10/13/2021 3:14:16 PM | Documents/Mail | 39 | Denial Not Disabled | Work In Progress | RXJOHNS |

Denial Not Disabled

Attachments:
Translation services

Item Closed w ith Claim by System - AJHICKS - Jun 15, 2022 02:04:06 pm

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 10/13/2021 3:35:49 PM | Documents/Mail | 40 | Generic Denial Ltr Sent to Employer | Work In Progress | RXJOHNS |

Generic Denial Ltr Sent to Employer

Item Closed w ith Claim by System - AJHICKS - Jun 15, 2022 02:04:07 pm

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 10/13/2021 3:38:12 PM | Referrals | 3 | Management Review | Initial | RXJOHNS |

Please reveiw denial letter. Thanks - Management Review - RXJOHNS - Oct 13, 2021 03:38:46 pm

Review ed file and agree w ith recommendation. EE out for osteoarthritis of the spine, yet there are minimal findings on file. EE noted to be in pain, but this is subjective as there are no objective findings to support this. EE has full strength and ROM. No MRI has been compelted, currently on hold. Treatment plan hasn't been discussed until the EE gets the MRI and the results are rec'd. At this time, there's no information on file that supports the EE is not able to w ork. Sending letters and lcosing file, ensure this is communicated to EE via phone. - Management Review - ADJHI7 - Oct 14, 2021 10:46:10 am

Item Closed w ith Claim by System - Management Review - AJHICKS - Jun 15, 2022 02:04:15 pm

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 10/14/2021 | Documents/Mail | 40 | Generic Denial Ltr Sent to Employer | Completed | RXJOHNS |

Generic Denial Ltr Sent to Employer

Item Closed w ith Claim by System - AJHICKS - Jun 15, 2022 02:04:07 pm

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 10/14/2021 | Documents/Mail | 39 | Denial Not Disabled | Completed | RXJOHNS |

Denial Not Disabled

Attachments:
Translation services

Item Closed w ith Claim by System - AJHICKS - Jun 15, 2022 02:04:06 pm

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 10/14/2021 10:52:02 AM | Status | | Not TD Ow n Occ | CLOSED | ADJHI7 |
| 10/21/2021 12:32:29 PM | Telephone (IN) | 26 | nancy BOBB | Requested | MASOTO |

name- nanacy bobb- ADAM BOBB(he got on phone and said ok to talk to her)

Phone: 8704610711

SSN/claim#-

Employer- Trinity Village, Inc.

help- claim w as denied, denial letter hasnt been recieved. 7th buiness day w ould be monday. not sure how long they have to apeal it, letter in docs didnt say. and w anted to make a complant to w ho ever w as over everything. let her know i didnt have that number, maybe google. she did and that number told her to call w ho ever they had compliant w ith.

Item Closed w ith Claim by System - AJHICKS - Jun 15, 2022 02:02:55 pm

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 10/29/2021 11:49:12 AM | Status | | | REOPENED | SALITTL |
| 10/29/2021 11:50:00 AM | Appeal | 1 | Level 1 | New | MASOTO |

## Chronological Activity List

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| | Atlanta appeal 1 recd 10/28/21 and assigned to MASOTO - JABEYER - Oct 29, 2021 01:04:01 pm | | | | |
| 11/1/2021 | Referrals | 3 | Management Review | Completed | RXJOHNS |
| | Please reveiw denial letter. Thanks - Management Review - RXJOHNS - Oct 13, 2021 03:38:46 pm<br><br>Review ed file and agree w ith recommendation. EE out for osteoarthritis of the spine, yet there are minimal findings on file. EE noted to be in pain, but this is subjective as there are no objective findings to support this. EE has full strength and ROM. No MRI has been compelted, currently on hold. Treatment plan hasn't been discussed until the EE gets the MRI and the results are rec'd. At this time, there's no information on file that supports the EE is not able to w ork. Sending letters and lcosing file, ensure this is communicated to EE via phone. - Management Review - ADJHI7 - Oct 14, 2021 10:46:10 am<br><br>Item Closed w ith Claim by System - Management Review - AJHICKS - Jun 15, 2022 02:04:15 pm | | | | |
| 11/1/2021 | Telephone (IN) | 26 | nancy BOBB | Completed | MASOTO |
| | name- nanacy bobb- ADAM BOBB(he got on phone and said ok to talk to her)<br><br>Phone: 8704610711<br><br>SSN/claim#-<br><br>Employer- Trinity Village, Inc.<br><br>help- claim w as denied, denial letter hasnt been recieved. 7th buiness day w ould be monday. not sure how long they have to apeal it, letter in docs didnt say. and w anted to make a complant to w ho ever w as over everything. let her know i didnt have that number, maybe google. she did and that number told her to call w ho ever they had compliant w ith.<br><br>Item Closed w ith Claim by System - AJHICKS - Jun 15, 2022 02:02:55 pm | | | | |
| 11/2/2021 | Documents/Mail | 41 | Fax | Completed | MASOTO |
| | 2021-11-01-10.45.56.896960O01 | | | | |
| 11/2/2021 | Documents/Mail | 42 | Medical Records | Completed | MASOTO |
| | 2021-11-01-10.46.00.323960O01 | | | | |
| 11/2/2021 | Telephone (IN) | 27 | ADAM BOBB | Completed | MASOTO |
| | nancy<br><br>Dr Penning Faxed rec 11/1/21<br><br>MRI 11/5/21 | | | | |
| 11/3/2021 | Documents/Mail | 44 | Appeal Dis EE Ackappeal | Completed | MASOTO |
| | Appeal Dis EE Ackappeal | | | | |
| 11/3/2021 | Documents/Mail | 43 | Appeal Dis EE Ackappeal | Completed | MASOTO |
| | Appeal Dis EE Ackappeal | | | | |
| 11/3/2021 | Telephone (OUT) | 28 | ADAM K. BOBB | Completed | MASOTO |
| | 11/3/2021 - Made the initial pc to the clmt, spoke w /clmt regarding his appeal. We discussed his appeal and the medical records on file. I asked about Dr. Poland as w e have no records from him but it is noted in Dr. Pennington's records that he w as being treated by Dr. Poland. The clmt said that he only w ent to him once, he w as trying to get an MRI of his hip for him but his insurance company denied it. Dr. Pennington w as able to get the MRI approved and scheduled and he has an appt on Friday. I asked the clmt if he w anted me to begin the review of the appeal? He said yes, and he w ill send in the MRI once he has the results. End of pc. - MASOTO - Nov 03, 2021 01:25:06 pm | | | | |
| 11/3/2021 1:17:21 PM | Claim Tasks | 8 | Appeal 90 Day Extension | Requested | MASOTO |
| | 90-day reminder (90th day 1/26/2022) - MASOTO - Nov 03, 2021 01:18:20 pm<br><br>Item Closed w ith Claim by System - AJHICKS - Jun 15, 2022 02:03:06 pm | | | | |

## Chronological Activity List

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 11/3/2021 1:20:39 PM | Claim Tasks | 9 | Appeal - 45 Day Reminder | Requested | MASOTO |

30-day reminder (30th day 11/27/2021) - MASOTO - Nov 03, 2021 01:21:05 pm

Item Closed w ith Claim by System - AJHICKS - Jun 15, 2022 02:03:08 pm

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 11/3/2021 1:21:12 PM | Claim Tasks | 10 | Call Employer | Requested | MASOTO |

Has the ER provided the job desc? - MASOTO - Nov 03, 2021 01:21:33 pm

Item Closed w ith Claim by System - AJHICKS - Jun 15, 2022 02:03:10 pm

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 11/3/2021 1:48:22 PM | Summary/Assessment/Path | 2 | 11/3/2021 - 1ST LEVEL STD APPEAL - - MASOTO - Nov 03, | Requested | MASOTO |

Summary Notes
11/3/2021 - 1ST LEVEL STD APPEAL - - MASOTO - Nov 03, 2021 01:57:31 pm
Assessment Notes

Path Notes
1ST LEVEL STD APPEAL

Claimant Name: Adam Bobb
Claim Number: 1210071975

Claim Demographics
Current Age: 37
Situs State: AR
Residence State: AR
DOH: 8/14/2014
STD Eff Date: 1/1/2017
LTD Eff Date: 1/1/2017
Prex: N/A
Date Last Worked: 6/17/2021
Date of Disability: 6/18/2021
EP: 14-day
Benefit Commencement Date: 7/2/2021
Benefit Paid To: 9/3/2021
Max Duration Date: 12/17/2021
RTW Date: N/A
Job Title: Maintenance
Occupation:
DOT Classification:
Primary Diagnosis: rt hip pain, tendinitis, bursitis
ERISA
Prior STD claims: N/A
LTD claim status: N/A

Initial Claim Decision
Denial Date: 10/13/2021
Reason: Not TD OO beyond 9/3/2021
Type of Medical Review , Name, & Specialty: Internal NDC Review - WMWKA2

Current Providers:
AP Name/Specialty: Dr. Mark Ramiro, Family Med
Phone Number: 870-247-9499
ov: 6/7/2021, 6/18/2021, 6/28/2021, 7/8/2021, 7/27/2021, 8/5/2021, 8/23/2021, 9/1/2021

AP Name/Specialty: Dr. Kerry Pennington, Family Med
Phone Number: 870-226-6786
ov: 10/25/2021

___________

**Chronological Activity List**

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

Adam Bobb is a 37 yr old male Maintenance w orker w ho has been dx w ith rt hip pain, tendinitis, bursitis. His dlw w as 6/17/2021 w ith a dod of 6/18/2021. He had a 14-day elim period, bcd: 7/2/2021. Benefits have been approved to 9/3/2021.

On 10/13/2021 the STD BS denied the clmt's benefits beyond 9/3/2021. The denial ltr states that the records no longer supported TD. During the claims review an internal NDC review w as completed. Summary of the NDC review states:

"The medical evidence provided does not support ongoing R&Ls beyond 9/3/21 as no significant lumbar or hip pathology has been identified and the orthopedic exam show ed full strength of low er extremities w ith no specific ROM limitations beyond pain w ith rotation, no unsteadiness or use of assistive device or imbalance w as noted, and sensation of the low er extremities w as normal. MRI remains pending and no future orthopedic evaluation or treatment being planned until MRI has been completed. Did complete phone consult w ith Dr. Cirincione to discuss file and findings."

On 10/28/2021 the clmt appealed the decision. He states in his appeal ltr that he is appealing and Dr. Pennington is his new PCP and they are w aiting for medicaid to start.

Along w ith the appeal ltr the clmt provided an ov from Dr. Pennington dated 10/25/2021.

PENDING RATIONALE: Pending appeal for a job desc and med review .

PATH:
~ Made the initial pc to the clmt, see phone notes.
~ Sending ackn ltrs to the clmt and ER
~ Sent email to the ER for the job desc.
~ Referring appeal for med review .

- MASOTO - Nov 03, 2021 01:57:31 pm

11/5/2021 - UPDATED PATH
Rec'd the job desc from the ER, General Maintenance. Will follow up w hen the med review has been completed. - MASOTO - Nov 05, 2021 02:19:25 pm

11/12/2021 - UPDATED PATH
Rec'd the clmt's 11/8/2021 MRI of the rt hip. The clmt has a tear of the rt anterior labrum betw een the 2:00 and 3:00 positions.
The appeal is currently in med review . Wil follow up w hen the review is completed. - MASOTO - Nov 12, 2021 11:39:08 am

11/17/2021 - UPDATED PATH
Med review completed and review ed. Sending 21-day ltr to the clmt. He has until 12/8/2021 to respond. Begin tolling. - MASOTO - Nov 17, 2021 10:07:01 am

11/22/2021 - UPDATED PATH
Rec'd a ltr from Dr. Kerry Pennington dated 11/18/2021, w hich states that the cltm has had severe hip pain for one year, that doesn't allow him to w ork. His recent MRI show ed a labral tear and he should receive disability until this is repaired.
The clmt has until 12/8/2021 to provide further response to the 21-day ltr. Continue tolling. - MASOTO - Nov 22, 2021 10:48:21 am

12/15/2021 - 1ST LEVEL STD UPHOLD
Uphold Rationale: Have not rec'd any further medical records from the clmt in response to the 21-day ltr; therefore,

based on the medical documentation provided and NDC review , benefits w ill contine to be upheld beyond 9/3/2021. The records do not support ongoing r & l's that w ould prevent the clmt from performing the main duties of his OO beyond this date. Summary of the uphold to the clmt states:

~ According to the Attending Physician's Statement completed by Dr. Mark Ramiro on 7/8/2021, it w as noted that you had symptoms of severe right hip / buttock pain. Your restrictions and limitations consisted of prolonged standing, w alking and lifting. Your nature of treatment consisted of medication and physical therapy.

The medical documentation provided indicates that you have had ongoing treatment and care for your complaints of right hip pain that has been present for one year follow ing a tractor accident. There is no documentation of motor or sensory deficits. Lumbar and pelvic x-rays dated 9/1/2021, show ed w ell maintained disc height and no acute fracture w ith a w ellmaintained hip joint w ith normal alignment. Medical records from Dr. Pennington revealed that you had decreased range of motion in the right hip due to pain and tenderness and palpation in the anterior hip and moderate stiffness in the lumbar spine. There w as no documentation demonstrating sensory deficits or severe loss of range of motion or impaired gait. You w ere prescribed medications for pain control. An MRI of the right hip dated 11/8/2021 show ed a labral tear; how ever, there are no further office notes or examination findings to provide further treatment options.

In summary, you have show n the ability to w ork w ith the same symptoms for quite some time prior to your date of disability and the medical records do not support ongoing restrictions and limitations that w ould prevent you from performing the main duties of your ow n occupation and does not support a Total Disability beyond 9/3/2021. ~

Sending uphold ltrs to the clmt and ER. Uphold pc to the clmt, see phone notes. If the clmt disagrees w ith the decision he does have the option for a 2nd level appeal. Closing the handling of the appeal.

Tolling: 11/17/2021 to 12/15/2021 - MASOTO - Dec 15, 2021 12:07:15 pm

| | | | | | |
|---|---|---|---|---|---|
| 11/3/2021 2:45:48 PM | Referrals | 4 | Ongoing Claim Review | Initial | MASOTO |

Item Closed w ith Claim by System - AJHICKS - Jun 15, 2022 02:04:12 pm
1ST LEVEL STD APPEAL

Claimant Name: Adam Bobb
Claim Number: 1210071975

Claim Demographics
Current Age: 37
Situs State: AR
Residence State: AR
DOH: 8/14/2014
STD Eff Date: 1/1/2017
LTD Eff Date: 1/1/2017
Prex: N/A
Date Last Worked: 6/17/2021
Date of Disability: 6/18/2021
EP: 14-day
Benefit Commencement Date: 7/2/2021
Benefit Paid To: 9/3/2021
Max Duration Date: 12/17/2021
RTW Date: N/A
Job Title: Maintenance
Occupation:
DOT Classification:
Primary Diagnosis: rt hip pain, tendinitis, bursitis
ERISA
Prior STD claims: N/A
LTD claim status: N/A

Initial Claim Decision
Denial Date: 10/13/2021
Reason: Not TD OO beyond 9/3/2021
Type of Medical Review , Name, & Specialty: Internal NDC Review - WMWKA2

**Chronological Activity List**

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

Current Providers:
AP Name/Specialty: Dr. Mark Ramiro, Family Med
Phone Number: 870-247-9499
ov: 6/7/2021, 6/18/2021, 6/28/2021, 7/8/2021, 7/27/2021, 8/5/2021, 8/23/2021, 9/1/2021

AP Name/Specialty: Dr. Kerry Pennington, Family Med
Phone Number: 870-226-6786
ov: 10/25/2021

___________

Adam Bobb is a 37 yr old male Maintenance w orker w ho has been dx w ith rt hip pain, tendinitis, bursitis. His dlw w as 6/17/2021 w ith a dod of 6/18/2021. He had a 14-day elim period, bcd: 7/2/2021. Benefits have been approved to 9/3/2021.

On 10/13/2021 the STD BS denied the clmt's benefits beyond 9/3/2021. The denial ltr states that the records no longer supported TD. During the claims review an internal NDC review w as completed. Summary of the NDC review states:

"The medical evidence provided does not support ongoing R&Ls beyond 9/3/21 as no significant lumbar or hip pathology has been identified and the orthopedic exam show ed full strength of low er extremities w ith no specific ROM limitations beyond pain w ith rotation, no unsteadiness or use of assistive device or imbalance w as noted, and sensation of the low er extremities w as normal. MRI remains pending and no future orthopedic evaluation or treatment being planned until MRI has been completed. Did complete phone consult w ith Dr. Cirincione to discuss file and findings."

On 10/28/2021 the clmt appealed the decision. He states in his appeal ltr that he is appealing and Dr. Pennington is his new PCP and they are w aiting for medicaid to start.

Along w ith the appeal ltr the clmt provided an ov from Dr. Pennington dated 10/25/2021.

PHYSICAL QUESTIONS:
Based on the medical findings, please provide a description of the claimant's impairments, and how these w ould translate into functional limitations or medically appropriate restrictions from 9/3/2021 and forw ard.

If your conclusion is different from the conclusions in the prior review s, please explain the medical rationale and evidence used in your coming to the different conclusion. - MASOTO - Nov 03, 2021 02:46:17 pm
Triaged to AMAMA3 - DWKEE - Nov 12, 2021 03:57:34 pm
Date:November 15, 2021

Subject:Appeal Nursing Memorandum

Claim #: 1210071975
Claimant: Adam Bobb
Date of Birth:
Date of Disability: 6/18/21

Review of medical records on file completed. Information summarized below includes those portions of the records received that have relevance to the questions and time frame identified for this review .

Clinical Assessment:
The EE stopped w orking on 6/18/21 due to right hip pain, tendinitis (inflammation), and bursitis. A right hip x-ray 6/7/21 is unremarkable. He is treated by Dr. Ramiro (Family Medicine) about every 1-3 w eeks 6/7/21-8/23/21 for ongoing complaints of right hip (noted for a year follow ing tractor accident) and groin pain as w ell as burn to the bottom of his foot. Treatment consists of Mobic (non-steroidal anti-inflammatory) and Tylenol w ith codeine (narcotic) for pain control, Medrol dose pak steroid (inflammation), and Silvadene cream to treat burn. Additional treatment

includes home exercises and PT however he reported worsening pain with therapy. He was previously supported to 9/3/21. He remains out of work for ongoing right hip pain.

The EE saw Dr. Ramiro on 8/23/21 for persistent right hip and groin pain; he went to PT twice but, exercises did not help; he is scheduled to see Dr. Pollard (orthopedics) next week. He reports his hip "catches and pops". Exam documents pain with abduction of right hip and limping gait, otherwise exam is unremarkable. Plan is to remain off work until evaluation by Dr. Pollard. Will attempt to get approval of MRI again.

The EE was evaluated by McGhee APRN (Orthopedics) on 9/1/21 for right hip pain that has been present for one year. He reports pain right groin and lateral leg and perceived weakness; he is extremely unsteady on his feet, and he has fallen multiple times. He has history of high blood pressure and a stroke. Exam documents the EE to be in obvious pain, pain with right hip internal and external rotation, positive straight leg raises (evaluate for herniated disc, nerve irritation) on right; his strength is normal 5/5 with intact sensation. He rises slowly from exam table and walks with antalgic gait to right. Lumbar x-ray showed well maintained disc height. Pelvic x-ray showed no acute fracture with well-maintained hip joint with normal alignment. Plan is to obtain pelvic MRI with follow up after.

The EE saw Dr. Pennington (Family Medicine) on 10/25/21 to establish care for chronic right hip pain. He reports he lost his job and has no insurance; he has been followed by Dr. Pollard and needs an MRI, but insurance denied; he has been told he has arthritis of the hip and lumbar spine, and that Dr. Pollard considers him having a torn labrum could be a possibility. He also reports high blood pressure and anxiety related to his condition. On exam, he is noted to be in no acute distress, moderate anxiety. He has moderate osteoarthritis of the hands, decreased ROM in the right hip due to pain particularly with internal rotation; there is tenderness to palpation anterior hip and moderate stiffness lumbar spine. Plan is to increase Cymbalta (anxiety) and start ibuprofen (non-steroidal anti-inflammatory) 600mg and Tramadol (narcotic) for pain control. Follow up in 3 months.

A right hip MRI 11/8/21 showed tear of the right anterior superior labrum tear (soft tissue that covers the hip socket) between 2:00 and 3:00 position. There are no correlating office visits.

The medical records document ongoing care and treatment for right hip and groin pain that has been present for one year following a tractor accident. The EE is treated by Dr. Ramiro (Family Medicine) and McGhee APRN (Orthopedics) as noted above. There is no documentation of motor or sensory deficits. Lumbar and pelvic x-rays 9/1/21 showed well maintained disc height and no acute fracture with well-maintained hip joint with normal alignment. Treatment consists of medication management as well as PT, however he did not tolerate the PT. There appears to be a gap in treatment from 9/1/21-10/25/21 at which time the EE established care with new primary care provider Dr. Pennington (Family Medicine) for ongoing chronic right hip pain as noted above. Exam revealed decreased ROM (unspecified) in the right hip due to pain and tenderness to palpation anterior hip and moderate stiffness lumbar spine. Treatment consists of medication changes (ibuprofen, Tramadol) for pain control. While the EE reports ongoing right hip pain that is chronic in nature with frequent falls, the medical exam documentation fails to demonstrate motor or sensory deficits, or severe loss of range of motion or impaired gait to support R/Ls beyond 9/1/21. Lumbar and pelvic x-rays are unremarkable. There is no documentation of frequent witnessed falls requiring frequent office visits, ER visits, or hospitalizations for the same. There is no indication the EE requires an assistive device for ambulation or any other activities. While the right hip MRI 11/8/21 showed labral tear, there are no further office visits or exam findings for review on appeal by orthopedics after 9/1/21 to provide further treatment plans. The EE has shown the ability to work with the same symptoms for quite some time prior to the date of disability. There does not appear to be any treating providers certifying ongoing disability.

AMAMA3
Nurse Disability Consultant, Lincoln Financial Group - AMAMA3 - Nov 15, 2021 12:00:03 pm

| | | | | | |
|---|---|---|---|---|---|
| 11/5/2021 | Documents/Mail<br>2021-11-04-13.52.24.360980O01 | 46 | Email | Completed | MASOTO |
| 11/5/2021 | Documents/Mail<br>2021-11-04-13.52.24.277060O01 | 45 | Email | Completed | MASOTO |
| 11/5/2021 | Documents/Mail<br>2021-11-04-13.52.24.380980O01 | 47 | Incoming Correspondence | Completed | MASOTO |
| 11/5/2021 | Documents/Mail<br>2021-11-04-17.44.08.890060O01 | 48 | Email | Completed | MASOTO |
| 11/5/2021 | Documents/Mail<br>2021-11-04-17.44.08.914060O01 | 49 | Voc Rehab Forms | Completed | MASOTO |

## Chronological Activity List

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 11/5/2021 | Claim Tasks | 10 | Call Employer | Completed | MASOTO |
| | Has the ER provided the job desc? - MASOTO - Nov 03, 2021 01:21:33 pm<br><br>Item Closed w ith Claim by System - AJHICKS - Jun 15, 2022 02:03:10 pm | | | | |
| 11/10/2021 | Telephone (IN) | 29 | ADAM K. BOBB | Completed | MASOTO |
| | 11/10/2021 - Rec'd a pc from the clmt's spouse, she said that he got his MRI results back and he does have to have surgery. She asked w hat info they need to send over? I told her to have the dr fax over the MRI results. She also thanked me for my cust serv. In claims they did not have a very good experience. I thanked her for her compliment and also aplogized for their experience. - MASOTO - Nov 10, 2021 10:30:20 am | | | | |
| 11/12/2021 | Documents/Mail | 51 | Medical Records | Completed | MASOTO |
| | 2021-11-10-11.55.16.545060O01 | | | | |
| 11/12/2021 | Documents/Mail | 50 | Fax | Completed | MASOTO |
| | 2021-11-10-11.55.13.820060O01 | | | | |
| 11/17/2021 | Referrals | 4 | Ongoing Claim Review | Completed | MASOTO |

Item Closed w ith Claim by System - AJHICKS - Jun 15, 2022 02:04:12 pm
1ST LEVEL STD APPEAL

Claimant Name: Adam Bobb
Claim Number: 1210071975

Claim Demographics
Current Age: 37
Situs State: AR
Residence State: AR
DOH: 8/14/2014
STD Eff Date: 1/1/2017
LTD Eff Date: 1/1/2017
Prex: N/A
Date Last Worked: 6/17/2021
Date of Disability: 6/18/2021
EP: 14-day
Benefit Commencement Date: 7/2/2021
Benefit Paid To: 9/3/2021
Max Duration Date: 12/17/2021
RTW Date: N/A
Job Title: Maintenance
Occupation:
DOT Classification:
Primary Diagnosis: rt hip pain, tendinitis, bursitis
ERISA
Prior STD claims: N/A
LTD claim status: N/A

Initial Claim Decision
Denial Date: 10/13/2021
Reason: Not TD OO beyond 9/3/2021
Type of Medical Review , Name, & Specialty: Internal NDC Review - WMWKA2

Current Providers:
AP Name/Specialty: Dr. Mark Ramiro, Family Med
Phone Number: 870-247-9499
ov: 6/7/2021, 6/18/2021, 6/28/2021, 7/8/2021, 7/27/2021, 8/5/2021, 8/23/2021, 9/1/2021

AP Name/Specialty: Dr. Kerry Pennington, Family Med
Phone Number: 870-226-6786
ov: 10/25/2021

___________

## Chronological Activity List

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

Adam Bobb is a 37 yr old male Maintenance w orker w ho has been dx w ith rt hip pain, tendinitis, bursitis. His dlw w as 6/17/2021 w ith a dod of 6/18/2021. He had a 14-day elim period, bcd: 7/2/2021. Benefits have been approved to 9/3/2021.

On 10/13/2021 the STD BS denied the clmt's benefits beyond 9/3/2021. The denial ltr states that the records no longer supported TD. During the claims review an internal NDC review w as completed. Summary of the NDC review states:

"The medical evidence provided does not support ongoing R&Ls beyond 9/3/21 as no significant lumbar or hip pathology has been identified and the orthopedic exam show ed full strength of low er extremities w ith no specific ROM limitations beyond pain w ith rotation, no unsteadiness or use of assistive device or imbalance w as noted, and sensation of the low er extremities w as normal. MRI remains pending and no future orthopedic evaluation or treatment being planned until MRI has been completed. Did complete phone consult w ith Dr. Cirincione to discuss file and findings."

On 10/28/2021 the clmt appealed the decision. He states in his appeal ltr that he is appealing and Dr. Pennington is his new PCP and they are w aiting for medicaid to start.

Along w ith the appeal ltr the clmt provided an ov from Dr. Pennington dated 10/25/2021.

PHYSICAL QUESTIONS:
Based on the medical findings, please provide a description of the claimant's impairments, and how these w ould translate into functional limitations or medically appropriate restrictions from 9/3/2021 and forw ard.

If your conclusion is different from the conclusions in the prior review s, please explain the medical rationale and evidence used in your coming to the different conclusion. - MASOTO - Nov 03, 2021 02:46:17 pm
Triaged to AMAMA3 - DWKEE - Nov 12, 2021 03:57:34 pm
Date:November 15, 2021

Subject:Appeal Nursing Memorandum

Claim #: 1210071975
Claimant: Adam Bobb
Date of Birth:
Date of Disability: 6/18/21

Review of medical records on file completed. Information summarized below includes those portions of the records received that have relevance to the questions and time frame identified for this review .

Clinical Assessment:
The EE stopped w orking on 6/18/21 due to right hip pain, tendinitis (inflammation), and bursitis. A right hip x-ray 6/7/21 is unremarkable. He is treated by Dr. Ramiro (Family Medicine) about every 1-3 w eeks 6/7/21-8/23/21 for ongoing complaints of right hip (noted for a year follow ing tractor accident) and groin pain as w ell as burn to the bottom of his foot. Treatment consists of Mobic (non-steroidal anti-inflammatory) and Tylenol w ith codeine (narcotic) for pain control, Medrol dose pak steroid (inflammation), and Silvadene cream to treat burn. Additional treatment includes home exercises and PT how ever he reported w orsening pain w ith therapy. He w as previously supported to 9/3/21. He remains out of w ork for ongoing right hip pain.

The EE saw Dr. Ramiro on 8/23/21 for persistent right hip and groin pain; he w ent to PT tw ice but, exercises did not help; he is scheduled to see Dr. Pollard (orthopedics) next w eek. He reports his hip "catches and pops". Exam documents pain w ith abduction of right hip and limping gait, otherw ise exam is unremarkable. Plan is to remain off w ork until evaluation by Dr. Pollard. Will attempt to get approval of MRI again.

The EE w as evaluated by McGhee APRN (Orthopedics) on 9/1/21 for right hip pain that has been present for one year. He reports pain right groin and lateral leg and perceived w eakness; he is extremely unsteady on his feet, and he has fallen multiple times. He has history of high blood pressure and a stroke. Exam documents the EE to be in

obvious pain, pain w ith right hip internal and external rotation, positive straight leg raises (evaluate for herniated disc, nerve irritation) on right; his strength is normal 5/5 w ith intact sensation. He rises slow ly from exam table and w alks w ith antalgic gait to right. Lumbar x-ray show ed w ell maintained disc height. Pelvic x-ray show ed no acute fracture w ith w ell-maintained hip joint w ith normal alignment. Plan is to obtain pelvic MRI w ith follow up after.

The EE saw Dr. Pennington (Family Medicine) on 10/25/21 to establish care for chronic right hip pain. He reports he lost his job and has no insurance; he has been follow ed by Dr. Pollard and needs an MRI, but insurance denied; he has been told he has arthritis of the hip and lumbar spine, and that Dr. Pollard considers him having a torn labrum could be a possibility. He also reports high blood pressure and anxiety related to his condition. On exam, he is noted to be in no acute distress, moderate anxiety. He has moderate osteoarthritis of the hands, decreased ROM in the right hip due to pain particularly w ith internal rotation; there is tenderness to palpation anterior hip and moderate stiffness lumbar spine. Plan is to increase Cymbalta (anxiety) and start ibuprofen (non-steroidal anti-inflammatory) 600mg and Tramadol (narcotic) for pain control. Follow up in 3 months.

A right hip MRI 11/8/21 show ed tear of the right anterior superior labrum tear (soft tissue that covers the hip socket) betw een 2:00 and 3:00 position. There are no correlating office visits.

The medical records document ongoing care and treatment for right hip and groin pain that has been present for one year follow ing a tractor accident. The EE is treated by Dr. Ramiro (Family Medicine) and McGhee APRN (Orthopedics) as noted above. There is no documentation of motor or sensory deficits. Lumbar and pelvic x-rays 9/1/21 show ed w ell maintained disc height and no acute fracture w ith w ell-maintained hip joint w ith normal alignment. Treatment consists of medication management as w ell as PT, how ever he did not tolerate the PT. There appears to be a gap in treatment from 9/1/21-10/25/21 at w hich time the EE established care w ith new primary care provider Dr. Pennington (Family Medicine) for ongoing chronic right hip pain as noted above. Exam revealed decreased ROM (unspecified) in the right hip due to pain and tenderness to palpation anterior hip and moderate stiffness lumbar spine. Treatment consists of medication changes (ibuprofen, Tramadol) for pain control. While the EE reports ongoing right hip pain that is chronic in nature w ith frequent falls, the medical exam documentation fails to demonstrate motor or sensory deficits, or severe loss of range of motion or impaired gait to support R/Ls beyond 9/1/21. Lumbar and pelvic x-rays are unremarkable. There is no documentation of frequent w itnessed falls requiring frequent office visits, ER visits, or hospitalizations for the same. There is no indication the EE requires an assistive device for ambulation or any other activities. While the right hip MRI 11/8/21 show ed labral tear, there are no further office visits or exam findings for review on appeal by orthopedics after 9/1/21 to provide further treatment plans. The EE has show n the ability to w ork w ith the same symptoms for quite some time prior to the date of disability. There does not appear to be any treating providers certifying ongoing disability.

AMAMA3
Nurse Disability Consultant, Lincoln Financial Group - AMAMA3 - Nov 15, 2021 12:00:03 pm

| | | | | | |
|---|---|---|---|---|---|
| 11/17/2021 | Documents/Mail | 52 | Appeal Dis EE 21 Day Letter | Completed | MASOTO |
| | Attachments:Bobb - Medical Review .pdfBobb - Job Desc.pdfAppeal Dis EE 21 Day Letter | | | | |
| 11/17/2021 | Claim Tasks | 9 | Appeal - 45 Day Reminder | Completed | MASOTO |
| | 30-day reminder (30th day 11/27/2021) - MASOTO - Nov 03, 2021 01:21:05 pm<br><br>Item Closed w ith Claim by System - AJHICKS - Jun 15, 2022 02:03:08 pm | | | | |
| 11/17/2021 | Telephone (OUT) | 30 | ADAM K. BOBB | Completed | MASOTO |
| | 11/17/2021 - Made pc to the clmt regarding the 21-day ltr, spoke w /clmt and explained the DOL guidelines and he has until 12/8/2021 to review the med review and respond. Clmt understood. End of pc. - MASOTO - Nov 17, 2021 10:14:40 am | | | | |
| 11/17/2021 10:05:16 AM | Claim Tasks | 11 | Appeal - 21 Day Letter | Requested | MASOTO |
| | Has the clmt responded to the 21-day ltr? Deadline: 12/8/2021 - MASOTO - Nov 17, 2021 10:06:01 am<br><br>Item Closed w ith Claim by System - AJHICKS - Jun 15, 2022 02:03:14 pm | | | | |
| 11/19/2021 | Telephone (IN) | 31 | ADAM K. BOBB | Completed | MASOTO |
| | 11/19/2021 - Rec'd a pc from the clmt and his spouse, they had the dr's fax over some add'l letters and w e should be receiving those. I asked if they rec'd the letter I sent over on the 17th? They said that they did receive them. They said that the job desc didn't have that he has to climb into attics. I told them that they w ould need to address that w /the ER because that's w ho w e go the job desc from. End of pc. - MASOTO - Nov 19, 2021 09:11:55 am | | | | |
| 11/19/2021 1:39:32 PM | Documents/Mail | 54 | Incoming Correspondence | Received | MASOTO |
| | 2021-11-18-15.01.48.912120O01 | | | | |

## Chronological Activity List

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| | Item Closed with Claim by System - AJHICKS - Jun 15, 2022 02:03:28 pm | | | | |
| 11/19/2021 1:39:32 PM | Documents/Mail | 53 | Fax | Received | MASOTO |
| | 2021-11-18-15.01.46.630120O01 | | | | |
| | Item Closed with Claim by System - AJHICKS - Jun 15, 2022 02:03:44 pm | | | | |
| 11/19/2021 1:39:33 PM | Documents/Mail | 55 | Medical Records | Received | MASOTO |
| | 2021-11-18-15.01.54.370120O01 | | | | |
| | Item Closed with Claim by System - AJHICKS - Jun 15, 2022 02:04:03 pm | | | | |
| 11/22/2021 | Documents/Mail | 55 | Medical Records | Completed | MASOTO |
| | 2021-11-18-15.01.54.370120O01 | | | | |
| | Item Closed with Claim by System - AJHICKS - Jun 15, 2022 02:04:03 pm | | | | |
| 11/22/2021 | Documents/Mail | 54 | Incoming Correspondence | Completed | MASOTO |
| | 2021-11-18-15.01.48.912120O01 | | | | |
| | Item Closed with Claim by System - AJHICKS - Jun 15, 2022 02:03:28 pm | | | | |
| 11/22/2021 | Documents/Mail | 53 | Fax | Completed | MASOTO |
| | 2021-11-18-15.01.46.630120O01 | | | | |
| | Item Closed with Claim by System - AJHICKS - Jun 15, 2022 02:03:44 pm | | | | |
| 12/15/2021 | Referrals | 5 | Tolling Review | Completed | MASOTO |

Today's Date12/15/2021
Appeal Rcvd Date10/28/2021
Days Since Received48
Extension Sent Date11/17/2021
Tolling Start DateTolling end DateTolling Days
11/17/202112/15/202128
0
0
0
0
0
0
Tolling Days28
90th Day of Active Review 2/23/2022
Active Review Days Remaining to 90th Day70

- MASOTO - Dec 15, 2021 10:57:25 am

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 12/15/2021 | Summary/Assessment/Pa | 2h | 11/3/2021 - 1ST LEVEL STD APPEAL - - MASOTO - Nov 03, | Completed | MASOTO |

Summary Notes
11/3/2021 - 1ST LEVEL STD APPEAL - - MASOTO - Nov 03, 2021 01:57:31 pm
Assessment Notes

Path Notes
1ST LEVEL STD APPEAL

Claimant Name: Adam Bobb
Claim Number: 1210071975

Claim Demographics
Current Age: 37
Situs State: AR
Residence State: AR
DOH: 8/14/2014

## Chronological Activity List

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

STD Eff Date: 1/1/2017
LTD Eff Date: 1/1/2017
Prex: N/A
Date Last Worked: 6/17/2021
Date of Disability: 6/18/2021
EP: 14-day
Benefit Commencement Date: 7/2/2021
Benefit Paid To: 9/3/2021
Max Duration Date: 12/17/2021
RTW Date: N/A
Job Title: Maintenance
Occupation:
DOT Classification:
Primary Diagnosis: rt hip pain, tendinitis, bursitis
ERISA
Prior STD claims: N/A
LTD claim status: N/A

Initial Claim Decision
Denial Date: 10/13/2021
Reason: Not TD OO beyond 9/3/2021
Type of Medical Review, Name, & Specialty: Internal NDC Review - WMWKA2

Current Providers:
AP Name/Specialty: Dr. Mark Ramiro, Family Med
Phone Number: 870-247-9499
ov: 6/7/2021, 6/18/2021, 6/28/2021, 7/8/2021, 7/27/2021, 8/5/2021, 8/23/2021, 9/1/2021

AP Name/Specialty: Dr. Kerry Pennington, Family Med
Phone Number: 870-226-6786
ov: 10/25/2021

___________

Adam Bobb is a 37 yr old male Maintenance w orker w ho has been dx w ith rt hip pain, tendinitis, bursitis. His dlw w as 6/17/2021 w ith a dod of 6/18/2021. He had a 14-day elim period, bcd: 7/2/2021. Benefits have been approved to 9/3/2021.

On 10/13/2021 the STD BS denied the clmt's benefits beyond 9/3/2021. The denial ltr states that the records no longer supported TD. During the claims review an internal NDC review w as completed. Summary of the NDC review states:

"The medical evidence provided does not support ongoing R&Ls beyond 9/3/21 as no significant lumbar or hip pathology has been identified and the orthopedic exam show ed full strength of low er extremities w ith no specific ROM limitations beyond pain w ith rotation, no unsteadiness or use of assistive device or imbalance w as noted, and sensation of the low er extremities w as normal. MRI remains pending and no future orthopedic evaluation or treatment being planned until MRI has been completed. Did complete phone consult w ith Dr. Cirincione to discuss file and findings."

On 10/28/2021 the clmt appealed the decision. He states in his appeal ltr that he is appealing and Dr. Pennington is his new PCP and they are w aiting for medicaid to start.

Along w ith the appeal ltr the clmt provided an ov from Dr. Pennington dated 10/25/2021.

PENDING RATIONALE: Pending appeal for a job desc and med review.

PATH:
~ Made the initial pc to the clmt, see phone notes.

~ Sending ackn ltrs to the clmt and ER
~ Sent email to the ER for the job desc.
~ Referring appeal for med review .

- MASOTO - Nov 03, 2021 01:57:31 pm

11/5/2021 - UPDATED PATH
Rec'd the job desc from the ER, General Maintenance. Will follow up w hen the med review has been completed. - MASOTO - Nov 05, 2021 02:19:25 pm

11/12/2021 - UPDATED PATH
Rec'd the clmt's 11/8/2021 MRI of the rt hip. The clmt has a tear of the rt anterior labrum betw een the 2:00 and 3:00 positions.
The appeal is currently in med review . Wil follow up w hen the review is completed. - MASOTO - Nov 12, 2021 11:39:08 am

11/17/2021 - UPDATED PATH
Med review completed and review ed. Sending 21-day ltr to the clmt. He has until 12/8/2021 to respond. Begin tolling. - MASOTO - Nov 17, 2021 10:07:01 am

11/22/2021 - UPDATED PATH
Rec'd a ltr from Dr. Kerry Pennington dated 11/18/2021, w hich states that the cltm has had severe hip pain for one year, that doesn't allow him to w ork. His recent MRI show ed a labral tear and he should receive disability until this is repaired.
The clmt has until 12/8/2021 to provide further response to the 21-day ltr. Continue tolling. - MASOTO - Nov 22, 2021 10:48:21 am

12/15/2021 - 1ST LEVEL STD UPHOLD
Uphold Rationale: Have not rec'd any further medical records from the clmt in response to the 21-day ltr; therefore, based on the medical documentation provided and NDC review , benefits w ill contine to be upheld beyond 9/3/2021. The records do not support ongoing r & l's that w ould prevent the clmt from performing the main duties of his OO beyond this date. Summary of the uphold to the clmt states:

~ According to the Attending Physician's Statement completed by Dr. Mark Ramiro on 7/8/2021, it w as noted that you had symptoms of severe right hip / buttock pain. Your restrictions and limitations consisted of prolonged standing, w alking and lifting. Your nature of treatment consisted of medication and physical therapy.

The medical documentation provided indicates that you have had ongoing treatment and care for your complaints of right hip pain that has been present for one year follow ing a tractor accident. There is no documentation of motor or sensory deficits. Lumbar and pelvic x-rays dated 9/1/2021, show ed w ell maintained disc height and no acute fracture w ith a w ellmaintained hip joint w ith normal alignment. Medical records from Dr. Pennington revealed that you had decreased range of motion in the right hip due to pain and tenderness and palpation in the anterior hip and moderate stiffness in the lumbar spine. There w as no documentation demonstrating sensory deficits or severe loss of range of motion or impaired gait. You w ere prescribed medications for pain control. An MRI of the right hip dated 11/8/2021 show ed a labral tear; how ever, there are no further office notes or examination findings to provide further treatment options.

In summary, you have show n the ability to w ork w ith the same symptoms for quite some time prior to your date of disability and the medical records do not support ongoing restrictions and limitations that w ould prevent you from performing the main duties of your ow n occupation and does not support a Total Disability beyond 9/3/2021. ~

Sending uphold ltrs to the clmt and ER. Uphold pc to the clmt, see phone notes. If the clmt disagrees w ith the decision he does have the option for a 2nd level appeal. Closing the handling of the appeal.

Tolling: 11/17/2021 to 12/15/2021 - MASOTO - Dec 15, 2021 12:07:15 pm

## Chronological Activity List

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 12/15/2021 | Appeal | 1 | Level 1 | Closed | MASOTO |
| | Atlanta appeal 1 recd 10/28/21 and assigned to MASOTO - JABEYER - Oct 29, 2021 01:04:01 pm | | | | |
| 12/15/2021 | Documents/Mail | 57 | Appeal Own Occ Level 1 Uphold EE | Completed | MASOTO |
| | Appeal Own Occ Level 1 Uphold EEAttachments:Translation services | | | | |
| 12/15/2021 | Documents/Mail | 56 | Appeal Dis Uphold to Group | Completed | MASOTO |
| | Appeal Dis Uphold to Group | | | | |
| 12/15/2021 | Claim Tasks | 11 | Appeal - 21 Day Letter | Completed | MASOTO |
| | Has the clmt responded to the 21-day ltr? Deadline: 12/8/2021 - MASOTO - Nov 17, 2021 10:06:01 am<br><br>Item Closed with Claim by System - AJHICKS - Jun 15, 2022 02:03:14 pm | | | | |
| 12/15/2021 | Claim Tasks | 8 | Appeal 90 Day Extension | Completed | MASOTO |
| | 90-day reminder (90th day 1/26/2022) - MASOTO - Nov 03, 2021 01:18:20 pm<br><br>Item Closed with Claim by System - AJHICKS - Jun 15, 2022 02:03:06 pm | | | | |
| 12/15/2021 | Telephone (OUT) | 32 | ADAM K. BOBB | Completed | MASOTO |
| | 12/15/2021 - Made uphold pc to the clmt, no answer and his vm has not been set up yet, unable to leave a msg. - MASOTO - Dec 15, 2021 12:09:58 pm | | | | |
| 12/15/2021 12:08:43 PM | Status | | Not TD Own Occ | CLOSED | MASOTO |
| 2/16/2022 2:14:38 PM | Documents/Mail | 58 | Incoming Correspondence | Received | MASOTO |
| | 2022-02-16-14.57.39.916520O01<br><br>Item Closed with Claim by System - AJHICKS - Jun 15, 2022 02:04:05 pm | | | | |
| 2/17/2022 | Documents/Mail | 58 | Incoming Correspondence | Completed | MASOTO |
| | 2022-02-16-14.57.39.916520O01<br><br>Item Closed with Claim by System - AJHICKS - Jun 15, 2022 02:04:05 pm | | | | |
| 2/17/2022 11:20:01 AM | Claim Tasks | 12 | File scan request | Requested | MASOTO |
| | 2/17/2022 - ATTY FILE COPY REQUEST - Please send file copy to atty. Please include all pertinent information such as policy, SAPs, NDC reviews, etc. File copy can be emailed to atty: MVADEN@MARCUSVADEN.COM - MASOTO - Feb 17, 2022 11:21:29 am<br>Copy has been prepared, it is in the \\us.ad.lfg.com\DFS-DEPT\GP\Claims\Claims Support\File Copies 2017 as:<br><br>A BOBB 1210071975 2-18-22<br><br>Please review, advise if any pages need to be removed due to PHI and flip the task back into my initials with the requestor's email address. I will then send the file copy securely via email to them with you CC'd.<br>** Please note to notify the requestor that they will only have 24 hours to access the item once it is sent to them.** - MIXRO8 - Feb 18, 2022 07:19:28 am<br><br>2/18/2022 - File copy reviewed. Okay to send. - MASOTO - Feb 18, 2022 08:46:51 am<br>Email of file copy has been sent securely to requestor and CE. - MIXRO8 - Feb 18, 2022 09:00:43 am<br><br>Item Closed with Claim by System - AJHICKS - Jun 15, 2022 02:03:11 pm | | | | |
| 2/18/2022 | Claim Tasks | 12 | File scan request | Completed | MASOTO |
| | 2/17/2022 - ATTY FILE COPY REQUEST - Please send file copy to atty. Please include all pertinent information such as policy, SAPs, NDC reviews, etc. File copy can be emailed to atty: MVADEN@MARCUSVADEN.COM - MASOTO - Feb 17, 2022 11:21:29 am<br>Copy has been prepared, it is in the \\us.ad.lfg.com\DFS-DEPT\GP\Claims\Claims Support\File Copies 2017 as:<br><br>A BOBB 1210071975 2-18-22<br><br>Please review, advise if any pages need to be removed due to PHI and flip the task back into my initials with the requestor's email address. I will then send the file copy securely via email to them with you CC'd.<br>** Please note to notify the requestor that they will only have 24 hours to access the item once it is sent to them.** - MIXRO8 - Feb 18, 2022 07:19:28 am | | | | |

## Chronological Activity List

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| | 2/18/2022 - File copy review ed. Okay to send. - MASOTO - Feb 18, 2022 08:46:51 am<br>Email of file copy has been sent securely to requestor and CE. - MIXRO8 - Feb 18, 2022 09:00:43 am<br><br>Item Closed w ith Claim by System - AJHICKS - Jun 15, 2022 02:03:11 pm | | | | |
| 2/18/2022 | Telephone (OUT) | 33 | MARCUS VADEN LAW | Completed | MASOTO |
| | 2/18/2022 - Made pc to the atty regarding the file copy, left a msg. - MASOTO - Feb 18, 2022 09:37:07 am | | | | |
| 2/25/2022 4:27:31 PM | Documents/Mail | 59 | Email | Received | MASOTO |
| | 2022-02-25-09.00.56.657600O01<br><br>Item Closed w ith Claim by System - AJHICKS - Jun 15, 2022 02:03:35 pm | | | | |
| 2/28/2022 | Documents/Mail | 59 | Email | Completed | MASOTO |
| | 2022-02-25-09.00.56.657600O01<br><br>Item Closed w ith Claim by System - AJHICKS - Jun 15, 2022 02:03:35 pm | | | | |
| 6/14/2022 | Documents/Mail | 61 | STD Extension Letter | Completed | RXJOHNS |
| | STD Extension Letter | | | | |
| 6/14/2022 | Documents/Mail | 60 | STD Extension Letter | Completed | RXJOHNS |
| | STD Extension Letter | | | | |
| 6/14/2022 2:57:20 PM | Status | | | REOPENED | MJMELLI |
| 6/14/2022 8:47:05 PM | Status | | Maximum Benefit Reached (T65, RBD, etc.) | CLOSED | BRMCLSDIRY |
| 6/14/2022 8:47:05 PM | Payments | | DEPOSIT 9/3/2021 - 12/17/2021 | CURRENT | RXJOHNS |
| 6/15/2022 | Appeal | 2 | Level 2 | Closed | NEW APPEAL |
| | Backing out appeal as claim w as paid to max. There is no adverse decision to appeal. CE to contact atty. w ith approval information and complete claim. - SAEMI5 - Jun 15, 2022 12:10:56 pm | | | | |
| 6/15/2022 9:18:36 AM | Status | | | REOPENED | ACCWI6 |
| 6/15/2022 2:02:34 PM | Status | | Maximum Benefit Reached (T65, RBD, etc.) | CLOSED | AJHICKS |
| 6/17/2022 2:57:52 PM | Documents/Mail | 62 | Fax | Received | RXJOHNS |
| | 2022-06-16-08.02.39.566620O01 | | | | |
| 6/17/2022 2:57:53 PM | Documents/Mail | 63 | Incoming Correspondence | Received | RXJOHNS |
| | 2022-06-16-08.02.42.405620O01 | | | | |
| 7/5/2022 | Summary/Assessment/Pa1h | | | Completed | RXJOHNS |

Summary Notes

Assessment Notes

Path Notes
Summary
Claimant age / sex: 37, Male
Occupation title / level: Maintenance
Being treated for (diagnosis): Hip Pain
DLW: 6/17/2021
DOD (address gap, if applicable): 6/18/2021

Eligibility Assessment
List or Self-Billed: List-Billed
Coverage confirmed via (census, enrollment form, Ardis, 100% ER paid): 0% ER paid
EE effective date: 1/1/2017
Pre-Ex _/_ (if no pre-ex, indicate none): N/A
PIC (only if pre-ex in policy): N/A
Continuance pay: N/A
LTD eff: 1/1/2017

Medical Assessment:
Physician Name: Mark Ramiro

Phone number: 890-247-5312
Date of APS: 7/8/2021
ICD Code:
MDA min/opt/max: 0/7/14
R& L's: Avoid prolonged standing, w alking, lifting
Treatment: medication/PT
ERTW per physician: 9/8/2021

Path:
Rationale (Claim status and the reason claim is in that status): Claim is pending, requesting additional medical documentation
- MABEL4 - Jul 27, 2021 05:15:34 pm

***********************************
AUTHO RECEIVED

PROGRESS NOTE 6/7/2021 - 8/23/2021

8/23 - F/U. RIGHT HIP AND GROIN PAIN CONT. WENT TO PT TWICE BUT EXERCISES NOT HELPED HIS PAIN, SEE DR POLLARD NEXT WEEK. ASSESSMENT OF HYPERTENSION AND RIGHT HIP PAIN.

6/18 - RIGHT HIP PAIN, RIGHT GROIN PAIN, BURN BOTTOM OF RIGHT FOOT. ASSEMENT - HYPERTENSION, SECOND DEGREE BURN OF FOOT, RIGHT HIP PAIN, BURSITIS OF HIP, RIGHT

6/7 - F/U, HYPERTENSION, HYPERLIPIDEMIA, RIGH HIP PAIN, WORSENING. BP 156/105 AND 140/100. RADILOGY REPORT - TROCHANTERS ARE NORMAL. ILEUM AND ISCHIUM ARE UNREMARKABLE.

SPK WITH EE SEE DR ON 9/7. WILL NOT BE RTW ON 9/8 AND SAID THAT DR WANT HIM OOW COUPLE MORE MONTHS. EE IS SAYING DR BELIEVE IT IS A TEAR BUT NEED TO GET A MRI. EE SAID THAT HE WILL SEE SPECIALIST ON 9/1 TO SEE ABOUT ORDERING THE MRI. SPK WITH EE ABOUT APS SHOWING DOD OF 6/7 AND EE DLW WAS 6/17. EE SAID THAT HE WENT TO DR ON 6/7 AND DR THOUGHT HE HAD BURSITIS AND GAVE HIM STEROID BUT NOTHING CHANGE AND THAT IS WHEN EE WENT BACK AND WAS TOLD TO STOP WORKING. CE INFORM THAT RECEIVED MEDICAL AND SENDING FILE FOR CR THAT TAKES ABOUT 7-10 BUSINESS DAYS AND CE WILL CB ONCE COMPLETE.

PATH UPDATE
FILE SENT FOR CR
- RXJOHNS - Aug 31, 2021 10:48:10 am

**********************************
Clinical Assessment:

OVNs w ith Dr. Mark Ramiro, MD (family practice) 6/7/21-6/28/21 show s EE w as f/u for right hip pain and reported burn on right foot. The burn healed and hip pain continued. Right hip x-ray 6/7/21 w as unremarkable. MRI of the hip w as denied by insurance. Exams show ed limited hip ROM and tenderness. Gentle exercises w ere advised. An APS 7/8/21 from Mark Ramiro, MD (family practice) provides Dx of right hip pain, tendinitis/bursitis; Unable to w ork 6/7/21; Avoid prolonged standing, w alking, lifting; Treatment-medication, PT; ERTW 8/8/21-part-time, 9/8/21-full time. OV 7/8/21-8/23/21 show s EE started PT but reported pain w orsened w ith therapy and therapist noted possible labral tear in hip. Exams show ed limited ROM of right hip, and limping gait. Pain medication w as prescribed. EE w as pending appt. w ith Dr. Pollard and MRI of hip w as reordered. EE reported hip w as catching and popping as w ell. EE w as to remain off w ork. EE reported having appt. w ith specialist on 9/1/21.

Although there has been no definitive dx give for right hip, the medical evidence provided supports R&Ls of Avoid prolonged standing, w alking, lifting from DOD to 9/1/21 (appt. w ith specialist) based on persistent right hip pain w ith tenderness, limited ROM, and impaired gait w ith failed PT and minimal improvement w ith rest and medication. Recommend requesting OVNs from Dr. Pollard or specialist from appt 9/1/21 and MRI of right hip once it is completed for further review .

Whitney K., BSN, RN, CCM
Nurse Disability Consultant, Lincoln Financial Group

PATH UPDATE
CLAIM WAS APPRV TO 9/3 AND RECOMMEND TO OBTAIN OVN 9/1 ALONG WITH MRI RESULT

OVN 9/1/2021 - ON EXAM, RIGHT INTERNAL AND EXTERNAL HIP ROTATION CAUSES PAIN. POSITIVE SLR ON THE RIGHT. LOWER EXTREMITY MUSCLE GROUPS ARE 5/5 BILATERALLY. ORDERING AN MRI OF THE PELVIS COMPLETE RIGHT. F/U AFTER TESTING IS COMPLETE.

SPK WITH EE - EE HAS NOT HAD MRI DONE YET. HIS INSURANCE KEEP DENYING IT AND HIS DR HAS ALSO SENT REQUEST 3 TIMES TRYING TO GET IT APPROVE. DR WILL BE SENDING OVER REQUEST ONCE AGAIN ON TRYING TO GET IT APPROVE. CE WILL SEND OVER OVN OF 9/1 FROM DR POLLARD ON CR AND CB ONCE DONE

PATH UPDATE
SENDING FILE FOR ANOTHER REVIEW, MRI HAS BEEN DENIED
- RXJOHNS - Sep 21, 2021 05:52:59 pm

**********************
Clinical Assessment:

See prior CR 9/2/21 for full details. OV 9/1/21 w ith April McGhee, APRN (orthopedics) show s EE w as seen for right hip pain w ith severe right groin pain and right lateral leg pain w ith perceived w eakness and unsteady w ith multiple falls. Past medical hx includes high blood pressure and stroke. The exam show ed EE w as in obvious pain, pain w ith right hip internal and external rotation, positive straight leg raise on right, 5/5 strength, intact sensation. The provider noted the EE rises slow ly from exam table and w alks w ith antalgic gait to right. Lumbar x-ray show ed w ell maintained disc height. Pelvis x-ray show ed no acute fracture w ith w ell maintained hip joint w ith normal alignment. MRI of the pelvic right w as ordered w ith plan to f/u after. Dx of lumbago (low back pain) and right hip pain w as given. Updated APS from Dr. Mark Ramiro, MD (PCP) 9/2/21 provides R&Ls of no prolonged standing/w alking, climbing, bending, squatting; ERTW 11/2021. Per phone notes 9/21/21 MRI has not been done as it has been denied by insurance multiple times.

The medical evidence provided does not support ongoing R&Ls beyond 9/3/21 as no significant lumbar or hip pathology has been identified and the orthopedic exam show ed full strength of low er extremities w ith no specific ROM limitations beyond pain w ith rotation, no unsteadiness or use of assistive device or imbalance w as noted, and sensation of the low er extremities w as normal. MRI remains pending and no future orthopedic evaluation or treatment being planned until MRI has been completed. Did complete phone consult w ith Dr. Cirincione to discuss file and findings.

Whitney K., BSN, RN, CCM
Nurse Disability Consultant, Lincoln Financial Group

PATH UPDATE
CLAIM EX IS NOT SUPPORTIVE. The medical evidence provided does not support ongoing R&Ls beyond 9/3/21 as no significant lumbar or hip pathology has been identified and the orthopedic exam show ed full strength of low er extremities w ith no specific ROM limitations beyond pain w ith rotation, no unsteadiness or use of assistive device or imbalance w as noted, and sensation of the low er extremities w as normal. MRI remains pending and no future orthopedic evaluation or treatment being planned until MRI has been completed. Did complete phone consult w ith Dr. Cirincione to discuss file and findings. DENIAL LETTER WILL BE PROCESS WITH APPEAL RIGHT TO SEND OUT - RXJOHNS - Oct 05, 2021 10:03:38 am

UPDATED ASSESSMENT
Email from mgr to extend to std max date

UPDATED PATH
per mgr direction claim ext to std max date
- RXJOHNS - Jun 14, 2022 04:32:52 pm

Backing out appeal as claim w as paid to max. There is no adverse decision to appeal. CE to contact atty. w ith approval information and complete claim. - SAEMI5 - Jun 15, 2022 12:11:19 pm

**Chronological Activity List**

UPDATED ASSESSMENT
Notice of Representatin dated 12/21/2021 that law firm of Marcus Vaden Law will represent ee and may contact firm directly and release all documents. All future payments made to Marcus Vaden Law. Letter from law firm that all payments made on policy sent to their office

UPDATED PATH
claim already paid to std max - RXJOHNS - Jul 05, 2022 03:26:26 pm

| | | | | | |
|---|---|---|---|---|---|
| 7/5/2022 | Documents/Mail<br>2022-06-16-08.02.39.566620O01 | 62 | Fax | Completed | RXJOHNS |
| 7/5/2022 | Documents/Mail<br>2022-06-16-08.02.42.405620O01 | 63 | Incoming Correspondence | Completed | RXJOHNS |

AMENDMENT NO. 1

TO BE ATTACHED TO AND MADE PART OF GROUP POLICY NO.: 000010201376

ISSUED TO: Trinity Village, Inc.

It is agreed that the above policy be replaced with the attached Policy, which is revised and dated November 1, 2019.

The effective date of this amendment is November 1, 2019; but only with respect to losses incurred on or after that date. Nothing contained in this amendment shall change any of the terms and conditions of this Policy; except as stated above.

**THE LINCOLN NATIONAL LIFE INSURANCE COMPANY**

Officer of the Company

Lincoln Financial Group®

The Lincoln National Life Insurance Company
A Stock Company Home Office Location: Fort Wayne, Indiana
Group Insurance Service Office: 8801 Indian Hills Drive, Omaha, NE 68114-4066
(800) 423-2765 Online: www.LincolnFinancial.com

Group Policyholder:

Trinity Village, Inc.

In Consideration of the Group Policyholder's application for this Policy and payment of all premiums when due, The Lincoln National Life Insurance Company agrees to make the payments provided in this Policy to the persons entitled to them.

The first premium for this Policy is due on its effective date. Subsequent premiums are due on February 1, 2015, and on the same day of each month after that. Policy anniversaries will be each January 1st; unless shown otherwise on the Premium Rate Schedule inside.

The provisions and conditions set forth on the following pages are a part of this Policy, as fully as if recited over the signatures below.

The Lincoln National Life Insurance Company has executed this Policy at its Group Insurance Service Office in Omaha, Nebraska. The issue date of this Policy is January 1, 2015.

SECRETARY PRESIDENT

**GROUP INSURANCE POLICY**
No. 000010201376
PROVIDING
WEEKLY DISABILITY INCOME INSURANCE

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

# TABLE OF CONTENTS


Schedule of Insurance .......... 3

Definitions .......... 4

General Provisions .......... 9

Eligibility and Effective Dates .......... 11

Individual Terminations .......... 13

Premiums and Premium Rates .......... 15

Grace Period .......... 17

Policy Termination .......... 17

Portability .......... 18

Claims Procedures for Weekly Disability Income Benefits .......... 19

Weekly Disability Income Insurance .......... 22

Vocational Rehabilitation Benefit .......... 27

Rehabilitation Incentive Benefit .......... 28

Reasonable Accommodation Benefit .......... 29

Family Income Benefit .......... 30

Notice .......... 31

Prior Insurance Credit Provision .......... 34

**Trinity Village, Inc.**
**000010201376**
**SCHEDULE OF INSURANCE**

**ELIGIBLE CLASS**

Class 1 All Full-Time Employees

There will be an Open Enrollment Period beginning November 1st and ending December 31st for eligible employees to enroll for Weekly Disability Income Insurance or to increase their current amounts of Weekly Disability Income Insurance. Evidence of insurability will not be required during this enrollment period provided the Insured Person:

(1) has not been previously declined; and
(2) elects an amount of insurance or an increase to the Insured Person's current insurance amount not to exceed the Maximum Weekly Benefit.

Coverage elected during this period that is not subject to Evidence of Insurability will become effective:

(1) January 1st following the enrollment period, if Actively at Work on that day; or
(2) The day the Insured Person resumes Active Work, if not Actively at Work on the day the elected coverage or increase would otherwise take effect.

This Policy does not replace or provide benefits required by Workers' Compensation laws or any state disability insurance plan laws.

**Trinity Village, Inc.**
**000010201376**
**SCHEDULE OF INSURANCE**
**For**
**Class 1 - All Full-Time Employees**

MINIMUM HOURS: 30 hours per week

WAITING PERIOD: (For date insurance begins, refer to "Effective Date" section)
(a) None for employees who were hired on or before the Policy Issue Date.
(b) 60 days of continuous Active Work for employees who were hired after the Policy Issue Date.

CONTRIBUTIONS: Insured Employees are required to contribute to the cost of the Weekly Disability Income Insurance.

**WEEKLY DISABILITY INCOME INSURANCE**

MAXIMUM WEEKLY BENEFIT: Any $50 increment, subject to a $100 minimum and a $1,000 maximum, as elected on the enrollment form; not to exceed 60% of Basic Weekly Earnings, rounded to the next lower $50

MINIMUM WEEKLY BENEFIT: 10% of the Weekly Total Disability Benefit

DAY BENEFITS BEGIN: 15th consecutive day of Disability due to Accidental Injury; and
15th consecutive day of Disability due to Sickness.

The Day Benefits Begin may be reached by days of Total Disability, Partial Disability, or any combination thereof.

MAXIMUM BENEFIT PERIOD: 24 weeks

Weekly Disability Income Insurance will terminate when an Insured Person retires.

ADDITIONAL FEATURES:

Family Income Benefit: 3 times the Insured Person's last Weekly Benefit payable immediately prior to death.

Rehabilitation Assistance Benefit:
- Rehabilitation Incentive Benefit of 5% of Basic Weekly Earnings
- Reasonable Accommodation Benefit
- Vocational Rehabilitation Benefit

## DEFINITIONS

**As used throughout this Policy, the following terms shall have the meanings indicated below. Other parts of this Policy contain definitions specific to those provisions.**

**ACTIVE WORK** or **ACTIVELY AT WORK** means an Employee's performance of all Main Duties of his or her Own Occupation, for the regularly scheduled number of hours, at:
(1) the Employer's place of business; or
(2) any other business location where the Employer requires the Employee to travel.

Unless disabled on the prior workday or on the day of absence, an Employee will be considered Actively at Work on the following days:
(1) a Saturday, Sunday or holiday that is not a scheduled workday;
(2) a paid vacation day, or other scheduled or unscheduled non-workday; or
(3) a non-medical leave of absence of 12 weeks or less, whether taken with the Employer's prior approval or on an emergency basis.
This includes a Military Leave or an approved Family or Medical Leave that is not due to the Employee's own health condition.

**BASIC WEEKLY EARNINGS** or **PREDISABILITY INCOME** means the Insured Person's average weekly base salary or hourly pay from the Employer before taxes on the Determination Date. The **"Determination Date"** is the last day worked just prior to the date the Disability begins.

It does **not** include commissions, bonuses, overtime pay, or any other extra compensation. It does **not** include income from a source other than the Employer. It will not exceed the amount shown in the Employer's financial records, the amount for which premium has been paid, or the Maximum Covered Weekly Earnings permitted by this Policy; whichever is less. (Maximum Covered Weekly Earnings equals the Maximum Weekly Benefit divided by the Benefit Percentage shown in the Schedule of Insurance.) Exception: For purposes of determining the Partial Disability Weekly Benefit, Basic Weekly Earnings will not exceed the amount shown in the Employer's financial records.

**COMPANY** means The Lincoln National Life Insurance Company, an Indiana corporation. Its Group Insurance Service Office address is 8801 Indian Hills Drive, Omaha, Nebraska 68114-4066.

**DAY** or **DATE** means the period of time that begins at 12:01 a.m. and ends at 12:00 midnight, standard time, at the Group Policyholder's place of business. When used with regard to effective dates, it means 12:01 a.m. When used with regard to termination dates, it means 12:00 midnight.

**DISABILITY or DISABLED** means Total Disability or Partial Disability.

**DISABILITY BENEFIT**, when used with the term Retirement Plan, means a benefit that:
(1) is payable under a Retirement Plan due to disability as defined in that plan; and
(2) does not reduce the benefits that would have been paid as Retirement Benefits at the normal retirement age under the plan if the disability had not occurred.
If the payment of the benefit does cause such a reduction, the benefit will be deemed a Retirement Benefit as defined in this Policy.

**EMPLOYEE or FULL-TIME EMPLOYEE** means a person:
(1) whose employment with the Employer is the person's main occupation;
(2) whose employment is for regular wage or salary, on a full-time basis;
(3) who is regularly scheduled to work at such occupation at least the Minimum Hours shown in the Schedule of Insurance;
(4) who is a member of an Eligible Class which is eligible for coverage under this Policy;
(5) who is not a temporary or seasonal employee; and
(6) who is a citizen of the United States or legally works in the United States.

**DEFINITIONS**
**(Continued)**

**EMPLOYER** means the Group Policyholder. It includes any division, subsidiary or affiliated company named in the Application or Participation Agreement.

**EVIDENCE OF INSURABILITY** means a statement of proof of an Employee's medical history. The Company uses this to determine his or her acceptance for insurance or an increased amount of insurance. Such proof will be provided at the Employee's own expense.

**FAMILY OR MEDICAL LEAVE** means an approved leave of absence that:
(1) is subject to the federal FMLA law (the Family and Medical Leave Act of 1993 and any amendments to it) or a similar state law;
(2) is taken in accord with the Employer's leave policy and the law which applies; and
(3) does not exceed the period approved by the Employer and required by that law.

Under the federal FMLA law, such leaves are permitted for up to 12 weeks in a 12-month period as defined by the Employer. The 12 weeks:
(1) may consist of consecutive or intermittent work days; or
(2) may be granted on a part-time equivalency basis.
If an Employee is entitled to a leave under both the federal FMLA law and a similar state law, he or she may elect the more favorable leave (but not both). If an Employee is on an FMLA leave due to his or her own health condition on the date Policy coverage takes effect, he or she is not considered Actively at Work.

**FULL-TIME**, as it applies to the Partial Disability Benefit, means the average number of hours the Insured Person was regularly scheduled to work, at his or her Own Occupation, during the week just prior to:
(1) the date Disability begins; or
(2) the date an approved leave of absence begins, if Disability begins while the Insured Person is continuing coverage during a leave of absence.

**GROUP POLICYHOLDER** means the person, company, trust or other organization as shown on the Title Page of this Policy.

**INJURY** means bodily Injury which results directly from an accident, independently of all other causes. In determining Weekly Benefits, a Disability will be considered caused by a Sickness if:
(1) the Disability begins more than 60 days after the Injury; or
(2) the Injury occurred before the Insured Person's Effective Date under this Policy.

The term "Injury" shall not include any:
(1) condition to which a Sickness, its natural progression or its treatment is a substantial contributing cause (based upon the preponderance of medical evidence);
(2) condition caused by emotional stress or trauma; infection (except pyogenic bacterial infection of an Injury); or medical or surgical treatment (except when needed solely for an Injury);
(3) repetitive trauma condition which results from repetitious, physically traumatic activities that occur over time; or
(4) pregnancy; except for complications that result from an Injury.

**INSURANCE MONTH** or **POLICY MONTH** means that period of time:
(1) beginning at 12:01 a.m. Standard Time, at the Group Policyholder's place of business on the first day of any calendar month; and
(2) ending at 12:00 midnight on the last day of the same calendar month.

**INSURED PERSON** means a Person for whom Policy coverage is in effect.

**MAIN DUTIES** or **MATERIAL AND SUBSTANTIAL DUTIES** means those job tasks that:
(1) are normally required to perform the Insured Person's Own Occupation; and
(2) could not reasonably be modified or omitted.

**DEFINITIONS**
**(Continued)**

To determine whether a job task could reasonably be modified or omitted, the Company will apply the Americans with Disabilities Act's standards concerning reasonable accommodation. It will apply the Act's standards, whether or not:
(1) the Employer is subject to the Act; or
(2) the Insured Person has requested such a job accommodation.
An Employer's failure to modify or omit other job tasks does **not** render the Insured Person unable to perform the Main Duties of the job.

Main Duties include those job tasks:
(1) as described in the U.S. Department of Labor Dictionary of Occupational Titles; and
(2) as performed in the general labor market and national economy.
Main Duties are **not** limited to those specific job tasks as performed for a certain firm or at a certain work site.

**MEDICALLY APPROPRIATE TREATMENT** means diagnostic services, consultation, care or services that are consistent with the symptoms or diagnosis causing the Insured Person's Disability. Such treatment must be rendered:
(1) by a Physician whose license and any specialty are consistent with the disabling condition; and
(2) according to generally accepted, professionally recognized standards of medical practice.

**MILITARY LEAVE** means a leave of absence that:
(1) is subject to the federal USERRA law (the Uniformed Services Employment and Reemployment Rights Act of 1994 and any amendments to it);
(2) is taken in accord with the Employer's leave policy and the federal USERRA law; and
(3) does not exceed the period required by that law.

**OPEN ENROLLMENT PERIOD** means a designated timeframe for eligible employees to elect coverage who did not enroll during their initial eligibility period or for employees with existing coverage under the Policy to elect additional benefit amounts. Evidence of insurability is not required during this period provided certain conditions are met as described in the Schedule of Benefits. Participation in an Open Enrollment Period does not change the Policy provisions related to Waiting Periods or Pre-Existing Condition Limitations. Employees who have been previously declined for coverage or increased coverage may resubmit satisfactory evidence of insurability to apply for initial coverage or increased coverage during this Open Enrollment Period.

**OWN OCCUPATION** or **REGULAR OCCUPATION** means the occupation, trade or profession:
(1) in which the Insured Person was employed with the Employer prior to Disability; and
(2) which was his or her main source of earned income prior to Disability.

It means a collective description of related jobs, as defined by the U.S. Department of Labor Dictionary of Occupational Titles. It includes any work in the same occupation for pay or profit, regardless of:
(1) whether such work is with the Employer, with some other firm, or on a self-employed basis; or
(2) whether a suitable opening is currently available with the Employer or in the local labor market.

**PARTIAL DISABILITY** or **PARTIALLY DISABLED** means that, due to an Injury or Sickness, the Insured Person:
(1) is unable to perform one or more of the Main Duties of his or her Own Occupation, or is unable to perform such duties Full-Time; and
(2) is engaged in Partial Disability Employment.

**DEFINITIONS**
**(Continued)**

**PARTIAL DISABILITY EMPLOYMENT** means the Insured Person is working at his or her Own Occupation or any other occupation; however, because of a Partial Disability:
(1) the Insured Person's hours or production is reduced;
(2) one or more Main Duties of the job are reassigned; or
(3) the Insured Person is working in a lower-paid occupation.

During Partial Disability Employment, his or her current earnings:
(1) must be at least 20% of Predisability Income; and
(2) may not exceed the percentage specified in the Partial Disability Benefit section.

**PERSON** means an Employee of the Employer:
(1) who is a member of an Employee class which is eligible for coverage under this Policy; and
(2) who has completed an enrollment form.

**PERSONAL INSURANCE** means the insurance provided by this Policy on Insured Persons.

**PHYSICIAN** means:
(1) a legally qualified medical doctor who is licensed to practice medicine, to prescribe and administer drugs, or to perform surgery; or
(2) any other duly licensed medical practitioner who is deemed by state law to be the same as a legally qualified medical doctor.

The medical doctor or other medical practitioner must be acting within the scope of his or her license. He or she must be qualified to provide Medically Appropriate Treatment for the Insured Person's disabling condition.

Physician does **not** include the Insured Person or a relative of the Insured Person receiving treatment. Relatives include:
(1) the Insured Person's spouse, siblings, parents, children and grandparents; and
(2) his or her spouse's relatives of like degree.

**POLICY** means this group insurance Policy issued by the Company to the Group Policyholder.

**PREDISABILITY INCOME**--See Basic Weekly Earnings definition.

**REGULAR CARE OF A PHYSICIAN** means the Insured Person:
(1) personally visits a Physician, as often as medically required according to standard medical practice to effectively manage and treat his or her disabling condition; and
(2) receives Medically Appropriate Treatment, by a Physician whose license and any specialty are consistent with the disabling condition.

**REGULAR OCCUPATION**--See Own Occupation or Regular Occupation definition.

**RETIREMENT BENEFIT**, when used with the term Retirement Plan, means a benefit that:
(1) is payable under a Retirement Plan either in a lump sum or in the form of periodic payments;
(2) does not represent contributions made by an Insured Person (Payments representing Employee contributions are deemed to be received over the Insured Person's expected remaining life, regardless of when they are actually received.); and
(3) is payable upon:
  (a) early or normal retirement; or
  (b) disability (if the payment does reduce the benefit which would have been paid at the normal retirement age under the plan, if disability had not occurred).

## DEFINITIONS
## (Continued)

**RETIREMENT PLAN** means a defined benefit or defined contribution plan that:
(1) provides Retirement Benefits to Employees; and
(2) is not funded wholly by Employee contributions.

The term shall **not** include any 401(k), profit-sharing or thrift plan; informal salary continuance plan; individual retirement account (IRA); tax sheltered annuity (TSA); stock ownership plan; or a non-qualified plan of deferred compensation.

An Employer's Retirement Plan is deemed to include any Retirement Plan:
(1) which is part of any federal, state, county, municipal or association retirement system; and
(2) for which the Insured Person is eligible as a result of employment with the Employer.

**SICK LEAVE** or **SALARY CONTINUANCE PLAN** means a plan that:
(1) is established and maintained by the Employer for the benefit of Employees; and
(2) continues payment of all or part of an Insured Person's Predisability Income for a specified period after he or she becomes Disabled.

It does **not** include compensation the Employer pays an Insured Person for work actually performed during a Disability.

**SICKNESS** means illness, pregnancy or disease.

**TOTAL DISABILITY** or **TOTALLY DISABLED** means the Insured Person's inability, due to Sickness or Injury, to perform each of the Main Duties of his or her Own Occupation. A Person engaging in any employment for wage or profit is not Totally Disabled. The loss of a professional license, an occupational license or certification, or a driver's license for any reason does **not**, by itself, constitute Total Disability.

**WAITING PERIOD** means the period of time an Employee must be employed in an eligible class with the Employer, before he or she becomes eligible to enroll for coverage under this Policy. The period of service must be continuous, except as explained in the Eligibility provision captioned Prior Service Credit Towards Waiting Period.

**WEEKLY BENEFIT** means the amount payable weekly by the Company to the Insured Person who is Totally Disabled or Partially Disabled.

**WORKERS' COMPENSATION OR SIMILAR COVERAGE** means coverage under a law that compensates for job related Injury or Sickness. It includes (but is not limited to):
(1) coverage under any Workers' Compensation or occupational disease law;
(2) coverage under the Jones Act; the Longshoreman's and Harbor Worker's Act; the Maritime Doctrine of Maintenance, Wages or Cure; or
(3) any plan provided in place of one of those plans.

## GENERAL PROVISIONS

**ENTIRE CONTRACT.** The entire contract between the parties shall consist of:
(1) this Policy and any amendments to it;
(2) the Group Policyholder's application (a copy of which is attached);
(3) any Participating Employers' applications or Participation Agreements; and
(4) any individual applications of Insured Persons.

In the absence of fraud, all statements made by the Group Policyholder and by Insured Persons are representations and not warranties. No statement made by an Insured Person will be used to contest the coverage provided by this Policy, unless:
(1) it is contained in a written statement signed by that Insured Person; and
(2) a copy of the statement has been furnished to that Insured Person.

**AUTHORITY TO MAKE OR AMEND CONTRACT.** Only a Company Officer located in the Company's Group Insurance Service Office has the authority to:
(1) determine the insurability of a group or any individual within a group;
(2) make a contract in the Company's name;
(3) amend or waive any provision of this Policy; or
(4) extend the time for payment of any premium.
No change in this Policy will be valid, unless it is made in writing and signed by such a Company Officer.

**INCONTESTABILITY.** Except for the non-payment of premiums or fraud, the Company may not contest the validity of this Policy after it has been in force for two years from its date of issue; and as to any Insured Person, after his or her coverage has been in force for two years during his or her lifetime. This clause does not preclude, at any time, the assertion of defenses based upon:
(1) this Policy's eligibility requirements, exclusions and limitations; and
(2) other Policy provisions unrelated to the validity of coverage.

**RESCISSION.** The Company has the right to rescind any insurance for which Evidence of Insurability was required, if:
(1) an Insured Person incurs a claim during the first two years of coverage; and
(2) the Company discovers that the Insured Person made a Material Misrepresentation on his or her application.

A **"Material Misrepresentation"** is an incomplete or untrue statement that caused the Company to issue coverage that it would have disapproved, had it known the truth. **"To rescind"** means to cancel insurance back to its effective date. In that event, the Company will refund all premium paid for the rescinded insurance, less any benefits paid for Insured Person's claims. The Company reserves the right to recover any claims paid in excess of such premiums.

**NONPARTICIPATION.** This is a non-participating Policy. It will not share in the divisible surplus of the Company.

**INFORMATION TO BE FURNISHED.** The Group Policyholder and any Participating Employers may be required to furnish any information needed to administer this Policy, including:
(1) information about Persons:
    (a) who become eligible for insurance;
    (b) whose amounts of coverage change; or
    (c) whose eligibility or coverage ends;
(2) occupational information and other facts that may be needed to manage a claim; and
(3) any other information that the Company may reasonably require.
The Company may inspect the Group Policyholder's or any Participating Employer's records that relate to this Policy, at any reasonable time.

**GENERAL PROVISIONS**
**(Continued)**

Clerical error by the Group Policyholder or Participating Employer:
(1) will not void or terminate insurance that otherwise would be in effect;
(2) will not result in insurance coverage that otherwise would not be in effect; and
(3) will not continue insurance that otherwise would be terminated.
Once an error is discovered, a fair adjustment in premium will be made. If a premium adjustment involves the return of unearned premium, the amount of the return will be limited to the 12-month period that precedes the date the Company receives proof such an adjustment should be made.

**MISSTATEMENTS OF FACTS.** If relevant facts about any Person were misstated:
(1) a fair adjustment of the premium will be made; and
(2) the true facts will decide if and in what amount insurance is valid under this Policy.
If an Insured Person's age has been misstated, any benefits shall be in the amount the paid premium would have purchased at the correct age.

**ACTS OF THE POLICYHOLDER.** In administering this Policy, the Group Policyholder must:
(1) treat Employees the same in like situations; and
(2) allow the Company, without inquiry, to rely on its acts.

**GROUP POLICYHOLDER'S AGENCY.** For all purposes of this Policy, the Group Policyholder acts on its own behalf or as an agent of the Insured Person. Under no circumstances will the Group Policyholder be deemed the agent of the Company.

**CERTIFICATES.** The Group Policyholder will be furnished with individual Certificates for delivery to each Insured Person. These certificates summarize the benefits provided by this Policy. If there is a conflict between this Policy and the Certificate, this Policy will control.

**CONFORMITY WITH STATE STATUTES.** If, on its effective date, any provision of this Policy conflicts with any applicable law, the provision will be deemed to conform to the minimum requirements of the law.

**CURRENCY.** In administering this Policy:
(1) all Predisability Income will be expressed in U.S. dollars; and
(2) all premium and benefit amounts must be paid in U.S. dollars.

**WORKERS' COMPENSATION OR STATE DISABILITY INSURANCE.** This Policy does not replace or provide benefits required by:
(1) Workers' Compensation laws; or
(2) any state temporary disability insurance plan laws.

**ASSIGNMENT.** The rights and benefits under this Policy may not be assigned.

## ELIGIBILITY AND EFFECTIVE DATES

**ELIGIBLE CLASSES.** The classes of Employees eligible for insurance are shown in the Schedule of Insurance. The Company has the right to review and terminate any or all classes eligible under this Policy, if any class ceases to be covered by this Policy.

**ELIGIBILITY.** A Person becomes eligible for coverage provided by this Policy on the later of:
(1) this Policy's date of issue; or
(2) the date the Waiting Period is completed.

**Prior Service Credit Towards Waiting Period.** The Waiting Period is shown in the Schedule of Insurance. Prior service in an Eligible Class will apply toward the Waiting Period, when:
(1) a former Employee is rehired within one year after his or her employment ends; or
(2) an Employee returns from an approved Family or Medical Leave within:
 (a) the 12-week leave period required by federal law; or
 (b) any longer period required by a similar state law; or
(3) an Employee returns from a Military Leave within the period required by federal USERRA law.

**EFFECTIVE DATE.** A Person's initial amount of Personal Insurance becomes effective at 12:01 a.m. on the latest of:
(1) the first day of the Insurance Month coinciding with or next following the date the Person becomes eligible for the coverage;
(2) the date the Person resumes Active Work, if not Actively at Work on the day he or she becomes eligible;
(3) the date the Person makes written application for coverage and signs:
 (a) a payroll deduction order, if the Insured Person pays any part of this Policy's premiums; or
 (b) an order to pay premiums from the Person's Flexible Benefits Plan account, if Employer contributions are made through such an account; or
(4) the date the Company approves the Person's Evidence of Insurability, if required.

Any increased or additional coverage becomes effective at 12:01 a.m. on the latest of:

(1) the first day of the Insurance Month coinciding with or next following the date on which the Insured Person becomes eligible for the increase, if Actively at Work on that day;
(2) the date the Insured Person resumes Active Work, if not Actively at Work on the day the increase would otherwise take effect; or
(3) the date any required Evidence of Insurability is approved by the Company.

Any decrease will take effect on the day of the change, whether or not the Insured Person is Actively at Work.

**Evidence of Insurability**. Evidence of Insurability satisfactory to the Company must be submitted (at the Employee's expense) when:
(1) a Person makes written application for coverage (or an increased amount of coverage) more than 31 days after becoming eligible for the coverage; or
(2) a Person makes written application for coverage after he or she has requested:
 (a) to cancel insurance;
 (b) to stop payroll deductions for the insurance; or
 (c) to stop premium payments from the Flexible Benefits Plan account.

**Effective Date for Change in Eligible Class.** An Insured Person may become a member of a different Eligible Class. Coverage under the different Eligible Class will be effective:
(1) on the first day of the Insurance Month coinciding with or next following the date of the change;
(2) except as stated in the Effective Date provision for increases or decreases.

## ELIGIBILITY AND EFFECTIVE DATES
## (Continued)

**REINSTATEMENT RIGHTS.** If an Insured Person's coverage terminates due to one of the following breaks in service, he or she will be entitled to reinstate the coverage upon resuming Active Work with the Employer within the required timeframe. **"Reinstatement"** or **"to reinstate"** means to re-enroll for this Policy's coverage, without satisfying a new Waiting Period or providing Evidence of Insurability. Reinstatement is available upon:

(1) return from an approved Family or Medical Leave within:
  (a) the 12-week period required by federal law; or
  (b) any longer period required by a similar state law;
(2) return from a Military Leave within the period required by federal USERRA law;
(3) return from any other approved leave of absence within six months after the leave begins;
(4) return within 12 months following a lay off; or
(5) return within 12 months following termination of employment for any other reason.

To reinstate coverage, the Insured Person must apply for coverage or be re-enrolled within 31 days after resuming Active Work in an Eligible Class. The reinstated amount of insurance may not exceed the amount that terminated. Reinstatement will take effect on the date the Insured Person returns to Active Work.

If the above conditions are met, and this Policy includes a Pre-Existing Condition Exclusion, then:

(1) the months of leave will count towards any unmet Pre-Existing Condition Exclusion period; and
(2) a new Pre-Existing Condition Exclusion will not apply to the reinstated amount of insurance.

A new Pre-Existing Condition Exclusion will apply to any increased amount of insurance.

## INDIVIDUAL TERMINATIONS

**TERMINATION OF COVERAGE.** An Insured Person's coverage will terminate at 12:00 midnight on the earliest of:

(1) the date this Policy terminates or the Employer's participation terminates (but without prejudice to any claim incurred prior to termination);
(2) the date the Insured Person's Class is no longer eligible for insurance;
(3) the date the Insured Person ceases to be a member of an Eligible Class;
(4) the last day of the Insurance Month in which the Insured Person requests termination;
(5) the last day of the last Insurance Month for which premium payment is made on the Insured Person's behalf;
(6) the end of the period for which the last required premium has been paid;
(7) with respect to any particular insurance benefit, the date the portion of this Policy providing that benefit terminates;
(8) the date the Insured Person's employment with the Group Policyholder or Participating Employer terminates (unless coverage is continued as provided below); or
(9) the date the Insured Person enters the armed services of any state or country on active duty, except for duty of 30 days or less for training in the Reserves or National Guard. (If the Insured Person sends proof of military service, the Company will refund any unearned premium).

**CONTINUATION RIGHTS.** Ceasing Active Work results in termination of the Insured Person's eligibility for coverage, but coverage may be continued as follows.

**Disability.** If the Insured Person is absent due to Total Disability or engaged in Partial Disability Employment, coverage may be continued:

(1) until the Day Benefits Begin; and
(2) during the period for which benefits are payable.

The Company must receive the required premium from the Employer until the first day of the Insurance Month coinciding with or next following the Day Benefits Begin.

Premium payments for Weekly Disability Income Insurance will be waived:

(1) from the first day of the Insurance Month coinciding with or next following the Day Benefits Begin;
(2) until the first day of the Insurance Month coinciding with or next following the end of the period for which benefits are payable.

If coverage is to be continued following a period for which premiums were waived, premium payments must be resumed as they become due.

**Family or Medical Leave.** If an Insured Person goes on an approved Family or Medical Leave and is **not** entitled to the more favorable continuation available during Disability, coverage may be continued until the earliest of:

(1) the end of the leave period approved by the Employer;
(2) the end of the leave period required by federal law, or any more favorable period required by a similar state law;
(3) the date the Insured Person notifies the Employer that he or she will not return; or
(4) the date the Insured Person begins employment with another employer.

The required premium payments must be received from the Employer, throughout the period of continued coverage.

**Military Leave.** If an Insured Person goes on a Military Leave, coverage may be continued for the same period allowed for an approved Family or Medical Leave. The required premium payments must be received from the Employer, throughout the period of continued coverage.

## INDIVIDUAL TERMINATIONS
## (Continued)

**Lay Off or Other Leave.** When an Insured Person ceases work due to a temporary lay off, or due to an approved leave of absence (other than an approved Family or Medical Leave or a Military Leave); coverage may be continued for three Insurance Months after the lay off or leave begins. The required premium payments must be received from the Employer, throughout the period of continued coverage.

**Conditions.** In administering the above continuations, the Employer must not act so as to discriminate unfairly among Insured Persons in similar situations. Insurance may **not** be continued when an Insured Person ceases Active Work due to a labor dispute, strike, work slowdown or lockout.

**INDIVIDUAL TERMINATION DURING DISABILITY.** Termination of an Insured Person's coverage during a Disability will have no effect on benefits payable for that period of Disability.

## PREMIUMS AND PREMIUM RATES

**PAYMENT OF PREMIUMS.** No coverage provided by this Policy will be in effect until the first premium for such coverage is paid. For coverage to remain in effect, each subsequent premium must be paid on or before its due date. The Group Policyholder is responsible for paying all premiums as they become due. Premiums are payable on or before their due dates at the Company's Group Insurance Service Office. The premium must be paid in U.S. dollars.

**PREMIUM RATE CHANGE.** The Company may change any premium rate on any of the following dates:

(1) the date this Policy's terms are changed;
(2) the date the Company's liability is changed due to a change in federal, state or local law;
(3) the date the Company's liability is changed because the Group Policyholder (or any covered division, subsidiary or affiliated company):
    (a) relocates, dissolves or merges, or is added to or removed from this Policy; or
    (b) ceases to be covered by the state Worker's compensation program or any other program of like intent; or
    (c) ceases to provide or reduces Sick Leave or Salary Continuance Plan benefits;
(4) the date any coverage for one or more classes ceases to be provided under this Policy;
(5) the date the number of Insured Persons changes by 25% or more from the enrollment on the date this Policy took effect, or the most recent Rate Guarantee Date expired, if later; or
(6) on any premium due date on or after this Policy's first anniversary, or any later rate guarantee date agreed upon by the Company.

Unless the Company and the Group Policyholder agree otherwise, the Company will give at least 31 days' advance written notice of any increase in premium rates.

**PREMIUM AMOUNT.** The amount of premium due on each due date will be the sum of the products obtained by multiplying each rate shown in the Premium Rate Schedule by the amount of insurance to which the rate applies.

Premium adjustments will not be pro-rated daily. Instead, premium will be adjusted as follows.

(1) When an Insured Person's insurance or increase takes effect, premium will be charged from the monthly due date coinciding with or next following that change.
(2) When all or part of an Insured Person's insurance terminates, the applicable premium will cease on the monthly due date coinciding with or next following that termination.
(3) When premiums are paid other than monthly, increases or decreases will result in adjustment from the premium due date coinciding with or next following that change.

The above manner of charging premium is for accounting purposes only. It will not extend coverage beyond a date it would have otherwise terminated. Each premium payment will include any adjustments in past premiums, which are needed due to changes that have not yet been taken into account. If a premium adjustment involves a return of unearned premium, the refund will be limited to the prior 12-month period.

## PREMIUMS AND PREMIUM RATES
## (Continued)

## PREMIUM RATE SCHEDULE

Monthly Weekly Disability Income Rate

| Insured Employee's Attained Age | Monthly Rate per $10 of weekly benefit |
|---|---|
| Less than 25 | $.687 |
| 25 - 29 | $1.839 |
| 30 - 34 | $1.617 |
| 35 - 39 | $1.263 |
| 40 - 44 | $1.075 |
| 45 - 49 | $1.196 |
| 50 - 54 | $1.329 |
| 55 - 59 | $1.584 |
| 60 - 64 | $1.783 |
| 65 - 69 | $1.994 |
| 70 and older | $2.216 |

Rate changes due to an increase in age will become effective on the Policy Anniversary date coinciding with or next following the Insured Person's birthday.

## GRACE PERIOD

A grace period of 31 days from the due date will be allowed for the payment of each premium after the first. This Policy will remain in effect during the grace period; unless the Group Policyholder gives the Company advance written notice of termination. The Group Policyholder will remain liable for payment of a pro rata premium for the time this Policy remained in force during the grace period.

## POLICY TERMINATION

TERMINATION BY THE COMPANY. To terminate this Policy, the Company must give the Group Policyholder at least 31 days' advance written notice of its intent to do so. The Company may terminate this Policy coverage on the due date of any premium; if:

(1) the total number of Insured Persons is less than ten;
(2) all of the premium is paid by the Group Policyholder and less than 100% of those eligible for coverage are insured;
(3) part of the premium is paid by Insured Persons and less than 15% of those eligible for coverage are insured;
(4) the Group Policyholder, without good cause, fails to:
  (a) promptly furnish any information the Company reasonably requires; or
  (b) perform its duties pertaining to this Policy in good faith;
(5) the Company terminates all other policies where permitted by their terms, which provide life insurance or weekly disability income insurance in the same state in which this Policy was issued; or
(6) state law otherwise requires this Policy to be terminated.

TERMINATION BY GROUP POLICYHOLDER. The Group Policyholder may terminate this Policy at any time, by giving the Company advance written notice. Coverage will then terminate:

(1) on the date the Company receives the notice; or
(2) any later date the Group Policyholder and the Company have agreed upon.

The Group Policyholder remains responsible for the payment of premiums to the date of termination.

AUTOMATIC TERMINATION. If any premium remains unpaid at the end of the Grace Period; then this Policy will automatically terminate, without any action on the Company's part, on the last day of the Grace Period. The Group Policyholder remains responsible for the payment of premiums to the date of termination.

EFFECT ON INCURRED CLAIMS. Termination of this Policy will not affect benefits otherwise payable for a claim incurred while this Policy is in force.

# PORTABILITY

ELIGIBILITY. This Policy provides portability for up to 12 months, when an Insured Person's insurance under this Policy terminates because his or her employment with the Employer ends; provided:
(1) the Insured Person is not disabled, retired or on a leave of absence; and
(2) the Insured Person was insured under the Employer's short term disability plan for at least 12 months in a row, just prior to the date employment ended. The 12 months may be a combination of coverage under this Policy, and under any prior group short term disability plan this Policy replaces.

Continuation of insurance under the Portability provision will follow any state required continuation or other continuation allowed under the Ceasing Active Work section of this Policy.

Portability is not available to an Insured Person whose insurance terminates because:
(1) the Insured Person's Employer ceases to be a Participating Employer; or
(2) this Policy is terminated by the Employer or the Company.

NOTE: THE BENEFITS CONTINUED UNDER THE PORTABILITY PROVISION ARE NOT THE SAME BENEFIT PROVISIONS PROVIDED UNDER THIS POLICY.

APPLICATION. To continue insurance under the Portability provision, written application and the first premium payment must be made within 31 days of the date insurance ends under this Policy.

AMOUNT OF COVERAGE. The amount of continued insurance may not exceed the amount in force when employment ends. Continued insurance may not be increased. A former Employee may decrease the amount of continued insurance:
(1) at any time during the continuation period;
(2) by completing a request form supplied by the Company.
The decrease will take effect on the first day of the Insurance Month after the Company receives the request.

**PAYMENT OF PREMIUMS**. Premiums for continued insurance under the Portability provision shall be derived solely from the Insured Person's contributions. For Portability coverage to become effective and remain in effect, each Insured Person shall make premium payment for his or her continued insurance directly to the Company, on or before each premium due date. The Company will send each Insured Person a billing statement in advance of each premium due date. The Insured Person is responsible for paying all premiums as they become due.

The required premium will equal:
(1) the rate in effect for the continued coverage provided under the Portability Trust Policy; plus
(2) a direct billing fee.

TERMINATION OF COVERAGE. Continued insurance will end on the earliest of:
(1) the date insurance under this Portability provision has been continued for 12 months;
(2) the date the Portability Trust Policy terminates; but without prejudice to any claim incurred prior to termination;
(3) the last day of the Insurance Month in which termination of the continued insurance is requested;
(4) the end of the period for which premium has been paid;
(5) the date the Insured Person dies or retires;
(6) the date the Insured Person enters the armed services of any state or country on active duty; except for duty of 30 days or less for training in the Reserves or National Guard. (If the Insured Person sends proof of military service, the Company will refund any unearned premium);
(7) the date the Insured Person is reinstated for coverage under this Policy; or
(8) the date the Insured Person is covered under any other group short term disability plan.

## CLAIMS PROCEDURES
## FOR WEEKLY DISABILITY INCOME BENEFITS

**NOTICE AND PROOF OF CLAIM -- Notice of Claim.** Written notice of a Disability claim must be given:
(1) within 20 days after the Injury or Sickness causing Disability begins; or
(2) as soon as reasonably possible after that.*
The notice must be sent to the Company's Group Insurance Service Office. It should include the Insured Person's name and address and the number of this Policy.

**Claim Forms.** When notice of claim is received, the Company will send claim forms for filing the required proof. If the Company does not send the forms within 15 days, the Insured Person may send the Company written proof of Disability in a letter. It should state the date the Disability began, its cause and degree. The Company will periodically send the Insured Person additional claim forms.

**Proof of Claim.** The Company must be given written proof of a Disability claim:
(1) within 90 days after the Day Benefits Begin; or
(2) as soon as reasonably possible after that.*

Proof of claim must be provided at the Insured Person's own expense. It must show the date the Disability began, its cause and degree. Documentation must include the following:
(1) completed statements by the Insured Person and the Employer;
(2) a completed statement by the attending Physician, which must describe any restrictions on the performance of the duties of the Insured Person's Regular Occupation;
(3) proof of any other income received, and of any other benefits available from other income sources, which may affect Policy benefits;
(4) a signed authorization for the Company to obtain more information; and
(5) any other items the Company may reasonably require in support of the claim.

Proof of continued Disability, Regular Care of a Physician, and any Other Income Benefits affecting the claim must be given to the Company. This must be supplied within 45 days after the Company requests it. If it is not, benefits may be denied or suspended.

***Exception:** Failure to give notice or furnish proof of claim within the required time period will not invalidate or reduce the claim, if it is shown that it was done:
(1) as soon as reasonably possible; and
(2) in no event more than one year after it was required.
These time limits will not apply while the Insured Person lacks legal capacity.

**EXAMINATION.** The Company may have the Insured Person examined:
(1) by a Physician, specialist or vocational rehabilitation expert of the Company's choice;
(2) as often as reasonably required while a claim or appeal is pending.

Any such exam will be at the Company's expense.

The Company may determine that (in its opinion) the Insured Person has:
(1) failed to cooperate with an examiner;
(2) failed to take an exam scheduled by the Company; or
(3) postponed such an exam more than twice.
In that event, benefits may be denied or suspended, until the required exam is completed.

**CLAIMS PROCEDURES**
**(Continued)**

**TIME OF PAYMENT OF CLAIMS.** Weekly Disability Income Benefits payable under this Policy will be paid immediately after the Company receives complete proof of claim and confirms liability. Such benefits will be paid biweekly, during any period for which the Company is liable. If benefits are due for less than a week, they will be paid on a pro rata basis. The daily rate will equal 1/7 of the Weekly Benefit. Any balance, which remains unpaid at the end of the period of liability, will be paid immediately after the Company receives complete proof of claim and confirms liability.

**TO WHOM PAYABLE**. All Weekly Disability Income Benefits are payable to the Insured Person, while living. After the Insured Person's death, such benefits will be payable to his or her estate.

**NOTICE OF CLAIM DECISION**. The Company will send the Insured Person a written notice of its claim decision. If the Company denies any part of the claim, the written notice will explain:

(1) the reason for the denial, under the terms of this Policy and any internal guidelines;
(2) how the Insured Person may request a review of the Company's decision; and
(3) whether more information is needed to support the claim.

This notice will be sent within 15 days after the Company resolves the claim. It will be sent within 45 days after the Company receives the first proof of claim, if reasonably possible.

**Delay Notice**. The Company may need more than 15 days to process the claim, due to matters beyond its control. If so, an extension will be permitted. In that event, the Company will send the Insured Person a written delay notice:

(1) by the 15th day after receiving the first proof of claim; and
(2) every 30 days after that, until the claim is resolved.

The notice will explain:

(1) what additional information is needed to determine liability; and
(2) when a decision can be expected.

If the Insured Person does not receive a written decision by the 105th day after the Company receives the first proof of claim, there is a right to an immediate review, as if the claim was denied.

**Exception:** The Company may need more information from the Insured Person to process a claim. If so, it must be supplied within 45 days after the Company requests it. The resulting delay will not count towards the above time limits for claim processing.

**REVIEW PROCEDURE**. Within 180 days after receiving a denial notice, the Insured Person may request a claim review by sending the Company:

(1) a written request; and
(2) any written comments or other items to support the claim.

He or she may review certain non-privileged information relating to the request for review.

**Notice of Decision.** The Company will review the claim and send the Insured Person a written notice of its decision. The notice will state the reasons for the Company's decision, under the terms of this Policy and any internal guidelines. If the Company upholds the denial of all or part of the claim, the notice will also describe:

(1) any further appeal procedures available under this Policy;
(2) the right to access relevant claim information; and
(3) the right to request a state insurance department review, or to bring legal action.

This notice will be sent within 45 days after the Company receives the request for review, or within 90 days if a special case requires more time.

**Delay Notice.** If the Company needs more than 45 days to process an appeal, in a special case:
(1) an extension of up to 45 more days will be permitted; and
(2) the Company will send the Insured Person a written delay notice, by the 30th day after receiving the request for review.

The notice will explain:
(1) the special circumstances which require the delay;
(2) whether more information is needed to review the claim; and
(3) when a decision can be expected.

**Exception:** The Company may need more information from the Insured Person to process an appeal. If so, it must be supplied within 45 days after the Company requests it. The resulting delay will not count towards the above time limits for appeal processing.

**Claims Subject to ERISA (**Employee Retirement Income Security Act of 1974**).** Before bringing a civil legal action under the federal labor law known as ERISA, an employee benefit plan participant or beneficiary must exhaust available administrative remedies. Under this Policy, the plan participant or beneficiary must first seek two administrative reviews of the adverse claim decision, in accord with this section. After the required reviews:
(1) an ERISA plan participant or beneficiary may bring legal action under Section 502(a) of ERISA; and
(2) the Company will waive any right to assert that he or she failed to exhaust administrative remedies.

**RIGHT OF RECOVERY.** If benefits have been overpaid on any claim, full reimbursement to the Company is required within 60 days. If reimbursement is not made, the Company has the right to:
(1) reduce future benefits and suspend payment of the Minimum Weekly Benefit under this Policy, until full reimbursement is made;
(2) reduce benefits payable to the Insured Person or his or her beneficiary under any group insurance policy issued by the Company, until full reimbursement is made; or
(3) recover such overpayments from the Insured Person or his or her estate.

Such reimbursement is required whether the overpayment is due to fraud, the Company's error in processing a claim, or any other reason.

**LEGAL ACTIONS**. No legal action to recover any benefits may be brought until 60 days after the required written proof of claim has been given. No such legal action may be brought more than three years after the date written proof of claim is required.

## WEEKLY DISABILITY INCOME INSURANCE

**TOTAL DISABILITY BENEFIT**. The Company will pay a Weekly Total Disability Benefit for each week the Total Disability continues, if the Insured Person:

(1) becomes Totally Disabled while insured for this benefit;
(2) is under the Regular Care of a Physician; and
(3) at his or her own expense, submits proof of continued Total Disability and Physician's care to the Company upon request.

**Duration.** Benefits start on the Day Benefits Begin, and end on the earliest of:

(1) the date the Insured Person ceases to be Totally Disabled or dies;
(2) the date the Maximum Benefit Period ends; or
(3) the date the Insured Person is able, but chooses not to engage in Partial Disability Employment in his or her Own Occupation.

Proportional benefits will be paid for a partial week of Total Disability.

At the Company's option, benefits may also be denied or suspended on any of the following dates:

(1) the date the Insured Person (without good cause):
    (a) fails to take a required medical exam;
    (b) fails to cooperate with an examiner; or
    (c) postpones a required exam more than twice;
(2) the 45th day after the Company requests additional proof, if not given; or
(3) the 45th day after the Company requests proof of the Insured Person's application for any Other Income Benefits to which he or she may be entitled (and which affect Policy benefits); if not given.

**Amount.** The amount of the Weekly Total Disability Benefit equals the lesser of:

(1) the Maximum Weekly Benefit; minus Other Income Benefits except any pay received under the Employer's Sick Leave or Salary Continuance Plan; or
(2) 100% of the Insured Person's Basic Weekly Earnings; minus Other Income Benefits including any pay received under the Employer's Sick Leave or Salary Continuance Plan.

In no event will the amount of the Weekly Total Disability Benefit plus any pay received under the Employer's Sick Leave or Salary Continuance Plan exceed 100% of the Insured Person's Basic Weekly Earnings.

The amount of the Weekly Total Disability Benefit will not be less than the Minimum Weekly Benefit, unless the Minimum Weekly Benefit plus Other Income Benefits would exceed 100% of the Insured Person's Basic Weekly Earnings.

The Day Benefits Begin, Maximum Benefit Period, Maximum Weekly Benefit, and Minimum Weekly Benefit are shown in the Schedule of Insurance.

**PARTIAL DISABILITY BENEFIT**. The Company will pay a Weekly Partial Disability Benefit, if the Insured Person:

(1) becomes Partially Disabled while insured for this benefit;
(2) is engaged in Partial Disability Employment;
(3) is earning at least 20% of Basic Weekly Earnings when Partial Disability Employment begins;
(4) is under the Regular Care of a Physician; and
(5) at his or her own expense, submits proof of continued Partial Disability, Physician's care and reduced earnings to the Company upon request.

The Insured Person is not required to be Totally Disabled prior to receiving Weekly Partial Disability Benefits. The Day Benefits Begin may be reached by days of Total Disability, Partial Disability, or any combination of these. Proportional benefits will be paid for a partial week of Partial Disability.

**WEEKLY DISABILITY INCOME INSURANCE**
**(Continued)**

**Duration.** Benefits start on the Day Benefits Begin, and will cease on the earliest of:

(1) the date the Insured Person ceases to be Partially Disabled or dies;
(2) the date the Maximum Benefit Period ends;
(3) the date the Insured Person earns more than 99% of Basic Weekly Earnings; or
(4) the date the Insured Person is able, but chooses not to work Full-Time or part-time in his or her Own Occupation.

At the Company's option, benefits may also be denied or suspended on any of the following dates:

(1) the date the Insured Person (without good cause):
    (a) fails to take a required medical exam;
    (b) fails to cooperate with an examiner; or
    (c) postpones a required exam more than twice;
(2) the 45th day after the Company requests additional proof, if not given; or
(3) the 45th day after the Company requests proof of the Insured Person's application for Other Income Benefits to which he or she may be entitled (and which affect Policy benefits); if not given.

**Amount.** The amount of the Weekly Partial Disability Benefit equals the lesser of A or B below:

(A) (1) The Maximum Weekly Benefit; minus
    (2) Other Income Benefits, except for earnings the Insured Person receives from Partial Disability Employment; or
(B) The Insured Person's Basic Weekly Earnings minus Other Income Benefits.

The amount of the Weekly Partial Disability Benefit will not be less than the Minimum Weekly Benefit, unless the Minimum Weekly Benefit plus Other Income Benefits would exceed 100% of the Insured Person's Basic Weekly Earnings.

The Day Benefits Begin, Maximum Benefit Period, Maximum Weekly Benefit, and Minimum Weekly Benefit are shown in the Schedule of Insurance.

**WEEKLY DISABILITY INCOME INSURANCE**
**(Continued)**

**OTHER INCOME BENEFITS** means Earnings, benefits, awards, or settlements from the following sources. These amounts will be offset, in determining the Insured Person's Weekly Benefit. Except for Retirement Benefits and Earnings, these amounts must result from the same Disability for which a Weekly Benefit is payable under this Policy.

**Compulsory Benefits.** Any disability income benefits the Insured Person is eligible to receive under:
(1) state temporary disability income benefit laws;
(2) state no fault auto insurance laws; or
(3) any other compulsory benefit act or law (except Workers' Compensation and laws of like intent).

**Other Insurance Plans.** Any disability income benefits for which the Insured Person is eligible under any no fault auto plan.

**Employee Benefit Plans.** Any disability income benefits for which the Insured Person is eligible under the Employer's Sick Leave or Salary Continuance Plan. This does **not** include vacation pay, severance pay, or pay for work actually performed during a Disability.

**Employer's Retirement Plan.** Any Disability Benefits or Retirement Benefits the Insured Person receives under the Employer's Retirement Plan.

**Social Security and other Government Retirement Plans.** The following Social Security or other Government Retirement Plan benefits will be offset:
(1) **disability benefits** for which the Insured Person and any spouse or child is eligible, because of the Insured Person's Disability;
(2) **unreduced retirement benefits** for which the Insured Person and any spouse or child is eligible, because of the Insured Person's eligibility for unreduced retirement benefits; or
(3) **reduced retirement benefits** actually received by the Insured Person and any spouse or child, because of the Insured Person's receipt of reduced retirement benefits.

As used above, "**Government Retirement Plans"** include disability and retirement benefits under:
(1) the federal Social Security Act, Jones Act or Railroad Retirement Act;
(2) the Canada Pension Plan or Quebec Pension Plan;
(3) any similar plan or act of any country, state, province or other political unit; or
(4) any plan provided in place of one of the above plans.

**"Earnings"**, as used in this provision, means pay the Insured Person earns or receives from any occupation or form of employment, as reported for federal income tax purposes. Earnings include (but are not limited to) a:
(1) salaried or hourly Employee's gross earnings (shown on Form W-2); including:
  (a) wages, tips, commissions, bonuses and overtime pay; and
  (b) any pre-tax contributions to a Section 125 Plan, flexible spending account, or qualified deferred compensation plan;
(2) proprietor's net profit (figured from Form 1040, Schedule C);
(3) professional corporation shareholder's net profit (figured from Form 1040, Schedule C);
(4) partner's net earnings from self-employment (shown on Schedule K-1) and any W-2 earnings; and
(5) Subchapter S Corporation shareholder's net earnings from trade or business activities (shown on Schedule K-1).

**Recovery from Third Party.** Any amount the Insured Person recovers from a third party as a result of the Disability (whether by judgment, settlement or otherwise). The offset:
(1) will be reduced by attorney fees and other reasonable costs of recovery; and
(2) will not exceed 100% of the net settlement.

**WEEKLY DISABILITY INCOME INSURANCE**
**(Continued)**

**Exceptions.** The following will **not** be considered Other Income Benefits, and will not be offset in determining the Weekly Benefit:

(1) a cost-of-living increase in any Other Income Benefit (except Earnings); if it takes effect after the first offset for that benefit during a period of Disability;
(2) reimbursement for hospital, medical or surgical expense;
(3) reimbursement for attorney fees or other reasonable costs of claiming Other Income Benefits;
(4) group credit or mortgage disability insurance;
(5) early retirement benefits that are not elected or received under the federal Social Security Act or other Government Retirement Plan;
(6) any amounts under the Employer's Retirement Plan that:
  (a) represent the Insured Person's contributions; or
  (b) are received upon termination of employment without being disabled or retired;
(7) benefits from a 401(k), profit-sharing or thrift plan; an individual retirement account (IRA); a tax sheltered annuity (TSA); a stock ownership plan; or a non-qualified plan of deferred compensation;
(8) vacation pay, holiday pay, or severance pay; or
(9) disability income benefits under any individual policy, association group plan, franchise plan, or auto liability insurance policy (except no fault auto insurance).

**RULES CONCERNING OTHER INCOME BENEFITS.** If the Insured Person may be entitled to Other Income Benefits that affect Policy benefits, he or she is required to actively claim them. For example, if Social Security or other Government Retirement Plan benefits may be payable, the Insured Person:

(1) must promptly apply for such benefits; and, if denied
(2) must file an appeal or request an administrative hearing, upon Company request.

If the Insured Person fails to promptly pursue such benefits, the Company has the option to deny or suspend Weekly Benefits or to reduce them by an estimated amount.

If Workers' Compensation or similar benefits may be payable for the same Disability, the Insured Person and Employer are required to cooperate in filing for those benefits. The Company will require proof of the denial or duration of those benefits to confirm its liability under this Policy.

**Refunding Overpayments.** Upon receiving Other Income Benefits, the Insured Person must refund any resulting overpayment of Weekly Benefits under this Policy. If he or she does not promptly refund an overpayment to the Company within 60 days, in a lump sum, then:

(1) the Company will reduce or eliminate future payments; and
(2) the Minimum Weekly Benefit will not apply, until the amount is repaid.

**Cost of Living Freeze.** After the first deduction for each of the Other Income Benefits (except Earnings), its amount will be frozen. The Weekly Benefit will not be further reduced due to any cost-of-living increases payable under these Other Income Benefits.

**RECURRENT DISABILITY. "Recurrent Disability"** means a Disability caused by an Injury or Sickness which is the same as, or related to, the cause of a prior Disability for which Weekly Benefits were payable.

(1) A Recurrent Disability will be treated as a new period of Disability, if the Insured Person:
  (a) has returned to his or her Own Occupation; and
  (b) has worked on a full-time basis, for two consecutive weeks or more.
  A new Day Benefits Begin and new Maximum Benefit Period will apply.
(2) A Recurrent Disability will be treated as part of the prior Disability, if the Insured Person:
  (a) has returned to his or her Own Occupation; and
  (b) has worked on a full-time basis, for less than two consecutive weeks.
  The same Day Benefits Begin and same Maximum Benefit Period will apply to the Recurrent Disability as to the prior Disability.

**WEEKLY DISABILITY INCOME INSURANCE**
**(Continued)**

To qualify for a Weekly Benefit for a Recurrent Disability, the Insured Person must earn less than the percentage of Predisability Income specified in the Partial Disability Benefit section. Benefit payments will be subject to all other terms of this Policy that applied to the prior Disability.

This Recurrent Disability provision will cease to apply to an Insured Person who becomes eligible for coverage under any other group short-term disability policy.

**EXCLUSIONS.** Weekly Benefits will not be payable for any period of Disability:

(1) which is the result of an intentionally self-inflicted Injury or suicide attempt;
(2) during which the Insured Person is not under the Regular Care of a Physician;
(3) which is the result of war (declared or undeclared) or any act of war;
(4) which is the result of a Sickness or Injury for which the Insured Person receives benefits under Workers' Compensation or similar coverage; or
(5) which arises out of (or in the course of) any employment for wage or profit, when the Disability would be covered by Workers' Compensation or similar coverage if:
    (a) the Employer had enrolled the Insured Person for such coverage; and
    (b) the Insured Person and Employer had cooperated in filing a claim under that plan.

**PRE-EXISTING CONDITION LIMITATION.** This Policy will not cover any period of Disability:

(1) which is caused or contributed to by, or results from a Pre-Existing Condition; and
(2) which begins in the first 12 months after the Insured Person's Effective Date.

**"Pre-Existing Condition"** means a Sickness or Injury for which the Insured Person received Treatment within 6 months prior to his or her Effective Date.

**"Treatment"** means consultation, care and services by a Physician. It includes diagnostic measures and the prescription, refill and taking of prescribed drugs or medicines.

The above Pre-Existing Condition Limitation will also apply to any increase in coverage under this Policy.

## VOCATIONAL REHABILITATION BENEFIT

**BENEFIT.** If an Insured Person is Disabled and is receiving Weekly Benefits under this Policy, he or she may be eligible for a Vocational Rehabilitation Benefit. This benefit consists of services which may include:

(1) vocational evaluation, counseling, training or job placement;
(2) job modification or special equipment; and
(3) other services which the Company deems reasonably necessary to help the Insured Person return to work.

The Company will determine the Insured Person's eligibility and the amount of any benefit payable.

**ELIGIBILITY.** An Insured Person may be eligible for the Vocational Rehabilitation Benefit if the Company finds that he or she:

(1) has a Disability that prevents the performance of the Main Duties of his or her Own Occupation;
(2) has the physical and mental abilities needed to complete a Rehabilitation Program; and
(3) is reasonably expected to return to work after completing the Rehabilitation Program; in view of his or her degree of motivation and the labor force demand for workers in the proposed occupation.

The Company must also find that the cost of the proposed services is less than its expected claim liability.

**AMOUNT.** The amount of any Vocational Rehabilitation Benefit will not exceed the Company's expected claims liability. This benefit will not be payable for services covered under the Insured Person's health care plan or any other vocational rehabilitation program. Payment may be made to the provider of the services, at the Company's option.

**CONDITIONS.** The Company, the Insured Person, or his or her Physician may first propose vocational rehabilitation. When a Rehabilitation Program is approved by the Company, this Policy's definition of "Disability" will be waived during the rehabilitation period; however, it will be reapplied after the Rehabilitation Program ends. The Company will determine the amount and duration of any Weekly Disability benefits payable after the Rehabilitation Program ends.

**LIMITATION.** This Policy will not cover any period of Disability for an Insured Person who has received a Vocational Rehabilitation Benefit and has failed to complete the Rehabilitation Program, without Good Cause.

**DEFINITIONS.**

**"Good Cause,"** as used in this provision, means the Insured Person's:

(1) documented physical or mental impairments, which render the Insured Person unable to take part in or complete a Rehabilitation Program;
(2) involvement in a medical program, which prevents or interferes with the Insured Person's taking part in or completing a Rehabilitation Program; or
(3) participating in good faith in some other vocational rehabilitation program, which:
    (a) conflicts with taking part in or completing a Rehabilitation Program developed by the Company; and
    (b) is reasonably expected to return the Insured Person to work.

**"Rehabilitation Program"** means a written vocational rehabilitation program:

(1) which the Company develops with input from:
    (a) the Insured Person;
    (b) the Insured Person's Physician; and
    (c) any current or prospective employer, when appropriate; and
(2) which describes the Program's goals; each party's responsibilities; and the times, dates and costs of the rehabilitation services.

**OTHER PROVISIONS.** Unless stated otherwise, this benefit is subject to all the Definitions, Exclusions, Claims Procedures, and other provisions of this Policy.

## REHABILITATION INCENTIVE BENEFIT

**BENEFIT.** The Company will pay a Rehabilitation Incentive Benefit to an Insured Person who is Totally or Partially Disabled and who actively participates in a Rehabilitation Program approved by the Company.

This benefit is included in the premium rate for the Policy. You will not be charged any additional premium for this benefit.

**AMOUNT.** The amount of the Rehabilitation Incentive Benefit is shown in the Schedule of Insurance.

The Rehabilitation Incentive Benefit is paid in addition to any other Policy benefits, and is not subject to Policy provisions that would otherwise reduce the benefit amount, such as the Other Income Benefits provision.

**DURATION.** The Rehabilitation Incentive Benefit starts on the latest of:
(1) the date the Insured Person begins to participate in an approved Rehabilitation Program; or
(2) the date the Company approves the Insured Person's Rehabilitation Program.

The Rehabilitation Incentive Benefit will cease on the earliest of:
(1) the date the Weekly Total or Partial Disability Benefits would otherwise cease under this Policy; or
(2) the date the Insured Person ceases participation in an approved Rehabilitation Program.

**DEFINITION.**

**"Rehabilitation Program"** means a written vocational rehabilitation program:
(1) which the Company develops with input from:
  (a) the Insured Person;
  (b) the Insured Person's Physician; and
  (c) any current or prospective employer, when appropriate; and
(2) which describes the Program's goals; each party's responsibilities; and the times, dates and costs of the rehabilitation services.

**PROOF.** Written proof of active participation in a Rehabilitation Program must be given:
(1) within 90 days after the Day Benefits Begin; or
(2) as soon as reasonably possible after that.

Proof of active participation must be provided at the Insured Person's own expense. The proof must be sent to the Company's Group Insurance Service Office. It should include the Insured Person's name and address and the number of this Policy.

**Exception:** Failure to furnish proof of active participation in a Rehabilitation Program within the required time period will not invalidate the benefit, if it is shown that it was done:
(1) as soon as reasonably possible; and
(2) in no event more than one year after it was required.

These time limits will not apply while the Insured Person lacks legal capacity.

**OTHER PROVISIONS.** Unless stated otherwise, this benefit is subject to all the Definitions, Exclusions, Claims Procedures, and other provisions of this Policy.

## REASONABLE ACCOMMODATION BENEFIT

**BENEFIT.** If an Insured Person is Disabled and is receiving Weekly Benefits under this Policy, then the Group Policyholder may be eligible for a Reasonable Accommodation benefit. This benefit reimburses the Group Policyholder for 50% of the expense incurred for reasonable accommodation services for the Insured Person, but will not exceed the lesser of:

(1) a maximum benefit of $2500 for any one Insured Person; or
(2) the Company's expected liability for the Insured Person's Weekly Disability Income claim.

Such services may include:

(1) providing the Insured Person a more accessible parking space or entrance;
(2) removing barriers or hazards to the Insured Person from the worksite;
(3) special seating, furniture or equipment for the Insured Person's work station;
(4) providing special training materials or translation services during the Insured Person's training; and
(5) other services the Company deems reasonably necessary to help the Insured Person return to work with the Group Policyholder.

**ELIGIBILITY.** The Company will determine the Group Policyholder's eligibility to receive the Reasonable Accommodation benefit. To qualify for the Reasonable Accommodation benefit, the Group Policyholder must have an Insured Person:

(1) whose Disability prevents the performance of his or her Own Occupation at the Group Policyholder's worksite;
(2) who has the physical and mental abilities needed to perform his or her Own Occupation or another occupation at the Group Policyholder's worksite, but only with the help of the proposed accommodation; and
(3) who is reasonably expected to return to work with the help of the proposed accommodation.

The Company must also find that the requested Reasonable Accommodation benefit is less than the expected liability for the Insured Person's Weekly Disability Income claim.

**WRITTEN PROPOSAL.** The reasonable accommodation services must be provided in accord with a written proposal, which is developed with input from:

(1) the Group Policyholder;
(2) the Insured Person; and
(3) the Insured Person's Physician, when appropriate.

The proposal must state:

(1) the purpose of the proposed accommodation; and
(2) the times, dates, and costs of the services.

**CONDITIONS.** The Company, the Group Policyholder, the Insured Person, or the Insured Person's Physician may first propose an accommodation.

The proposal must be approved by the Company in writing.

The Company will reimburse the Group Policyholder upon receipt of proof that the Group Policyholder:

(1) has provided the services for the Insured Person; and
(2) has paid the provider for the services.

**OTHER PROVISIONS.** Unless stated otherwise, the Reasonable Accommodation benefit is subject to all the Definitions, Exclusions, Claims Procedures, and other provisions of this Policy.

## FAMILY INCOME BENEFIT

**BENEFIT.** The Company will pay a benefit to the Eligible Survivor(s) when satisfactory written proof is received that an Insured Person died:
(1) after Disability had continued for at least 14 consecutive days; and
(2) while receiving a Weekly Benefit.

If payment becomes due to the Insured Person's children; then payment will be made to:
(1) the surviving children, in equal shares; or
(2) a person named by the Company to receive payments on the children's behalf.

This payment will be valid and effective against all claims by others representing, or claiming to represent, the Insured Person's children.

If there are no Eligible Survivors, payment will be made to the Insured Person's estate.

**AMOUNT.** The Family Income Benefit is shown in the Schedule of Insurance. Reductions for Other Income Benefits will not apply.

If any state disability plan compulsory death benefits become payable upon the Insured Person's death, then any Family Income Benefit amount payable will be reduced by such compulsory death benefits.

**DEFINITION.**

**"Eligible Survivor(s)"** means the Insured Person's:
(1) surviving spouse or domestic partner; or, if none,
(2) surviving children who are under age 25 on the Insured Person's date of death.

**OTHER PROVISIONS.** Unless stated otherwise, this benefit is subject to all the Definitions, Exclusions, Claims Procedures, and other provisions of this Policy.

**LIMITATIONS AND EXCLUSIONS UNDER THE ARKANSAS LIFE AND HEALTH INSURANCE GUARANTY ASSOCIATION ACT**

Residents of this state who purchase life insurance, annuities or health and accident insurance should know that the insurance companies licensed in this state to write these types of insurance are members of the Arkansas Life and Health Insurance Guaranty Association ("Guaranty Association"). The purpose of the Guaranty Association is to assure that policy and contract owners will be protected, within certain limits, in the unlikely event that a member insurer becomes financially unable to meet its obligations. If this should happen, the Guaranty Association will assess its other member insurance companies for the money to pay the claims of policy owners who live in this state and, in some cases, to keep coverage in force. The valuable extra protection provided by the member insurers through the Guaranty Association is not unlimited, however. And, as noted in the box below, this protection is not a substitute for consumers' care in selecting insurance companies that are well managed and financially stable.

**DISCLAIMER**

**The Arkansas Life and Health Insurance Guaranty Association ("Guaranty Association") may not provide coverage for this policy, if coverage is provided, it may be subject to substantial limitations or exclusions, and require continued residency in this state. You should not rely on coverage by the Guaranty Association in purchasing an insurance policy or contract.**

**Coverage is NOT provided for your policy or contract or any portion of it that is not guaranteed by the insurer or for which you have assumed the risk, such as non-guaranteed amounts held in a separate account under a variable life or variable annuity contract.**

**Insurance companies or their agents are required by law to provide you with this notice. However, insurance companies and their agents are prohibited by law from using the existence of the Guaranty Association to induce you to purchase any kind of insurance policy.**

**The Arkansas Life and Health Insurance Guaranty Association**
**c/o The Liquidation Division**
**1023 West Capitol**
**Little Rock, Arkansas 72201**

**Arkansas Insurance Department**
**1200 West Third Street**
**Little Rock, Arkansas 72201-1904**

The state law that provides for this safety-net is called the Arkansas Life and Health Insurance Guaranty Association Act ("Act"). Below is a brief summary of the Act's coverages, exclusions and limits. This summary does not cover all provisions of the Act; nor does it in any way change anyone's rights or obligations under the Act or the rights or obligations of the Guaranty Association.

**COVERAGE**

Generally, individuals will be protected by the Guaranty Association if they live in this state and hold a life, annuity or health insurance contract or policy, or if they are insured under a group insurance contract issued by a member insurer. The beneficiaries, payees or assignees of policy or contract owners are protected as well, even if they live in another state.

**EXCLUSIONS FROM COVERAGE**

However, persons owning such policies are NOT protected by the Guaranty Association if:

- They are eligible for protection under the laws of another state (this may occur when the insolvent insurer was incorporated in another state whose guaranty association protects insureds who live outside that state);
- The insurer was not authorized to do business in this State;
- Their policy or contract was issued by a nonprofit hospital or medical service organization, an HMO, a fraternal benefit society, a mandatory state pooling plan, a mutual assessment company or similar plan in which the policy or contract owner is subject to future assessments, or by an insurance exchange.

The Guaranty Association also does NOT provide coverage for:

- Any policy or contract or portion thereof which is not guaranteed by the insurer or for which the owner has assumed the risk, such as non-guaranteed amounts held in a separate account under a variable life or variable annuity contract;
- Any policy of reinsurance (unless an assumption certificate was issued);
- Interest rate yields that exceed an average rate;
- Dividends and, voting rights, and experience rating credits;
- Credits given in connection with the administration of a policy by a group contract holder;
- Employers' plans to the extent they are self-funded (that is, not insured by an insurance company, even if an insurance company administers them);
- Unallocated annuity contracts (which give rights to group contractholders, not individuals);
- Unallocated annuity contracts issued to/in connection with benefit plans protected under Federal Pension Benefit Corporation ("FPBC") (whether the FPBC is yet liable or not);
- Portions of an unallocated annuity contract not owned by a benefit plan or a government lottery (unless the owner is a resident) or issued to a collective investment trust or similar pooled fund offered by a bank or other financial institution;
- Portions of a policy or contract to the extent assessments required by law for the Guaranty Association are preempted by State or Federal law;
- Obligations that do not arise under the policy or contract, including claims based on marketing materials or side letters, riders, or other documents which do not meet filing requirements, or claims for policy misrepresentations, or extra-contractual or penalty claims;
- Contractual agreements establishing the member insurer's obligations to provide book value accounting guarantees for defined contribution benefit plan participants (by reference to a portfolio of assets owned by a nonaffiliate benefit plan or its trustees).

## LIMITS ON AMOUNT OF COVERAGE

The Act also limits the amount the Guaranty Association is obligated to cover: The Guaranty Association cannot pay more than what the insurance company would owe under a policy or contract. Also, for any one insured life, the Guaranty Association will pay a maximum of $300,000 in life and annuity benefits and $500,000 in health insurance benefits - no matter how many policies and contracts there were with the same company, even if they provided different types of coverages. Within these overall limits, the Association will not pay more than $300,000 in disability and long term care benefits, $500,000 in health insurance benefits, $300,000 in present value of annuity benefits, or $300,000 in life insurance death benefits or net cash surrender values - again, no matter how many policies and contracts there were with the same company, and no matter how many different types of coverages. There is a $1,000,000 limit with respect to any contract holder for unallocated annuity benefits, irrespective of the number of contracts held by the contract holder. These are limitations for which the Guaranty Association is obligated before taking into account either its subrogation and assignment rights or the extent to which those benefits could be provided out of the assets of the impaired or insolvent insurer.

## IMPORTANT INFORMATION REGARDING YOUR INSURANCE.

In the event you need to contact someone about this insurance for any reason, please contact your agent. If no agent was involved in the sale of this insurance, or if you have additional questions, you may contact the insurance company issuing this insurance at the following address and telephone number: Group Insurance Service Office, 8801 Indian Hills Drive, Omaha, Nebraska 68114-4066, (402) 361-7300.

If you have been unable to contact or obtain satisfaction from the company or agent, you may contact the state regulatory agency at Arkansas Insurance Department, 1200 West Third Street, Little Rock, Arkansas 72201-1904 or phone them at 1-800-852-5494 or 1-501-371-2640. Please have your policy number available.

**AMENDMENT TO BE ATTACHED TO AND MADE PART OF GROUP POLICY NO: 000010201376**

**ISSUED TO: Trinity Village, Inc.**

**The Policy is amended by the addition of the following provisions.**

**PRIOR INSURANCE CREDIT UPON TRANSFER OF DISABILITY INCOME INSURANCE CARRIERS**

This provision prevents loss of disability income coverage for an Insured Person, which could otherwise occur solely because of a transfer of insurance carriers. This Policy will provide the following Prior Insurance Credit, when it replaces a prior plan.

**"Prior Plan"** means a prior carrier's group disability income policy, which this Policy replaced:
(1) within 1 day of the prior plan's termination date; or
(2) within 60 days of the prior plan's termination date, if the Employer has more than 15 Insured Persons covered under this Policy on its effective date.

FAILURE TO SATISFY ACTIVE WORK RULE. Subject to premium payments, this Policy will provide disability income coverage to a Person who:
(1) was insured by the prior plan on its termination date; and
(2) was otherwise eligible under this Policy; but was not Actively-At-Work due to Injury or Sickness on its Effective Date.

AMOUNT OF COVERAGE. Until the Person satisfies this Policy's Active Work rule, his or her disability income coverage will not exceed that provided by the prior plan, had it remained in force. The Company will pay:
(1) the benefit the prior plan would have paid; minus
(2) any amount for which the prior carrier is liable.

DISABILITY DUE TO A PRE-EXISTING CONDITION. Benefits may be payable for a period of disability due to a Pre-Existing Condition for an Insured Person who:
(1) was insured by the prior plan on its termination date; and
(2) was Actively-At-Work and became insured under this Policy on its Effective Date.

The benefits will be determined as follows:

A. The Company will apply this Policy's Pre-Existing Condition Limitation. If the Insured Person qualifies for benefits, he or she will be paid according to this Policy's benefit schedule.

B. If the Insured Person cannot satisfy this Policy's Pre-Existing Condition Limitation; then the prior plan's pre-existing condition limitation will be applied, as follows:
(1) If the Insured Person satisfies the prior plan's pre-existing condition limitation, giving consideration towards continuous time insured under both policies; then benefits will be paid according to the prior plan's benefit schedule.
(2) If the Insured Person cannot satisfy the Pre-Existing Condition Limitation of this Policy, or that of the prior plan; then no benefit will be paid.

**This Amendment takes effect on the effective date of coverage under this Policy. In all other respects, this Policy remains the same.**

**THE LINCOLN NATIONAL LIFE INSURANCE COMPANY**

[signature]

Officer of the Company

Lincoln Financial Group®

The Lincoln National Life Insurance Company
A Stock Company Home Office Location: Fort Wayne, Indiana
Group Insurance Service Office: 8801 Indian Hills Drive, Omaha, NE 68114-4066
(800) 423-2765 Online: www.LincolnFinancial.com

CERTIFIES THAT Group Policy No. GL 000010201376 has been issued to
Trinity Village, Inc.
(The Group Policyholder)

The issue date of the Policy is January 1, 2015.

Certificate of Insurance for Class 1 of Plan 1

You are entitled to the benefits described in this Certificate only if you are eligible, become and remain insured under the provisions of the Policy. This Certificate replaces any other certificates for the benefits described inside. As a Certificate of Insurance, it is not a contract of insurance; it only summarizes the provisions of the Policy and is subject to the Policy's terms. If the provisions of this Certificate and the Policy do not agree, the provisions of the Policy will apply.

Ellen Cooper
PRESIDENT

**CERTIFICATE OF GROUP INSURANCE**
**PROVIDING**
**WEEKLY DISABILITY INCOME INSURANCE**

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

**Trinity Village, Inc.**
**000010201376**
**SCHEDULE OF INSURANCE**

**ELIGIBLE CLASS**

**Class 1 - All Full-Time Employees**

There will be an Open Enrollment Period beginning November 1st and ending December 31st for eligible employees to enroll for Weekly Disability Income Insurance or to increase their current amounts of Weekly Disability Income Insurance. Evidence of insurability will not be required during this enrollment period provided the Insured Person:

(1) has not been previously declined; and
(2) elects an amount of insurance or an increase to the Insured Person's current insurance amount not to exceed the Maximum Weekly Benefit.

Coverage elected during this period that is not subject to Evidence of Insurability will become effective:

(1) January 1st following the enrollment period, if Actively at Work on that day; or
(2) The day the Insured Person resumes Active Work, if not Actively at Work on the day the elected coverage or increase would otherwise take effect.

The Policy does not replace or provide benefits required by Workers' Compensation laws or any state disability insurance plan laws.

**Trinity Village, Inc.**
**000010201376**
**SCHEDULE OF INSURANCE**
**For**
**Class 1 - All Full-Time Employees**

MINIMUM HOURS: 30 hours per week

WAITING PERIOD: (For date insurance begins, refer to "Effective Date" section)
(a) None for employees who were hired on or before the Policy Issue Date.
(b) 60 days of continuous Active Work for employees who were hired after the Policy Issue Date.

CONTRIBUTIONS: You are required to contribute to the cost of the Weekly Disability Income Insurance.

**WEEKLY DISABILITY INCOME INSURANCE**

MAXIMUM WEEKLY BENEFIT: Any $50 increment, subject to a $100 minimum and a $1,000 maximum, as elected on the enrollment form; not to exceed 60% of Basic Weekly Earnings, rounded to the next lower $50

MINIMUM WEEKLY BENEFIT: 10% of your Weekly Total Disability Benefit

DAY BENEFITS BEGIN: 15th consecutive day of Disability due to Accidental Injury; and
15th consecutive day of Disability due to Sickness.

The Day Benefits Begin may be reached by days of Total Disability, Partial Disability, or any combination thereof.

MAXIMUM BENEFIT PERIOD: 24 weeks

Weekly Disability Income Insurance will terminate when you retire.

ADDITIONAL FEATURES:

Family Income Benefit: 3 times your last Weekly Benefit payable immediately prior to death.

Rehabilitation Assistance Benefit:
- Rehabilitation Incentive Benefit of 5% of Basic Weekly Earnings
- Reasonable Accommodation Benefit
- Vocational Rehabilitation Benefit

**TABLE OF CONTENTS**

Definitions....3

General Provisions....8

Eligibility and Effective Dates....10

Individual Terminations....12

Claims Procedures for Weekly Disability Income Benefits....14

Portability....17

Weekly Disability Income Insurance....18

Vocational Rehabilitation Benefit....23

Rehabilitation Incentive Benefit....24

Reasonable Accommodation Benefit....25

Family Income Benefit....26

Notice....27

Prior Insurance Credit Provision....30

# DEFINITIONS

**As used throughout the Policy, the following terms shall have the meanings indicated below. Other parts of the Policy contain definitions specific to those provisions.**

**ACTIVE WORK** or **ACTIVELY AT WORK** means your performance of all Main Duties of your Own Occupation, for the regularly scheduled number of hours, at:

(1) the Employer's place of business; or
(2) any other business location where the Employer requires you to travel.

Unless disabled on the prior workday or on the day of absence, you will be considered Actively at Work on the following days:

(1) a Saturday, Sunday or holiday that is not a scheduled workday;
(2) a paid vacation day, or other scheduled or unscheduled non-workday; or
(3) a non-medical leave of absence of 12 weeks or less, whether taken with the Employer's prior approval or on an emergency basis.

This includes a Military Leave or an approved Family or Medical Leave that is not due to your own health condition.

**BASIC WEEKLY EARNINGS** or **PREDISABILITY INCOME** means your average weekly base salary or hourly pay from the Employer before taxes on the Determination Date. The **"Determination Date"** is the last day worked just prior to the date the Disability begins.

It does **not** include commissions, bonuses, overtime pay, or any other extra compensation. It does **not** include income from a source other than the Employer. It will not exceed the amount shown in the Employer's financial records, the amount for which premium has been paid, or the Maximum Covered Weekly Earnings permitted by the Policy; whichever is less. (Maximum Covered Weekly Earnings equals the Maximum Weekly Benefit divided by the Benefit Percentage shown in the Schedule of Insurance.) Exception: For purposes of determining the Partial Disability Weekly Benefit, Basic Weekly Earnings will not exceed the amount shown in the Employer's financial records.

**COMPANY** means The Lincoln National Life Insurance Company, an Indiana corporation. Its Group Insurance Service Office address is 8801 Indian Hills Drive, Omaha, Nebraska 68114-4066.

**DAY** or **DATE** means the period of time that begins at 12:01 a.m. and ends at 12:00 midnight, standard time, at the Group Policyholder's place of business. When used with regard to effective dates, it means 12:01 a.m. When used with regard to termination dates, it means 12:00 midnight.

**DISABILITY or DISABLED** means Total Disability or Partial Disability.

**DISABILITY BENEFIT**, when used with the term Retirement Plan, means a benefit that:

(1) is payable under a Retirement Plan due to disability as defined in that plan; and
(2) does not reduce the benefits that would have been paid as Retirement Benefits at the normal retirement age under the plan if the disability had not occurred.

If the payment of the benefit does cause such a reduction, the benefit will be deemed a Retirement Benefit as defined in the Policy.

**EMPLOYEE or FULL-TIME EMPLOYEE** means a person:

(1) whose employment with the Employer is the person's main occupation;
(2) whose employment is for regular wage or salary, on a full-time basis;
(3) who is regularly scheduled to work at such occupation at least the Minimum Hours shown in the Schedule of Insurance;
(4) who is a member of an Eligible Class which is eligible for coverage under the Policy;
(5) who is not a temporary or seasonal employee; and
(6) who is a citizen of the United States or legally works in the United States.

## DEFINITIONS
## (Continued)

**EMPLOYER** means the Group Policyholder. It includes any division, subsidiary or affiliated company named in the Application or Participation Agreement.

**EVIDENCE OF INSURABILITY** means a statement of proof of your medical history. The Company uses this to determine your acceptance for insurance or an increased amount of insurance. Such proof will be provided at your own expense.

**FAMILY OR MEDICAL LEAVE** means an approved leave of absence that:
(1) is subject to the federal FMLA law (the Family and Medical Leave Act of 1993 and any amendments to it) or a similar state law;
(2) is taken in accord with the Employer's leave policy and the law which applies; and
(3) does not exceed the period approved by the Employer and required by that law.

Under the federal FMLA law, such leaves are permitted for up to 12 weeks in a 12-month period as defined by the Employer. The 12 weeks:
(1) may consist of consecutive or intermittent work days; or
(2) may be granted on a part-time equivalency basis.
If you are entitled to a leave under both the federal FMLA law and a similar state law, you may elect the more favorable leave (but not both). If you are on an FMLA leave due to your own health condition on the date Policy coverage takes effect, you are not considered Actively at Work.

**FULL-TIME**, as it applies to the Partial Disability Benefit, means the average number of hours you were regularly scheduled to work, at your Own Occupation, during the week just prior to:
(1) the date Disability begins; or
(2) the date an approved leave of absence begins, if Disability begins while you are continuing coverage during a leave of absence.

**GROUP POLICYHOLDER** means the person, company, trust or other organization as shown on the Title Page of the Policy.

**INJURY** means bodily Injury which results directly from an accident, independently of all other causes. In determining Weekly Benefits, a Disability will be considered caused by a Sickness if:
(1) the Disability begins more than 60 days after the Injury; or
(2) the Injury occurred before your Effective Date under the Policy.

The term "Injury" shall not include any:
(1) condition to which a Sickness, its natural progression or its treatment is a substantial contributing cause (based upon the preponderance of medical evidence);
(2) condition caused by emotional stress or trauma; infection (except pyogenic bacterial infection of an Injury); or medical or surgical treatment (except when needed solely for an Injury);
(3) repetitive trauma condition which results from repetitious, physically traumatic activities that occur over time; or
(4) pregnancy; except for complications that result from an Injury.

**DEFINITIONS**
**(Continued)**

**INSURANCE MONTH** or **POLICY MONTH** means that period of time:
(1) beginning at 12:01 a.m. Standard Time, at the Group Policyholder's place of business on the first day of any calendar month; and
(2) ending at 12:00 midnight on the last day of the same calendar month.

**INSURED PERSON** means a Person for whom Policy coverage is in effect.

**MAIN DUTIES** or **MATERIAL AND SUBSTANTIAL DUTIES** means those job tasks that:
(1) are normally required to perform your Own Occupation; and
(2) could not reasonably be modified or omitted.

To determine whether a job task could reasonably be modified or omitted, the Company will apply the Americans with Disabilities Act's standards concerning reasonable accommodation. It will apply the Act's standards, whether or not:
(1) the Employer is subject to the Act; or
(2) you have requested such a job accommodation.
An Employer's failure to modify or omit other job tasks does **not** render you unable to perform the Main Duties of the job.

Main Duties include those job tasks:
(1) as described in the U.S. Department of Labor Dictionary of Occupational Titles; and
(2) as performed in the general labor market and national economy.
Main Duties are **not** limited to those specific job tasks as performed for a certain firm or at a certain work site.

**MEDICALLY APPROPRIATE TREATMENT** means diagnostic services, consultation, care or services that are consistent with the symptoms or diagnosis causing your Disability. Such treatment must be rendered:
(1) by a Physician whose license and any specialty are consistent with the disabling condition; and
(2) according to generally accepted, professionally recognized standards of medical practice.

**MILITARY LEAVE** means a leave of absence that:
(1) is subject to the federal USERRA law (the Uniformed Services Employment and Reemployment Rights Act of 1994 and any amendments to it);
(2) is taken in accord with the Employer's leave policy and the federal USERRA law; and
(3) does not exceed the period required by that law.

**OWN OCCUPATION** or **REGULAR OCCUPATION** means the occupation, trade or profession:
(1) in which you were employed with the Employer prior to Disability; and
(2) which was your main source of earned income prior to Disability.

It means a collective description of related jobs, as defined by the U.S. Department of Labor Dictionary of Occupational Titles. It includes any work in the same occupation for pay or profit, regardless of:
(1) whether such work is with the Employer, with some other firm, or on a self-employed basis; or
(2) whether a suitable opening is currently available with the Employer or in the local labor market.

**PARTIAL DISABILITY** or **PARTIALLY DISABLED** means that, due to an Injury or Sickness, you:
(1) are unable to perform one or more of the Main Duties of your Own Occupation, or are unable to perform such duties Full-Time; and
(2) are engaged in Partial Disability Employment.

**DEFINITIONS**
**(Continued)**

**PARTIAL DISABILITY EMPLOYMENT** means you are working at your Own Occupation or any other occupation; however, because of a Partial Disability:
(1) your hours or production is reduced;
(2) one or more Main Duties of the job are reassigned; or
(3) you are working in a lower-paid occupation.

During Partial Disability Employment, your current earnings:
(1) must be at least 20% of Predisability Income; and
(2) may not exceed the percentage specified in the Partial Disability Benefit section.

**PERSON** means an Employee of the Employer:
(1) who is a member of an Employee class which is eligible for coverage under the Policy; and
(2) who has completed an enrollment form.

**PERSONAL INSURANCE** means the insurance provided by the Policy on Insured Persons.

**PHYSICIAN** means:
(1) a legally qualified medical doctor who is licensed to practice medicine, to prescribe and administer drugs, or to perform surgery; or
(2) any other duly licensed medical practitioner who is deemed by state law to be the same as a legally qualified medical doctor.

The medical doctor or other medical practitioner must be acting within the scope of his or her license. He or she must be qualified to provide Medically Appropriate Treatment for your disabling condition.

Physician does **not** include you or your relatives. Relatives include:
(1) your spouse, siblings, parents, children and grandparents; and
(2) your spouse's relatives of like degree.

**POLICY** means the group insurance Policy issued by the Company to the Group Policyholder.

**PREDISABILITY INCOME**--See Basic Weekly Earnings definition.

**REGULAR CARE OF A PHYSICIAN** means you:
(1) personally visit a Physician, as often as medically required according to standard medical practice to effectively manage and treat your disabling condition; and
(2) receive Medically Appropriate Treatment, by a Physician whose license and any specialty are consistent with the disabling condition.

**REGULAR OCCUPATION**--See Own Occupation or Regular Occupation definition.

**DEFINITIONS**
**(Continued)**

**RETIREMENT BENEFIT**, when used with the term Retirement Plan, means a benefit that:
(1) is payable under a Retirement Plan either in a lump sum or in the form of periodic payments;
(2) does not represent contributions made by you (Payments representing Employee contributions are deemed to be received over your expected remaining life, regardless of when they are actually received.); and
(3) is payable upon:
 (a) early or normal retirement; or
 (b) disability (if the payment does reduce the benefit which would have been paid at the normal retirement age under the plan, if disability had not occurred).

**RETIREMENT PLAN** means a defined benefit or defined contribution plan that:
(1) provides Retirement Benefits to Employees; and
(2) is not funded wholly by Employee contributions.

The term shall **not** include any 401(k), profit-sharing or thrift plan; informal salary continuance plan; individual retirement account (IRA); tax sheltered annuity (TSA); stock ownership plan; or a non-qualified plan of deferred compensation.

An Employer's Retirement Plan is deemed to include any Retirement Plan:
(1) which is part of any federal, state, county, municipal or association retirement system; and
(2) for which you are eligible as a result of employment with the Employer.

**SICK LEAVE** or **SALARY CONTINUANCE PLAN** means a plan that:
(1) is established and maintained by the Employer for the benefit of Employees; and
(2) continues payment of all or part of your Predisability Income for a specified period after you become Disabled.

It does **not** include compensation the Employer pays you for work actually performed during a Disability.

**SICKNESS** means illness, pregnancy or disease.

**TOTAL DISABILITY** or **TOTALLY DISABLED** means your inability, due to Sickness or Injury, to perform each of the Main Duties of your Own Occupation. A Person engaging in any employment for wage or profit is not Totally Disabled. The loss of a professional license, an occupational license or certification, or a driver's license for any reason does **not**, by itself, constitute Total Disability.

**WAITING PERIOD** means the period of time you must be employed in an eligible class with the Employer, before you become eligible to enroll for coverage under the Policy. The period of service must be continuous, except as explained in the Eligibility provision captioned Prior Service Credit Towards Waiting Period.

**WEEKLY BENEFIT** means the amount payable weekly by the Company to you while you are Totally Disabled or Partially Disabled.

**WORKERS' COMPENSATION OR SIMILAR COVERAGE** means coverage under a law that compensates for job related Injury or Sickness. It includes (but is not limited to):
(1) coverage under any Workers' Compensation or occupational disease law;
(2) coverage under the Jones Act; the Longshoreman's and Harbor Worker's Act; the Maritime Doctrine of Maintenance, Wages or Cure; or
(3) any plan provided in place of one of those plans.

## GENERAL PROVISIONS

**ENTIRE CONTRACT.** The entire contract between the parties shall consist of:
(1) the Policy and any amendments to it;
(2) the Group Policyholder's application (a copy of which is attached to the Policy);
(3) any Participating Employers' applications or Participation Agreements; and
(4) any individual applications of Insured Persons.

In the absence of fraud, all statements made by the Group Policyholder and by Insured Persons are representations and not warranties. No statement made by an Insured Person will be used to contest the coverage provided by the Policy, unless:
(1) it is contained in a written statement signed by that Insured Person; and
(2) a copy of the statement has been furnished to that Insured Person.

**INCONTESTABILITY.** Except for the non-payment of premiums or fraud, the Company may not contest the validity of the Policy after it has been in force for two years from its date of issue; and as to any Insured Person, after his or her coverage has been in force for two years during his or her lifetime. This clause does not preclude, at any time, the assertion of defenses based upon:
(1) the Policy's eligibility requirements, exclusions and limitations; and
(2) other Policy provisions unrelated to the validity of coverage.

**RESCISSION**. The Company has the right to rescind any insurance for which Evidence of Insurability was required, if:
(1) you incur a claim during the first two years of coverage; and
(2) the Company discovers that you made a Material Misrepresentation on your application.

A **"Material Misrepresentation"** is an incomplete or untrue statement that caused the Company to issue coverage that it would have disapproved, had it known the truth. **"To rescind"** means to cancel insurance back to its effective date. In that event, the Company will refund all premium paid for the rescinded insurance, less any benefits paid for your claims. The Company reserves the right to recover any claims paid in excess of such premiums.

**MISSTATEMENTS OF FACTS.** If relevant facts about any Person were misstated:
(1) a fair adjustment of the premium will be made; and
(2) the true facts will decide if and in what amount insurance is valid under the Policy.
If your age has been misstated, any benefits shall be in the amount the paid premium would have purchased at the correct age.

**GROUP POLICYHOLDER'S AGENCY.** For all purposes of the Policy, the Group Policyholder acts on its own behalf or as an agent of the Insured Person. Under no circumstances will the Group Policyholder be deemed the agent of the Company.

**CURRENCY.** In administering the Policy:
(1) all Predisability Income will be expressed in U.S. dollars; and
(2) all premium and benefits must be paid in U.S. dollars.

**WORKERS' COMPENSATION OR STATE DISABILITY INSURANCE.** The Policy does not replace or provide benefits required by:
(1) Workers' Compensation laws; or
(2) any state temporary disability insurance plan laws.

**ASSIGNMENT.** The rights and benefits under this Certificate may not be assigned.